Steven J. Nataupsky (CA SBN 155913)
steven.nataupsky@knobbe.com
Lynda J. Zadra-Symes (CA SBN 156511)
lynda.zadrasymes@knobbe.com
Jason A. Champion (CA SBN 259207)
jason.champion@knobbe.com
Julianna M. Simon (CA SBN 307664)
julianna.simon@knobbe.com
KNOBBE, MARTENS, OLSON & BEAR, LLP
2040 Main Street, Fourteenth Floor
Irvine, CA  92614
Phone: (949) 760-0404
Facsimile: (949) 760-9502

Attorneys for Plaintiff
MONSTER ENERGY COMPANY

# IN THE UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MONSTER ENERGY COMPANY, a Delaware corporation, <br><br> Plaintiff, <br><br> v. <br><br> INTEGRATED SUPPLY NETWORK, LLC, a Florida limited liability company, <br><br> Defendant. | Case No. 5:17-CV-00548 <br><br> **COMPLAINT FOR TRADEMARK INFRINGEMENT, TRADE DRESS INFRINGMENT, FALSE DESIGNATION OF ORIGIN, AND UNFAIR COMPETITION** <br><br> **DEMAND FOR JURY TRIAL** |

Plaintiff Monster Energy Company ("Plaintiff" or "Monster") hereby complains of Defendant Integrated Supply Network, LLC ("Defendant"), and alleges as follows:

## I. JURISDICTION AND VENUE

1.     This is an action for 1) trademark infringement, trade dress infringement, and false designation of origin under 15 U.S.C. § 1125(a), 2) trademark infringement under 15 U.S.C. § 1114, 3) California common-law unfair competition, and 4) unfair competition arising under California Business & Professions Code §§ 17200 et seq.

2.     The Court has original subject matter jurisdiction over the claims that relate to trademark infringement, trade dress infringement, and false designation of origin pursuant to 15 U.S.C. §§ 1116 and 1121(a) and also pursuant to 28 U.S.C. §§ 1331 and 1338, as these claims arise under the laws of the United States. The Court has supplemental jurisdiction over the claims in this Complaint which arise under state statutory and common law pursuant to 28 U.S.C. §§ 1338(b) and  1367(a), because the state law claims are so related to the federal claims that they form part of the same case or controversy and derive from a common nucleus of operative facts.

3.     This Court has personal jurisdiction over Defendant because Defendant has a continuous, systematic, and substantial presence within this Judicial District and within California.  Defendant has distribution centers in Fresno and West Sacramento, California.  Defendant advertises the location of its distribution centers on one of Defendant's websites, http://www.isnweb.com/isnweb/contact.  In addition, by committing acts of trademark infringement, trade dress infringement, false designation of origin, and unfair competition in this Judicial District, including, but not limited to, using infringing marks in connection with the sale of products to customers in

this Judicial District, Defendant's acts form a substantial part of the events or omissions giving rise to Monster's claims.

4.     Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391(b) and (c) at least because Defendant resides in this Judicial District by virtue of doing business within the Judicial District and a substantial portion of the events complained of herein took place in this Judicial District.

## II.  THE PARTIES

5.     Monster is a corporation organized and existing under the laws of the State of Delaware, having a principal place of business at 1 Monster Way, Corona, California 92879.

6.     Upon information and belief, Defendant is a limited liability company organized and existing under the laws of the State of Florida, having a principal place of business at 2727 Interstate Drive Lakeland, Florida 33805. Defendant is subject to the personal jurisdiction of this Court by virtue of its substantial contacts with California, including its participation in the acts and events occurring in this Judicial District described herein.

## III.  COMMON ALLEGATIONS FOR ALL CLAIMS OF RELIEF

### A.    Monster's Trademarks and Trade Dress

7.     Monster is a nationwide leader in the business of developing, marketing, selling, and distributing beverages.  Monster has achieved extensive exposure and widespread recognition of its MONSTER™ brand through its sponsorship of motorsports athletes, teams and events, among other sponsorships.

8.     In 2002, long before Defendant's acts described herein, Monster launched its MONSTER ENERGY® drink brand, bearing its now-famous MONSTER mark and MONSTER ENERGY® mark.

9.     Monster's successful line of MONSTER drinks has grown to include numerous other well-known products, the containers and packaging of

which are prominently marked with the MONSTER mark.  The MONSTER line of drinks includes or has included, but is not limited to, original Monster Energy® and Lo-Carb Monster Energy®; Monster Assault®; Juice Monster® Khaos®, Juice Monster® Ripper®, and Juice Monster® Pipeline Punch®; Ubermonster®; Monster Energy® Gronk; Monster Energy® Import; Punch Monster® Baller's Blend and Punch Monster® Mad Dog; Monster Energy Absolutely Zero®; Monster Energy Zero Ultra®, Monster Energy Ultra Blue®, Monster Energy Ultra Red®, Monster Energy Ultra Sunrise®, Monster Energy Ultra Citron®, and Monster Energy Ultra Black®; Monster Rehab®, which is a line of tea-based non-carbonated energy drinks, which includes Monster's Monster Rehab® Tea + Orangeade + Energy, Monster Rehab® Tea + Pink Lemonade + Energy, Monster Rehab® Tea + Lemonade + Energy, Monster Rehab® Raspberry Tea + Energy, and Monster Rehab® Peach Tea + Energy; Java Monster®, which is a line of dairy based coffee plus energy drinks; Muscle Monster®, which is a line of energy shakes; Monster Energy Extra Strength Nitrous Technology®, which is a line of energy drinks with a blend of nitrous oxide and carbon dioxide to create a smoother energy drink; and 🅵® Monster Energy® which is a five ounce concentrated energy drink, among others (referred to collectively as "MONSTER line of drinks").

10.   Monster is also the owner of numerous trademark registrations for marks that incorporate its famous MONSTER Mark and/or MONSTER ENERGY® Mark, for use in connection with beverages, nutritional supplements, clothing, sporting goods, promoting goods and services in the motorsports industry, and other products and services, including the following U.S. Trademark Registrations:

| MARK | REG. NO. | GOODS/SERVICES | DATE FILED | REG. DATE |
|---|---|---|---|---|
| MONSTER ENERGY | 4,721,433 | Promoting goods and services in the sports, motorsports, electronic sports, and music industries through the distribution of printed, audio and visual promotional materials; promoting sports and music events and competitions for others | 03/12/2014 | 04/14/2015 |
| MONSTER ENERGY | 3,044,315 | Nutritional supplements in liquid form, but excluding perishable beverage products that contain fruit juice or soy, whether such products are pasteurized or not | 05/23/2003 | 01/17/2006 |
| MONSTER ENERGY | 3,057,061 | Fruit juice drinks having a juice content of 50% or less by volume that are shelf stable, carbonated soft drinks, carbonated drinks enhanced with vitamins, minerals, nutrients, amino acids and/or herbs, but excluding perishable beverage products that contain fruit juice or soy, whether such products are pasteurized or not | 04/18/2002 | 02/27/2006 |
|  | 3,908,601 | Clothing, namely, t-shirts, hooded shirts and hooded sweatshirts, sweat shirts, jackets, pants, bandanas, sweat bands and gloves; headgear, namely, hats and beanies | 04/02/2009 | 01/18/2011 |

| MARK | REG. NO. | GOODS/SERVICES | DATE FILED | REG. DATE |
|---|---|---|---|---|
|  | 3,914,828 | Sports helmets | 04/02/2009 | 02/01/2011 |
|  | 3,923,683 | All purpose sport bags; All-purpose carrying bags; Backpacks; Duffle bags | 04/02/2009 | 02/22/2011 |
|  | 3,908,600 | Stickers; sticker kits comprising stickers and decals; decals | 04/02/2009 | 01/18/2011 |
|  | 4,332,062 | Silicone wrist bands; silicone bracelets; jewelry, namely, bracelets and wristbands | 10/05/2012 | 05/07/2013 |
|  | 4,660,598 | Lanyards; Lanyards for holding whistles, keys, eyeglasses, sunglasses, mobile telephones, badges, identification cards, event passes, media passes, photographs, recording equipment, or similar conveniences | 08/26/2013 | 12/23/2014 |
|  | 3,740,050 | Nutritional supplements; Beverages, namely, carbonated soft drinks, carbonated drinks enhanced with vitamins, minerals, nutrients, amino acids and/or herbs, carbonated and non-carbonated energy or sports drinks | 08/07/2009 | 01/19/2010 |
| M MONSTER ENERGY | 3,044,314 | Nutritional supplements in liquid form, but excluding perishable beverage products that contain fruit | 05/23/2003 | 01/17/2006 |

| MARK | REG. NO. | GOODS/SERVICES | DATE FILED | REG. DATE |
|---|---|---|---|---|
| | | juice or soy, whether such products are pasteurized or not | | |
| M MONSTER ENERGY | 3,134,842 | Beverages, namely, carbonated soft drinks, carbonated drinks enhanced with vitamins, minerals, nutrients, amino acids and/or herbs, carbonated energy or sports drinks, fruit juice drinks having a juice content of 50% or less by volume that are shelf stable, but excluding perishable beverage products that contain fruit juice or soy, whether such products are pasteurized or not | 05/07/2003 | 08/29/2006 |
| MONSTER ENERGY | 4,036,680 | Nutritional supplements in liquid form | 09/11/2007 | 10/11/2011 |
| MONSTER ENERGY | 4,036,681 | Non-alcoholic beverages, namely, energy drinks, excluding perishable beverage products that contain fruit juice or soy | 09/11/2007 | 10/11/2011 |
| MONSTER REHAB | 4,111,964 | Ready to drink tea, iced tea and tea based beverages; ready to drink flavored tea, iced tea and tea based beverages | 08/24/2011 | 03/13/2012 |
| MONSTER REHAB | 4,129,288 | Nutritional supplements in liquid form<br><br>Beverages, namely, non-alcoholic non-carbonated drinks enhanced with | 07/06/2010 | 04/17/2012 |

| MARK | REG. NO. | GOODS/SERVICES | DATE FILED | REG. DATE |
|---|---|---|---|---|
| | | vitamins, minerals, nutrients, proteins, amino acids and/or herbs; non-carbonated energy or sports drinks, fruit juice drinks having a juice content of 50% or less by volume that are shelf-stable; all the foregoing goods exclude perishable beverage products that contain fruit juice or soy, whether such products are pasteurized or not | | |
| MUSCLE MONSTER | 4,376,796 | Nutritional supplements in liquid form<br><br>Beverages, namely, soft drinks; non-alcoholic and non-carbonated drinks enhanced with vitamins, minerals, nutrients, proteins, amino acids and/or herbs; non-carbonated energy or sports drinks; all the foregoing goods exclude perishable beverage products that contain fruit juice or soy, whether such products are pasteurized or not | 07/02/2010 | 07/30/2013 |
| MUSCLE MONSTER | 4,451,535 | Vitamin fortified beverages<br><br>Dairy-based beverages; dairy-based energy shakes; energy shakes; coffee energy shakes; chocolate | 07/10/2013 | 12/17/2013 |

| MARK | REG. NO. | GOODS/SERVICES | DATE FILED | REG. DATE |
|---|---|---|---|---|
| | | energy shakes<br><br>Ready to drink coffee based beverages; ready to drink chocolate-based beverages | | |
| JUICE MONSTER | 4,716,750 | Nutritional supplements in liquid form;<br><br>Non-alcoholic beverages, namely, energy drinks and drinks enhanced with vitamins, minerals, nutrients, amino acids and/or herbs, but excluding perishable beverage products that contain fruit juice or soy. | 02/24/2012 | 04/07/2015 |
| MONSTER ASSAULT | 4,634,053 | Nutritional supplements in liquid form;<br><br>Vitamin fortified beverages; Non-alcoholic beverages, namely, energy drinks, energy drinks flavored with juice, sports drinks, all enhanced with vitamins, minerals, nutrients, proteins, amino acids, and/or herbs, but excluding perishable beverage products that contain fruit juice or soy, whether such products are pasteurized or not | 11/15/2013 | 11/04/2014 |
| PUNCH MONSTER | 4,604,556 | Nutritional supplements in liquid form; Vitamin fortified beverages; Non-alcoholic beverages, | 11/22/2013 | 09/16/2014 |

| MARK | REG. NO. | GOODS/SERVICES | DATE FILED | REG. DATE |
|---|---|---|---|---|
| | | namely, energy drinks, energy drinks flavored with juice, sports drinks, all enhanced with vitamins, minerals, nutrients, proteins, amino acids, and/or herbs, but excluding perishable beverage products that contain fruit juice or soy, whether such products are pasteurized or not | | |
| JAVA MONSTER | 3,959,457 | Beverages, namely, soft drinks; non-carbonated energy drinks; non-carbonated sports drinks; soft drinks and non-carbonated energy drinks, all enhanced with vitamins, minerals, nutrients, amino acids, and/or herbs, but excluding perishable beverage products that contain fruit juice or soy, whether such products are pasteurized or not | 12/8/2005 | 05/10/2011 |
| JAVA MONSTER | 5,018,111 | Ready to drink coffee, iced coffee and coffee based beverages; ready to drink flavored coffee, iced coffee and coffee based beverages | 03/15/2016 | 08/09/2016 |
| UBERMON STER | 4,234,456 | Nutritional supplements in liquid form; Beverages, namely, carbonated soft drinks; nonalcoholic carbonated | 07/09/2010 | 10/30/2012 |

| MARK | REG. NO. | GOODS/SERVICES | DATE FILED | REG. DATE |
|---|---|---|---|---|
| | | soft drinks and energy drinks enhanced with vitamins, minerals, nutrients, proteins, amino acids and/or herbs; carbonated energy drinks and sports drinks; all the foregoing goods exclude perishable beverage products that contain fruit juice or soy, whether such products are pasteurized or not | | |
| MONSTER UNLEADED | 5,041,267 | Nutritional supplements; Non-alcoholic drinks, namely, carbonated soft drinks, carbonated energy drinks, sports drinks, and soft drinks, energy drinks and sports drinks enhanced with vitamins, minerals, nutrients, amino acids and/or herbs | 08/03/2011 | 09/13/2016 |
| MONSTER ENERGY UNLEADED | 4,989,137 | Nutritional supplements in liquid form; Non-alcoholic beverages, namely, carbonated soft drinks, carbonated and non-carbonated energy drinks, sports drinks, and soft drinks, energy drinks and sports drinks enhanced with vitamins, minerals, nutrients, amino acids and/or herbs | 05/14/2014 | 06/28/2016 |
| MONSTER ENERGY | 5,013,706 | Nutritional supplements in liquid form; | 01/20/2015 | 08/02/2016 |

| MARK | REG. NO. | GOODS/SERVICES | DATE FILED | REG. DATE |
|---|---|---|---|---|
| ABSOLUTELY ZERO | | Non-alcoholic beverages, namely, soft drinks, carbonated soft drinks, energy drinks and sports drinks; energy drinks and sports drinks enhanced with vitamins, minerals, nutrients, amino acids and/or herbs | | |
| MONSTER ENERGY ULTRA RED | 4,532,292 | Nutritional supplements in liquid form; vitamin fortified beverages;

Non-alcoholic beverages, namely, energy drinks, soft drinks, sports drinks, all enhanced with vitamins, minerals, nutrients, amino acids and/or herbs; all the foregoing goods exclude perishable beverage products that contain fruit juice or soy, whether such products are pasteurized or not | 06/13/2013 | 05/20/2014 |
| MONSTER ENERGY ULTRA BLUE | 4,534,414 | Nutritional supplements in liquid form; vitamin fortified beverages;

Non-alcoholic beverages, namely, energy drinks, soft drinks, sports drinks, all enhanced with vitamins, minerals, nutrients, amino acids and/or herbs; all the foregoing goods exclude perishable beverage products that contain fruit | 01/02/2013 | 05/20/2014 |

| MARK | REG. NO. | GOODS/SERVICES | DATE FILED | REG. DATE |
|---|---|---|---|---|
| | | juice or soy, whether such products are pasteurized or not | | |
| MONSTER ENERGY ULTRA BLACK | 4,860,491 | Nutritional supplements in liquid form; <br><br> Non-alcoholic beverages, namely, carbonated soft drinks, carbonated energy drinks, sports drinks, and soft drinks, energy drinks and sports drinks enhanced with vitamins, minerals, nutrients, amino acids and/or herbs | 05/13/2014 | 11/24/2015 |
| MONSTER ENERGY ULTRA CITRON | 4,856,373 | Nutritional supplements in liquid form; <br><br> Non-alcoholic beverages, namely, carbonated soft drinks, carbonated energy drinks, sports drinks, and soft drinks, energy drinks and sports drinks enhanced with vitamins, minerals, nutrients, amino acids and/or herbs | 05/14/2014 | 11/17/2015 |
| MONSTER ENERGY ZERO ULTRA | 4,879,793 | Nutritional supplements in liquid form; <br><br> Non-alcoholic beverages, namely, soft drinks, carbonated soft drinks, energy drinks, sports drinks; energy drinks and sports drinks enhanced with vitamins, minerals, nutrients, amino acids and/or herbs | 12/18/2014 | 01/05/2016 |

| MARK | REG. NO. | GOODS/SERVICES | DATE FILED | REG. DATE |
|---|---|---|---|---|
| ASSAULT M MONSTER ENERGY | 3,924,797 | Beverages, namely, carbonated drinks enhanced with vitamins, minerals, nutrients, amino acids, and/or herbs; carbonated and non-carbonated energy drinks | 08/29/2005 | 03/01/2011 |
| LO-CARB MONSTER ENERGY | 3,852,118 | Nutritional supplements; Non-alcoholic beverages, namely, energy drinks, drinks enhanced with vitamins, minerals, nutrients, amino acids and/or herbs | 02/13/2009 | 09/28/2010 |
|  | 3,134,841 | Beverages, namely, carbonated soft drinks, carbonated soft drinks enhanced with vitamins, minerals, nutrients, amino acids and/or herbs, carbonated energy and sports drinks, fruit juice drinks having a juice content of 50% or less by volume that are shelf stable, but excluding perishable beverage products that contain fruit juice or soy, whether such products are pasteurized or not | 05/07/2003 | 08/29/2006 |
|  | 4,865,702 | Nutritional supplements in liquid form; Non-alcoholic beverages, namely, carbonated soft drinks; carbonated drinks enhanced with vitamins, | 02/02/2015 | 12/08/2015 |

-13-

| MARK | REG. NO. | GOODS/SERVICES | DATE FILED | REG. DATE |
|------|----------|----------------|------------|-----------|
|      |          | minerals, nutrients, proteins, amino acids and/or herbs; carbonated energy drinks and sports drinks |  |  |

11. Attached hereto as Exhibits A1-A36 are true and correct copies of Monster's trademark registrations identified in Paragraph 10 of this Complaint, which are hereby incorporated by reference. Collectively, those registrations and trademarks, including all common law rights therein, are referred to as the "MONSTER Marks."

12. Pursuant to 15 U.S.C. § 1065, U.S. Trademark Registration Nos. 3,044,314, 3,044,315, 3,057,061, 3,134,841, 3,134,842, 3,852,118, 3,959,457, and 3,908,600 are incontestable.

13. In addition, since 2002, Monster has consistently used a distinctive trade dress for its packaging and promotional materials, including a stylized font for the mark MONSTER on a dark background, a bright contrasting accent color, including bright green, and an overall aggressive, edgy theme, as shown below (the "MONSTER Trade Dress"):



-14-

14.     Long before Defendant's acts described herein, Monster has used or licensed the use of its MONSTER Marks and/or MONSTER Trade Dress in connection with products used in connection with or associated with motorized vehicles and motorsports, such as automotive wheels, replica cars, remote control cars, graphic kits for motorized vehicles, clothing, gloves, stickers, sports helmets, bags, backpacks, and other related accessories.  True and correct examples of authorized products bearing Monster's MONSTER Marks are shown below.





1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28





1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28





15.    In addition, Monster has used, and continues to use, its MONSTER Marks and/or MONSTER Trade Dress in connection with apparel and accessories, including, for example, t-shirts, hooded shirts, hooded sweatshirts, sweatshirts, jackets, pants, bandanas, sweat bands, gloves, headgear, stickers, and decals.  True and correct examples of authorized apparel bearing Monster's MONSTER Marks and/or MONSTER Trade Dress are shown below.





1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28





16.     In addition, since at least 2002, Monster has also used the famous UNLEASH THE BEAST!® mark in connection with its MONSTER ENERGY® brand.  In addition to its continued use of the UNLEASH THE BEAST!® mark, Monster also used its PUMP UP THE BEAST!®, REHAB THE BEAST!®, REHAB THE BEAST! WWW.MONSTERENERGY.COM®, UNLEASH THE NITRO BEAST!®, UNLEASH THE ULTRA BEAST!®, and UNLEASH THE CAFFEINE FREE BEAST!® marks on its products (collectively, the "BEAST Marks").  Shown below are true and accurate representative pictures illustrating just a few examples of Monster's point of sale materials bearing Monster's BEAST Marks.

 

17.     Monster is also the owner of numerous trademark registrations for its famous BEAST Marks for use in connection with beverages, nutritional supplements, and clothing, including the following U.S. Trademark Registrations:

| MARK | REG. NO. | GOODS/SERVICES | DATE FILED | REG. DATE |
|---|---|---|---|---|
| UNLEASH THE | 4,975,822 | Clothing, namely, tops, shirts, long-sleeved shirts, | 03/07/2014 | 06/14/2016 |

-20-

| MARK | REG. NO. | GOODS/SERVICES | DATE FILED | REG. DATE |
|---|---|---|---|---|
| BEAST! | | t-shirts, hooded shirts and hooded sweatshirts, sweat shirts, jackets, pants, bandanas, socks, sweat bands and gloves; headgear, namely, hats and beanies | | |
| UNLEASH THE BEAST! | 2,769,364 | Fruit juice drinks, soft drinks, carbonated soft drinks and soft drinks enhanced with vitamins, minerals, nutrients, amino acids and/or herbs | 12/18/2002 | 09/30/2003 |
| PUMP UP THE BEAST! | 4,482,659 | Nutritional supplements in liquid form; vitamin fortified beverages | 5/15/2013 | 02/11/2014 |
| PUMP UP THE BEAST! | 4,482,660 | Dairy-based beverages; dairy-based energy shakes | 05/15/2013 | 02/11/2014 |
| PUMP UP THE BEAST! | 4,542,107 | Ready to drink coffee-based beverages; coffee-based shakes for boosting energy; chocolate-based shakes for boosting energy; ready to drink chocolate-based beverages | 05/15/2013 | 06/03/2014 |
| PUMP UP THE BEAST! | 4,546,402 | Non-alcoholic beverages, namely, non-alcoholic and non-carbonated drinks enhanced with vitamins, minerals, nutrients, proteins, amino acids | 05/15/2013 | 06/10/2014 |

| MARK | REG. NO. | GOODS/SERVICES | DATE FILED | REG. DATE |
|---|---|---|---|---|
| | | and/or herbs; non-carbonated energy or sports drinks | | |
| REHAB THE BEAST! | 4,336,329 | Ready to drink tea, iced tea and tea based beverages; ready to drink flavored tea, iced tea and tea based beverages; non-alcoholic beverages, namely, energy drinks, sports drinks and fruit juice drinks; all the foregoing enhanced with vitamins, minerals, nutrients, proteins, amino acids and/or herbs | 11/03/2010 | 05/14/2013 |
| UNLEASH THE NITRO BEAST! | 4,394,044 | Non-alcoholic beverages, namely, carbonated soft drinks; carbonated drinks enhanced with vitamins, minerals, nutrients, proteins, amino acids and/or herbs; carbonated energy or sports drinks | 12/14/2010 | 07/27/2013 |
| UNLEASH THE ULTRA BEAST! | 4,371,544 | Non-alcoholic beverages, namely, carbonated soft drinks; carbonated drinks enhanced with vitamins, minerals, nutrients, proteins, amino acids and/or herbs; carbonated energy drinks and sports drinks | 11/19/2012 | 07/23/2013 |
| REHAB | 4,292,502 | Ready To drink tea, iced | 02/15/2012 | 02/19/2013 |

-22-

| MARK | REG. NO. | GOODS/SERVICES | DATE FILED | REG. DATE |
|---|---|---|---|---|
| THE BEAST! | | tea and tea based beverages; ready to drink flavored tea, iced tea and tea based beverages; non-alcoholic beverages, namely, energy drinks, sports drinks and fruit juice drinks, all the foregoing enhanced with vitamins, minerals, nutrients, proteins, amino acids and/or herbs | | |
| UNLEASH THE CAFFEINE FREE BEAST! | 4,953,200 | Caffeine free nutritional supplements in liquid form; non-alcoholic beverages, namely, carbonated energy drinks, sports drinks, and soft drinks, energy drinks and sports drinks enhanced with vitamins, minerals, nutrients, amino acids and/or herbs; all goods do not contain caffeine | 05/28/2014 | 05/03/2016 |

18.     Attached hereto as Exhibits B1-B11 are true and correct copies of Monster's trademark registrations identified in Paragraph 17 of this Complaint, which are hereby incorporated by reference.

19.     Pursuant to 15 U.S.C. § 1065, U.S. Trademark Registration No. 2,769,364 is incontestable.

20.     Monster's MONSTER Marks, MONSTER Trade Dress, and BEAST Marks are the subject of substantial and continuous marketing and promotion by Monster.  Since 2002, Monster has spent over $4.3 billion dollars

in advertising, promoting, and marketing its MONSTER brand, MONSTER Trade Dress, and BEAST Marks. In 2016 alone, Monster spent $467 million dollars in advertising, promoting, and marketing its brand, marks, and trade dress.

21. Monster has and continues to widely market and promote its MONSTER Marks, MONSTER Trade Dress, and BEAST Marks by displaying the marks and trade dress on billions of cans of its MONSTER drinks sold in the U.S. Monster's promotional efforts also include – by way of example but not limitation – sponsorship of athletes, athletic teams, athletic competitions, concerts and live events around the world, widespread distribution of promotional and point of sale materials, product samplings, apparel and merchandise bearing the MONSTER Marks, MONSTER Trade Dress, and/or BEAST Marks, promotion in magazines and other industry publications, promotion on the MONSTER ENERGY® website and other Internet websites, and attendance at trade shows. Virtually every marketing and promotional item uses the colors black and green.

22. Monster has an established and versatile history in motorsports. A major part of Monster's brand promotion focuses on racing and motorsports. Monster sponsors or has sponsored a wide variety of motorsport athletes, teams, and/or activities, including, but not limited to, NASCAR, Formula 1, MotoGP, Moto2, Supercross, motocross, MXGP, MX2, drag racing, drifting, flat track, off road, rally, rallycross, snowmobile, speedway, stunt, superbike, and freestyle motocross.

23. On January 1, 2017, Monster became the title sponsor of NASCAR's premier series (formerly called the NASCAR Sprint Cup Series), which will now be called the Monster Energy® NASCAR Cup Series. Monster also became the official energy drink of NASCAR. NASCAR is the second most watched sport in the U.S., with over 5 million fans watching each of the 41

races.  Below is the logo for the Monster Energy® NASCAR Cup Series:



24.    Monster also has sponsored and continues to sponsor numerous athletes that compete in various classes of NASCAR racing.  For example, in 2011, Monster began its sponsorship of NASCAR driver Kyle Busch, who holds several records in NASCAR racing and won the prestigious 2015 Sprint Cup Series, the top racing series of NASCAR.  In 2015 Kyle Busch earned his 75th Xfinity Series win at Kansas Speedway racing for Joe Gibbs Racing in the No. 54 MONSTER ENERGY® Toyota Camry.   In 2012, Monster added sponsorship of Kyle's older brother, Kurt Busch, who is also a NASCAR driver and winner of the 2010 All-Star Race and the 2004 Sprint Cup.  Monster also sponsors the Stewart Haas Racing team with its current driver Kurt Busch who drives the #41 Monster Energy/HAAS Automation Chevy.  The drivers' cars and racing gear prominently display the MONSTER Marks  and MONSTER Trade Dress as shown, for example, below:



1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19





20   25.   Monster also has been a long-time sponsor of Ricky Carmichael
21  who transitioned from one of the world's greatest Supercross and Motocross
22  racers to a NASCAR truck driver.  Carmichael prominently promotes Monster's
23  MONSTER Marks and MONSTER Trade Dress.  Some examples of Monster's
24  sponsorship of Carmichael are shown below:
25
26
27
28

1
2
3
4
5
6
7
8
9
10



11      26.     Monster also sponsors or has sponsored athletes and teams who

12   compete in other truck and car racing events, including, but not limited to,

13   SCORE Off-Road Racing events, the King of the Hammers desert racing event,

14   and the Off-Road Championship event (TORC).   Monster sponsors or has

15   sponsored the following teams that compete in truck and car racing events: the

16   Mercedes AMG PETRONAS F1 Racing Team (formerly named the Mercedes

17   GP Petronas Formula One Team) that competes in the FIA Formula One World

18   Championship Series with its current team drivers 3-time Formula One World

19   Champion, Lewis Hamilton and current Formula One World Champion, Nico

20   Rosberg, the Holden Racing Team, and the MONSTER ENERGY® X-Raid

21   racing team.   Together, Lewis Hamilton and Nico Rosberg won 19 of the 21

22   FIA Formula One races in 2016.   In addition, the Monster-sponsored Mercedes

23   AMG PETRONAS F1 Racing Team previously included seven-time World

24   Champion Michael Schumacher before Schumacher's retirement in 2012.   Some

25   examples of Monster's sponsorships of athletes and teams who compete or have

26   competed in car and truck racing events are shown below:

27

28





27.     In addition, Monster recently announced a global partnership with Lewis Hamilton, which is separate and in addition to Monster's sponsorship of the Mercedes AMG PETRONAS F1 Racing Team.   As part of the global partnership, Monster and Lewis Hamilton will be creating and releasing a signature drink together.

28.     Monster also has and continues to widely market and promote its MONSTER Marks and MONSTER Trade Dress in connection with motorcycle racing events.   For example, Monster sponsors or has sponsored the following

motorcycle racing events: MotoGP motorcycle racing events (16-18 around the world per year including 2-3 in the United States), the Outdoor National Motocross Series, the X Games, the MONSTER ENERGY® AMA Supercross Series (as the title sponsor for 16 of the 17 series races each year since 2008), the MONSTER ENERGY® Speedway World Championship, Arenacross events, MX1 and MX2 FIM Motocross World Championships, the Motocross of Nations, the MX3 FIM Motocross World Championship, and the FIM MX Junior World Championship, among others. Monster also sponsors teams that compete in motorcycle racing events including, for example, the ProCircuit Kawasaki Motocross/Supercross Team, the MONSTER ENERGY® Kawasaki Factory Team, the Yamaha Factory MotoGP Team with its renowned racers Valentino Rossi (nine-time Grand Prix World Champion, with seven championships in the premier class) and Jorge Lorenzo (five-time Grand Prix World Champion, with two championships in the premier class), the MONSTER ENERGY® Yamaha Tech 3 MotoGP Team, the Yamaha MX1 Team, the Yamaha MX2 Team, and Team Babbitt's/Monster Energy/AMSOIL/Kawaski Arenacross team. Some examples of Monster's sponsorship of these events and teams are shown, for example, below:









29.     Monster sponsored athletes compete or have competed in Professional Bull Riding, the Kentucky Derby, Ultimate Fighting Championship ("UFC"), and the National Football League.    Specifically, Monster has sponsored Victor Espinoza and American Pharoah, who won the American Triple Crown and the Breeder's Cup Classic in 2015.   Monster also sponsors Rob Gronkowski, a professional football player who plays for the NFL's New England Patriots.   In 2011, Gronkowski set NFL single-season records for touchdowns and receiving yards by a tight end and became the first tight end in NFL history to lead the conference in scoring.   Additionally, Monster sponsors Daniel Cormier, light heavyweight champion in the UFC, Ronda Rousey,

former UFC women's bantamweight champion and Connor McGregor, featherweight champion in the UFC.

30.   Monster began sponsoring Tiger Woods in 2016.  Tiger Woods is one of the most successful and famous golfers in the world.  In his storied career, Woods has won fourteen major championships, including the prestigious Masters Tournament, the U.S. Open, The British Open Championship, and the PGA Championship.

31.   When competing, at public appearances, or both, the sponsored athletes and team members almost always wear clothing or use equipment that prominently display one or more of the MONSTER Marks and/or the MONSTER Trade Dress.  The sponsored athletes and team members are also frequently shown drinking MONSTER drinks, the majority of which bear at least one of the BEAST Marks.  The MONSTER Marks and MONSTER Trade Dress are prominently displayed at the event venues, as well as on the clothing, helmets, and/or bikes, trucks or cars of riders or teams sponsored by Monster. Through Monster's sponsorships, millions of consumers have been exposed to the MONSTER Marks,  MONSTER Trade Dress, and BEAST Marks when they watch the athletes and teams compete at events—many of which are televised nationwide—or see the athletes at public appearances or in Internet postings and magazines.

32.   In addition to sponsoring professional athletes and teams, since at least 2004, Monster uses the mark MONSTER ARMY™ in connection with an amateur athlete development program.  More than 376,000 amateur athletes in various sports have applied to be accepted as part of the Monster Army through the Monster Army website <www.monsterarmy.com>. Shown below are true and accurate representative pictures illustrating Monster's use of its MONSTER ARMY™ mark.

1
2
3
4
5
6
7
8
9
10
11

 

12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28









33.     Monster supports members of the MONSTER ARMY™ in many different ways, but such support often includes assistance with clothing, gear, training, and travel.  Members of the MONSTER ARMY™ also typically wear MONSTER branded clothing and gear which prominently display one or more of the MONSTER Marks and/or the MONSTER Trade Dress.  Monster also provides athletes with hats, t-shirts, stickers, and/or embroidered patches bearing the MONSTER Marks and the MONSTER Trade Dress.   The athletes will wear or apply these items to their sports equipment and gear in order to promote the MONSTER brand of products during competition

34.     Monster's MONSTER Marks, MONSTER Trade Dress, and BEAST Marks were also marketed and promoted while prominently displayed on the Las Vegas monorail (the "Monster Train").  In 2003, Monster engaged in a massive advertising campaign in connection with its sponsorship of the Monster Train, which prominently featured the MONSTER Mark, MONSTER Trade Dress, and UNLEASH THE BEAST!® mark.  The Monster Train was featured in *The Wall Street Journal*, *Time* and *USA Today* in 2003, and these articles were read by an estimated 32 million people in the U.S.  In addition, television and internet reports that discussed the Las Vegas Monster Train reached another 70 million readers, and television and radio promotions were circulated to approximately 36 million people in the U.S.

35.     Monster's MONSTER line of drinks has achieved substantial commercial success.  Worldwide retail sales now exceed 3 billion cans per year, with estimated retail sales at approximately $6 billion per year worldwide.  Monster's MONSTER brand has established itself as the best-selling energy drink brand in the United States by unit volume and dollar value.   While Monster continues to expand its successful MONSTER line of drinks, Monster's best-selling drink is still the original Monster Energy®, which prominently features the colors green and black.

36.     As a result of Monster's substantial use and promotion of its MONSTER Marks, MONSTER Trade Dress, and BEAST Marks, the marks and trade dress have acquired great value as specific identifiers of Monster's products and services and serve to identify and distinguish Monster's MONSTER products and services from those of others.  Customers in this Judicial District and elsewhere readily recognize Monster's MONSTER Marks, MONSTER Trade Dress, and BEAST Marks as distinctive designations of the origin of Monster's MONSTER and MONSTER ENERGY® brand of products, services and promotional items.  The MONSTER Marks, MONSTER Trade Dress, and BEAST Marks are intellectual property assets of enormous value as symbols of Monster and its quality products, services, reputation, and goodwill.

**B.     Defendant's Infringing Activities**

37.     Defendant is engaged in the business of producing, distributing, marketing, and/or selling automotive tools and related goods, as well as other products.     Defendant also owns and operates the websites <http://www.isnweb.com>,          <https://www.mobiledealer.com>,          and <https://www.toolweb.com/>   and   maintains   the   Facebook   account <https://www.facebook.com/isntools/>      and      the      Twitter      account <https://twitter.com/ISN_Tools>.

38.     Without permission or consent from Monster, Defendant has sold and is offering for sale goods using trademarks and trade dress that are confusingly similar to one or more of the MONSTER Marks, the MONSTER Trade Dress, and one or more of the BEAST Marks. Some examples of Defendant's products displaying the infringing marks are shown below:

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28






1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28









39.    As shown above, Defendant is using the marks MONSTER, MONSTER MOBILE, and ![MONSTER], which are confusingly similar to Monster's MONSTER Marks, on and in connection with food items, such as jerky, nuts, and candies, clothing, hats, gloves, bags, tumblers, and various automotive tools and related goods.   On information and belief, Defendant is also using the MONSTER, MONSTER MOBILE, and/or ![MONSTER] marks on stickers and decals to be displayed on trucks and automobiles.  Defendant is also using the mark FEED THE BEAST, which is confusingly similar to Monster's BEAST Marks, in connection with food items. In addition, Defendant predominantly uses its marks in a green and/or green and black font on a black background, which is confusingly similar to the MONSTER Trade Dress. Defendant uses a shade of green that is almost identical to the green used by

Monster.   Indeed, Defendant has referred to its green as "Monster green," as shown below.



40.     Moreover, as shown above, Defendant is using a wing-design in connection with its mark, which is similar in appearance to the wing designs in Monster's ™ and ® marks.  Defendant is also using an "M" by itself on clothing, which is similar to Monster's M MONSTER ENERGY and marks, as shown below.  Defendant's use of a wing-design and an M by itself is yet another example of Defendant's efforts to falsely associate itself with Monster.



41.     In addition to their unauthorized use of the MONSTER, MONSTER MOBILE, , and FEED THE BEAST marks, Defendant is selling products that are co-branded with an entity that is licensed to use Monster's MONSTER Marks.  For example, upon information and belief, following Monster's license agreement for the sale of gloves co-branded with Mechanix Wear, Defendant began selling gloves co-branded with Mechanix Wear that display the mark MONSTER MOBILE.  Both Monster's and

Defendant's gloves prominently feature the mark MONSTER and the colors grey, black, and green.  Monster's and Defendant's gloves are shown below.



42.    Defendant has further attempted to falsely associate itself with Monster and create a likelihood of confusion by distributing energy drinks. Defendant offers for sale energy drinks through product catalogs that also feature Defendant's automotive goods.

43.    Upon information and belief, Defendant was aware of Monster, the MONSTER Marks, the MONSTER Trade Dress, and the BEAST Marks when Defendant commenced its infringing activities.  Defendant has been aware of the MONSTER Marks since at least as early as June 2014 when Monster filed the first of several Notices of Opposition in the United States Patent and Trademark Office against Defendant's trademark applications for the infringing marks.  Specifically, Monster has filed oppositions, based upon a likelihood of confusion with one or more of the MONSTER Marks, against Defendant's U.S.

Trademark Application Serial No. 85/806622 for the mark MONSTER MOBILE and U.S. Trademark Application Serial Nos. 86/371682, 86/371697, 86/371708, 86/371755, and 86/371761 for the mark ⟨image⟩.

44.   Without permission or consent from Monster, Defendant has infringed Monster's MONSTER Marks, MONSTER Trade Dress, and BEAST Marks in interstate commerce by making, using, promoting, advertising, selling, and/or offering to sell products using marks, including the MONSTER MOBILE, MONSTER, ⟨image⟩, and FEED THE BEAST marks, and packaging that are confusingly similar to Monster's MONSTER Marks, MONSTER Trade Dress, and BEAST Marks.

45.   Upon information and belief, Defendant's actions alleged herein are intended to cause confusion, mistake, or deception as to the source of Defendant's products and are intended to cause consumers and potential customers to believe that Defendant's business and the goods that it offers are associated with Monster or Monster's MONSTER family of products or services, when they are not.

46.   Indeed, Defendant has a duty to avoid confusion with Monster, the MONSTER Marks, the BEAST Marks, and the MONSTER Trade Dress because Defendant entered the market after Monster.  Nevertheless, Defendant has purposely sold, promoted, marketed, and/or distributed its products in a manner that causes a likelihood of confusion with Monster, the MONSTER Marks, the BEAST Marks, and the MONSTER Trade Dress.  Moreover, Defendant has developed its promotion and marketing over time in a manner that increases this likelihood of confusion.  For example, in 2014, Defendant filed U.S. trademark applications in black and white for marks that included the term "MONSTER".  In 2016, Defendant filed a trademark application for the

word "MONSTER" in green and black, which is identical to the MONSTER Trade Dress.  After Defendant's initial product sales, Defendant also began selling clothing bearing the word MONSTER and/or a separate "M" logo in green and black.  Further, more recently, Defendant began selling food using the mark MONSTER combined with the mark BEAST and the colors green and black.  Defendant also began selling third party branded beverages and advertising them in catalogs displaying the marks MONSTER and/or BEAST.

47.    By virtue of the acts complained of herein, Defendant has created a likelihood of injury to Monster's business reputation and goodwill, caused a likelihood of consumer confusion, mistake, and deception as to the source of origin or relationship of Monster's goods and services and Defendant's products, and has otherwise competed unfairly with Monster by unlawfully trading on and using Monster's MONSTER Marks, MONSTER Trade Dress, and BEAST Marks without Monster's permission or consent.

48.    Upon information and belief, Defendant's acts complained of herein are willful and deliberate.

49.    Defendant's acts complained of herein have caused damage to Monster in an amount to be determined at trial, and such damages will continue to increase unless Defendant is enjoined from its wrongful acts and infringement.

50.    Defendant's acts complained of herein have caused Monster to suffer irreparable injury to its business.  Monster will suffer substantial loss of goodwill and reputation unless and until Defendant is preliminarily and permanently enjoined from the wrongful acts complained of herein.

/ / /

/ / /

/ / /

# IV.  FIRST CLAIM FOR RELIEF

## (Trademark Infringement, Trade Dress Infringement, and False Designation of Origin Under 15 U.S.C. § 1125(a))

51.    Monster hereby repeats, realleges, and incorporates by reference paragraphs 1-50 of this Complaint as though fully set forth herein.

52.    This is an action for trademark infringement, trade dress infringement, and false designation of origin arising under 15 U.S.C. § 1125(a).

53.    As a result of the widespread use and promotion of Monster's MONSTER Marks, MONSTER Trade Dress, and BEAST Marks, the marks and trade dress have acquired strong fame and secondary meaning to consumers and potential customers, in that consumers and potential customers have come to associate the MONSTER Marks, MONSTER Trade Dress, and BEAST Marks with Monster.

54.    Defendant has infringed the MONSTER Marks and MONSTER Trade Dress, and created a false designation of origin, by using in commerce, without Monster's permission, the confusingly similar MONSTER, MONSTER MOBILE, and  marks in green and black in connection with the advertisement, offering for sale, and/or sale of Defendant's products, including food items, clothing, bags, stickers, tumblers, and automotive tools and related goods.

55.    Defendant has infringed the BEAST Marks, and created a false designation of origin, by using in commerce, without Monster's permission, the confusingly similar FEED THE BEAST mark in connection with the advertisement, offering for sale, and/or sale of Defendant's products, including food items.

56.     Defendant's actions are likely to cause confusion and mistake, or to deceive as to the affiliation, connection, or association of Monster with Defendant, and/or as to the origin, sponsorship, or approval of Defendant's products or Defendant's commercial activities, in violation of 15 U.S.C. § 1125(a).

57.     Upon information and belief, Defendant did so with the intent to trade upon Monster's reputation and goodwill by causing confusion and mistake among customers and the public and to deceive the public into believing that Defendant's products are associated with, sponsored by or approved by Monster, when they are not.

58.     Upon information and belief, Defendant had actual knowledge of Monster's ownership and prior use of the MONSTER Marks, MONSTER Trade Dress, and BEAST Marks, and without the consent of Monster, willfully violated 15 U.S.C. § 1125(a).

59.     Defendant, by its actions, has damaged Monster in an amount to be determined at trial.

60.     Defendant, by its actions, has irreparably injured Monster. Such irreparable injury will continue unless Defendant is preliminarily and permanently enjoined by this Court from further violation of Monster's rights, for which Monster has no adequate remedy at law.

**V.  <u>SECOND CLAIM FOR RELIEF</u>**

**(Trademark Infringement Under 15 U.S.C. § 1114)**

61.     Monster hereby repeats, realleges, and incorporates by reference paragraphs 1-60 of this Complaint as though fully set forth herein.

62.     This is a claim for trademark infringement arising under 15 U.S.C. § 1114.

63.   Monster owns valid and enforceable federally registered trademarks for the MONSTER Marks and BEAST Marks, including at least the registrations listed in paragraphs 10 and 17 above.

64.   Defendant has used in commerce, without permission from Monster, colorable imitations, and/or confusingly similar marks to Monster's MONSTER Marks that are the subject of at least Monster's U.S. Trademark Registration Nos. 4,721,433; 3,044,315; 3,057,061; 3,914,828; 3,923,683; 3,908,601; 3,908,600; 4,332,062; 4,660,598; 3,740,050; 3,044,314; 3,134,842; 4,036,680; 4,036,681; 4,111,964; 4,129,288; 4,376,796; 4,451,535; 4,716,750; 4,634,053; 4,604,556; 3,959,457; 5,018,111; 4,234,456; 5,041,267; 4,989,137; 5,013,706; 4,532,292; 4,534,414; 4,860,491; 4,856,373; 4,879,793; 3,924,797; 3,852,118; 3,134,841; and 4,865,702   in connection with the advertising, marketing, and/or promoting of Defendant's products, including food items, clothing, stickers, bags, tumblers, and automotive tools and related goods. Such use is likely to cause confusion or mistake, or to deceive.

65.   Defendant has used in commerce, without permission from Monster, a colorable imitation, and/or confusingly similar mark to Monster's BEAST Marks that are the subject of at least Monster's U.S. Trademark Registration Nos. 2,769,364; 4,482,659; 4,482,660; 4,542,107; 4,546,402; 4,336,329; 4,292,502; 4,394,044; 4,371,544; and 4,953,200 in connection with the advertising, marketing, and/or promoting of Defendant's products, including food items, such as jerky, nuts, and candies.   Such use is likely to cause confusion or mistake, or to deceive.

66.   Upon information and belief, the activities of Defendant complained of herein constitute willful and intentional infringements of Monster's registered marks, and Defendant did so with the intent to trade upon Monster's reputation and goodwill by causing confusion and mistake among customers and the public and to deceive the public into believing that

Defendant's products are associated with, sponsored by, originated from, or are approved by, Monster, when they are not.

67.    Upon information and belief, Defendant had actual knowledge of Monster's ownership and prior use of the MONSTER Marks and BEAST Marks, and has willfully violated 15 U.S.C. § 1114.

68.    Defendant, by its actions, has damaged Monster in an amount to be determined at trial.

69.    Defendant, by its actions, has irreparably injured Monster. Such irreparable injury will continue unless Defendant is preliminarily and permanently enjoined by this Court from further violation of Monster's rights, for which Monster has no adequate remedy at law.

## VI.  <u>THIRD CLAIM FOR RELIEF</u>

### (Unfair Competition Under California Business & Professions Code §§ 17200 *et seq.*)

70.    Monster hereby repeats, realleges, and incorporates by reference paragraphs 1-69 of this Complaint as though fully set forth herein.

71.    This is an action for unfair competition under California Business & Professions Code §§ 17200, *et seq.*

72.    By virtue of the acts complained of herein, Defendant has intentionally caused a likelihood of confusion among consumers and the public and has unfairly competed in violation of Cal. Bus. & Prof. Code §§ 17200, *et seq.*

73.    Defendant's acts complained of herein constitute trademark infringement, trade dress infringement, unfair competition, and unlawful, unfair, malicious or fraudulent business practices, which have injured and damaged Monster.

74.    Defendant, by its actions, has irreparably injured Monster.  Such irreparable injury will continue unless Defendant is preliminarily and

permanently enjoined by this Court from further violation of Monster's rights, for which Monster has no adequate remedy at law.

## VII.  <u>FOURTH CLAIM FOR RELIEF</u>

### (California Common Law Unfair Competition)

75.     Monster hereby repeats, realleges, and incorporates by reference paragraphs 1-74 of this Complaint as though fully set forth herein.

76.     This is an action for unfair competition under the common law of the State of California.

77.     Defendant's acts complained of herein constitute trademark infringement and unfair competition under the common law of the State of California.

78.     By virtue of the acts complained of herein, Defendant has willfully and intentionally caused a likelihood of confusion among the purchasing public in this Judicial District and elsewhere, thereby unfairly competing with Monster in violation of the common law of the State of California.

79.     Defendant's aforementioned acts have damaged Monster in an amount to be determined at trial.

80.     Defendant has irreparably injured Monster. Such irreparable injury will continue unless Defendant is preliminarily and permanently enjoined by this Court from further violation of Monster's rights, for which Monster has no adequate remedy at law.

81.     Defendant's willful acts of unfair competition under California common law constitute fraud, oppression and malice. Accordingly, Monster is entitled to exemplary damages pursuant to Cal. Civ. Code Section § 3294(a).

## VIII.  <u>PRAYER FOR RELIEF</u>

WHEREFORE, Monster prays for judgment against Defendant as follows:

1.     That the Court render a final judgment in favor of Monster and against Defendant on all claims for relief alleged herein;

2.     That the Court render a final judgment that Defendant has violated the provisions of 15 U.S.C. § 1125(a) by willfully infringing the MONSTER Marks, MONSTER Trade Dress, and BEAST Marks by using a false designation of origin, through the marketing, sale and promotion of Defendant's products, including food items, such as jerky, nuts, and candies, clothing, stickers, bags, tumblers, and automotive tools and related goods;

3.     That the Court render a final judgment that Defendant has willfully violated the provisions of 15 U.S.C. § 1114 by infringing Monster's trademark rights in at least the marks that are the subject of U.S. Trademark Registration Nos. 4,721,433; 3,044,315; 3,057,061; 3,914,828; 3,923,683; 3,908,601; 3,908,600; 4,332,062; 4,660,598; 3,740,050; 3,044,314; 3,134,842; 4,036,680; 4,036,681; 4,111,964; 4,129,288; 4,376,796; 4,451,535; 4,716,750; 4,634,053; 4,604,556; 3,959,457; 5,018,111; 4,234,456; 5,041,267; 4,989,137; 5,013,706; 4,532,292; 4,534,414; 4,860,491; 4,856,373; 4,879,793; 3,924,797; 3,852,118; 3,134,841; 4,865,702; 2,769,364; 4,482,659; 4,482,660; 4,542,107; 4,546,402; 4,336,329; 4,292,502; 4,394,044; 4,371,544; and 4,953,200.

4.     That the Court render a final judgment declaring that Defendant has violated California Business and Professions Code §§ 17200, *et seq.* by committing trademark infringement, and unfairly competing with Monster;

5.     That the Court render a final judgment declaring Defendant has violated California common law by unfairly competing with Monster;

6.     That Defendant, its agents, servants, employees, attorneys, successors, and assigns, and all other persons in active concert or participation with any of them who receive actual notice of the injunction by personal service or otherwise, be forthwith preliminarily and permanently enjoined from:

a.     using   the   marks   MONSTER   MOBILE,   MONSTER,

, and FEED THE BEAST in connection with the advertising, promotion, or sale of food items, such as jerky, nuts, and candies, clothing, tumblers, and automotive tools and related goods, using any of the MONSTER Marks, BEAST Marks, or MONSTER Trade Dress, in connection with Defendant's products, using any of the MONSTER Marks, BEAST Marks, or MONSTER Trade Dress in advertising or promoting Defendant's products, and/or using confusingly similar variations of any of the MONSTER Marks, BEAST Marks, or MONSTER Trade Dress in any manner that is likely to create the impression that Defendant's products originate from Monster, are endorsed by Monster, or are connected in any way with Monster;

b.     manufacturing,   distributing,   shipping,   importing, reproducing, displaying, advertising, marketing, promoting, transferring, selling, and/or offering to sell any unauthorized products bearing any of the MONSTER Marks, BEAST Marks, or MONSTER Trade Dress, and/or any confusingly similar marks or trade dress;

c.     filing any applications for registration of any trademarks, trade dress, or designs confusingly similar to the MONSTER Marks, BEAST Marks, or MONSTER Trade Dress;

d.     otherwise infringing any of the MONSTER Marks, BEAST Marks, or any of Monster's other trademarks, or Monster's MONSTER Trade Dress;

e.     falsely designating the origin of Defendant's products;

f.     unfairly competing with Monster in any manner whatsoever; and

g.    causing a likelihood of confusion or injury to Monster's business reputation;

7.    That Defendant be directed to file with this Court and serve on Monster within thirty (30) days after the service of the injunction, a report, in writing, under oath, setting forth in detail the manner and form in which it has complied with the injunction pursuant to 15 U.S.C. § 1116.

8.    That Defendant be required to account to Monster for any and all profits derived by Defendant and all damages sustained by Monster by virtue of Defendant's acts complained of herein;

9.    That Defendant be ordered to pay over to Monster all damages which Monster has sustained as a consequence of the acts complained of herein, subject to proof at trial, together with prejudgment and post-judgment interest;

10.    That this case be deemed exceptional and the amount of the damages be trebled and that the amount of profits be increased by as many times as the Court deems appropriate, pursuant to 15 U.S.C. § 1117;

11.    That Monster be awarded exemplary damages from Defendant pursuant to Cal. Civ. Code. § 3294;

12.    That Defendant's actions be deemed willful;

13.    That an award of reasonable costs, expenses, and attorneys' fees be awarded to Monster pursuant to at least 15 U.S.C. § 1117;

14.    That Defendant be required to deliver and destroy all devices, literature, advertising, goods and other unauthorized materials bearing the MONSTER MOBILE, MONSTER, , or FEED THE BEAST marks, any of the MONSTER Marks or BEAST Marks, or any confusingly similar marks, pursuant to 15 U.S.C. § 1118;

15.    That Monster be awarded restitution and disgorgement; and

16.     That Monster be awarded such other and further relief as this Court may deem just.

Respectfully submitted,

KNOBBE, MARTENS, OLSON & BEAR, LLP

Dated:  March 22, 2017          By:  */s/ Lynda J. Zadra-Symes*
                                     Steven J. Nataupsky
                                     Lynda J. Zadra-Symes
                                     Jason A. Champion
                                     Julianna M. Simon

                                     Attorneys for Plaintiff,
                                     MONSTER ENERGY COMPANY

## IX.  DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff Monster Energy Company hereby demands a trial by jury on all issues so triable.

Respectfully submitted,
KNOBBE, MARTENS, OLSON & BEAR, LLP


Dated:  March 22, 2017          By:  */s/ Lynda J. Zadra-Symes*
                                     Steven J. Nataupsky
                                     Lynda J. Zadra-Symes
                                     Jason A. Champion
                                     Julianna M. Simon

                                Attorneys for Plaintiff,
                                MONSTER ENERGY COMPANY

25505485

-53-