JEFFREY S. STANDLEY (OH # 0047248)
jstandley@standleyllp.com
MELISSA A. ROGERS MCCURDY (OH #0084102)
mmccurdy@standleyllp.com
F. MICHAEL SPEED, JR. (OH #0067541)
mspeed@standleyllp.com
Standley Law Group LLP
6300 Riverside Drive
Dublin, Ohio 43017
Telephone: (614) 792-5555
Fax: (614) 792-5536

DOUGLAS C. SMITH (SBN 160013)
dsmith@smitlaw.com
SMITH LAW OFFICES, LLP
4204 Riverwalk Parkway, Suite 250
Riverside, California 92505
Telephone: (951)509-1355
Facsimile: (951)509-1356
Attorneys for Defendant
Integrated Supply Network, LLC

IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MONSTER ENERGY COMPANY, a Delaware corporation,<br><br>Plaintiff,<br><br>v.<br><br>INTEGRATED SUPPLY NETWORK, LLC, a Florida limited liability company,<br><br>Defendant. | Case No. 5:17-CV-00548-CBM-(RAO)<br><br>**DEFENDANT INTEGRATED SUPPLY NETWORK, LLC'S NOTICE OF MOTION AND MOTION *IN LIMINE* TO EXCLUDE THE EXPERT REPORT OF DR. BRUCE ISAACSON**<br><br>Honorable Consuelo B. Marshall<br><br>Date:          April 17, 2018<br>Time:          10:00 a.m.<br>Location:      Courtroom 8B |

**1**

## NOTICE OF MOTION

PLEASE TAKE NOTICE THAT pursuant to Federal Rule of Evidence 702, Defendant Integrated Supply Network, LLC ("ISN") hereby moves this Court for an order excluding the expert report of Dr. Bruce Isaacson.

This motion is made following a Local Rule 7-3 pre-filing conference of counsel held on March 9, 2018.

This motion is noticed to be heard on Tuesday, April 17, 2018, at 10:00 a.m. in Courtroom 8B, First Street Courthouse, 350 W. 1st Street, Los Angeles, California 90012, or as early as possible thereafter.

## MOTION *IN LIMINE*

Now comes Defendant Integrated Supply Network, LLC ("ISN") and files this *Daubert* Motion *In Limine* respectfully moving this Court to exclude the expert report of Dr. Bruce Isaacson regarding a survey conducted as to an alleged connection between ISN's tool products and Monster Energy Company ("MEC") as detailed in the attached Memorandum in Support and Points of Authority (the "Memorandum"). The grounds for this motion are presented in the attached Memorandum.

Dated:  March 20, 2018          By: /s/ F. Michael Speed, Jr.
                                        JEFFREY S. STANDLEY

**2**

(OH# 047248)
jstandley@standleyllp.com
MELISSA A. ROGERS MCCURDY
(OH #0084102)
mmccurdy@standleyllp.com
F. MICHAEL SPEED, JR.
(OH #0067541)
mspeed@standleyllp.com
DOUGLAS C. SMITH
(SBN 160013)
 dsmith@smitlaw.com

Attorneys for Defendant

**3**

## MEMORANDUM IN SUPPORT AND POINTS OF AUTHORITIES

### I.  Factual Background

Plaintiff Monster Energy Company ("MEC") brought suit against Defendant Integrated Supply Network, LLC ("ISN") alleging, *inter alia*, trademark and trade dress infringement.  *See generally* Dkt. No. 1.  In attempt to establish a likelihood of confusion between ISN's use of its MONSTER MOBILE mark for tools, and MEC's use of the MONSTER ENERGY plus M-claw design mark for beverages, MEC offered the expert report of Dr. Bruce Isaacson who performed a survey purportedly assessing whether there was a likelihood of confusion.  As will be demonstrated herein, Dr. Isaacson's report is fundamentally flawed in several regards and should therefore be excluded.

### II.  Applicable Legal Standard

Federal Rule of Evidence 702 permits expert testimony from "[a] witness who is qualified as an expert by knowledge, skill, experience, training, or education," if:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. A court's "gatekeeping" obligation is to admit only expert testimony that is both reliable and relevant.  *Active Sports Lifestyle USA LLC v. Old*

**1**

*Navy, LLC,* No. SACV 12-00572 JVS (Ex), 2013 U.S. Dist. LEXIS 190005, at *29 (C.D. Cal. Nov. 21, 2013).  This role is especially important "considering the aura of authority experts often exude, which can lead juries to give more weight to their testimony." *Id.* (quoting *Mukhtar v. Cal. State Univ.,* 299 F.3d 1053, 1063-64 (9th Cir. 2002)).

The *Daubert* opinion gives a non-exhaustive list of factors for determining whether expert testimony is sufficiently reliable to be admitted into evidence, including: "(1) whether the scientific theory or technique can be (and has been) tested; (2) whether the theory or technique has been subjected to peer review and publication; (3) whether there is a known or potential error rate; and (4) whether the theory or technique is generally accepted in the relevant scientific community." *Domingo ex rel. Domingo v. T.K.,* 289 F.3d 600, 605 (9th Cir. 2002)(citing *Daubert v. Merrell Dow Pharm., Inc.,* 509 U.S. 579, 113 S. Ct. 2786 (1993).  Not all factors need be considered in each case, and some cases may use factors entirely different from those listed above.  *Active Sports Lifestyle,* 2013 U.S. Dist. LEXIS at *30-32; *Kumho Tire Co. v. Carmichael,* 526 U.S. 137, 141 (1999)("*Daubert's* list of specific factors neither necessarily nor exclusively applies to all experts or in every case.") The trial court has "broad latitude" in deciding how to determine the reliability of an expert's testimony and whether the testimony is in fact reliable. *Id.* at *31 (quoting *Mukhtar,* 299 F.3d at 1064).

**2**

III.    Argument

Courts have excluded trademark likelihood of confusion surveys deemed to be "devoid of any probative value and therefore irrelevant." *Water Pik, Inc. v. Med-Systems, Inc.,* 726 F.3d 1136, 1145 (10th Cir. 2013)(quoting order from lower district court opinion).  Such exclusions have occurred when the survey in question has several serious methodical flaws.  *E.g.*, *Reinsdorf v. Skechers U.S.A.,* 922 F. Supp. 2d 866, 877-79 (C.D. Cal. 2013).  More specifically, the *Reinsdorf* case excluded the report of a trademark survey expert where the survey population was skewed, the selected samples were not representative of the universe, the questions presented were improper, and the controls used were not adequate.  *See id.*  When applying the *Daubert* standard to trademark surveys, courts have held that the trustworthiness of a survey depends on foundation evidence that: 1) the universe was properly defined; 2) a representative sample of that universe was selected; 3) the questions to be asked of interviewees were framed in a clear, precise, and non-leading manner; 4) sound interview procedures were followed by competent interviewers who had no knowledge of the litigation or the purpose for which the survey was conducted; 5) the data gathered was accurately reported; 6) the data gathered was analyzed in accordance with accepted statistical principles; and 7) objectivity of the entire process was assured.  *Death Tobacco, Inc. v. Black Death USA*, No. CV 92-6437-WMB, 1993 U.S. Dist. LEXIS 20646, at *24 (C.D. Cal. June

30, 1993)(citing *Toys R Us, Inc. v. Canarsie Kiddie Shop, Inc.,* 559 F. Supp. 1189, 1205 (E.D.N.Y. 1983)); *Hodgdon Powder Co. v. Alliant Techsystems, Inc.*, 512 F.Supp.2d 1178, 1181 (D. Kan. 2007). At least items 1-3 and 6 are lacking here, and similar to the *Reinsdorf* case, Dr. Isaacson's report should therefore be excluded.

As to the first factor, the universe was not properly selected here. Selection of the proper universe is considered to be one of the most important factors in assessing the validity of a survey. *Bank of Utah v. Commercial Security Bank*, 369 F.2d 19, 27 (10th Cir. 1966). Indeed, a "survey is inadmissible when the sample is clearly not representative of the universe it is intended to reflect." *Id.* Here, Dr. Isaacson's survey did not collect any information regarding the age of any respondent (other than they are 18 or over). *See* Expert Report of Dr. Bruce Isaacson dated February 21, 2018 at pg. 12, a true and accurate copy of which is attached hereto as Exhibit A. This leaves open the possibility that the sample is severely skewed towards MEC's key demographic of younger people. Such demographic skewing of a survey population has been found to be a foundation for inadmissibility. *E.g., Water Pik, Inc.*, 726 F.3d at 1145 (population skewed by age); *Reinsdorf*, 922 F. Supp. at 877-79 (population not representative by gender). Given this lack of information, there is no way to validate that the sample is representative or that the results can be projected to the actual universe of purchasers. This leaves

**4**

the finder of fact without the proper context to evaluate the survey results, and likewise leaves ISN without the information it needs to appropriately cross examine Dr. Isaacson on this ground.

As to the second factor, the sample selected by Dr. Isaacson is not representative of the universe.  A survey, at its core, "…must attempt to replicate the thought process of consumers encountering the disputed mark… as they would in the marketplace." *Simon Property Group, L.P. v. mySimon, Inc.*, 104 F. Supp. 2d 1033, 1038 (S.D.Ind. 2000); *1-800 Contacts, Inc. v. Lens.com, Inc.*, 2010 WL 5186393 at *6 (D. Utah Dec. 15, 2010);  *E. & J. Gallo Winery v. Gallo Nero,* 782 F. Supp. 457, 463 (N.D. Cal. 1991)("even if the subject marks are identical, 'their similarity must be considered in light of the way the marks are encountered in the marketplace and the circumstances surrounding their purchase.'")(citing *Lindy Pen Co. v. Bic Pen Corp.*, 725 F.2d 1240, 1245 (9th Cir. 1984), cert. denied, 469 U.S. 1188, 83 L. Ed. 2d 962, 105 S. Ct. 955 (1985)).  Here, Dr. Isaacson's report utterly fails to simulate realistic marketplace conditions under which individuals at auto service or repair shops would encounter and consider purchasing ISN's products.

ISN's products are sold to auto service or repair shops through mobile tool trucks/distributors.  A typical prospective customer of ISN's products would be exposed to ISN's products through a mobile tool distributor and would be presented with a wealth of context that heavily emphasizes the automotive tool/equipment

**5**

focus of the product being offered – including, in many cases, ISN's own federally registered trademark.  No such context, or even an attempt at such context, was given here.  Instead, Dr. Isaacson's survey merely showed each respondent a single image of a single product in the abstract – as if the product could be a random promotional item rather than a product that is obviously from a brand specializing in tools and equipment designed for automotive technicians.  *See e.g.,* Ex. A at pg. 1-2.

Additionally, the survey did not inform respondents that the product is sold by a mobile tool truck distributor, and did not provide any other information, materials, or imagery that could simulative the relevant context of a purchase from such an automotive tool truck.  *See e.g.*, *id.*  Indeed, in most cases, the survey did not even show the packaging or the entire product.  *Id.*  Accordingly, the survey entirely fails to test whether real consumers would make a mistaken connection to MEC under realistic marketplace conditions.  As such, the sample selected by Dr. Isaacson is not representative of the actual universe.

Furthermore, Dr. Isaacson's survey selected three items for the survey which are not representative of ISN products, both due to the nature of the product and the way the name MONSTER and various colors are used on the product.  *See id.*  As to the nature of the product, ISN sells specialized automotive tools to a knowledgeable and specialized audience of auto mechanics.  Dr. Isaacson's survey

instead cherry-picked three unrepresentative products made to appear more as promotional items than the specialized tool products that form the core of ISN's business and brand.  As to how the name MONSTER is presented, only one of the three items selected was shown in its packaging.  *See id.*  That sample was also the only one which showed the MONSTER MOBILE stylized mark.  *See id.*  The other two marks simply present a stylized MONSTER mark without any other words, skull and wings styling elements, or other context which would have been presented if the mark were shown in their proper environment.  *See id.*

As to the third factor, the questions presented in Dr. Isaacson's survey were framed in a leading manner by interjecting bias into the survey.  Indeed, the key screening question (F), which asks respondents which items they would purchase, included a list of tools and automotive products along with the choice of "drink or beverage tumbler."  *Id.* at Ex. 4.  This puts the idea of drinks/beverages in the respondent's mind immediately before being asked about the ISN product.  This also draws a connection between tools and a drink/beverage product, priming the respondent to think of drinks and beverage companies in association with tools.  The next screening question (G) also mentions a manufacturer or distributor of "drinkware."  *Id.*  Thus, this survey twice mentions the term "drink" or "beverage" shortly before showing the ISN product and asking questions to see if respondents would name MEC or a drink/beverage company.  This is particularly problematic

**7**

in the case of the screwdriver and light.  There is simply no justification for the concept of "drink" or "beverage" to be put in the respondent's mind before asking about a work tool.  Even in the case of the tumbler, the mention of a "manufacturer or distributor of drinkware" is improperly suggestive.  This is not an accurate characterization of ISN's business and improperly primes respondents with the notion of a drink or beverage company when being shown an ISN product.  As such, the questions presented to respondents were framed in a leading manner.

As to the sixth factor, the data gathered by Dr. Isaacson was not analyzed in accordance with accepted statistical principles.  Dr. Isaacson's controls consisted of replacing the term "Monster" with "Mountain" and replacing the colors green and black with blue and purple.  *Id.* at pg. 1-3.  This approach significantly limits the ability to account for survey "noise" that is implicit in such situations.

For example, surveys are known to create "demand effects."  A demand effect is essentially where the artificial context of a survey causes respondents to speculate or search for an answer rather than give the kind of unbiased response that would occur in real marketplace conditions.  For example, in a real marketplace there would be no "interviewer" prompting respondents to think about the topics being asked in the survey.  As these demand effects are present in essentially every survey, by the very nature of a survey, it is important to control for such demand effects.  Something Dr. Isaacson's survey fails to do.

**8**

When considering all three products in total only 4.3% of respondents named MEC in the first of three questions asking about what company or brand makes or puts out the relevant product. *Id.* at pg. 5. In particular, the result of the screwdriver was a mere 1.0%. *Id.* at pg. 30. Most of the purported "confusion" did not occur until after respondents were asked a second and third time about what company or brand makes or puts out the relevant product. Even so, the combined rate of naming MEC was still only 10.6% and 13% for the screwdriver and light, respectively, until a third and final question was asked. *Id.* at Ex. 10. The concern for demand effects in such a scenario are strong. Respondents are shown a product that says "Monster" and then are repeatedly asked about its source or sponsor. This raises the concern that respondents will eventually catch on to the notion that the survey is looking for an answer and the respondents will try to think about what the answer might be, leading them to come up with "monster" – a conclusion they would not have reached without the artificial context of survey.

Such demand effects are common and can be controlled for. However, Dr. Isaacson fails to do so. By substituting the term "Monster" with "Mountain" as well as altering the colors green and black with blue and purple, the ability to effectively evaluate and control for the tendency of individuals to guess MEC due to superficial similarity can no longer be considered. For example, the control term "Mountain" is a poor choice. A more effective control would be a term like

**9**

"Mammoth", "Giant", or "Ogre".  Something which could test the tendency of respondents to guess MEC by association with something monstrous or beast-like. Indeed, the changes made to the control products were so drastic that no respondent would ever answer MEC – leading to Dr. Isaacson's self-serving conclusion that the survey noise here is 0%.  *See id.* at pg. 4, 17, 18.

Significantly, Dr. Isaacson's survey did nothing to account for other, third party uses of "Monster" such as Monster Cable, Ducati Monster Motorbikes, and even other tool and equipment brands.  It would have been very valuable for Dr. Isaacson's survey to have a control with the word "Monster" and one of these co-existing products.  Doing so would test the respondent's tendency to guess MEC under the demand effects of the survey environment, despite the fact that such products actually co-exist in the real world.  The lack of effective controls here leads to a completely speculative and unsubstantiated result.  In light of the foregoing, Dr. Isaacson's survey was not analyzed in accordance with accepted statistical principles.

IV.    Conclusion

Dr. Isaacson's survey fails to properly define the universe, select a representative sample of that universe, ask questions in a non-leading manner, and analyze the data in accordance with accepted statistical principles.  Therefore, ISN respectfully moves this Court to exclude Dr. Isaacson's report.

**10**

1

2  Dated:   March 20, 2018                    By: /s/ F. Michael Speed, Jr.
3                                                 JEFFREY S. STANDLEY
                                                  (OH# 047248)
4                                                 jstandley@standleyllp.com
                                                  MELISSA A. ROGERS MCCURDY
5                                                 (OH #0084102)
6                                                 mmccurdy@standleyllp.com
                                                  F. MICHAEL SPEED, JR.
7                                                 (OH #0067541)
8                                                 mspeed@standleyllp.com
                                                  DOUGLAS C. SMITH
9                                                 (SBN 160013)
10                                                dsmith@smitlaw.com

11                                                Attorneys for Defendant
12                                                Integrated Supply Network, LLC

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28
                                    **11**