JEFFREY S. STANDLEY (OH # 0047248)
jstandley@standleyllp.com
MELISSA A. ROGERS MCCURDY (OH #0084102)
mmccurdy@standleyllp.com
F. MICHAEL SPEED, JR. (OH #0067541)
mspeed@standleyllp.com
Standley Law Group LLP
6300 Riverside Drive
Dublin, Ohio 43017
Telephone: (614) 792-5555
Fax: (614) 792-5536

DOUGLAS C. SMITH (SBN 160013)
dsmith@smitlaw.com
SMITH LAW OFFICES, LLP
4204 Riverwalk Parkway, Suite 250
Riverside, California 92505
Telephone: (951)509-1355
Facsimile: (951)509-1356
Attorneys for Defendant
Integrated Supply Network, LLC

IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA

MONSTER ENERGY COMPANY, a Delaware corporation,

Plaintiff,

v.

INTEGRATED SUPPLY NETWORK, LLC, a Florida limited liability company,

Defendant.

Case No. 5:17-CV-00548-CBM-(RAO)

**DECLARATION OF HAL PORET**

Honorable Consuelo B. Marshall

Date: April 17, 2018
Time: 10:00 a.m.
Location: Courtroom 8B

**DECLARATION OF HAL PORET**

I, Hal Poret, declare as follows:

1. I have personal knowledge of the matters set forth herein, and if I am called upon to testify, I could testify competently thereto.

2. I am the President of Hal Poret LLC.

3. I have personally designed, supervised, and implemented over 1,000 surveys regarding the perceptions, behaviors, and opinions of consumers, over 300 of which have concerned trademarks or trade dress.

4. I have personally designed numerous studies that have been admitted as evidence in legal proceedings and I have been accepted as an expert in survey research on numerous occasions by U.S. District Courts, the Trademark Trial and Appeal Board, the FTC, and the National Advertising Division of the Council of Better Business Bureaus (NAD).

5. I am a member of the American Association of Public Opinion Research, publisher of Public Opinion Quarterly and the Journal of Survey Statistics and Methodology, the International Trademark Association, and the National Advertising Division of the Council of Better Business Bureaus (NAD).

6. I routinely conduct market research surveys for a variety of small to large corporations and organizations.

7. I have frequently spoken at major intellectual property and legal conferences on the topic of how to design and conduct surveys that meet legal evidentiary standards for reliability, including conferences held by the International Trademark Association (INTA), American Intellectual Property Law Association, Practicing Law Institute, Managing Intellectual Property, Promotions Marketing Association, American Conference Institute, and various bar organizations.

8. I hold bachelor's and master's degrees in mathematics and a J.D. from Harvard Law School. Additional biographical material, including lists of testimony and publications, is provided in my attached Rebuttal Expert Report and the Appendix attached thereto.

9. I have been retained by Standley Law Group LLP, counsel for Integrated Supply Network LLC, to review and provide opinions regarding a Report and Survey prepared by Dr. Bruce Isaacson (hereinafter "the Isaacson Report") for Monster Energy Company in conjunction with the above-captioned matter.

10. A true and accurate copy of the Isaacson Report, as provided to me, is attached to this Declaration as Exhibit 1.

11. Dr. Isaacson's survey purports to have measured the likelihood of confusion between certain MONSTER MOBILE products of ISN and Monster Energy Company.

12. The Isaacson Report details Dr. Isaacson's survey methodology and Dr. Isaacson's corresponding conclusions regarding a likelihood of confusion.

13. In conjunction with my analysis of Dr. Isaacson's survey, the Isaacson Report, and other relevant materials, I prepared the Rebuttal Report which is hereby attached to this declaration as Exhibit 2 (hereinafter "Rebuttal Report").

14. I understand that my Rebuttal Report is being served on counsel for Monster Energy Company pursuant to the scheduling order that has been entered in this case and Federal Rule of Civil Procedure 26(a)(2).

15. I hereby incorporate fully herein by reference my Rebuttal Report and the Appendix attached thereto.

16. My Rebuttal Report contains, among other things, a true and accurate summary of my qualifications and my analysis and a disclosure of my opinions on Dr. Isaacson's survey and the Isaacson Report.

17. As discussed in my Rebuttal Report, Dr. Isaacson's survey and the corresponding Isaacson Report are fatally flawed and not reliable as an indicator of likelihood of confusion.

18. While there are several important flaws in Dr. Isaacson's survey, I believe that one severe flaw alone renders the results of Dr. Isaacson's survey and his conclusions unreliable.

19. Specifically, Dr. Isaacson's survey failed to simulate realistic marketplace conditions under which individuals at auto service or repair shops would encounter and consider purchase of the ISN products. As Dr. Isaacson notes, the ISN products are sold to auto service or repair shops through mobile tool trucks/distributors. Accordingly, a typical prospective customer of ISN products would be exposed to the products through a mobile tool distributor from a company such as Snap-On or through an independent distributor, and would be presented with a wealth of context that heavily emphasizes the automotive tool/equipment focus of the product line being offered. A prospective end customer of the ISN products would clearly understand that they are dealing with a mobile tool/equipment distributor who deals with auto professionals and that the context of the situation is focused on automotive tools and equipment. They would likely see a large assortment of Monster Mobile tools (including packaging) and may also see an assortment of tools from other automotive tool brands. They may also be shown catalogs or other materials showing the wide array of automotive tool products from the Monster Mobile brand and/or other

brands of automotive tools and equipment. All of this context would have a strong bearing on whether the prospective customer perceives the products to be connected to an energy drink company (Monster Energy), as opposed to an unrelated company that produces automotive tool products under its own brand (Monster Mobile). The Isaacson Survey did nothing to simulate any such context. It merely showed each respondent a single image of a single product in the abstract, as if the product could be a random promotional item rather than a product that is obviously from a brand specializing in tools and equipment designed for automotive technicians. The survey did not inform respondents that the product is sold by a mobile tool truck distributor, did not provide any other information, materials or imagery that could simulate the relevant context of a purchase from an automotive tool truck, and in most cases did not even show the packaging and/or the entire product. Accordingly, the survey entirely fails to test whether real consumers would make a mistaken connection to Monster Energy under realistic marketplace conditions – i.e., a context where the prospective purchaser would be heavily focused on the topic of automotive tools and would certainly realize that the products come from a source with a specialty in tools and equipment for automotive technicians and could not possibly think they are looking at a random promotional item that has had the name "Monster" placed on it.

20. This and the other important flaws with Dr. Isaacson's survey and the Isaacson Report are fully detailed in my Rebuttal Report.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed this 19th day of March, 2018 in Sleepy Hollow, New York.

Hal Poret

Hal Poret