JEFFREY S. STANDLEY (OH #0047248)
jstandley@standleyllp.com
MELISSA A. ROGERS MCCURDY (OH #0084102)
mmccurdy@standleyllp.com
F. MICHAEL SPEED, JR. (OH #0067541)
mspeed@standleyllp.com
Standley Law Group LLP
6300 Riverside Drive
Dublin, Ohio 43017
Telephone: (614) 792-5555
Fax: (614) 792-5536

DOUGLAS C. SMITH (SBN 160013)
dsmith@smitlaw.com
SMITH LAW OFFICES, LLP
4204 Riverwalk Parkway, Suite 250
Riverside, California 92505
Telephone: (951)509-1355
Facsimile: (951)509-1356
Attorneys for Defendant
Integrated Supply Network, LLC

IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MONSTER ENERGY COMPANY, a Delaware corporation,<br><br>Plaintiff,<br><br>v.<br><br>INTEGRATED SUPPLY NETWORK, LLC, a Florida limited liability company,<br><br>Defendant. | Case No. 5:17-CV-00548-CBM-(RAO)<br><br>**DEFENDANT INTEGRATED SUPPLY NETWORK, LLC'S MEMORANDUM IN OPPOSITION TO PLAINTIFF MONSTER ENERGY COMPANY'S MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>Honorable Consuelo B. Marshall<br><br>Date:  April 17, 2018<br>Time:  10:00 a.m.<br>Location:  Courtroom 8B |

i

# TABLE OF CONTENTS

I.   Introduction ....................................................................1

II.  Factual Background .........................................................4

III. Applicable Legal Standard...............................................5

IV.  Argument.........................................................................6

   a. ISN's Second Affirmative Defense Cannot be Stricken in Light of MEC's Attempt to Enforce Trademark Rights that it does not Have against Goods that are Unrelated to those sold by MEC...............................................6

   b. ISN's Second Affirmative Defense Cannot be Stricken because there is at least a Triable Issue of Fact as to Whether Many of MEC's Asserted Registration are Invalid and Unenforceable...............................................10

      i.   Incontestable Registrations................................10

      ii.  ISN has evidence from which a jury could reasonably find that many of the asserted marks are merely descriptive............................10

      iii. MEC has Not Provided Proof of Secondary Meaning.......12

   c. MEC has not Used the '433 and '432 Registrations in conjunction with the Services Recited Therein ...........................14

   d. There is at least a Triable Issue of Fact as to ISN's Trademark Misuse Defense ...........................16

   e. There is at least a Triable Issue of Fact as to ISN's Defense of Unclean Hands...............................18

   f. MEC's Motion for Summary Judgment Should be Denied as to ISN's Cancellation Counterclaim

against the '432 Registration ........................................................19

    g.  The So-Called Socialbakers Report is Inadmissible

and Cannot be Considered ........................................................20

V.    Conclusion ........................................................21

## <u>Table of Authorities</u>

### Federal Cases

*AMF, Inc. v. Sleekcraft Boats,*
    599 F.2d 341 (9th Cir. 1979)........................................................ 10, 11,13

*Brookfield Communs., Inc. v. W. Coast Entm't Corp.*,
    174 F.3d 1036 (9th Cir. 1999)................................................13

*Brookside Assocs. v. Rifkin*,
    49 F.3d 490 (9th Cir. 1995)....................................................6

*Carter-Wallace, Inc. v. Procter & Gamble Co.*,
    434 F.2d 794 (9th Cir. 1970)................................................12

*Chrysler Corp. v. Vanzant*,
    44 F. Supp. 2d 1062 (C.D. Cal. Apr. 6, 1999) .................................. 9

*Coca-Cola Co. v. Koke Co.*,
    254 U.S. 143 (1920) ...............................................................18

*Cunningham v. Laser Golf Corp.*,
    222 F.3d 943 (Fed. Cir. 2000)................................................19

*Estee Lauder, Inc. v. Fragrance Counter, Inc.*,
    189 F.R.D. 269 (S.D.N.Y. Sep. 24, 1999) .............................17

*Gateway, Inc. v. Companion Prods.*,
    320 F. Supp. 2d 912 (D.S.D. Sep. 27, 2002)...........................17

*Hansen Bev. Co. v. Cytosport, Inc,*
    No. CV 09-0031-VBF(AGRx), 2009 U.S. Dist. LEXIS 120508
    (C.D. Cal. Nov. 4, 2009) ........................................................19

*Juno Online Servs. v. Juno Lighting, Inc.*,
    979 F. Supp. 684 (N.D. Ill. Sep. 29, 1997) .............................17

iv

*Kleven v. Hereford,*
    No. CV 13-02783-AB (AGRx), 2015 U.S. Dist. LEXIS 111185
    (C.D. Cal. Aug. 21, 2015) ............................................................... 19

*Lipton Indus. v. Ralston Purina Co.,*
    670 F.2d 1024 (C.C.P.A. 1982) ..................................................... 19

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,*
    475 U.S. 574 (1986) ........................................................................ 6

*the Phi Delta Theta Fraternity v. J. A. Buchroeder & Co.,*
    251 F. Supp. 968 (W.D. Mo. Mar. 10, 1966) ............................... 17

*Perfumania, Inc. v. Perfumay, Inc.,*
    CA No. 93-56500, 1994 U.S. App. LEXIS 11235
    (9th Cir. May 3, 1994) .................................................................. 12

*Precision Co. v. Automotive Co.,*
    324 U.S. 806 (1945) ...................................................................... 18

*Quicksilver, Inc. v. Kymsta Corp.,*
    466 F.3d 749 (9th Cir. 2006) ....................................................... 11

*Roxbury Entm't v. Penthouse Media Grp., Inc.,*
    669 F. Supp. 2d 1170 (C.D. Cal. Nov. 9, 2009) ............................ 6

*Self-Insurance Inst. of Am., Inc. v. Software & Info. Indus. Ass'n,*
    208 F. Supp. 2d 1058 (C.D. Cal. Apr. 27, 2000) ...................... 6, 9

*Star-Kist Foods, Inc. v. P.J. Rhodes & Co.,*
    735 F.2d 346 (9th Cir. 1984) ................................................... 19, 20

*Treager v. Gordon-Allen,*
    71 F.2d 766 (9th Cir. 1934) ............................................................ 9

*T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Asso.,*
    809 F.2d 626 (9th Cir. 1987) .......................................................... 6

*United States Jaycees v. S.F. Junior Chamber of Commerce*,

    354 F. Supp. 61 (N.D. Cal. Aug. 9, 1972) ...............................................18

*Washington Capitols Basketball Club, Inc. v. Barry*,

    419 F.2d 472 (9th Cir. 1969)......................................................................18

### Federal Statutes

15 U.S.C. § 1051 ........................................................................................14

15 U.S.C. § 1052 ........................................................................................14

15 U.S.C. § 1053 ........................................................................................14

15 U.S.C. § 1127 ........................................................................................14

### Federal Rules

Fed. R. Civ. P. 56(c) ....................................................................................6

Fed. R. Civ. P. 56(c)(2) .............................................................................21

Fed. R. Civ. P. 56(e)(1) ...............................................................................6

Fed. R. Evid. 901(a) ...................................................................................21

Fed. R. Evid. 801(c) ...................................................................................21

Fed. R. Evid. 802………………………………………………………….21

### Other Authorities

Trademark Manual of Examining Procedure § 1301.01 ..................................14

Trademark Manual of Examining Procedure § 1301.01(a).........................14, 15

Trademark Manual of Examining Procedure § 1301.01(a)(ii).........................15

## MEMORANDUM IN OPPOSITION AND POINTS OF AUTHORITIES

### I.    Introduction

In its motion for partial summary judgment, MEC attempts to "sweep under the rug" certain of its statements to the PTO, its long record of serial opposition filings, and the descriptive nature of its marks.  ISN asserts several valid affirmative defenses in this case and seeks the cancellation of two of MEC's registrations at least because MEC has not actually offered the services recited therein in commerce.

MEC's word marks are descriptive.   The dictionary-defined terms of "monster" and "beast" are only used with other terms that are descriptive of MEC's claimed goods and services.  As such, MEC is required to set forth evidence of secondary meaning, which it has failed to do.  MEC makes much of its advertising expenditures, but MEC's efforts must go beyond merely spending money.  Instead, MEC must show that its expenditures had the desired effect of creating a secondary meaning in the mind of consumers.

Additionally, ISN seeks the cancellation of two of MEC's registrations: U.S. Registration Nos. 4,721,433 and 4,721,432 (hereinafter referred to as the '433 and '432 Registrations respectively).  MEC has obtained these registrations for the promotion of various events such as motorsports and music, however MEC is not a "promoter."  Instead, MEC is a sponsor.  That is, MEC spends advertising dollars

**1**

to "promote" its own brand at certain events. MEC refers to third parties – not itself – as the "actual promoters" of events.  MEC has never organized a concert or a racing event.  MEC provides a sponsorship of dollars in exchange for being allowed to advertise at the event. Every dollar of "sponsorship" MEC spends at a race or at a concert or any other event, has one primary objective – to increase brand awareness to in turn sell more of MEC's beverages.

Just consider MEC's total revenues and the source from which those revenues arise.  There is no accounting line entry for concert ticket sales, because they have none.  There is no accounting line entry for racing ticket sales because they have none.  MEC is a beverage company and their revenues are derived almost entirely from beverages.  The tiny fraction of their revenues not derived from beverage sales is attributable to promotional items like t-shirts bearing their brand, and a few other promotional items.  Accordingly, it cannot be said that anyone other than MEC is a primary beneficiary of any of the services recited by the aforementioned registrations as is required for the registrations to be valid.

Then there is the issue of trademark misuse.  Even if the Ninth Circuit has not yet cancelled a trademark based on an affirmative claim of trademark misuse, a serial filer and trademark abuser like MEC has not been seen before.  The courts have left open the possibility of cancelling trademarks based on an affirmative claim of misuse, and ISN submits that this is the case to do so.

**2**

With regards to MEC's contention that ISN's claim for cancellation of the '432 Registration cannot proceed, this registration is for the claw design. While MEC has not asserted this particular registration in this case, MEC has generally placed its claw design marks at issue by asserting nine trademark registrations comprising the claw design.

ISN's unclean hands defense should also be permitted. MEC made public statements to the PTO that the field of MONSTER marks is crowded and that multiple such marks should be permitted to co-exist. MEC cannot now ignore its own inconvenient statements. Indeed, other Central District of California courts have found these statements to be worth consideration. Further, MEC is a serial filer in courts and before the trademark office. For example, MEC has been recognized by Trademarkia as the biggest trademark bully since 2012. MEC has been the number one filer of actions before the Trademark Trial and Appeal Board for the last seven years. MEC clearly knows that its rights in "monster" should be limited based on its prior statements, but now that it has obtained its own registrations, MEC asks that the realities be ignored. ISN should be permitted to pursue its affirmative defense of unclean hands.

Finally, in support of its Motion for Summary Judgment, MEC has relied upon an alleged Socialbakers Report, that is inadmissible. The Document and its purported showings should not be considered by the Court.

**3**

As will be explained in greater detail here, for these and other reasons, MEC's motion for partial summary judgment should be denied.

## II.     Factual Background

ISN is a Florida based company who developed its MONSTER MOBILE brand around 2010 when it recognized a need in its product offerings for a mobile dealer exclusive line of automotive tools.   ISN's Statement of Additional Undisputed Facts ("ISN SUF") 1 – 7.  These mobile dealers come in the form of tool trucks, which are driven by tool professionals to auto repair garages to sell tools on site to garage managers and technicians. *See id.*, *see also* ISN SUF 18 – 19.

ISN was inspired by the historic green and black monsters such as Frankenstein and selected the term "monster" to capture the bold, dynamic, strong image that ISN wanted its MONSTER MOBILE brand to portray.  ISN SUF 9 – 16.  Following in house searches and discussions with outside trademark counsel, ISN settled on the following logo:



(hereinafter the "MONSTER MOBILE Logo").  *Id.*  ISN was granted a registration for the MONSTER MOBILE Logo under U.S. Reg. No. 4,951,671.  ISN SUF 17.

**4**

MEC, on the other hand, derives almost all of its revenue from the sale of energy drinks.  ISN SUF 26 – 30.  These energy drinks are sold primarily through grocery stores, gas stations, and convenience stores.  *Id.*  MEC asserts a number of trademark registrations comprising the term "MONSTER" with other descriptive terms (e.g., MONSTER ENERGY, JAVA MONSTER, PUNCH MONSTER), with or without the claw logo, such as:



ISN SUF 35 – 37.  MEC asserts a number of trademark registrations comprising the term "BEAST" with other descriptive terms (e.g., UNLEASH THE BEAST!, PUMP UP THE BEAST!).  ISN SUF 49.  Most of the asserted registrations are for beverages and nutritional supplements.  ISN SUF 37.  However, MEC has obtained the '433 and '432 Registrations, which are for the MONSTER ENERGY and

marks respectively and which both recite promoting various events and competitions for others, among other services.  ISN SUF 40, 41.

### III.   Applicable Legal Standard

Summary judgment is only proper where "the pleadings, depositions,

**5**

answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Self-Insurance Inst. of Am., Inc. v. Software & Info. Indus. Ass'n,* 208 F. Supp. 2d 1058, 1061 (C.D. Cal. Apr. 27, 2000) (quoting Fed. R. Civ. P. 56(c)); *see also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574 (1986). At the summary judgment stage, the court does not "make credibility determinations or weigh conflicting evidence," though the evidence considered must be admissible. Fed. R. Civ. P. 56(e)(1); *Roxbury Entm't v. Penthouse Media Grp., Inc.,* 669 F. Supp. 2d 1170, 1174 (C.D. Cal. Nov. 9, 2009). Instead, the court must draw "all reasonable inferences in the light most favorable to the nonmoving party." *Id.* (citing *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Asso.*, 809 F.2d 626, 630-31 (9th Cir. 1987); *Brookside Assocs. v. Rifkin*, 49 F.3d 490, 492-93 (9th Cir. 1995)).

## IV.   Argument

### a.   ISN's Second Affirmative Defense Cannot be Stricken in Light of MEC's Attempt to Enforce Trademark Rights that it does not Have against Goods that are Unrelated to those sold by MEC

In its Statement of Uncontroverted Facts and Motion for Summary Judgment, MEC has misstated ISN's Second Affirmative Defense, which actually provides that MEC's "claims… are barred because the Plaintiff's purported trademark rights are invalid and/or unenforceable." ISN SUF 78.   Two of MEC's asserted

**6**

MONSTER ENERGY registrations are subject to cancellation and there is at least a question of fact as to the validity of many other asserted registrations.  But, ISN's Second Affirmative Defense also addresses MEC's claims to the extent they are an invalid attempt to assert trademark rights in "monster" on its own as well as an attempt to assert trademark registrations against goods which are not recited by any of MEC's trademark registrations.

With respect to the first issue, MEC does not use "monster" on its own and it has not asserted any trademark registrations for "monster" on its own in this case. ISN SUF 35 – 36, 46.  Nonetheless, MEC is clearly trying to assert trademark rights in "monster" that do not flow from MEC's actual trademark rights.  For example, in its Complaint, MEC refers to itself as simply "Monster", discusses the alleged "exposure and widespread recognition of [the] 'MONSTER' brand," and claims that its line of "MONSTER drinks has grown to include numerous… products, the containers and packaging of which are prominently marked with the MONSTER mark."  ISN SUF 43 – 47.  MEC then bases it claims for trademark infringement in this case on numerous trademark registrations, which MEC treats collectively and dubs the "MONSTER Marks."[1]  *Id.*

The foregoing representations and claims by MEC are calculated to obtain an

---

[1] MEC has done the same thing with various registrations that include the term "beast", which MEC dubs the "BEAST marks."

improper and invalid trademark right.  For example, MEC is not typically referred to as simply "Monster."  In annual 10k documents that are filed with the Securities and Exchange Commission, Monster Beverage Corporation refers to the "Monster Energy Drink Segment" and the "Monster Energy brand energy drinks."  ISN SUF 31.  Throughout the document, care is taken to refer to "Monster Energy" as opposed to simply "Monster."  *See id.*

Meanwhile, as established by ISN in conjunction with its Motion for Summary Judgment, commerce is replete with third parties using "monster" in connection with all types of goods and services.  ISN SUF 77; *see also* Dkt. No 89-1 at ¶¶ 157 – 243 and evidence cited therein.  Moreover, "monster" is a dictionary-defined term that is used in commerce descriptively to refer to something (not necessarily an animal[2]) that is large in size.  ISN SUF 63 – 64.  MEC does not have evidence to show that there is any secondary meaning that has been acquired in "monster." To the extent MEC is trying to assert a trademark interest in simply "monster" in this case, the purported trademark rights are invalid and unenforceable and accordingly ISN's second affirmative defense is well-founded.[3]

---

[2] In its Motion for Summary Judgment, MEC bizarrely argues that its marks are not descriptive of its goods because they aren't used in conjunction with an animal when the definition of "monster" is not so-limited.

[3] Indeed, MEC has not asserted a protectable interest in the terms MONSTER

**8**

Similarly, with respect to MEC's attempt to assert its trademark registrations in this case against ISN's automotive tool and equipment products, no such goods are recited by any of MEC's trademark registrations.  ISN SUF 37 – 38.   As explained by ISN in its Motion for Summary Judgment, under the Related Goods Rule, MEC has the burden of proving that the registered marks had acquired secondary meaning as of December of 2010 on the goods being sold by ISN under the MONSTER MOBILE mark.   Dkt. No. 89 at 16 – 17, which is hereby incorporated by reference.   A trade mark confers no right in gross or at large. *Treager v. Gordon-Allen*, 71 F.2d 766, 768 (9th Cir. 1934).  Instead, a mark is protectable only as to those goods or services for which its user has established in the minds of the public an association between it and the mark.  *Chrysler Corp. v. Vanzant*, 44 F.Supp.2d 1062, 1073 (C.D. Cal. Apr. 6, 1999).  When a trademark owner is asserting a registered mark against goods other than those that are recited by its registration, the "Related Goods" rule requires the trademark owner to prove that the asserted mark had acquired secondary meaning as to the accused goods as of the time the defendant commenced use.  *See id.*  ISN began selling the accused

_____

or BEAST by themselves, and therefore MEC cannot base its allegations on the same.  *Self-Ins. Inst. of Am., Inc.*, 208 F. Supp. 2d at 1075; *see generally* Compl.

**9**

products in December of 2010.  ISN SUF 18.  Almost all of the accused goods fall outside of the goods recited by the asserted registrations.  *See* ISN SUF 19, 23, 24, 25, 37, 38, 40.  Specifically, MEC does not have any registrations for automotive tools and equipment of the type being sold by ISN.  *Id.*  But, MEC does not have evidence that any of the asserted marks had acquired secondary meaning as to such goods as of December of 2010.   Accordingly, MEC's trademark rights are unenforceable against ISN's automotive tool and equipment products.  MEC is not entitled to summary judgment as to ISN's Second Affirmative Defense.

> **b. ISN's Second Affirmative Defense Cannot be Stricken because there is at least a Triable Issue of Fact as to Whether Many of MEC's Asserted Registrations are Invalid and Unenforceable**

Moreover, the facts show that there is a triable issue of fact regarding the validity and enforceability of many of the registrations that MEC is asserting in this case, precluding the Court from granting summary judgment.

> ### i.  Incontestable Registrations

ISN has not asserted that MEC's incontestable registrations are invalid.  Dkt. No. 69 at pg. 13 – 14.

> **ii.  ISN has evidence from which a jury could reasonably find that many of the asserted marks are merely descriptive.**

A descriptive mark is one that "tells something about the product." *AMF, Inc. v. Sleekcraft Boats,* 599 F.2d 341, 348-49 (9th Cir. 1979).  Descriptive marks can

**10**

only be protected upon a showing of secondary meaning. *Id.* MEC asserts a number of registrations comprising the term MONSTER along with some other descriptor of its claimed goods. Compl. at ¶10. Similarly, MEC asserts a number of registrations with the term BEAST along with some other descriptor. *Id.* at pg. 20-23. Evidence that a registered mark is not inherently distinctive rebuts the presumption of validity that is afforded by registration. *Quicksilver, Inc. v. Kymsta Corp.*, 466 F.3d 749, 760–61 (9th Cir. 2006). Such evidence may take the form of a dictionary-definition. *See id.* Any evidence which tends to suggest that the purchasing public perceives the mark as something other than an indicator of source of the Plaintiff would be relevant. *See id.*

Monster is a dictionary-defined term, which connotes, among other qualities, a large size. ISN SUF 64, 65. Evidence suggests that MEC's beverages are larger in size than many competing energy-drink products. ISN SUF 32, 33. MEC's asserted registrations using the term MONSTER appear to be describing the monstrous quality of its goods, with the remaining terms further defining the goods. ISN SUF37 – 39. For example, MONSTER ENERGY describes a beverage which gives the consumer an unusually large amount of energy, MUSCLE MONSTER describes a beverage which implies that it gives the consumer unusually large muscles. *See* ISN SUF at 32, 33, 37 – 39. Similarly, Merriam-Webster defines "beast" as, *inter alia*, "a lower animal as distinguished from a human being" and

**11**

Dictonary.com defines "beast" as, *inter alia*, "the crude animal nature common to humans and the lower animals."  ISN SUF 66 – 67.  MEC's asserted registrations using the term BEAST appear to describe the consumers of its goods as a "beast" in a light-hearted way, while the remaining terms are descriptive of qualities the beverage can bring out in its consumers.  For example, a beverage which allows the person/beast to be "unleashed", "pumped up", or "rehabilitated".  As such, these registrations are merely descriptive of their claimed beverage goods, which requires MEC to produce proof of secondary meaning.

### iii.  MEC has Not Provided Proof of Secondary Meaning

MEC makes much of little by boasting about its advertising expenditures or other cases where secondary meaning was established with less advertising dollars.  Such expenditures, by and of themselves, do not create legally protectable rights.  Indeed, the 9th Circuit has opined that "[e]vidence of extensive advertising or other promotional efforts do[es] not necessarily indicate that prospective buyers would associate the trade mark with a particular source."  *Perfumania, Inc. v. Perfumay, Inc.*, CA No. 93-56500, 1994 U.S. App. LEXIS 11235, at *9 (9th Cir. May 3, 1994)(citing *Carter-Wallace, Inc. v. Procter & Gamble Co.*, 434 F.2d 794, 802 (9th Cir. 1970).   MEC bears the burden of showing that its alleged marketing expenditures had the effect of associating, in the mind of the consuming public, the asserted registrations with MEC as the source provider.   As provided by MEC in

**12**

its Motion, it is asserting numerous registrations in this case that are for varied marks.  Initially, all of the expenditures that MEC relies upon in its Motion for Summary Judgment appear to be worldwide figures, which are not relevant to this case, which involves only MEC's rights in the U.S.  *See* ISN's Response to Statement of Undisputed Facts at 23 – 25.  MEC has not shown (and cannot show) that the $4.6 billion that it allegedly spends on advertising/marketing/promoting each year pertains to each of the asserted marks.  Dkt. No. 69.  Similarly, while MEC has claimed to have massive sales of its beverage products, it does not say how much of those sales have been made under any one of the asserted marks.  *Id.* The figures provided by MEC tell us nothing about whether consumers have come to recognize any one of the asserted marks as a source-identifier of MEC.

Furthermore, even if MEC's advertising expenditures are deemed to be useful as an indicator of secondary meaning, this does not mean that secondary meaning has been established in every market.  As the *Sleekcraft* court stated, "[o]nce secondary meaning is established, the protection afforded should be commensurate with the degree of consumer association proven."  *See AMF, Inc.*, 599 F.2d at 349 n.12.  Goods must be somehow related or complementary for the rights in one class to impact the rights of another mark in another class. *See e.g., id.* at 348; *Brookfield Communs., Inc. v. W. Coast Entm't Corp.*, 174 F.3d 1036, 1055 (9th Cir. 1999).  Indeed, this is why the U.S. Trademark Office has different classes

**13**

of goods.   Thus, to the extent to which this Court would find that MEC has established secondary meaning in a particular market, such as the beverage market, this does not mean that MEC has established secondary meaning in the very unrelated fields of automotive tools and equipment, which forms the core of ISN's business – or even in the markets for snacks and apparel for that matter.

In light of the above, and drawing all reasonable inferences in favor of ISN, there is at least a triable question of fact as to whether MEC has successfully established secondary meaning in its asserted registrations.

### c.  MEC has not Used the '433 and '432 Registrations in Conjunction with the Services Recited Therein

Section 1300 of the Trademark Manual of Examining Procedure ("TMEP") pertains to services.  As discussed therein, a "service mark can only be registered for activities that constitute services contemplated by the Trademark Act." (T.M.E.P. § 1301.01) (citing 15 U.S.C. §§1051, 1052, 1053, and 1127). The following criteria are used to determine what constitutes a service: (1) a service must be a real activity; (2) a service must be performed to the order of, or for the benefit of, someone other than the applicant; and (3) the activity performed must be qualitatively different from anything necessarily done in connection with the sale of the applicant's goods or the performance of another service.  T.M.E.P. §1301(a). Section 1301.01(a)(ii) of the T.M.E.P. specifically explains that a service "must be

primarily for the benefit of someone other than the applicant." It then explains that "[w]hile an advertising agency provides a service when it promotes the goods or services of its clients, a company that promotes the sale of its own goods or services is doing so for its own benefit rather than rendering a service for others." *Id.* "The controlling question is who *primarily* benefits from the activity." *Id.*

Both the '432 and '433 Registrations recite the services of:

Promoting goods and services in the sports, motorsports, electronic sports, and music industries through the distribution of printed, audio and visual promotional materials; promoting sports and music events and competitions for others.

and claim a first use date of January 4, 2003. ISN SUF 41 – 42. But, the facts establish that MEC is an energy drink company that promotes *its beverages* by sponsoring various events and athletes. ISN SUF 26 – 30, 37, 38. What MEC is attempting to do is claim that it is offering a service in commerce based on its promotion of its beverages. ISN SUF 51 – 63. MEC has made very clear that it sponsors events as a promotion of its beverages. *Id.* It is thus not surprising that MEC does not have evidence of a single instance in which it has promoted goods or services in the concert, sports, motorsports, etc. industries apart from promoting its beverages. In fact, in this case, MEC is asking the Court to find that the money MEC has spent on sponsoring events and athletes should be considered as evidence that the asserted trademarks have acquired secondary meaning as a source identifier

of MEC.  *See* Complaint.  It is entirely inconsistent with this proposition for MEC to assert that the purported services recited by the '433 and '432 Registrations have been offered by MEC for anyone other than MEC.  They certainly have not been offered *primarily* for someone other than MEC as should be required to preclude cancellation of the aforementioned registrations.

MEC is not a "promoter" and has clarified that someone else is the "actual promoter" of the events sponsored by MEC.  ISN SUF 55.  With regards to MEC's reliance on the Epicenter Music Festival event, MEC's testimony does not indicate that any promotion of the event constituted services that support the '433 and '432 Registrations.   MEC does not deny that it sponsored or promoted the event to promote its own products.   Further, the event was not sponsored by Monster Energy until 2009 and cannot establish that MEC was offering the recited services as of 2003 as recited by the registrations.  ISN SUF 61.  There is at least a triable issue of fact as to whether the '432 and '433 registrations should be cancelled. Accordingly, MEC's Motion for Summary Judgment must be denied to the extent it seeks summary judgment on ISN's Second Affirmative Defense.

### d. There is at least a Triable Issue of Fact as to ISN's Trademark Misuse Defense

While the Ninth Circuit has not yet explicitly endorsed trademark cancellation under the trademark misuse doctrine, it is worth noting that a serial

filer the likes of MEC has not been seen before.  Trademark misuse claims can take the shape of anti-trust claims or unclean hands.  *Gateway, Inc. v. Companion Prods.*, 320 F. Supp. 2d 912, 928 (D.S.D. Sep. 27, 2002) (citing *Juno Online Servs. v. Juno Lighting, Inc.*, 979 F. Supp. 684, 688 (N.D. Ill. Sep. 29, 1997); *Estee Lauder, Inc. v. Fragrance Counter, Inc.,* 189 F.R.D. 269, 270 (S.D.N.Y. Sep. 24, 1999)).  Indeed, the American courts have left open the possibility of recognizing trademark misuse as an affirmative claim for cancellation and that such a finding may result in cancellation of a trademark.  *Id.* at 690; *the Phi Delta Theta Fraternity v. J. A. Buchroeder & Co.,* 251 F. Supp. 968, 974 (W.D. Mo. Mar. 10, 1966).  The concern being that the holder of a government monopoly (here, a trademark) may use the monopoly to the detriment of the public by destroying competition.  *Id.*  This is exactly what MEC is attempting to do here.  MEC has obtained a large number of trademark registrations for its beverages and has subsequently asserted those registrations against a multitude of parties with relatively limited resources in other fields of commerce.  ISN SUF 68 – 71.  Yet, MEC has affirmatively represented that the marketplace is replete with users of "monster" and corresponding trademark rights must be limited.  ISN SUF 72 – 77.  Drawing all inferences in favor of ISN, there is at least a triable fact as to whether MEC's asserted registrations should be cancelled for misuse.

**17**

### e. There is at least a Triable Issue of Fact as to ISN's Defense of Unclean Hands

The unclean hands defense is broader than MEC would like to think. MEC attempts to equate unclean hands to judicial estoppel, but that is simply not correct as a matter of law. The affirmative defense of unclean hands is a "well-established principle of law" grounded in equity. *See United States Jaycees v. S.F. Junior Chamber of Commerce*, 354 F. Supp. 61, 74 (N.D. Cal. Aug. 9, 1972) (citing *Precision Co. v. Automotive Co.*, 324 U.S. 806, 814 (1945)). What actions constitute unclean hands can be almost anything, and rests "within the discretion of the trial judge." *Id.* (citing *Washington Capitols Basketball Club, Inc. v. Barry*, 419 F.2d 472, 478 (9 Cir. 1969)). Essentially, the court must weigh the rights of the plaintiff against any wrongdoing on their part which might foreclose their ability to assert such rights. *Id.* (citing *Coca-Cola Co. v. Koke Co.*, 254 U.S. 143, 145 (1920)). As such, MEC's self-serving statement at the time to the PTO, that there are multiple MONSTER trademark registrations and marks co-existing in the marketplace, and its contradictory view as expressed in this case now, can constitute unclean hands. *See* ISN SUF 72 – 77. MEC took the position they took at the Trademark Office, knowing full well that the proceedings would be made public and may be relied upon by others. Indeed, a Central District of California court appears to have considered MEC's admission to the PTO when considering the

**18**

strength of its registrations in another case.  *See Hansen Bev. Co. v. Cytosport, Inc,* No. CV 09-0031-VBF(AGRx), 2009 U.S. Dist. LEXIS 120508, at **21-25 (C.D. Cal. Nov. 4, 2009).   Moreover, despite these acknowledgements of the market, Monster Energy now files serial actions against all types of third parties that use "monster" in commerce – such as the Defendant who is selling automotive tools and equipment via mobile tool distributers.   ISN SUF 68 – 71.   Drawing all inferences in favor of ISN, there is at least a triable question of fact as to whether ISN has presented an unclean hands defense.

### f.  MEC's Motion for Summary Judgment Should be Denied as to ISN's Cancellation Counterclaim against the '432 Registration

While MEC may not have directly asserted the '432 Registration in this case, MEC has put this registration at issue by filing this case.  Standing is a "liberal" element which "requires only that a party believe that it is likely to be damaged by the registration."  *Kleven v. Hereford*, No. CV 13-02783-AB (AGRx), 2015 U.S. Dist. LEXIS 111185, at *61 (C.D. Cal. Aug. 21, 2015) (citing *Cunningham v. Laser Golf Corp.*, 222 F.3d 943, 945 (Fed. Cir. 2000)).  As the *Star-Kist Foods* case cited by MEC states, there is "no absolute test" for standing as a cancellation petitioner and "no requirement that damages be proved in order to established standing." *Star-Kist Foods, Inc. v. P.J. Rhodes & Co.*, 735 F.2d 346, 349 (9th Cir. 1984)(citing *Lipton Indus. v. Ralston Purina Co.*, 670 F.2d 1024, 1028 (C.C.P.A. 1982)).

**19**

Instead, the petitioner must merely show a "real interest" in the proceeding, such as a real and rational basis that it would be damaged by the registration sought to be cancelled.  *Id.*  Here, ISN can assert such a real interest based on the initiation of this lawsuit.

MEC has asserted at least nine registrations which utilize the claw design. ISN SUF 43.  And, MEC is claiming that it has rights broad enough to go after ISN's automotive tools and equipment at least in part because MEC has promoted its beverages via motor sports sponsorships.  *See* Complaint.  As such, MEC has asserted that its claw design in conjunction with other terms is likely to be confused with ISN's MONSTER MOBILE mark.  While ISN disputes this assertion, MEC's position has, at a minimum, placed the claw design mark at issue in this case. Therefore, drawing all inferences in favor of ISN, there is at least a triable question of fact as to whether the '432 Registration should be cancelled.

### g. The So-Called Socialbakers Report is Inadmissible and Cannot be Considered

In support of its Motion for Summary Judgment, MEC has submitted Exhibit 20 to the Declaration of Rodney Sacks, which Mr. Sacks claims is a Socialbakers Report (hereinafter "Socialbakers Document").  ISN SUF.  According to Mr. Sacks, the Socialbakers Document shows that MEC is the tenth most popular global brand. ISN SUF 80 – 83.  But, Mr. Sacks does not assert that the document was prepared

**20**

by himself or even anyone at MEC.  *Id.*  And, MEC has not offered the testimony of anyone who alleges to have created the Socialbakers Document and it has not offered any testimony laying a foundation for its purported contents.  *Id.*  MEC does not have evidence that the Socialbakers Document is what it claims it to be.  *See id.*  The Socialbakers Document is not admissible pursuant to at least Fed. R. Evid. 901(a), 801(c), and 802 and should not be considered on summary judgment.  Fed. R. Civ. P. 56(c)(2).  More pointedly, ISN objects that that information cited by MEC to support MEC's alleged fact that MEC has been ranked as the tenth most popular global brand, cannot be presented in a form that would be admissible in evidence. *Id.*

## V.    Conclusion

ISN respectfully submits that drawing all reasonable inferences in favor of ISN, there is a triable issue of fact on the above grounds.  As such, ISN respectfully requests that this Court deny MEC's motion for partial summary judgment in its favor on all grounds.


Dated:   March 27, 2018                    By: /s/ Jeffrey S. Standley
                                           JEFFREY S. STANDLEY
                                           (OH# 047248)
                                           jstandley@standleyllp.com
                                           MELISSA A. ROGERS MCCURDY
                                           (OH #0084102)
                                           mmccurdy@standleyllp.com
                                           F. MICHAEL SPEED, JR.

**21**

(OH #0067541)
mspeed@standleyllp.com

DOUGLAS C. SMITH
(SBN 160013)
dsmith@smitlaw.com

Attorneys for Defendant
Integrated Supply Network, LLC

22