Steven J. Nataupsky (SBN 155913)
steven.nataupsky@knobbe.com
Lynda J. Zadra-Symes (SBN 156511)
lynda.zadrasymes@knobbe.com
Marko R. Zoretic (SBN 233,952)
marko.zoretic@knobbe.com
Jason A. Champion (CA SBN 259207)
jason.champion@knobbe.com
KNOBBE, MARTENS, OLSON & BEAR, LLP
2040 Main Street, Fourteenth Floor
Irvine, CA 92614
Phone: (949) 760-0404
Facsimile: (949) 760-9502

Attorneys for Plaintiff
MONSTER ENERGY COMPANY

IN THE UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

MONSTER ENERGY COMPANY, a Delaware corporation,

Plaintiff,

v.

INTEGRATED SUPPLY NETWORK, LLC, a Florida limited liability company,

Defendant.

Case No. 5:17-CV-00548-CBM-RAO

**REPLY BRIEF IN SUPPORT OF MONSTER ENERGY COMPANY'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

HEARING:
April 17, 2018
10:00 a.m.
Courtroom 8B

Hon. Consuelo B. Marshall

# TABLE OF CONTENTS

**Page No.**

I. INTRODUCTION ........ 1

II. ISN'S CHALLENGES TO THE *SCOPE* OF MONSTER'S RIGHTS DO NOT SUPPORT ITS DEFENSE OF *INVALIDITY* ........ 1

III. ISN'S SECONDARY MEANING CHALLENGE FAILS ........ 1

A. ISN Has Not Met its Burden of Proving Descriptiveness ........ 1

B. ISN Has Not Met its Burden of Proving Lack of Secondary Meaning ........ 3

IV. MONSTER HAS PERFORMED PROMOTION SERVICES ........ 5

V. ISN'S TRADEMARK MISUSE DEFENSE FAILS ........ 7

VI. ISN'S UNCLEAN HANDS DEFENSE FAILS ........ 8

VII. ISN LACKS STANDING TO CANCEL THE '432 REGISTRATION ........ 9

VIII. CONCLUSION ........ 10

## TABLE OF AUTHORITIES

*2Die4Kourt v. Hillair Capital Mgmt.*, 2016 WL 4487895 (C.D. Cal. Aug. 23, 2016) ........ 8

*Capital Speakers Inc. v. Capital Speakers Club of Washington, D.C.*, 41 U.S.P.Q.2d 1030, 1996 WL 754043 (T.T.A.B. 1996) ........ 7

*Citizens Fin. Grp., Inc. v. Citizens Nat'l Bank of Evans City*, 383 F.3d 110 (3d Cir. 2004) ........ 8

*Fleischer Studio Inc. v. A.V.E.L.A., Inc.*, 654 F.3d 958 (9th Cir. 2011) ........ 3

*Gateway, Inc. v. Companion Products*, 320 F. Supp. 2d 912 (D.S.D. 2002) ........ 7, 8

*Ex Parte Handmacher-Vogel, Inc.*, 98 U.S.P.Q. 413, 1953 WL 5097 (Comm'r Pat. 1953) ........ 6

*Huthwaite, Inc. v. Sunrise Assisted Living, Inc.*, 261 F. Supp. 2d 502 (E.D. Va. 2003) ........ 7

*Lahoti v. VeriCheck, Inc.*, 586 F.3d 1190 (9th Cir. 2009) ........ 2, 3

*Metal Jeans Inc. v. Affliction Holdings, LLC*, 2015 WL 3833858 (C.D. Cal. June 19, 2015) ........ 9

*Monster Energy Co. v. Zekser*, Opp'n No. 91203340, Slip Op. (T.T.A.B. July 30, 2015) ........ 4

*Morningside Grp. Ltd. v. Morningside Capital Grp. LLC*, 182 F.3d 133 (2d Cir. 1999) ........ 7

*Perfumania, Inc. v. Perfumay, Inc.*, 1994 WL 168335 (9th Cir. 1994) ........ 4

*Quicksilver v. Kymsta Corp.*, 466 F.3d 749 (9th Cir. 2006) ........ 2

## TABLE OF AUTHORITIES
## *(cont'd.)*

*Republic Molding Corp. v. B.W. Photo Utils.*, 319 F.2d 347 (9th Cir. 1963) ............ 8

*Star-Kist Foods v. P.J. Rhodes & Co.*, 735 F.2d 346 (9th Cir. 1984) ............ 10

*In re United States Tobacco Co.*, 1 U.S.P.Q.2d 1502, 1986 WL 83321 (T.T.A.B. 1986) ............ 6

*Zobmondo Entm't v. Falls Media*, 602 F.3d 1108 (9th Cir. 2010) ............ 2

## OTHER AUTHORITIES

Fed. R. Evid. 803 ............ 5

J.T. McCarthy, *McCarthy on Trademarks & Unfair Competition* (5th ed. 2017) ............ 2, 7

# I. INTRODUCTION

ISN has failed to raise a genuine issue of material fact on its defenses of invalidity, trademark misuse through bullying, and unclean hands. Its arguments ignore the burden of proof, are unsupported by evidence, and ignore the law. Accordingly, Monster's motion for partial summary judgment on these defenses should be granted.

# II. ISN'S CHALLENGES TO THE *SCOPE* OF MONSTER'S RIGHTS DO NOT SUPPORT ITS DEFENSE OF *INVALIDITY*

ISN challenges the scope of Monster's rights, asserting that Monster has no rights to the term "Monster" by itself. Opp'n at 6-8. This is a complete red-herring. Monster's challenged registrations each include terms in addition to "Monster," such as "Energy" and "Rehab." *See* Dkt. No. 1, Exs. A1-A36. ISN does not explain why Monster's alleged lack of rights in the term "Monster" by itself somehow jeopardizes the validity of 36 registrations for other marks.

Similarly, ISN attacks Monster's registrations by contending that Monster has no trademark rights that can be asserted in the automotive tool industry. Opp'n at 9-10. This argument goes to the scope of Monster's trademark rights, not their validity. As before, ISN does not explain why Monster's alleged lack of trademark rights to assert against tools jeopardizes the validity of Monster's registrations. Only the validity of Monster's registrations is at issue here.

# III. ISN'S SECONDARY MEANING CHALLENGE FAILS

## A. ISN Has Not Met its Burden of Proving Descriptiveness

The PTO found every one of Monster's challenged marks to be non-descriptive. Dkt. No. 72, Ex. 47. Thus, ISN bears the burden of proving that Monster's federally registered Monster Energy® mark, Unleash the Beast!® mark, and other MONSTER and BEAST marks are all descriptive of Monster's beverages. Dkt. No. 69 at 15 (citing *Zobmondo Entm't v. Falls Media*, 602 F.3d 1108, 1113-14 (9th Cir. 2010)). "Descriptive marks define a particular

characteristic of the product in a way that does not require any exercise of imagination." *Quicksilver v. Kymsta Corp.*, 466 F.3d 749, 760 (9th Cir. 2006). ISN must show that "the primary significance of the mark to the purchasing public" is a description of the product or its characteristics. *Id.* Furthermore, ISN must show that the mark as a whole, rather than one component part, is descriptive. J.T. McCarthy, *McCarthy on Trademarks & Unfair Competition* § 11:27 (5th ed. 2017). ISN has failed to raise a genuine issue.

ISN has submitted **no evidence** that the purchasing public views the primary significance of any of the challenged marks as a description of Monster's beverages or their characteristics. For example, ISN has no survey of the public or testimony of consumers. Nor has ISN shown that Monster's competitors have a need to describe their products using any of the MONSTER or BEAST marks, another test of descriptiveness. *Zobmondo*, 602 F.3d at 1117.

Instead, ISN offers only poor attorney argument, unsupported by any facts whatsoever. For example, ISN baldly argues that the Monster Energy® mark "describes a beverage which gives the consumer an unusually large amount of energy." Opp'n at 11. But the words "Monster Energy" do not describe a beverage at all. Nor do they describe a "large amount of energy." The word "monster" simply does not mean "a large amount." *See* Dkt. No. 107-2 ¶ 65. ISN does not argue otherwise and instead asserts only that monster "connotes" a large size. Opp'n at 11. But this sort of connotation is precisely the type of "mental leap" from trademark to product that makes a mark not descriptive. *Lahoti v. VeriCheck, Inc.*, 586 F.3d 1190, 1198 (9th Cir. 2009).

Similarly, Muscle Monster® does not describe Monster's beverages. ISN asserts that the name "implies that it gives the consumer unusually large muscles." Opp'n at 11. However, ISN offers no evidence that consumers perceive the mark in this way. Moreover, a mere implication about the effect of the beverage on a consumers' muscles is again the type of mental leap that

makes a mark not descriptive of a product.[1] *Lahoti*, 586 F.3d at 1198.

ISN's claim that the BEAST marks are descriptive similarly fails. ISN offers no evidence, or even any comprehensible argument, that the full Unleash the Beast!® mark or any other full BEAST mark describes Monster's beverages or a characteristic of them. ISN argues only that the term "beast" alone describes the **consumers** of Monster's beverages. This is unsupported by the facts and is in any event irrelevant. Descriptive marks describe the trademarked goods, not the consumers of those goods. ISN did not even attempt to argue that the full BEAST marks, such as Unleash the Beast!® (or even "Beast" alone), describes Monster's beverages. Thus, ISN has not raised a genuine issue on the question of descriptiveness.

**B. ISN Has Not Met its Burden of Proving Lack of Secondary Meaning**

Because ISN failed to establish that Monster's marks are descriptive, this Court need not even consider whether those marks have acquired secondary meaning. In any event, ISN's secondary meaning challenge fails.

ISN asserts that "MEC has Not Provided Proof of Secondary Meaning." Opp'n at 12. However, ISN has the burden of proof backward. Because Monster's marks are registered, ISN must prove that they lack secondary meaning. Dkt. No. 69 at 16. Thus, ISN must prove that there is no "mental recognition in buyers' and potential buyers' minds that products connected with the [mark] emanate from or are associated with the same source." *Fleischer Studio Inc. v. A.V.E.L.A., Inc.*, 654 F.3d 958, 967 (9th Cir. 2011). ISN has presented no such evidence.

Instead of attempting to meet its own burden, ISN attacks Monster's evidence of secondary meaning. But this attack is in vain because, without

[1] ISN has not even submitted any attorney argument on the remaining 34 MONSTER marks. Thus, ISN has failed to raise a genuine issue on the validity of any of these marks.

evidence of its own, ISN cannot rebut the presumption of secondary meaning. In any event, ISN's attacks on Monster's evidence are meritless.

For example, Monster has presented undisputed evidence that its advertising expenditures for the MONSTER and BEAST marks have exceeded $4.6 billion. Dkt. No. 71 ¶ 8. Citing a non-precedential case, ISN speculates that these extraordinary efforts may have been wholly ineffective, and consumers may not associate Monster's marks with Monster, even after the expenditure of billions. Opp'n at 12 (citing *Perfumania, Inc. v. Perfumay, Inc.*, 1994 WL 168335 (9th Cir. 1994)). However, even ISN's non-precedential case acknowledges that a direct showing of the effectiveness of advertising is not required under the current circumstances. "[E]vidence that the manufacturer has used and advertised the product over a **substantial** period of time may well establish secondary meaning." *Perfumania*, 1994 WL 168335 at *3 (emphasis in original) (citing *Clamp Mfg. Co. v. Enco Mfg. Co.*, 870 F.2d 512, 517 (9th Cir. 1989)). Monster's 15 years of widespread usage and billions in advertising clearly meet this standard. Moreover, Monster has direct evidence of the effectiveness of its advertising. Monster sells about $6 billion of drinks per year domestically under its MONSTER and BEAST marks. Dkt. No. 71 ¶ 37. This could not possibly occur if consumers were unfamiliar with Monster's brands.[2]

Not surprisingly, the PTO has explicitly recognized that the MONSTER marks are famous, a much higher standard than the mere acquisition of secondary meaning. *Monster Energy Co. v. Zekser*, Opp'n No. 91203340, Slip Op. at 5-8 (T.T.A.B. July 30, 2015) (attached as Exhibit 120). The PTO relied upon Monster's "volume of sales and advertising expenditures," *id.* at 6, "length of time of use of the mark," *id.*, and Monster's recognition as one of "the top-10

[2] ISN also quibbles that Monster's advertising figures are worldwide figures. Opp'n at 13. But Monster's sales figures are domestic. Dkt. No. 71 ¶ 37. And, as just discussed, these sales figures confirm the effectiveness of Monster's domestic advertising efforts.

most liked brands on Facebook worldwide."[3] *Id.* at 7.

ISN also argues that Monster has not proven secondary meaning in the automotive tool industry. Opp'n at 13-14. But this argument again relates to the scope of Monster's rights, not the validity of them. By this motion, Monster is seeking only to dismiss ISN's invalidity defenses. It is not seeking on this motion to prove infringement in the automotive tool market.

## IV. MONSTER HAS PERFORMED PROMOTION SERVICES

Monster's '432 and '433 Registrations are directed to the promotion of sports and music events and athletes. ISN does not dispute the basic facts establishing that Monster has in fact promoted these events extensively. *See* Dkt. No. 105-3 at 19:1-17. Monster has extensively promoted events, athletes, teams and products of others on its website and social media accounts. *See, e.g.*, Dkt. No. 71 at ¶¶ 9, 11, 12, 14, 16, 19, 24, Exs. 4, 5, 8, 12, 13, 16-19. For example, in 2003, the MonsterEnergy.com website had a page titled "Happenings" where Monster would promote the events of others. *Id.* at Ex. 4. Monster has distributed printed promotional materials for events such as the Monster Energy® AMA Supercross series, The Dub Show Tour, and Ozzfest concert series and products of others such as Activision's Call of Duty and Ubisoft's Assasin's Creed of Origins videogames. *See, e.g., id.* at ¶¶ 12, 13, 17, 18, 23, Exs. 5, 6, 9, 12. Monster has given away event tickets and products of others such as Kawasaki powersports vehicles, Activision video games, and Makita tools. *See, e.g., id.* at ¶¶ 12, 17, 21-24, Exs. 5, 9-13.

ISN also does not dispute that the athletes and events promoted by Monster receive a great benefit from Monster's promotional efforts. As Monster's Chairman has explained in unrebutted testimony:

---

[3] The Facebook study upon which the PTO relied is very similar to the Socialbakers Report submitted to this Court by Monster. *See* Dkt. No. 71, Ex. 20. Contrary to ISN's assertion, this Report is not hearsay. Rather, it is a "list" or "compilation" which is admissible under Fed. R. Evid. 803(17).

> When Monster promotes an event, athlete, team or a third-party's product, Monster provides legitimacy to the event, athlete, team or product among Monster's fan base. Monster generates extensive exposure for the event, athlete, team or product in ways such as promotion on Monster's website and social media pages, promotional materials at the point-of-sale of Monster's beverage products and giveaways. The validation and legitimacy provided to the athlete, team, event or third-party product by Monster's promotion and sponsorship increases the likelihood that Monster's fans will also become fans of the sponsored athletes and teams, attendees of the sponsored events and consumers of the third-party products.

Dkt. No. 71 ¶ 26.

ISN instead argues that these promotional efforts do not count because Monster itself also benefits from them. Opp'n at 14-16. ISN is wrong as a matter of law. The case of *In re United States Tobacco Co.*, 1 U.S.P.Q.2d 1502, 1986 WL 83321 (T.T.A.B. 1986), is directly on point. There, the applicant was the maker of Skoal Bandit chewing tobacco. *Id.* at *1. The applicant sponsored an auto racing team owned by Burt Reynolds and Paul Newman. *Id*. The applicant placed its Skoal Bandit logo on the racecar, and sought to register the mark for "entertainment services, namely, sponsoring and presenting automobile racing exhibitions." *Id*.

The Trademark Examiner refused registration, raising precisely the same argument as ISN here. *Id.* at *2. But the Board reversed and allowed the trademark to register. *Id*. The Board acknowledged that the applicant benefited significantly from its own promotional services through increased sales of tobacco products. *Id*. The Board, however, concluded that was irrelevant. *Id*. The applicant was still providing entertainment services by helping to provide a racecar for auto races. *Id*. *Accord Ex Parte Handmacher-Vogel, Inc.*, 98 U.S.P.Q. 413, 1953 WL 5097 (Comm'r Pat. 1953).

The only alleged contrary "authority" cited by ISN is the Trademark Manual for Examining Procedures ("TMEP"). Opp'n at 14-15. However, the

TMEP is not authoritative; it does not have the force of law and is not binding on the courts. *Capital Speakers Inc. v. Capital Speakers Club of Washington, D.C.*, 41 U.S.P.Q.2d 1030, 1996 WL 754043 at *7 (T.T.A.B. 1996); J.T. McCarthy, *McCarthy on Trademarks & Unfair Competition* § 19:129 (5th ed. 2017). Further, courts have rejected ISN's position that an activity must be "primarily" for the benefit of another. "[A]n inquiry into who **primarily** benefits from a service transaction must turn on which side in the circumstances got the better bargain, an inquiry that likely depends largely on one's perspective and hardly seems relevant to the question whether the transaction is properly characterized as a 'service' for the purposes of the Lanham Act." *Huthwaite, Inc. v. Sunrise Assisted Living, Inc.*, 261 F. Supp. 2d 502, 513 (E.D. Va. 2003) (emphasis in original). It is sufficient to show that the activity "did provide valuable benefits to others." *Morningside Grp. Ltd. v. Morningside Capital Grp. LLC*, 182 F.3d 133, 138 (2d Cir. 1999).

## V. ISN'S TRADEMARK MISUSE DEFENSE FAILS

ISN effectively concedes that it has been unable to locate a single case invalidating a trademark for "trademark misuse," arguing instead that "courts have left open the possibility" of such a defense. Opp'n at 17. Equally important, ISN has not identified a single case that even left open the possibility of its unique defense of trademark misuse through "bullying." To the contrary, the principal case on which ISN relies soundly rejected the existence of such a defense as a matter of law. *Gateway, Inc. v. Companion Products*, 320 F. Supp. 2d 912, 928-29 (D.S.D. 2002). As the *Gateway* court explained:

> Aggressively promoting and protecting a trademark … does not constitute unclean hands.[4] Indeed, in view of the strength of the mark and the very substantial goodwill attaching to it, plaintiffs can be expected to be, and are entitled to be, aggressive in asserting their

---

[4] The *Gateway* court treated trademark misuse as a species of unclean hands.

> trademark rights against others. If such conduct constituted unclean hands, plaintiffs would have to choose between policing their mark through vigorous efforts, which may include threats of suits or actual suits, or allowing general use to cheapen and dilute their mark. … Accordingly, a trademark owner is entitled to advise others of his trademark rights, to warn others that they or others are or may be infringing his rights, to inform others that he is seeking to enforce his rights through legal proceedings, and to threaten accused infringers and their customers with suit.

*Id.* Accordingly, ISN's defense of trademark misuse through bullying should be rejected as a matter of law.

It should also be rejected for a complete failure of proof. ISN has submitted no evidence to this Court that Monster has ever asserted its trademarks against anyone without a sound basis. Thus, under any standard, there is no evidence before this Court of "bullying" by Monster.[5]

## VI. ISN'S UNCLEAN HANDS DEFENSE FAILS

ISN envisions unclean hands as a sweeping defense that applies to "almost anything." Opp'n at 18. This is not correct. "[G]iven the public interest in avoiding consumer confusion, courts will not withhold an injunction for unclean hands when, as here, allowing the defendant to continue using the trademark would cause consumer confusion." *2Die4Kourt v. Hillair Capital Mgmt.*, 2016 WL 4487895 at *9 (C.D. Cal. Aug. 23, 2016). Applying the unclean hands defense in trademark cases would result in "leaving two wrongs unremedied and increasing the injury to the public." *Republic Molding Corp. v. B.W. Photo Utils.*, 319 F.2d 347, 350 (9th Cir. 1963). At the very least, "[b]ecause a central concern in an unfair competition case is protection of the public from confusion, courts require clear, convincing evidence of egregious misconduct before invoking the doctrine of unclean hands." *Citizens Fin. Grp., Inc. v. Citizens Nat'l Bank of Evans City*, 383 F.3d 110, 129 (3d Cir. 2004).

[5] ISN has not even addressed Monster's *Noerr /Pennington* argument. See Dkt. No. 69 at 21-22. For this reason as well, ISN's "bullying" defense fails as a matter of law.

Here, ISN has pointed to no egregious misconduct. ISN points only to Monster's argument to the PTO a dozen years ago that certain third-party "Monster"-based marks were weak, thus allowing room for more registrations. Dkt. No. 80-31 at 17-19. The PTO rejected this argument as "unpersuasive." Ex. 121 at 2. Now, a dozen years later, Monster is arguing to this Court that the extraordinary fame acquired by Monster's marks in the intervening years leaves much less room for competing Monster marks. This is especially so here because ISN has used Monster's trade dress and has exhibited a clear intent to trade upon Monster's goodwill. *See* Dkt. No. 105-3 at 17-19.

There is nothing egregious about Monster abandoning an unsuccessful argument. Nor is there anything egregious about distinguishing between the scope of a third party's rights a dozen years ago and Monster's own rights today after spending billions of dollars promoting its MONSTER brand. To the contrary, this District has squarely held that "[s]tatements made … before the [PTO] seeking registration of a trademark do not circumscribe for all time the rights the registrant may acquire thereafter through extensive use." *Metal Jeans Inc. v. Affliction Holdings, LLC*, 2015 WL 3833858 at *3 (C.D. Cal. June 19, 2015). Similarly, there is nothing egregious about arguing that third-party Monster-based marks can co-exist, while also arguing that ISN's adoption of Monster's trade dress and other acts of bad faith put it in a different category. Accordingly, ISN's unclean hands defense fails.

Undeterred, ISN asserts there is a triable issue of fact on its unclean hands defense. Opp'n at 19. But the contents of Monster's arguments to the PTO in 2006 are undisputed. Dkt. No. 80-31. So are the contents of Monster's arguments to this Court. Thus, there are no disputed facts to be tried.

## VII. ISN LACKS STANDING TO CANCEL THE '432 REGISTRATION

The '432 Registration is directed to Monster's M-Claw logo, , by itself, without the words "Monster Energy." Dkt. No. 72, Ex. 46. It is undisputed that

Monster has never asserted the M-Claw logo against ISN. That is, Monster does not contend that ISN's marks – "Monster" and "Monster Mobile" – infringe the M-Claw logo . Monster has asserted only registrations that contain the word "Monster" against ISN's two "Monster"-based marks. Dkt. No. 1, Exs. A1-36.

ISN argues nevertheless that it has standing to cancel the registration for the M-Claw logo "based on the initiation of this lawsuit." Opp'n at 20. But this lawsuit does not assert infringement of the M-Claw logo. And ISN fails to explain how Monster's assertion of **other** trademarks in this lawsuit, that all contain the word "Monster," establishes standing. ISN insists that Monster "placed the claw design mark at issue." *Id*. But this is simply untrue. Monster has asserted only registrations that contain the word "Monster" or "Beast." Accordingly, ISN cannot and has not shown "a real and rational basis for [its] belief that [it] would be damaged by the registration sought to be cancelled, stemming from an actual commercial or pecuniary interest in [its] own mark." *Star-Kist Foods v. P.J. Rhodes & Co.*, 735 F.2d 346, 349 (9th Cir. 1984).

## VIII. CONCLUSION

Monster's motion for summary judgment on ISN's defenses of invalidity, trademark misuse through bullying, and unclean hands should be granted.

Respectfully submitted,
KNOBBE, MARTENS, OLSON & BEAR, LLP

Dated: April 3, 2018

By: */s/ Lynda J. Zadra-Symes*
Steven J. Nataupsky
Lynda J. Zadra-Symes
Marko R. Zoretic
Jason A. Champion

Attorneys for Plaintiff,
MONSTER ENERGY COMPANY

27938794