JEFFREY S. STANDLEY (OH # 0047248)
jstandley@standleyllp.com
MELISSA A. ROGERS MCCURDY (OH #0084102)
mmccurdy@standleyllp.com
F. MICHAEL SPEED, JR. (OH #0067541)
mspeed@standleyllp.com
Standley Law Group LLP
6300 Riverside Drive
Dublin, Ohio 43017
Telephone: (614) 792-5555
Fax: (614) 792-5536

DOUGLAS C. SMITH (SBN 160013)
dsmith@smitlaw.com
SMITH LAW OFFICES, LLP
4204 Riverwalk Parkway, Suite 250
Riverside, California 92505
Telephone: (951)509-1355
Facsimile: (951)509-1356
Attorneys for Defendant
Integrated Supply Network, LLC

IN THE UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MONSTER ENERGY COMPANY, a Delaware corporation,<br><br>Plaintiff,<br><br>v.<br><br>INTEGRATED SUPPLY NETWORK, LLC, a Florida limited liability company,<br><br>Defendant | Case No. 5:17-CV-00548-CBM-(RAOx)<br><br>**DISCOVERY MATTER**<br><br>**INTEGRATED SUPPLY NETWORK LLC'S REPLY BRIEF REGARDING SCOPE OF WAIVER IN LIGHT OF DEFENDANT'S RELIANCE ON ADVICE OF COUNSEL**<br><br>Honorable Consuelo B. Marshall<br><br>Honorable Rozella A. Oliver |

I. **ISN has Shown that the Documents and Communications Maintained as Privileged do not Relate to the same Subject Matter as the Kautz Opinion**

Time and again MEC overplays it hand and attempts to conflate the Kautz Opinion to something other than it is. For clarity, MEC has sued ISN for infringement of trademarks involving the word "Monster," trade dress relating to green and black, and trademarks involving the phrase "unleash the beast." Dkt. No. 1. It bears repeating, Kautz's email does not mention MEC or MEC's monster marks, does not relate in any way to any "feed the beast" mark, does not discuss use of green and black as a color scheme for products, and does not in any way provide an analysis of infringement of any mark of MEC. *See* Dkt. No. 133, Ex. 2. Notwithstanding, MEC contends that the Kautz email opens the door for all attorney client-communications that have anything to do with the parties' disputes and this case. MEC's contention is wrong.

The scope of the waiver of the attorney client privilege that is affected by reliance on advice of counsel is determined, at least in part, by looking at the subject matter of the opinion relied upon. *See* Fed. R. Evid. 502. Specifically, the privilege attached to other documents and communications is not waived if they do not concern the same subject matter as the opinion. *See id.* What constitutes the subject matter of an opinion and making the determination must be determined on a case by case basis.

1

Unlike a statutory copyright or a patent for an invention, a trade-mark confers no right in gross or at large. *Treager v. Gordon-Allen*, 71 F.2d 766, 768 (9th Cir. 1934). ISN has produced the 2011 Kautz opinion as evidence of its good faith and lack of willfulness in adopting a trademark comprising monster to use on its MONSTER MOBILE line of automotive tools and equipment. The Kautz opinion refers to several *tool companies* that had registered monster marks in 2010: the opinion does not mention MEC. Dkt. 133, Ex. 2. There are many companies that use "monster" in commerce and there were many companies making use of "monster" in commerce in 2010.[1] *See* Dkt. Nos. 89-1 and 143 at ¶¶ 157 – 243 and evidence cited therein; *see also Entrepreneur Media, Inc. v. Smith*, 279 F.3d 1135, 1143 – 44 (9th Cir. 2002) ("That the marketplace is replete with products using a particular trademarked word indicates…the likelihood that consumers will *not* be confused by its use). MEC is incorrect in its assertion that because it addresses ISN's proposed "use" of "monster" in commerce, the Kautz opinion must pertain to MEC or to the claims of infringement pending in this case.[2]

---

[1] MEC went on the record at the U.S. Trademark Office arguing that "given the prevalence of MONSTER marks on the Register and in the marketplace, as discussed below, even minor differences in the marks would eliminate any likelihood of confusion." Dkt. No. 136 at ¶¶ 72 – 77 and evidence cited therein.

[2] In its Response, MEC cites to testimony from Matt Rivera to seemingly insinuate that Mr. Rivera approached ISN executives in early 2010 about concerns pertaining to a lawsuit with Plaintiff. To ensure the record is clear, there is no evidence that Mr. Rivera ever mentioned MEC or its trademarks to anyone at ISN including the ISN executives that were involved in launching the MONSTER MOBILE brand. Instead it appears Mr. Rivera had seen an article

2

The Kautz opinion is relevant to the issue of infringement because one of the *Sleekcraft* factors in this case is ISN's <u>intent</u> in adopting its mark. The Kautz opinion shows that ISN reached out to its trademark counsel and was trying *not* to trample on the intellectual property rights of others in adopting a mark comprising monster. Thus, the opinion is also relevant to willfulness. But, the Kautz opinion does *not* pertain to the subject matter of infringement (i.e. an opinion which looks at the asserted intellectual property right v. the actions of the defendant), and does not even mention Monster Energy. In *Rush Indus. v. Garnier LLC*, 496 F. Supp. 2d 220, 225 (E.D.N.Y. 2007), when the asserted trademark was not revealed in the underlying search, the Defendant could not be found to have sought advice as to whether or not its intended trademark use would infringe the rights of Plaintiff. MEC incorrectly argues that *Rush* is inapplicable. *Rush* shows that whether the opinion relied upon references the Plaintiff's rights is relevant to determining the subject matter of an opinion. *See id.*

MEC has not provided a single case where reliance on an opinion that does not reference the asserted intellectual property was found to affect the type of subject matter waiver that MEC is seeking. There is no reason to find that the

---

pertaining to litigation that involved "monster" (specifically involving a totally different company known as Monster Cable) and he recalls that he asked a general question regarding whether ISN's proposed trademark use was "ok." *See* Rivera Depo. at 64:24 – 66:09, 139:10 – 140:15. Excerpts from the Rivera Depo. are attached to the June 1st Declaration of Melissa Rogers McCurdy as Exhibit 1.

3

Kautz opinion regarding ISN's adoption of a mark comprising "monster" for a line of automotive tools and equipment in 2011 was an analysis of ISN's rights v. the asserted rights of MEC. Clearly, the documents and communications MEC is seeking do not fall in the subject matter of the Kautz opinion.

## II. The Time when the Documents and Communications at Issue Were Created Further Shows that they do not Concern the Same Subject Matter as the Kautz Opinion

ISN does not have a specific date to provide the Court as to when ISN adopted its mark comprising "monster." At least in ISN's industry, rolling out and adopting a new brand is something that occurs over a period of time. There are a variety of steps that go into the process. There is a window of time at issue. ISN does not believe defining the exact parameters of that window of time is necessary here because it is clear that the documents at issue on the privilege logs of Gray Robinson and ISN, from <u>many years later</u>, do not pertain to the adoption of ISN's mark. ISN began its efforts to sell tools under "monster" in or around December of 2010 and the Kautz opinion was requested right after the holidays. On January 6, 2011, Mr. Kautz provided his opinion to ISN. ISN had adopted its MONSTER mark years in advance of any communications it received from MEC (and well in advance of any of the privileged documents MEC is seeking to discover).

The relevant *Sleekcraft* factor is the Defendant's intent in adopting its mark. When the Defendant adopts its mark without knowledge of the Plaintiff,

4

no intent to confuse can be inferred. *See Echo Drain v. Newsted*, 307 F. Supp. 2d 1116, 1127 (C.D. Cal. 2003). Caselaw recognizes the improbability of the theory that a party who has adopted its mark in good faith might later become a willful infringer for using the mark. *See Sharper Image Corp. v. Honeywell Int'l Inc.*, 222 F.R.D. 621, 644 - 45 (N.D. Cal. 2004); *In re SeaGate*, 497 F.3d 1360 (Fed. Cir. 2007). MEC argues that ISN has adopted new uses and variations of its marks over time.[3]

When the facts of this case are viewed in their totality, ISN respectfully submits that it is clear that it adopted its use of monster well in advance of receiving any cease and desist letters from MEC and/or MEC filing oppositions against ISN's trademark applications. The dates on the documents that have been maintained as privileged by ISN and Gray Robinson, falling many years after the period in which ISN adopted a mark comprising "monster," show they do not pertain to the subject matter of the Kautz opinion.

**III. ISN Has Shown that Even if the Kautz Opinion and the Documents at Issue concern the Same Subject Matter the scope of Waiver should be Limited**

Even if the Court would somehow find that the subject matter of the Kautz opinion concerns opinions and documents pertaining to MEC, waiver of the attorney client privilege and work product doctrine should not be extended to the

---

[3] MEC makes reference to ISN's use of FEED THE BEAST. The Kautz opinion does not discuss FEED THE BEAST. *See* Dkt. No. 133, Ex. 2.

5

documents and communications on the privilege logs of ISN and GrayRobinson. Once MEC began sending cease and desist letters to ISN and filing oppositions of ISN's trademark applications (years after ISN adopted its mark), ISN had a need to talk freely with its counsel and to prepare its case. *See In re SeaGate*, 497 F.3d 1360 (Fed. Cir. 2007). The *In re SeaGate* decision explains that the function being provided by counsel is critical to the inquiry of whether waiver of privilege should be extended to communications with "trial counsel" concerning the subject matter of an earlier opinion. *In re SeaGate* indicates that the attorney's engagement in an adversarial process is relevant. *Id.* at 1373.

ISN has never proffered that *In re SeaGate* creates a bright line rule for the Court. Instead, ISN points to the sound reasoning of *In re SeaGate*, and the timing of the Kautz opinion in very early 2011, and that the opinion does not even reference MEC. It was years later that Mr. Kautz's role changed, in 2014, in response to MEC's cease and desist letters, such that any waiver of privilege should not be extended to the communications on the GrayRobinson Privilege Log. MEC has not even attempted to rebut the case law proffered by ISN which shows that the TTAB proceedings initiated by MEC beginning in 2014 constitute an adversarial proceeding akin to "litigation" which should cut off the scope of waiver. At the very least, it is clear that waiver should not be extended to any of the communications involving attorney Ava Doppelt, and even later the attorneys

at Standley Law Group, who represent(ed) ISN through direct threats of litigation made by MEC, and the present litigation.

While MEC questions the applicability of *In re SeaGate* as a patent case which has allegedly not been adopted by the 9th Circuit, MEC's "support" for its position is in large part based on pre-*In re SeaGate* patent cases. *See Verizon Cal. Inc. v. Ronald A. Katz Tech. Licensing, L.P.,* 266 F. Supp. 2d 1144, 1149 (C.D. Cal. 2003); *AKEVA L.L.C. v. MIZUNO Corp.*, 243 F. Supp. 2d 418, 423 (M.D.N.C. 2003); *Celerity, Inc. v. Ultra Clean Holding, Inc.*, 476 F. Supp. 2d 1159, 1161-62 (N.D. Cal. 2007); *Chiron Corp. v. Genentech, Inc.*, 179 F. Supp. 2d 1182, 1184-85 (E.D. Cal. 2001). As explained in *In re SeaGate* "the term willful is not unique to patent law…" 497 F.3d at 1370. *In re SeaGate* is highly relevant to the questions presently before the Court and the decision has been cited by Courts within the 9th district many times. *See McRo, Inc. v. Namco Bandai Games Am., Inc.*, 23. F. Supp. 3d 1113, 1123 (C.D. Cal. 2013); *Narog v. City of Redwood City*, No. C-13-03237 DMR, 2014 U.S. Dist. LEXIS 36193, at *10-11 (N.D. Cal. Mar. 17, 2014); *Black Hills Media, LLC v. Pioneer Corp.*, No. CV 13-05980 SJO (PJWx), 2013 U.S. Dist. LEXIS 187917, at *1 (C.D. Cal. Sep. 24, 2013). But even before *In re SeaGate*, this Court had opined that "litigation" should cut off the scope of waiver resulting from reliance on advice of counsel. *See Dunhall Pharm., Inc. v. Discus Dental, Inc.*, 994 F. Supp. 1202, 1206 (C.D. Cal. 1998).

Every case cited by MEC involves the scenario where the relied upon opinion actually analyzed the specific intellectual property right being asserted by the plaintiff. *See Krausz Indus. Ltd. v. Smith-Blair, Inc.*, No. 5:12-cv-00570-FL, 2016 U.S. LEXIS 191859 (E.D.N.C. Dec. 13, 2016)(involving reliance upon an opinion of non-infringement of the asserted patent). Again, this is an important distinction between the relied upon cases and this case because assessing the subject matter of the opinion is distinct from deciding whether waiver of privilege should be extended to "trial counsel." *See* Fed. R. Evid. 502. Accordingly, this case does not present "nearly identical facts" to *Minn. Specialty* where the issue before the Court specifically involved an opinion of infringement and the Plaintiff and Defendant were using the identical mark, "MINNESOTA WILD." Similarly, the facts of *Spiraledge, Inc. v. Sea World Entertainment, Inc., et al.,* No. 13-cv-00296-BAS (BLM), 2014 WL 12059028 (S.D. Cal. June 18, 2014) are very different from those of this case. A copy of the motion to compel that lead to the *Spiraledge* decision is attached as Exhibit 2 to the June 1, 2018 Declaration of Melissa Rogers McCurdy ("McCurdy Decl.") being filed concurrently with this Reply. In *Spiraledge*, the Defendant and Plaintiff were both using the AQUATICA mark in commerce and the Defendant was relying upon an opinion of counsel specifically pertaining to the Plaintiff's trademark rights.[4] *See*

---

[4] There was also a record of the Trademark Office citing Spiraledge's trademarks against the trademark applications of SeaWorld, which is in stark contrast to the

8

McCurdy Decl., Ex. 2. Even SeaWorld conceded that the waiver resulting from reliance on its advice of counsel pertained to "its decision to use the Aquatica name and evaluation of success in litigation with Spiraledge." *See id*. at p. 10. Spiraledge is not instructive here. MEC simply has no support for the broad waiver it is seeking in this case and fairness does not suggest that any further documents should be produced to MEC.

## IV. Conclusion

The documents and communications on the privilege logs of ISN and Gray Robinson (which have to do with adversarial proceedings filed by MEC) do not concern the same subject matter as the 2011 Kautz Opinion (which has to do with availability of a MONSTER mark for use with tools, and nowhere mentions MEC or any MEC marks). *See* Fed. R. Evid. 502(a)(2). Furthermore, communications with and work product of "trial counsel" are ordinarily protected from waiver. ISN respectfully submits that the Court should find that ISN's reliance on the Kautz opinion has not resulted in the broad waiver of privilege being sought by MEC.

Dated: June 1, 2018        By: /s/ Melissa A. Rogers McCurdy
                                                       JEFFREY S. STANDLEY
                                                       (OH# 047248)
                                                       jstandley@standleyllp.com
                                                       MELISSA A. ROGERS MCCURDY

---

history between MEC and Defendant where no similar rejections were made.

9

(OH #0084102)
mmccurdy@standleyllp.com
F. MICHAEL SPEED, JR.
(OH #0067541)
mspeed@standleyllp.com
DOUGLAS C. SMITH
(SBN 160013)
dsmith@smitlaw.com

Attorneys for Defendant
Integrated Supply Network, LLC