UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MONSTER ENERGY COMPANY,<br><br>    Plaintiff,<br>v.<br><br>INTEGRATED SUPPLY NETWORK, LLC,<br><br>    Defendant. | Case No.:  ED CV 17-548-CBM-RAO<br><br>**ORDER RE: PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT [68]** |

The matter before the Court is Plaintiff Monster Energy Company's Motion For Partial Summary Judgment. (Dkt. No. 69.)

## I. BACKGROUND

This action arises from Defendant's alleged unauthorized use of Plaintiff's trademarks[1] and trade dress.  Plaintiff asserts the following four causes of action

---

[1] Plaintiff's alleged trademarks include its "monster" trademark (not registered), and the following registered marks:  Monster Energy, M Monster Energy, Monster Rehab, Muscle Monster, Juice Monster, Monster Assault, Java Monster, UberMonster, Monster Unleaded, Monster Energy Unleaded, Monster Energy Absolutely Zero, Monster Energy Ultra Red, Monster Energy Ultra Blue, Monster Energy Ultra Black, Monster Energy Ultra Citron, Monster Energy Zero Ultra, Assault M Monster Energy, Lo-Card Monster Energy, Unleash the Beast!, Pump Up the Beast!, ReHab the Beast!, Unleash the Nitro Beast!, Unleash the Ultra Beast!, Unleash the Caffeine Free Beast!

against Defendant: (1) trademark infringement, trade dress infringement, and false designation of origin under 15 U.S.C. § 1125(a); (2) trademark infringement under 15 U.S.C. § 1114; (3) Unfair Competition under Cal. Bus. & Prof. Code §§ 17200 *et seq.*; and (4) California Common law unfair competition. Defendant asserts the following affirmative defenses: (1) no likelihood of confusion; (2) invalidity/unenforceability of Plaintiff's trademark rights; (3) failure to state a claim; (4) fair use, nominative fair use and/or descriptive use; (5) claims are barred by the applicable statute of limitations; (6) laches; (7) unclean hands; (8) estoppel; and (9) abandonment. (Dkt. No. 10, ¶¶ 83-91.) Defendant also asserts a single counterclaim against Plaintiff for cancellation of Plaintiff's trademark registrations. (*Id.* ¶¶ 92-141.)

## II. STATEMENT OF THE LAW

On a motion for summary judgment, the Court must determine whether, viewing the evidence in the light most favorable to the nonmoving party, there are any genuine issues of material fact. *Simo v. Union of Needletrades, Indus. & Textile Employees*, 322 F.3d 602, 609-10 (9th Cir. 2003); Fed. R. Civ. P. 56. Summary judgment against a party is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. A factual dispute is "material" only if it might affect the outcome of the suit under governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue is "genuine" only if there is a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party. *Id.* at 249. The evidence presented by the parties must be admissible. Fed. R. Civ. P. 56(e). In judging evidence at the summary judgment stage, the Court does not make credibility determinations or weigh conflicting evidence. *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). Rather, "[t]he evidence of

the nonmovant is to be believed, and all justifiable inferences are to be drawn in [the nonmovant's] favor." *Anderson*, 477 U.S. at 255. But the non-moving party must come forward with more than "the mere existence of a scintilla of evidence." *Id.* at 252.

## III. DISCUSSION

Plaintiff seeks summary judgment on: (1) Defendant's affirmative defenses of trademark invalidity/unenforceability, and unclean hands; and (2) Defendant's counterclaim for cancellation of Plaintiff's trademark registrations.

### A. Invalidity of Plaintiff's Registrations

#### (1) Incontestable Marks

Plaintiff argues it is entitled to summary judgment on Defendant's invalidity affirmative defense on the ground some of its trademark registrations have become incontestable under 15 U.S.C. § 1065 because more than five years have passed since they were registered. It is undisputed that the following registrations are incontestable: Reg. Nos. 3,044,314, 3,044,315, 3,057,061, 3,134,841, 3,134,842, 3,740,050, 3,852,118, 3,959,457, 3,908,600, 3,908,601, 3,914,828, 4,036,680, 4,036,681, and 4,111,964. Therefore, at trial, Defendant cannot assert the affirmative defense that these incontestable registrations are invalid.

Plaintiff, however, does not have registrations for the word "monster" alone, but seeks to assert its trademark rights for the word "monster" in this action (*see* Compl. ¶¶ 8, 10, 13). There is no evidence that Plaintiff's mark comprised of the word "monster" alone is incontestable. Accordingly, Defendant may assert at trial that Plaintiff's "monster" mark is invalid.

#### (2) Secondary Meaning

Plaintiff also argues it is entitled to summary judgment on Defendant's invalidity affirmative defense based on lack of secondary meaning because Plaintiff's marks are inherently distinctive, and therefore no showing of secondary

3

meaning is necessary as a matter of law.

A trier of fact could reasonably conclude that Plaintiff's "monster energy" marks are descriptive because they describe the attributes of Plaintiff's beverage products. *See Yellow Cab Co. of Sacramento v. Yellow Cab Co. of Elk Grove, Inc.*, 419 F.3d 925, 926 (9th Cir. 2005) ("Descriptive terms ... describe a person, a place or an ***attribute of a product***.") (emphasis added); *see also Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Mgmt., Inc.*, 618 F.3d 1025, 1034 (9th Cir. 2010); *Banc of California, Inc. v. Farmers & Merchants Bank of Long Beach*, 2017 WL 5592903, at *1 (C.D. Cal. Oct. 27, 2017); *Link v. Springut*, 2015 WL 12426122, at *7-*8 (C.D. Cal. Feb. 26, 2015). Therefore, there is a triable issue of fact regarding whether secondary meaning is required with respect to Plaintiff's "monster energy" marks. Accordingly, Defendant is not precluded from asserting an invalidity defense at trial based on the lack of secondary meaning as to Plaintiff's "monster energy" marks.[2]

As to Plaintiff's marks which include the word "beast" (i.e., Unleash the Beast!, Pump Up the Beast!, ReHab the Beast!, Unleash the Nitro Beast!, Unleash the Ultra Beast!, Unleash the Caffeine Free Beast!), the terms used in those marks do not describe the attributes or characteristics of Plaintiff's beverage products other than the mark Unleash the Caffeine Free Beast! (that mark describes the caffeine-free attribute of the beverage). Therefore, a trier of fact could not reasonably conclude that the "beast" marks (other than the "Unleash the Caffeine

---

[2] Although Plaintiff offers evidence of its advertising and marketing expenditures and sales figures in support of its contention that its marks have achieved secondary meaning, such evidence does not clearly identify what portion of the advertising, marketing and sales figures are attributable for the time period prior to when Defendant launched its monster mobile brand. *See Levi Strauss & Co. v. Blue Bell, Inc.*, 778 F.2d 1352, 1358 (9th Cir. 1985); *see also Miller v. Glenn Miller Prods., Inc.*, 454 F.3d 975, 991 (9th Cir. 2006); *Rodesh v. Disctronics, Inc.*, 8 F.3d 29 (9th Cir. 1993).

Free Beast!" mark) are descriptive, and that secondary meaning is required as to those marks. *See Int'l Jensen, Inc. v. Metrosound USA, Inc.*, 4 F.3d 819, 824 (9th Cir. 1993); *AMF Inc. v. Sleekcraft*, 599 F.2d 341, 349 (9th Cir. 1979), *abrogated on other grounds by Mattel, Inc. v. Walking Mountain Prods.*, 353 F.3d 792 (9th Cir. 2003). There is a triable issue of fact, however, regarding whether Plaintiff's "Unleash the Caffeine Free Beast!" mark is distinctive or descriptive because a trier of fact could reasonably conclude that that mark describes the attributes of Plaintiff's product. *See Yellow Cab Co. of Sacramento*, 419 F.3d at 926; *Fortune Dynamic*, 618 F.3d at 1034. Therefore, a triable issue of fact exists regarding whether secondary meaning is required with respect to Plaintiff's "Unleash the Caffeine Free Beast!" mark. Therefore, Defendant cannot assert an invalidity defense at trial based on lack of secondary meaning as to Plaintiff's "beast" marks except for Plaintiff's "Unleash the Caffeine Free Beast" mark.

### (3) Plaintiff's Use of Marks

Defendant argues Plaintiff's Registration Nos. 4,721,432 and 4,721,433 are invalid because they are for "service marks" that can only be registered for activities that primarily benefit someone else other than the applicant. Plaintiff's Registration No. 4,721,433 for its "M-Claw" logo and Plaintiff's Registration No. 4,721,432 for Plaintiff's "Monster Energy" mark each state that the registration is for a "service mark" for "promoting goods and services in the sports, motorsports, electronic sports, and music industries through the distribution of printed, audio and visual promotional materials; promoting sports and music events and competitions for others."

Although the Lanham Act does not define "services," courts have found that "service" for purposes of the Act involves "the performance of labor for the benefit of another." *See, e.g., Morningside Grp. Ltd. v. Morningside Capital Grp., LLC*, 182 F.3d 133, 137-38 (2d Cir. 1999) (quoting *In re Canadian Pac. Ltd.*, 754 F.2d 992, 994 (Fed. Cir. 1985)); *Charleston Labs., Inc. v. SIDIS Corp.*, 2017 WL

3725189, at *7 (E.D. Ky. Aug. 29, 2017); *Rockland Exposition, Inc. v. All. of Auto. Serv. Providers of New Jersey*, 894 F. Supp. 2d 288, 304 (S.D.N.Y. 2012); *Par Elec. Contractors, Inc. v. Atkins*, 2007 WL 2713012, at *3 (N.D.N.Y. Sept. 14, 2007); *Huthwaite, Inc. v. Sunrise Assisted Living, Inc.*, 261 F. Supp. 2d 502, 512-13 (E.D. Va. 2003). Defendant does not cite to any case wherein a court has found that a service must be "primarily" for the benefit of a third party to be protectable under the Lanham Act, and cases read by the Court addressing this issue have rejected such a requirement. *See Morningside Grp. Ltd.*, 182 F.3d at 137-38; *Huthwaite, Inc.*, 261 F. Supp. 2d at 512-13; *Murphy v. Provident Mutual Life Ins. Co.*, 923 F.2d 923, 927 (2d Cir. 1990); *Rockland Exposition, Inc.*, 894 F. Supp. 2d at 304; *Par Elec. Contractors, Inc.*, 2007 WL 2713012, at *3.[3]

Here, Defendant offers no evidence that Plaintiff's activities in relation to the sports competitions and music events do not benefit third parties.[4] Therefore, there is no genuine issue of material fact that Plaintiff's sponsorship/promotional activities as listed in its Registration Nos. Nos. 4,721,432 and 4,721,433 are

---

[3] *See also In re United States Tobacco Co.*, 1986 WL 83321, at *1-*2 (T.T.A.B. 1986).

[4] Plaintiff's CEO declares:

> When [Plaintiff] promotes an event, athlete, team or a third-party's product, [Plaintiff] provides legitimacy to the event, athlete, team or product among [Plaintiff's] fan base. [Plaintiff] generates extensive exposure for the event, athlete, team or product in ways such as promotion on [Plaintiff's] website and social media pages, promotional materials at the point-of-sale of [Plaintiff's] beverage products and giveaways. The validation and legitimacy provided to the athlete, team, event or third-party product by [Plaintiff's] promotion and sponsorship increases the likelihood that [Plaintiff's] fans will also become fans of the sponsored athletes and teams, attendees of the sponsored events and consumers of the third-party products.

(Sacks Decl. ¶ 28.)

protectable services because they benefit others.[5] Therefore, Defendant is precluded at trial from asserting an invalidity defense based on the ground Plaintiff's activities as listed in Registration Nos. 4,721,432 and 4,721,433 are not protectable "services" under the Lanham Act because they do not primarily benefit someone else other than Plaintiff.

### (4) Goods Not Recited in Plaintiff's Registrations

Defendant's invalidity defense is also based on Plaintiff's attempt to assert its rights against Defendant's automotive tools and equipment, which are not goods recited in any of Plaintiff's trademark registrations. The issue of whether registered marks can be asserted for alleged infringement by another through goods or services not listed in the registration, however, goes to the scope of the registration, not its validity. *See Pom Wonderful LLC*, 775 F.3d 1118, 1124 (9th Cir. 2014) ("Although the *validity* of a registered mark extends only to the listed goods or services, an owner's *remedies* against confusion with its valid mark are not so circumscribed. Thus, having established a protectable interest by proving it is the owner of a registered trademark, [Pom Wonderful] does not additionally have to show that [Pur's] allegedly confusing use involves the *same* goods or services listed in the registration.") (internal quotations and citations omitted); *Applied Info. Sci. Corp. v. eBay, Inc.*, 511 F.3d 966, 971 (9th Cir. 2007) ("[T]he scope of validity and the scope of relief for infringement are not coextensive. Although the *validity* of a registered mark extends only to the listed goods or services, an owner's *remedies* against confusion with its valid mark are not so circumscribed. The language of the infringement statute, 15 U.S.C. § 1114, does

---

[5] Moreover, Plaintiff's activities are "services" within the meaning of the Lanham Act because the act of sponsoring/promoting music events and sports is not an activity that a beverage company necessarily or normally provides. *See Cottonwood Fin. Ltd. v. Cash Store Fin. Servs. Inc.*, 778 F. Supp. 2d 726, 739 (N.D. Tex. 2011); *In re United States Tobacco Co.*, 1986 WL 83321, at *2.

not limit remedies for allegedly infringing uses to those goods within the ambit of registration.") (emphasis in original). Therefore, Defendant is precluded from asserting an invalidity defense at trial based on the ground Defendant's products are not listed in Plaintiff's trademark registrations.

      (5)    **Trademark Misuse Through "Bullying"**

The parties disagree as to whether trademark misuse is a valid affirmative defense. Even assuming trademark misuse is a proper affirmative defense, Defendant's defense is based on Plaintiff's filings with the USPTO and the courts,[6] which are protected under the *Noerr-Pennington* doctrine. *See Manistee Town Ctr. v. City of Glendale*, 227 F.3d 1090, 1092 (9th Cir. 2000); *Or. Nat. Res. Council v. Mohla*, 944 F.2d 531, 534 (9th Cir. 1991); *Rock River Commc'ns, Inc. v. Universal Music Grp., Inc.*, 745 F.3d 343, 351 (9th Cir. 2013); *Sosa v. DIRECTV, Inc.*, 437 F.3d 923, 936–38 (9th Cir. 2006); *see also Adidas Am., Inc. v. TRB Acquisitions LLC*, 2017 WL 337983, at *4 (D. Or. Jan. 23, 2017); *Fiji Water Co., LLC v. Fiji Mineral Water USA, LLC*, 2010 WL 11518555, at *6 (C.D. Cal. Nov. 10, 2010); *Castaline v. Aaron Mueller Arts*, 2010 WL 583944, at *5 (N.D. Cal. Feb. 16, 2010); *adidas-Am., Inc. v. Payless Shoesource, Inc.*, 546 F. Supp. 2d 1029, 1079 n.18 (D. Or. 2008).[7] Therefore, Defendant cannot assert an

---

[6] Moreover, Plaintiff's conduct in enforcing its trademark rights with the courts and in USPTO proceedings does not constitute "misuse." *See, e.g., Gateway, Inc. v. Companion Prods.*, 320 F. Supp. 2d 912, 928-29 (D.S.D. 2002).

[7] Defendant fails to provide any evidence demonstrating (1) Plaintiff's filings with other courts and the USPTO were objectively baseless and filed to directly interfere with Plaintiff's competitors; or (2) Plaintiff has a policy of making filings with the USPTO or the courts without regard to the merits and for the purpose of injuring its market rivals. Therefore, there is no evidence that the two exceptions to immunity under the *Noerr-Pennington* doctrine—the "sham litigation" exception, and the "pattern" exception—apply here. *See James R. Glidewell Dental Ceramics, Inc. v. Keating Dental Arts, Inc.*, 2013 WL 655314, at *14 (C.D. Cal. Feb. 21, 2013); *Consumerinfo.com, Inc. v. Chang*, 2009 WL 10673581, at *3 (C.D. Cal. Sept. 14, 2009); *Am. Nat'l Mfg. Inc. v. Select Comfort Corp.*, 2016 WL

invalidity defense at trial based on trademark misuse through bullying.[8]

## B. Unclean Hands

Defendant asserts unclean hands as an affirmative defense based on statements made by Plaintiff's predecessor company during USPTO Opposition proceedings with a third party in 2003 that there were multiple "monster" marks coexisting in the marketplace in order to obtain registration for its marks. Defendant contends Plaintiff now takes a contradictory view by filing actions against third parties that use "monster" in commerce, including Defendant.

In general, to make out an unclean hands defense, the defendant must show that (1) the plaintiff's conduct was inequitable and (2) the plaintiff's inequitable conduct relates to the subject matter of its claims." *2Die4Kourt v. Hillair Capital Mgmt., LLC*, 2016 WL 4487895, at *9 (C.D. Cal. Aug. 23, 2016), *aff'd*, 692 F. App'x 366 (9th Cir. 2017) (citing *Fuddruckers. Inc. v. Doc's B.R. Others. Inc.*, 825 F.2d 837, 847 (9th Cir. 1987)); *see also Am. GNC Corp. v. LG Elecs., Inc.*, 2018 WL 400346, at *2 (S.D. Cal. Jan. 12, 2018) ("establishing unclean hands requires proof of inequitable conduct"). In the trademark context, however, "it is not enough that the trademark plaintiff engaged in misconduct regarding the trademark generally. Rather, the trademark defendant must also show that the plaintiff used the trademark with the specific intent to deceive consumers." *Id.* (citing *Japan Telecom. Inc. v. Japan Telecom Am., Inc.*, 287 F.3d 866, 870 (9th Cir. 2002) ("To show that a trademark plaintiff's conduct is inequitable, defendant must show that *plaintiff used the trademark to deceive consumers ....*") (emphasis added); *Dollar Sys., Inc., v. Avcar Leasing Sys., Inc.*, 890 F.2d 165, 173 (9th Cir.

---

9450472, at *4 (C.D. Cal. Sept. 28, 2016) (quoting *Toyo Tire & Rubber Co. v. CIA Wheel Grp.*, 2015 WL 4545187, at *3 (C.D. Cal. July 8, 2015)).

[8] Because the Court finds Defendant's invalidity defense based on trademark misuse/bullying is barred under the *Noerr-Pennington* doctrine, the Court does not reach the issue of whether permitting a defense based on trademark misuse/bullying would result in a waste of judicial resources.

9

1989) ("*Bad intent* is the essence of the defense of unclean hands.") (emphasis added); *see also Republic Molding Corp. v. B. W. Photo Utilities*, 319 F.2d 347, 350-51 (9th Cir. 1963) (noting that "[i]n trade-mark cases involving 'unclean hands' as a defense 'the courts will carefully weigh whether the representation actually leads to deception'").

While it is undisputed that Plaintiff's predecessor made a statement that there was a crowded field as to the mark "monster" to the USPTO in proceedings against a third party in 2003, Defendant does not offer any evidence that Plaintiff has used its marks with the specific intent to deceive consumers or the USPTO, that Plaintiff's registrations were fraudulently obtained, or that Plaintiff concealed evidence from or provided false information to the USPTO. *See, e.g., Johnson & Johnson Assocs., Inc. v. R.E. Serv. Co.*, 2005 WL 289978, at *7 (N.D. Cal. Feb. 4, 2005); *adidas-Am., Inc.*, 546 F. Supp. 2d at 1079 n.18; *Metal Jeans Inc. v. Affliction Holdings, LLC*, 2015 WL 3833858, at *3 (C.D. Cal. June 19, 2015). Moreover, statements by Plaintiff's predecessor to the USPTO regarding a crowded field fifteen years ago are not necessarily inconsistent with today's conditions. *See Hansen Bev. Co. v. Cytosport, Inc.*, 2009 U.S. Dist. LEXIS 120508, at *24 (C.D. Cal. Nov. 4, 2009).[9] Therefore, Defendant cannot assert an unclean hands defense at trial.

### C. Cancellation Counterclaim

Defendant asserts a single counterclaim against Plaintiff for cancellation of Plaintiff's trademark registrations with respect to two of Plaintiff's trademark registrations—Registration Nos. 4,721,432 and 4,721,433. Defendant argues these registrations should be cancelled because Plaintiff's they are for service

---

[9] Plaintiff offers evidence that it now sells 3 billion cans of drinks per year in the U.S., with estimated retail sales of approximately $6 billion per year, and that Plaintiff's energy drinks that display Plaintiff's marks hold a 42% market share of the U.S. energy drink market. (Sacks Decl. ¶ 37.)

marks, but Plaintiff's sponsorship/promotional activities are not "services" because they do not primarily benefit third parties. For the reasons discussed above, Plaintiff's sponsorship/promotional activities constitute "services" under the Lanham Act because there is no genuine issue of disputed fact that its activities benefit others. Accordingly, the Court grants Plaintiff's Motion as to Defendant's cancellation counterclaim.[10]

## IV. CONCLUSION

Accordingly, the Court **GRANTS IN PART AND DENIES IN PART** Plaintiff's Motion For Partial Summary Judgment as follows:

(1) Plaintiff's motion on Defendant's invalidity affirmative defense based on the ground Plaintiff's registrations are uncontestable is **DENIED**;

(2) Plaintiff's motion on Defendant's invalidity affirmative defense based on lack of secondary meaning as to Plaintiff's "beast" marks are **GRANTED** except as to Plaintiff's "Unleash the Caffeine Free Beast!" mark;

(3) Plaintiff's motion on Defendant's invalidity affirmative defense based on lack of secondary meaning as to Plaintiff's "monster" marks and "Unleash the Caffeine Free Beast!" mark is **DENIED**;

(4) Plaintiff's motion on Defendant's invalidity affirmative defense based on the ground Plaintiff's sponsorship/promotional activities with respect to Plaintiff's Registration Nos. 4,721,432 and 4,721,433 are not protectable services is **GRANTED**;

(5) Plaintiff's motion on Defendant's invalidity affirmative defense based on the ground Plaintiff's registered marks are being asserted against Defendant for goods and services not listed in Plaintiff's registrations is **GRANTED**;

(6) Plaintiff's motion on Defendant's invalidity affirmative defense based on trademark misuse/bullying is **GRANTED**;

---

[10] The Court does not reach the issue of whether Defendant lacks standing to challenge Plaintiff's "M-Claw" logo as to Registration No. 4,721,432.

(7) Plaintiff's motion on Defendant's unclean hands affirmative defense is **GRANTED**; and

(8) Plaintiff's motion on Defendant's cancellation counterclaim is **GRANTED**.

**IT IS SO ORDERED.**

DATED: June 4, 2018.

CONSUELO B. MARSHALL
UNITED STATES DISTRICT JUDGE