JEFFREY S. STANDLEY (OH # 0047248)
jstandley@standleyllp.com
MELISSA A. ROGERS MCCURDY (OH #0084102)
mmccurdy@standleyllp.com
F. MICHAEL SPEED, JR. (OH #0067541)
mspeed@standleyllp.com
Standley Law Group LLP
6300 Riverside Drive
Dublin, Ohio 43017
Telephone: (614) 792-5555
Fax: (614) 792-5536

DOUGLAS C. SMITH (SBN 160013)
dsmith@smitlaw.com
SMITH LAW OFFICES, LLP
4204 Riverwalk Parkway, Suite 250
Riverside, California  92505
Telephone: (951)509-1355
Facsimile: (951)509-1356
Attorneys for Defendant
Integrated Supply Network, LLC

IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MONSTER ENERGY COMPANY, a Delaware corporation,<br><br>Plaintiff,<br><br>v.<br><br>INTEGRATED SUPPLY NETWORK, LLC, a Florida limited liability company,<br><br>Defendant. | Case No. 5:17-CV-00548-CBM-(RAO)<br><br>**INTEGRATED SUPPLY NETWORK, LLC'S MEMORANDUM OF CONTENTIONS OF FACT AND LAW**<br><br>Honorable Consuelo B. Marshall<br><br>Complaint Filed: March 22, 2017<br><br>Pretrial Conference:<br>Date: August 21, 2018<br>Time: 2:30 p.m.<br><br>Trial:<br>Date:  September 25, 2018<br>Time: 10:00 a.m.<br>Ctrm:  8B |

i

# TABLE OF CONTENTS

**Page No.**

I.  INTRODUCTION……………………………..………………………1

II.  CLAIMS AND DEFENSES………………………..……………….4

A.  SUMMARY OF PLAINTIFF'S CLAIMS ................................................ 4

B.  THRESHOLD ELEMENTS REQUIRED TO ESTABLISH CLAIM I, FEDERAL TRADEMARK INFRINGEMENT, TRADE DRESS INFRINGEMENT AND FALSE DESIGNATION OF ORIGIN UNDER 15 U.S.C. § 1125(A)……………5

C.  THRESHOLD ELEMENTS REQUIRED TO ESTABLISH CLAIM II, FEDERAL TRADEMARK INFRINGEMENT UNDER 15 U.S.C. § 1114……………………………………………..6

D.  ELEMENTS REQUIRED TO ESTABLISH CLAIM III, UNFAIR COMPETITION UNDER CALIFORNIA BUSINESS & PROFESSIONS CODE §§ 17200 *ET SEQ.* ("UCL")………………………………………………………..7

E.  ELEMENTS REQUIRED TO ESTABLISH CLAIM IV, CALIFORNIA COMMON LAW UNFAIR COMPETITION…………...8

F.  DEFENDANT'S KEY EVIDENCE IN OPPOSITION TO EACH OF PLAINTIFF'S CLAIMS…………………………………10

    1.  Evidence in Opposition to Claim I: Federal Trademark Infringement, Trade Dress Infringement and False Designation of Origin Under 15 U.S.C. § 1125(a)………………..10

        a)  ISN is a tool distributor selling a niche line of mobile dealer distributed tools under a MONSTER MOBILE logo………………...............11

ii

# TABLE OF CONTENTS
## *Cnt'd*

**Page No.**

      b)    MEC is a beverage company selling energy drinks in a typical fashion under logos that emphasize a claw mark……………………..17

      c)    There is no Likelihood of Confusion between ISN and MEC……………….....................21

  2.    Evidence in Opposition to Claim II: Federal Trademark Infringement Under 15 U.S.C. § 1114……………………………28

  3.    Evidence in Opposition to Claim III: Unfair Competition Under California Business & Professions Code §§ 17200 *et seq*..………………………………………..29

  4.    Evidence in Opposition to Claim IV: California Common Law Unfair Competition………………………29

G.    SUMMARY OF DEFENDANT'S AFFIRMATIVE DEFENSES…………………………………………...29

H.    ELEMENTS REQUIRED TO ESTABLISH DEFENDANT'S FIRST AFFIRMATIVE DEFENSE, THE PLAINTIFF'S TRADEMARK RIGHTS ARE INVALID AND/OR UNENFORCEABLE…………………………………30

I.    ELEMENTS REQUIRED TO ESTABLISH DEFENDANT'S SECOND AFFIRMATIVE DEFENSE, THE PLAINTIFF'S CLAIMS ARE BARRED, IN WHOLE OR IN PART, BY THE APPLICABLE STATUTES OF LIMITATION…………………………………………..31

J.    ELEMENTS REQUIRED TO ESTABLISH DEFENDANT'S THIRD AFFIRMATIVE DEFENSE, THE PLAINTIFF'S CLAIMS ARE BARRED, IN WHOLE OR IN PART, BY THE DOCTRINE OF LACHES……………………………32

# TABLE OF CONTENTS
*Cnt'd*

Page No.

K.    ELEMENTS     REQUIRED     TO     ESTABLISH
DEFENDANT'S FOURTH AFFIRMATIVE DEFENSE,
THE PLAINTIFF'S CLAIMS ARE BARRED, IN WHOLE
OR IN PART, BY THE DOCTRINE OF ABANDONMENT............32

L.    DEFENDANT'S KEY EVIDENCE IN SUPPORT OF ITS
AFFIRMATIVE DEFENSES................................................33

    1.    Evidence in Support of Defendant's First Affirmative
Defense: The Plaintiff's Trademark Rights are Invalid
and/or Unenforceable.....................................................33

    2.    Evidence in Support of Defendant's Second
Affirmative Defense: The Plaintiff's Claims are Barred,
in whole or in part, by the Applicable Statutes of
Limitation.....................................................................34

    3.    Evidence in Support of Defendant's Third Affirmative
Defense: The Plaintiff's Claims are Barred, in whole or
in part, by the Doctrine of Laches......................................35

    4.    Evidence in Support of Defendant's Fourth Affirmative
Defense:  The Plaintiff's Claims are Barred, in whole
or in part, by the doctrine of abandonment................................36

III.    ANTICIPATED EVIDENTIARY ISSUES................................36

IV.    ISSUES OF LAW GERMANE TO THE CASE............................39

V.    REQUEST FOR BIFURCATION..........................................44

VI.    ISSUES TO BE TRIED BY THE JURY AND COURT..................44

VII.    ATTORNEYS' FEES......................................................44

VIII.    ABANDONED ISSUES....................................................44

iv

TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD: Defendant, Integrated Supply Network, LLC ("ISN") submits this memorandum of Contentions of Fact and Law pursuant to Local Rule 16-4 in anticipation of the Final Pretrial Status Conference on August 21, 2018.

## I.   INTRODUCTION

ISN is a Florida-based company with a history of selling tools and equipment for the automotive market since 1984. ISN's primary business is serving as a distributor for third-party tool brands (i.e., "national brands"), getting the products to market via various distribution channels such as auto parts stores, independent retail stores, and mobile tool distributorships. However, ISN does have several "house brands" that it sells under its own trademarks.

During 2010, ISN set out to release a house brand of tools for a niche market, mobile-dealer-distributed tools and automotive equipment, sold out of "tool trucks," under the brand name "Monster." ISN performed an in-house search using the internet to see if "monster" was available for this purpose. ISN also engaged its outside trademark attorney to perform a search. ISN received advice from counsel that, while there were several other tool companies that had registered marks that included "monster," ISN could use "monster," and it would be best to combine "monster" with another term. ISN went on to develop the

1

MONSTER MOBILE logo, which ISN went on to register with the U.S. Trademark Office and which was assigned U.S. Registration No. 4,951,671.

Plaintiff Monster Energy Company (hereinafter "MEC") is a beverage company that sells energy drinks under various trademarks including the MONSTER ENERGY logo. This case centers on MEC's allegations that ISN has willfully infringed upon MEC's trademarks and trade dress through ISN's sale of MONSTER MOBILE products. (Dkt. No. 1.)   In this trial, MEC alleges infringement of twenty (20) registered marks, including alleged common law rights in those marks. (*See* Dkt. No. 1; *See also* July 31st Declaration of Melissa Rogers McCurdy at Exhibit I.)  MEC also apparently intends to assert a right in "monster" itself.[1]  MEC, however, has no registration for the term "monster" on its own. MEC is also alleging infringement of a purported trade dress in this case, which MEC defines as "a stylized font for the mark MONSTER on a dark background, a bright contrasting accent color, including bright green, and an overall aggressive, edgy theme" (hereinafter "the alleged trade dress"). (Dkt. No. 1 at ¶ 13.) MEC has also made claims of statutory unfair competition and common law unfair competition; those claims are based on MEC's allegations of trademark and trade dress infringement. (*See* Dkt. No. 1 at Claims III and IV)

---

[1] ISN has filed a *Motion in Limine* on this issue.  (Dkt. No. 241)

2

ISN disputes each of MEC's claims, and is asserting several affirmative defenses in this case. It is undisputed that ISN had been selling its MONSTER MOBILE line of automotive tools and equipment for several years before MEC ever contacted ISN. By that point, ISN had already filed to register its MONSTER MOBILE logo as associated with "mobile retail store and wholesale distributorship services featuring automotive and industrial tools, supplies and equipment" with the U.S. Trademark Office. A corresponding trademark registration was issued to ISN for the MONSTER MOBILE logo. None of MEC's trademarks were ever cited by the U.S. Trademark Office against ISN's trademark applications, which cannot be understated since the Trademark Office searches each and every application it receives before granting a registration for a trademark. The Trademark Office is the foremost government agency assigned the task of preventing the allowance of any marks that would cause consumer confusion, so it is important to note they saw no conflict between ISN's mark and MEC's marks. There is also no evidence that anyone involved in ISN's adoption of a mark comprising "monster" was familiar with MEC prior to ISN's present dispute with MEC. In December of 2010, when ISN began using "monster" on automotive tools and equipment, MEC had only obtained trademark registrations for beverage-related goods. (Ex. 1.)

"Monster" is a dictionary-defined term that is often used to refer to something large and/or tough. It is undisputed that MEC is not the only company using "monster" in a trademark. MEC has itself attested to the crowded nature of the field of "monster" trademark users and the "narrow" scope of rights to which each user is entitled. Other well-known entities even use "monster" in conjunction with motorsports and were doing so prior to MEC.[2]  Consumers are not likely to be confused between ISN's use of its MONSTER MOBILE marks on mobile-dealer distributed automotive tools and equipment and MEC's energy drink brand, and ISN should prevail in its defense of the remaining claims.

## II.   CLAIMS AND DEFENSES
### (Local Rule 16-4.1)

A.   **SUMMARY OF PLAINTIFF'S CLAIMS**

1. **Claim I:** Federal Trademark Infringement, Trade Dress Infringement and False Designation of Origin Under 15 U.S.C. § 1125(a)

2. **Claim II:** Federal Trademark Infringement Under 15 U.S.C. § 1114

3. **Claim III**: Unfair Competition Under California Business & Professions Code §§ 17200 *et seq.*

4. **Claim IV:** California Common Law Unfair Competition

---

[2]This is relevant because MEC is alleging that its trademark use is related to that of ISN's because it has actively sponsored motorsports events and athletes over the years.

4

**B.** **THRESHOLD ELEMENTS REQUIRED TO ESTABLISH CLAIM I, FEDERAL TRADEMARK INFRINGEMENT, TRADE DRESS INFRINGEMENT AND FALSE DESIGNATION OF ORIGIN UNDER 15 U.S.C. § 1125(A)**

On Plaintiff's claim for trade dress infringement, Plaintiff has the burden of proving each of the following elements by a preponderance of the evidence:

1. The alleged trade dress is distinctive;

2. MEC owns the alleged trade dress as trade dress;

3. The alleged trade dress is nonfunctional; and

4. that ISN used a trade dress confusingly similar to the alleged trade dress without the consent of Plaintiff in a manner that is likely to cause confusion among ordinary consumers as to the source, sponsorship, affiliation, or approval of ISN's goods.

*See* 9th Cir. Man. Of Model Jury Instr., 15.7 (2017); *see also Blumenthal Distrib. V. Herman Miller, Inc.*, 2017 U.S. Disti. LEXIS 121041 at *25 (C.D. Cal. Aug. 1, 2017); *see also Spark Indus., LLC v. Kretek Int'l, Inc.,* No. CV 14-5726-GW(ASx), 2014 U.S. Dist. LEXIS 125538 at *7 citing *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 769 (1992).

On Plaintiff's claim for Federal trademark infringement and false designation of origin, Plaintiff has the burden of proving each of the following elements by a preponderance of the evidence:

1. That the asserted trademarks are valid and protectible;

5

2. That the Plaintiff owns the asserted marks as trademarks;[3] and

3. That ISN used a copy, reproduction, counterfeit, or colorable imitation of the Plaintiff's mark in a manner likely to cause confusion among ordinary purchasers as to the source, sponsorship, affiliation, or approval of ISN's goods.

*See* 9th Cir. Man. Of Model Jury Instr., §§ 15.5, 15.6 (2017); *see also Toho Co., Ltd. v. William Morrow & Co.,* 33 F. Supp. 2d 1206, 1210 (C.D. Cal. 1998).

## C.   THRESHOLD ELEMENTS REQUIRED TO ESTABLISH CLAIM II, FEDERAL TRADEMARK INFRINGEMENT UNDER 15 U.S.C. § 1114

On Plaintiff's claim for trademark infringement under 15 U.S.C. § 1114 (infringement of a registered mark), Plaintiff has the burden of proving each of the following elements by a preponderance of the evidence:

1. That the asserted marks are registered;

2. That the asserted trademarks are valid and protectible;

3. That the Plaintiff owns the asserted marks as trademarks; and

4. That ISN used a copy, reproduction, counterfeit, or colorable imitation of the Plaintiff's mark in a manner likely to cause confusion among ordinary

---

[3] ISN notes that if any asserted mark(s) are only found to be valid because they have acquired secondary meaning, then Plaintiff's proof of ownership requires it to prove that the mark(s) had acquired secondary meaning with the relevant consuming public before ISN began using the accused marks.

purchasers as to the source, sponsorship, affiliation, or approval of ISN's goods.

*See* 9th Cir. Man. Of Model Jury Instr., §§ 15.5, 15.6 (2017); *see also Toho Co., Ltd. v. William Morrow & Co.,* 33 F. Supp. 2d 1206, 1210 (C.D. Cal. 1998).

Federal Trademark Infringement. *See* 9th Cir. Man. Of Model Jury Instr., § 15.6 (2017); *Toho Co., Ltd. v. William Morrow & Co.,* 33 F. Supp. 2d 1206, 1210 (C.D. Cal. 1998); *Starbuzz Tobacco, Inc. v. Addison Specialty Servs.*, No. 13CV1539-MMA (KSC), 2014 U.S. Dist. LEXIS 194583, at *10-12 (S.D. Cal. Aug. 7, 2014).

## D. **ELEMENTS REQUIRED TO ESTABLISH CLAIM III, UNFAIR COMPETITION UNDER CALIFORNIA BUSINESS & PROFESSIONS CODE §§ 17200 *ET SEQ.* ("UCL")**

MEC'S UCL claim is predicated entirely on claims of trade dress and trademark infringement. Accordingly, to prove a violation of the UCL, MEC has the burden of proving that its trade dress or trademarks have been infringed by ISN. The Plaintiff can only prove trade dress infringement by establishing the following by the preponderance of the evidence:

1. The alleged trade dress is distinctive;

2. MEC owns the alleged trade dress as trade dress;

3. The alleged trade dress is nonfunctional; and

7

4. that ISN used a trade dress confusingly similar to the alleged trade dress without the consent of Plaintiff in a manner that is likely to cause confusion among ordinary consumers as to the source, sponsorship, affiliation, or approval of ISN's goods.

*See* 9th Cir. Man. Of Model Jury Instr., 15.7 (2017); *see also Blumenthal Distrib. V. Herman Miller, Inc.*, 2017 U.S. Disti. LEXIS 121041 at *25 (C.D. Cal. Aug. 1, 2017); *see also Spark Indus., LLC v. Kretek Int'l, Inc.,* No. CV 14-5726-GW(ASx), 2014 U.S. Dist. LEXIS 125538 at *7 citing *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 769 (1992).

Plaintiff will not prove there has been a trademark infringement unless it shows each of the following elements by a preponderance of the evidence:

1. That the asserted trademarks are valid and protectible;

2. That the Plaintiff owns the asserted marks as trademarks; and

3. That ISN used a copy, reproduction, counterfeit, or colorable imitation of the Plaintiff's mark in a manner likely to cause confusion among ordinary purchasers as to the source, sponsorship, affiliation, or approval of ISN's goods.

*See* 9th Cir. Man. Of Model Jury Instr., §§ 15.5, 15.6 (2017); *see also Toho Co., Ltd. v. William Morrow & Co.,* 33 F. Supp. 2d 1206, 1210 (C.D. Cal. 1998).

**E.   <u>ELEMENTS REQUIRED TO ESTABLISH CLAIM IV, CALIFORNIA COMMON LAW UNFAIR COMPETITION</u>**

8

Plaintiff's fourth claim is for unfair competition under the common law of California, which is a tort. The Plaintiff has alleged common law unfair competition by ISN based on allegations of trade dress and trademark infringement. Accordingly, the Plaintiff must prove the elements of trade dress infringement or those of trademark infringement in addition to certain elements required by tort law.

The Plaintiff must establish the following by the preponderance of the evidence to prove trade dress infringement:

1. The alleged trade dress is distinctive;

2. MEC owns the alleged trade dress as trade dress;

3. The alleged trade dress is nonfunctional; and

4. that ISN used a trade dress confusingly similar to the alleged trade dress without the consent of Plaintiff in a manner that is likely to cause confusion among ordinary consumers as to the source, sponsorship, affiliation, or approval of ISN's goods.

*See* 9th Cir. Man. Of Model Jury Instr., 15.7 (2017); *see also Blumenthal Distrib. V. Herman Miller, Inc.*, 2017 U.S. Disti. LEXIS 121041at *25 (C.D. Cal. Aug. 1, 2017); *see also Spark Indus., LLC v. Kretek Int'l, Inc.,* No. CV 14-5726-GW(ASx), 2014 U.S. Dist. LEXIS 125538 at *7 citing *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 769 (1992).

Plaintiff will not prove there has been a trademark infringement unless it shows each of the following elements by a preponderance of the evidence:

1.  That the asserted trademarks are valid and protectible;

2.  That the Plaintiff owns the asserted marks as trademarks; and

3.  That ISN used a copy, reproduction, counterfeit, or colorable imitation of the Plaintiff's mark in a manner likely to cause confusion among ordinary purchasers as to the source, sponsorship, affiliation, or approval of ISN's goods.

*See* 9th Cir. Man. Of Model Jury Instr., §§ 15.5, 15.6 (2017); *see also Toho Co., Ltd. v. William Morrow & Co.,* 33 F. Supp. 2d 1206, 1210 (C.D. Cal. 1998).

In addition to proving there has been a trademark or trade dress infringement, the Plaintiff also has the burden of proving, by a preponderance of the evidence, the following elements:

1.  That ISN's conduct amounts to passing off.

2.  That the Plaintiff suffered a competitive injury as a result of ISN's actions.

*Bank of the W. v. Superior Court*, 2 Cal. 4th 1254, 1264, 10 Cal. Rptr. 2d 538, 544, 833 P.2d 545, 551 (1992).

**F.  DEFENDANT'S KEY EVIDENCE IN OPPOSITION TO EACH OF PLAINTIFF'S CLAIMS**

**1.  Evidence in Opposition to Claim I: Federal Trademark Infringement, Trade Dress Infringement and False Designation of Origin Under 15 U.S.C. § 1125(a)**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

The following evidence will be introduced by ISN in the trial of this matter to show that it has not violated 15 U.S.C. § 1125(a):

**a)**      **ISN is a tool distributor selling a niche line of mobile dealer distributed tools under a MONSTER MOBILE logo**

ISN is a distributor of tools and automotive equipment. As discussed above, ISN distributes many brands of tools and equipment through various channels of commerce. The products at issue in this case are a line of automotive tools and equipment that ISN sells to mobile tool distributors (i.e. tool trucks) that in turn sell the products to end users. The MONSTER MOBILE logo utilized by ISN on the relevant product line is as follows:



The tools and equipment sold under the MONSTER MOBILE brand are professional-grade, high quality tools. The following are exemplary images of some of the MONSTER MOBILE products sold by ISN:

11











As a professional grade tool line that is sold by mobile tool dealers, the MONSTER MOBILE products are sold primarily from the interior of tool trucks, as depicted in the below images:





1
2
3
4
5
6
7
8
9
10
11
12
13



14
15
16
17
18
19
20
21
22
23
24
25
26



27
28



The MONSTER MOBILE products are sold in environments that emphasize automotive tools and equipment.

ISN also markets the MONSTER MOBILE line of products through various platforms that focus on professional grade tools and automotive equipment. For example, ISN markets the MONSTER MOBILE line in the publication Tech's Edge, shown below:



ISN also utilizes social media to promote MONSTER MOBILE automotive tools and equipment. ISN does not utilize the motorsports industry for marketing the MONSTER MOBILE line.

        **b)**    **MEC is a beverage company selling energy drinks in a typical fashion under logos that emphasize a claw mark**

        The Plaintiff, MEC, is a beverage company that sells a line of energy drinks under claw logos and alleged trademarks that describe MEC's drinks: such as

MONSTER ENERGY. The following image shows several of the energy drinks

sold by MEC:



MEC sells its products in a manner that is typical for energy drinks, primarily

through convenience stores and super markets. The following image is illustrative

of how MEC's products are sold:



MEC has indicated that the household penetration rate for energy drinks (i.e., the households that have an awareness of energy drinks) is around 18 percent.

Like many other energy drink companies, and many other types of companies in general, MEC has participated in motorsport sponsorships as a means of advertising its products. MEC's sponsorships for many years were focused on motorcycle racing:



Then, in 2017, MEC became the title sponsor of NASCAR.

While MEC asserts numerous trademark registrations in this case, many of those registrations did not exist in December of 2010. In 2010, MEC only had trademark registrations for beverages and nutritional supplements (and indeed, these are still the goods recited in the vast majority of MEC's trademark registrations). To this day, MEC has no trademark registrations for any type of tools, and it has no trademark registrations for "monster" on its own. In fact, MEC was unable to obtain a registration for "monster" on its own from the United States Trademark Office. MEC filed for such a registration, but the Trademark Office refused registration in light of numerous pre-existing trademark registrations for marks comprising "monster" that were already owned by third parties. The application was eventually abandoned by MEC. Indeed, in trying to obtain its own trademark rights over the numerous third parties that use "monster" in commerce, MEC represented to the United States Trademark Office that "given

the prevalence of MONSTER marks on the Register and in the marketplace…

even minor differences in the marks would eliminate any likelihood of

confusion."

> c)    **There is no Likelihood of Confusion between ISN
>        and MEC**

MEC's allegation that the consuming public is likely to be confused by ISN's

sale of its MONSTER MOBILE tools and equipment cannot be supported. The

Ninth Circuit has established that likelihood of confusion is typically assessed

using the following factors:

1.    strength of mark;

2.    proximity of goods;

3.    similarity of the marks;

4.    evidence of actual confusion;

5.    marketing channels used;

6.    type of goods and the degree of care likely to be exercised by the

      purchaser;

7.    defendant's intent in selecting the mark; and

8.    likelihood of expansion of the products lines.

*See AMF, Inc. v. Sleekcraft Boats,* 599 F.2d 341 (9th Cir. 1979).  These are referred

to as the *Sleekcraft* factors.  ISN has substantial evidence indicating that each of

these factors should be decided in ISN's favor.

21

ISN will introduce testimony from ISN and ISN employees including Don Barry, Bruce Weber, Scott Pilkenton, David Pentecost, Jarret Strawn, and Shelly Stoneman regarding ISN's business, ISN's use and adoption of the accused marks and trade dress, the mobile tool distribution market/industry, ISN's sale of MONSTER MOBILE tools and equipment including the price points of the products, ISN's limited use of "FEED THE BEAST," as well as ISN's good faith adoption and use of its marks.

Testimony from MEC and MEC employees including Rodney Sacks, Mitch Covington, Marianne Radley, and Thomas Kelly regarding MEC's asserted trademarks and how they are used in commerce/the products sold under the marks, the prices at which MEC's products are sold, MEC's business and product sales, negative press received by MEC, including claims that the beverages have caused death in children (negating any contention that ISN would even want to be associated with MEC), the varied types of companies participating in motorsport sponsorships, household penetration rates for energy drinks, MEC's knowledge of third-party users of "monster" in commerce, MEC's trademark enforcement efforts, and MEC's knowledge of ISN will also be introduced as part of ISN's defense. ISN will show there is insufficient evidence for the jury to find that mobile tool trucks are a channel of trade for MEC beverages.

ISN will further present evidence regarding the descriptive nature of MEC's MONSTER ENERGY mark including how "monster" is used to refer to things that are large in size and how MEC uses the mark to sell "energy drinks" in relatively large cans. ISN will present evidence showing the narrow scope of Plaintiff's trademark rights including through showing third party use of "monster" and "beast" in commerce including prior representations regarding the same made by Plaintiff and evidence showing that Plaintiff regularly, knowingly, and willfully interacts with other third parties that use "monster" in commerce. ISN will also introduce evidence regarding the historic significance of the color green (as well as green with black) as associated with monsters in American movie and television and literary culture.

ISN will also present expert testimony including from Michael Wagner regarding the issue of damages and Hal Poret regarding the severe flaws in MEC's survey evidence. With respect to the testimony of Mr. Wagner, he will explain that MEC has grossly exaggerated the profits of ISN's MONSTER MOBILE business. Mr. Wagner will further explain that the facts do not support a reasonable royalty in this case, but if one were to be considered, the royalty should be much lower than that which is sought by MEC. Mr. Poret will testify that the survey offered by MEC, which MEC purports to show confusion in the market between MEC and ISN, measures nothing useful for this case at all. Specifically,

MEC's survey failed to provide participants with the critical context required in a likelihood of confusion survey. The survey did not indicate that the MONSTER MOBILE products displayed are sold as part of a line of tools and automotive equipment primarily through mobile tools trucks. Accordingly, the survey left participants to guess how the products are sold and where the products might be found, making its results wholly unreliable for purposes of measuring likelihood of confusion. The survey additionally tainted results by making leading and unnecessary reference(s) to beverages, and it had insufficient sample sizes for critical questions. MEC's survey also had to use a three-tiered question structure in order to arrive at its percentage confusion number. MEC's survey should accordingly be disregarded and given no weight.

As part of its case, ISN will introduce products of the Plaintiff and Defendant, ISN marketing materials, dictionary definitions of the terms "monster" and "beast," MEC's 10k corporate filing documents (showing among other things that they are indeed only a beverage company (i.e., they sell no tools) that sells energy drinks through retail points of sale), trademark search report documents for the accused marks that do not reference MEC or any of its trademarks, consent agreements that have been executed by MEC with other parties regarding use of "monster," third-party trademark registrations for marks comprising monster, an opinion from ISN's former trademark counsel Thomas

Kautz regarding ISN's adoption of a mark comprising "monster" on mobile tool distributed tools, and ISN's trademark registration for its MONSTER MOBILE logo.

ISN will also introduce evidence regarding MEC's inability to enforce the alleged trade dress. While some of the evidence already referenced above will be relevant to this issue, ISN's evidence tending to refute MEC's trade dress claim will additionally include evidence of third parties using green and black in commerce, MEC's utilization of numerous, varied color combinations in commerce, and MEC's failure to use "monster" on its own.

ISN has filed a motion *in limine* asking the Court to preclude MEC from arguing that it has trademark rights in "monster" on its own (i.e., "monster" without another word or symbol). If the Court denies ISN's motion, ISN will also present evidence regarding MEC's failure to use "monster" on its own as a trademark, the descriptive nature of "monster," third-party uses of "monster," and MEC's apparent abandonment of any intention it may have had to use "monster" on its own as a trademark. MEC has no evidence that "monster" on its own has acquired secondary meaning as a trademark of MEC with respect to any goods or services being offered by ISN in the MONSTER MOBILE line and certainly has no evidence that secondary meaning had been acquired as of December of 2010, when ISN began using it. Further, ISN will introduce a prior trademark

25

application filed by MEC for "monster" on its own that was denied by the U.S. Trademark Office and a consent agreement with a prior third-party user of "monster" for beverages, in which MEC agreed to abandon the trademark application.

Through the foregoing, ISN will show that MEC's trademark rights are limited and that MEC does not have rights in the alleged trade dress. ISN's marks and trade dress are different from the marks and trade dress used by MEC, ISN sells products not reasonably related to those of MEC, ISN products are not impulse purchases, ISN has never used a claw design mark as shown prominently in some of MEC's registrations and on all of MEC's products, and ISN is operating in a niche market which is not a channel of trade for MEC products. There is simply no likelihood of consumer confusion in this case.  In fact, ISN will be able to show at least the following with respect to the *Sleekcraft* factors:

**Strength of the Mark;**

The evidence will show that MEC's asserted Monster Energy trademarks are not strong.   The term "Monster" as a brand, or part of a brand, has been used by hundreds of business.  Furthermore, the evidence will show a common association between "monster" and something or someone large in stature.  The evidence will further show a common association between the term "monster" and monster images and that the association between the term

"monster" and the color green is ubiquitous.

**Proximity of goods;**

The evidence will show that MEC sells Energy Drinks, not tools.  ISN sells tools and accessories through mobile truck distribution channels

**Similarity of the Marks;**

The evidence will show that the subject marks are dissimilar.  MEC uses the its M claw plus Monster Energy as its brand (essentially M Monster Energy). ISN uses a stylized Monster Mobile mark with no claw.

**Evidence of Actual Confusion;**

MEC has no evidence that any consumer's decisions were influenced by any alleged belief that the parties' brands are related.  MEC's survey is flawed and it has at best *de minimis* evidence of confusion.

**Marketing Channels Used;**

The evidence will show that ISN traditionally sells it tools through mobile truck distribution, while MEC traditionally sells its beverages through retailers such as grocery and convenience stores.

**Type of Goods and the Degree of Care Likely to be Exercised by the Purchaser;**

The evidence will show that tool buyers purchasing expensive, professional grade tools are in a vastly different place than a person in a convenience store

who wants a Monster Energy drink.   The tool buyer is likely to exercise much greater care than the average drink buyer.

**Defendant's Intent in Selecting the Mark;**

The evidence will show that ISN's intent to select is brand, Monster Mobile, was based upon a desire to have a brand image that evoked strength and toughness in a tool line, to bolster its mobile tool division. ISN obtained advice of counsel in selecting its mark. ISN in no way copied or tried to associate itself with MEC's Monster Energy or Beast trademarks.   In over 250,000 pages of ISN produced emails in this case (using search keywords chosen by MEC), not one email was found that shows any intent to adopt or mimic or benefit from MEC's brand in any way.   MEC's problems with lawsuits filed by survivors of deceased MEC product consumers who died after allegedly drinking MEC energy drinks, is further evidence that ISN did not intend to try to copy or pattern their brand after MEC 's brand.

**Likelihood of Expansion of the Products Lines.**

The evidence will show that MEC has no desire to sell tools in mobile tool truck distribution channels.

ISN will further show that even if the jury were to find for MEC on its claim for infringement, ISN has not been willful.

      **2.**     **Evidence in Opposition to Claim II: Federal Trademark Infringement Under 15 U.S.C. § 1114**

The evidence used by ISN in its defense of Claim II will substantially overlap with the evidence introduced in ISN's defense of Claim I. However, because Claim II only seeks redress for the infringement of registered trademarks, much of the evidence introduced by ISN regarding MEC's trade dress claim and MEC's assertion of "monster" on its own, will not be relevant to this claim since MEC has no trade dress registration and no registration for "monster" on its own.

**3.      Evidence in Opposition to Claim III: Unfair Competition Under California Business & Professions Code §§ 17200 *et seq.***

The evidence used by ISN in its defense of Claim I will be identical to the evidence introduced in ISN's defense of Claim I.

**4.      Evidence in Opposition to Claim IV: California Common Law Unfair Competition**

The evidence used by ISN in its defense of Claim IV will substantially overlap with the evidence introduced in ISN's defense of Claim I. This evidence will also show that ISN has not been "passing off" its goods as those of MEC and that MEC has not suffered any injury or damage as a result of ISN's actions. MEC cannot prevail in its claim of common law unfair competition.

**G.      SUMMARY OF DEFENDANT'S AFFIRMATIVE DEFENSES**

ISN is asserting the following four affirmative defenses in the trial of this case:

1. **FIRST AFFIRMATIVE DEFENSE**: The Plaintiff's Trademark Rights are Invalid and/or Unenforceable

29

2. **SECOND AFFIRMATIVE DEFENSE**: The Plaintiff's Claims are Barred, in whole or in part, by the Applicable Statutes of Limitation

3. **THIRD AFFIRMATIVE DEFENSE**: The Plaintiff's Claims are Barred, in whole or in part, by the Doctrine of Laches

4. **FOURTH AFFIRMATIVE DEFENSE**: The Plaintiff's Claims are Barred, in whole or in part, by the doctrine of abandonment

**H.    ELEMENTS REQUIRED TO ESTABLISH DEFENDANT'S FIRST AFFIRMATIVE DEFENSE, THE PLAINTIFF'S TRADEMARK RIGHTS ARE INVALID AND/OR UNENFORCEABLE**

In any trademark infringement claim, the plaintiff has the burden of proving that it has a valid, protectable trademark. *See* 9th Cir. Man. Of Model Jury Instr., §§ 15.5, 15.6. With regards to any unregistered marks, there is no presumption of validity. *Filipino Yellow Pages, Inc. v. Asian Journal Publ'ns, Inc.*, 198 F.3d 1143, 1147 (9th Cir. 1999). Even when the Plaintiff's mark is registered, and thus entitled to a presumption of validity, the Defendant can show that the Plaintiff is not entitled to relief by proving the asserted mark to be invalid. Accordingly, with respect to MEC's registered mark(s) ISN can nonetheless prove invalidity by showing through a preponderance of the evidence the following element:

1. The asserted mark(s) is not protectable.

30

*Zombondo Entm't, LLC v. Falls Media, LLC*, 602 F.3d 1108, 1114 (9th Cir. 2010). With respect to any unregistered mark(s) that may be asserted by MEC, ISN can prove invalidity by showing that:

> 2.  MEC does not have sufficient evidence of validity.

*See id.*

# I.   ELEMENTS REQUIRED TO ESTABLISH DEFENDANT'S SECOND AFFIRMATIVE DEFENSE, THE PLAINTIFF'S CLAIMS ARE BARRED, IN WHOLE OR IN PART, BY THE APPLICABLE STATUTES OF LIMITATION

There is no statute of limitations provided by the Lanham Act. *See* 15 U.S.C. § 1051 *et seq.* When a federal statute lacks a specific statute of limitations, it is generally presumed that Congress intended to "borrow" the limitations period from the most closely analogous action under state law. *Jarrow Formulas, Inc. v. Nutrition Now, Inc.* 304 F.3d 829, 837 (9th Cir. 2002). Under California law, there is a four-year limitations period for trademark infringement and unfair competition claims under the UCL. Cal. Bus. & Prof. Code. § 17208; Cal. Code of Civ. Proc. § 343. These limitation periods run from the moment a claim has accrued. *Aryeh v. Canon Bus. Solutions, Inc.*, 55 Cal. 4th 1185, 1191 (2013). Thus, ISN must show:

> 1.  When the claims accrued; and
>
> 2.  The date the claims were filed.

**J.    ELEMENTS REQUIRED TO ESTABLISH DEFENDANT'S THIRD AFFIRMATIVE DEFENSE, THE PLAINTIFF'S CLAIMS ARE BARRED, IN WHOLE OR IN PART, BY THE DOCTRINE OF LACHES**

Laches is a valid defense to Lanham Act claims. *Jarrow Formulas, Inc. v. Nutrition Now, Inc.*, 304 F.3d 829, 835 (9th Cir. 2002); *Pinkette Clothing, Inc. v. Cosmetic Warriors Ltd.*, No. 17-55325 (9th Cir. Jun. 29, 2018). If a claim is filed after the analogous state of limitations period then there is a presumption that laches bars the suit. *Jarrow Formulas*, 304 F.3d at 837.

Accordingly, ISN is entitled to laches if it can prove:

1. When the claims accrued;

2. That the pending claims were filed outside of the statute of limitation periods.

**K.    ELEMENTS REQUIRED TO ESTABLISH DEFENDANT'S FOURTH AFFIRMATIVE DEFENSE, THE PLAINTIFF'S CLAIMS ARE BARRED, IN WHOLE OR IN PART, BY THE DOCTRINE OF ABANDONMENT**

Even if a Plaintiff acquires trademark rights in a given mark, those rights can be abandoned. Specifically:

A mark is abandoned when its use has been discontinued with intent no to resume such use. Intent not to resume may be inferred from circumstances. Nonuse for three consecutive years shall be prima facie abandonment. Use of a mark means the bona fide use of a mark made in the ordinary course of trade, and not made merely to reserve a right in the mark.

32

15 U.S.C. § 1127. ISN can prove MEC has abandoned trademark rights by showing that:

1. MEC discontinued use of the mark; and
2. MEC intended not to resume use.

## L.   DEFENDANT'S KEY EVIDENCE IN SUPPORT OF ITS AFFIRMATIVE DEFENSES

**1. Evidence in Support of Defendant's First Affirmative Defense: The Plaintiff's Trademark Rights are Invalid and/or Unenforceable**

ISN will show that certain trademarks being asserted by MEC are invalid and unenforceable by introduction of the following key evidence.

Even though MEC has obtained federal registrations for MONSTER ENERGY, ISN will show that the mark is descriptive and not entitled to protection. Specifically, ISN will show that "monster" is used to refer to things that are large in size and that MEC uses the MONSTER ENERGY mark to sell "energy drinks" in relatively large cans. Testimony from MEC employees, including its CEO Rodney Sacks, will be relied upon. ISN will also introduce documents including dictionary definitions of "monster" and "beast" and beverage industry publications which illustrate the descriptive nature of the MONSTER ENERGY mark.

ISN has filed a motion *in limine* asking the Court to preclude MEC from arguing that it has trademark rights in "monster" on its own (i.e., "monster"

without another word or symbol). ISN will present evidence regarding MEC's failure to use "monster" on its own as a trademark, the descriptive nature of "monster," third-party uses of "monster," and MEC's apparent abandonment of any intention it may have had to use "monster" on its own as a trademark. MEC has no evidence that "monster" on its own has acquired secondary meaning—its own burden—as a trademark of MEC with respect to any goods or services being offered by ISN in the MONSTER MOBILE line, and it certainly has no evidence that secondary meaning had been acquired as of December of 2010 as the law requires. ISN will also introduce a prior trademark application filed by MEC for "monster" on its own that was denied by the U.S. Trademark Office and a consent agreement with a prior third-party user of "monster" in which MEC agreed to abandon the trademark application.

### 2. Evidence in Support of Defendant's Second Affirmative Defense: The Plaintiff's Claims are Barred, in whole or in part, by the Applicable Statutes of Limitation

ISN will show that MEC's claims are barred by the statute of limitations by introduction of the following key evidence.

ISN has been selling automotive tools and equipment under a mark comprising "monster," and using black and green in conjunction with the line of business, since at least December of 2010. ISN filed an initial trademark application for MONSTER MOBILE with the United States Trademark Office

34

on December 19, 2012. Trademark applications filed with the U.S. trademark Office are public documents. MEC has a responsibility to police its trademarks. We know MEC takes this responsibility quite seriously as MEC files more trademark oppositions at the U.S. trademark office than any other entity.  Yet, MEC did not file this suit until March 22, 2017. This and other relevant evidence will be introduced through the testimony of ISN and ISN employees including Bruce Weber and Scott Pilkenton, the testimony of ISN's former trademark counsel Thomas Kautz, and through the testimony of MEC and MEC employees including its CEO Rodney Sacks. ISN will show that MEC's claims accrued prior to March 22, 2013 such that each of MEC's claims was filed in violation of the applicable statute of limitations.

**3. Evidence in Support of Defendant's Third Affirmative Defense: The Plaintiff's Claims are Barred, in whole or in part, by the Doctrine of Laches**

The evidence introduced by ISN in support of its Third Affirmative Defense will largely overlap with the evidence introduced in support of its Second Affirmative Defense. ISN will also show, however, that MEC's delay has caused prejudice to ISN including the loss of key evidence. For example, shortly after this case was filed, a critical witness for ISN suffered a severe, debilitating health issue, rendering him largely unavailable for ISN's defense through most of the

litigation of this matter.  ISN will establish that MEC's claims are barred by laches.

**4. Evidence in Support of Defendant's Fourth Affirmative Defense:  The Plaintiff's Claims are Barred, in whole or in part, by the doctrine of abandonment**

ISN has filed a motion *in limine* asking the Court to preclude MEC from arguing that it has trademark rights in "monster" on its own (i.e. "monster" without another word or symbol). ISN will present evidence regarding MEC's failure to use "monster" on its own as a trademark and MEC's apparent abandonment of any intention it may have had to use "monster" on its own as a trademark. For example, ISN will introduce the previously-discussed denied trademark application filed by MEC for "monster" on its own and the consent agreement with a prior third-party user of "monster" in which MEC agreed to abandon the trademark application. MEC does not have trademark rights in "monster" on its own, and even if it argues it did (many years ago), those rights have since been abandoned.

## III.   ANTICIPATED EVIDENTIARY ISSUES

**A.     Exclusion of the opinions of Dr. Isaacson based on flawed survey.** MEC will attempt to offer a survey purporting to measure confusion in the marketplace. The survey, conducted by Dr. Bruce Isaacson, is severely flawed and the Court should find that Dr. Isaacson should not be permitted to introduce the survey, or

36

any of his corresponding opinions, into the trial of this case. *See* Fed. R. Evid. 103, 401, 403, 702, 703, 704, 707.

**B.     Exclusion of the opinions of Russell W. Mangum pertaining to Reasonable Royalty Damages.** MEC argues it is entitled to a reasonable royalty damage award and offers testimony regarding the same from its expert on damages, Russel W. Mangum. The facts do not support a reasonable royalty award. Any opinion on reasonable royalty damages amounts to pure speculation, and Russel W. Mangum should be precluded from offering testimony pertaining to a reasonable royalty award. *See* Fed. R. Evid. 103, 401, 403, 702, 703, 704, 707.

**C.     Exclusion of posts and messages purportedly made on ISN social media pages, webpages, and YouTube videos by third parties and any testimony regarding same**. MEC has identified as potential exhibits at least several screenshots from social media pages and a message received from ISN in conjunction with a YouTube video posted by ISN which include vague comments which MEC alleges pertain to MEC. (*See* Exhibits 307, 322) MEC will presumably try to offer these items to argue that the individuals that made the posts are confused between ISN's MONSTER MOBILE brand and MEC. None of the individuals that purportedly made the posts or sent the messages, however,

have given testimony.  The statements are unsubstantiated hearsay and should be excluded. *See* Fed. R. Evid. 103, 401, 402, 403, 601, 602, 801, 802, 901.

Similarly, MEC has identified several social media posts and messages allegedly sent to ISN for various reasons.  For example, in one message purportedly sent to ISN via Facebook, there is a request for a sponsorship donation for an "offroad event."  (Exhibit No. 324)  In another, there is allegedly a request for sponsorship of a "sprint car for 2017."  *Id.*  Again, there has been no testimony from anyone purportedly behind any of these messages.  MEC should not be permitted to introduce social media posts and messages, such as those included in Exhibits 14P, 307, 322, 324, 325, and 336 which amount to unsubstantiated hearsay, at trial.  *See* Fed. R. Evid. 103, 401, 402, 403, 601, 602, 801, 802, 901.

**D.     Exclusion of Messages Allegedly Received by MEC from Purported Mobile Tool Distributors and Social Media Posts Allegedly Made by Mobile Tool Dealers.**  MEC has identified as potential exhibits several email messages purportedly sent to MEC by mobile tool distributors who have not provided any testimony in this case.  *See* e.g., Exhibits 1109, 1111. MEC will presumably try to offer the messages into evidence to show the alleged tool distributors have expressed interest in distributing MEC's beverages.  Similarly, MEC has identified social media screenshots purportedly from the social media pages of

mobile tool distributors and online content wherein the pages and content make reference to energy drinks and tool trucks. *See e.g.*, Exhibits 1113, 1114.  Again, the purported mobile tool distributors allegedly behind the posts/article have not given any testimony in this case.  There is no foundation for these messages, articles, and social media posts: their content amounts to unsubstantiated hearsay which should be excluded from trial.

## IV.   ISSUES OF LAW GERMANE TO THE CASE

### A.   Application of the *Sleekcraft* Factors

The Ninth Circuit has established that likelihood of confusion is typically assessed using the following factors:

1.   strength of mark;

2.   proximity of goods;

3.   similarity of the marks;

4.   evidence of actual confusion;

5.   marketing channels used;

6.   type of goods and the degree of care likely to be exercised by the purchaser;

7.   defendant's intent in selecting the mark; and

8.   likelihood of expansion of the products lines.

*See AMF, Inc. v. Sleekcraft Boats,* 599 F.2d 341 (9th Cir. 1979).  There is no rule

that all of the *Sleekcraft* factors must be analyzed in each case, and the weight to be given to the relevant factors will vary from case to case.

The *Sleekcraft* test is typically utilized for goods thought to be related, which are those goods or services "which would reasonably be thought by the buying public to come from the same source, or thought to be affiliated with, connected with, or sponsored by the trademark owner." *Bally Total Fitness Holding Corp. v. Faber*, 29 F. Supp. 2d 1161 (C.D. Cal. 1998); *see also Network v. CBS, Inc.*, 2000 U.S. Dist. LEXIS 4751 at *14 (C.D. Cal. Jan. 16, 2000). Several courts have addressed whether goods/services should be considered related. *See Levi Strauss & Co.*, 778 F.2d at 1363 (shirts and pants are related goods); *Fleischmann Distilling Corp. v. Maier Brewing Co.*, 314 F.2d 149, 152 – 153 (9th Cir. 1963)(beer and whisky are related goods); *Yale Elec. Corp. v. Robertson*, 26 F. 2d 972 (2d Cir. 1928)(locks and flashlights are related goods). When the goods of the trademark owner and the defendant are not related, the Court does not need to perform a *Sleekcraft* analysis to determine infringement, or lack thereof. *See Bally Total Fitness Holding Corp.*, 29 F. Supp. 2d 1161; *see also Network Network*, 2000 U.S. Dist. LEXIS 4751 at *14; *see also Time, Inc. v. T.I.M.E., Inc.*, 123 F.Supp. 446 (S.D. Cal. 1954). The relatedness of goods is determined by whether the products are: (1) complimentary; (2) sold to the same class of purchasers; and (3) similar in use and function. *Network Automation, Inc. v. Advanced Sys. Concepts*, 638 F.3d

1137, 1141 (9th Cir. 2011).

In this case, the goods of MEC and ISN are not reasonably considered to be related. Thus, a *Sleekcraft* analysis may not be required. However, even if a *Sleekcraft* analysis is performed, ISN will show that the factors weigh in its favor such that there can be no likelihood of confusion finding.

### B. When a Plaintiff Adopts a Common Commercial Term as Part of its Mark, Some Confusion is Expected

MEC has itself acknowledged the commercial prevalence of users of the term "monster." Whatever confusion of the public results from the use of the word "monster" by organizations other than Plaintiff "is occasioned in part by Plaintiff's choice in selecting such a common word for its trade name and trade-mark." *Time, Inc. v. T.I.M.E., Inc.* 123 F. Supp. 446, 455 (S.D. Cal. 1954). No evidence of confusion exists between ISN's MONSTER MOBILE products and MEC, but to the extent MEC contends otherwise, MEC should expect this *di minimis* confusion associated with selling its goods under the commercially common term "monster."

### C. Plaintiff Must Prove Actual Damage: Any Reasonable Royalty Award in this Case would be Speculative

MEC must prove actual damages, including lost profits or other costs. *Experience Hendrix LLC v. Hendrixlicensing.com Ltd.*, 762 F3d 829, 843 (2014). Further, to recover on actual damages, the Plaintiff must show actual confusion.

41

*Id.* As a subgroup of actual damages, reasonable royalty damages must be demonstrated "with reasonable certainty [as to] both their occurrence and the extent thereof." *Trovan, Ltd. v. Pfizer, Inc.,* CV-98-0094 LGB (MCx), 2000 U.S. Dist. LEXIS 7522, at *56-57 (C.D. Cal. May 23, 2000)(quoting *Sanchez-Corea v. Bank of Am.*, 38 Cal. 3d 892, 907 (1985) (emphasis deleted). MEC does not have evidence such that it can satisfy this burden. In fact, MEC's sales of beverages have gone up (according to its 10k reports) during the time since ISN began using its subject mark, dating back to 2010.  Simply put, MEC has suffered no financial harm as a result of ISN's use of the accused mark. Accordingly, any reasonable royalty award in this case is impermissible as speculative.

### D.    Double Recovery Barred

The Ninth Circuit "has consistently held that state common law claims of unfair competition and actions pursuant to California Business and Professions Code §17200 are substantially congruent to claims made under the Lanham Act." *Cleary v. News Corp*., 30 F.3d 1255, 1262 – 63 (9th Cir. 1994). Accordingly, if MEC prevails in this case, it would be improper double recovery for it to recover damages under multiple causes of action when they are "substantially congruent."

### E.    Willful Infringement Required to Recover Disgorgement of Profits

Though MEC has sought to disgorge ISN's profits in this case, MEC is not entitled to such an award unless the jury concludes that ISN's infringement was

42

willful. *Stonecreek, Inc. v. Omnia Italian Design, Inc.*, 875 F.3d 426, 439 (9th Cir. 2017). Even then, the disgorgement of ISN's profits is discretionary. *See* 15 U.S.C. § 1117(a). No evidence of willfulness exists in this case, and MEC should not be entitled to present willfulness to the jury. Even if the Court does permit the issue to go to the jury and willfulness is found, however, the Court should decline to disgorge ISN's profits. As stated above, MEC cannot show that it has been financially harmed (see MEC's 10k reports from 2010 to the present) by ISN's use of the accused mark, so it should not be entitled to recover ISN's profits.

## F.    Enhanced Damages & Attorney Fees

MEC is not entitled to enhanced damages or attorney fees unless the Court determines that this case is exceptional. 15 U.S.C. § 1117. When awarding enhanced damages, the Court must ensure that under the Lanham Act, recovery of profits or damages are compensatory and must not constitute a penalty. 15 U.S.C. 1117(a); *Lindy Pen Co. v. Bic. Pen Corp.*, 982 F.2d at 1409 ("To award profits in this situation would amount to a punishment in violation of the Lanham Act which clearly stipulates that a remedy shall constitute compensation not a penalty.")   Because this case is not exceptional, as the evidence will show (for example, to name just a few pieces of evidence on this issue, Mr. Kautz's opinion was sought and obtained by ISN, and the Trademark Office granted ISN a trademark registration for the accused mark, and there is no evidence of

intentional copying of MEC's marks by ISN), MEC may not recover enhanced damages or attorneys' fees. Moreover, because ISN and MEC are not competitors, any enhancement of damages would necessarily be punitive as opposed to compensatory.

## V.   REQUEST FOR BIFURCATION

ISN has already filed a Motion for Bifurcation, Dkt. No. 242, with the Court. The contents of that Motion are incorporated fully by reference herein and ISN makes a corresponding Request for Bifurcation herein. Besides ISN's request that the issue of expungement of profits be bifurcated and decided by the Court as explained in Dkt. No. 242, ISN is not aware of any other issues which should be bifurcated.

## VI.   ISSUES TO BE TRIED BY THE JURY AND COURT

The parties timely demanded a jury trial.

## VII.   ATTORNEYS' FEES

**(Local Rule 16-4.5)**

Attorneys' fees are only allowable in "exceptional" cases where the infringement can be characterized as "malicious," "fraudulent," "deliberate," or "willful." *Playboy Enterprises, Inc. v. Baccarat clothing Co., Inc.*, 692 F.2d 1272, 1276 (1982).

## VIII.  ABANDONED ISSUES

44

**(Local Rule 16-4.6)**

ISN intends to abandon the following affirmative defenses:

a. ISN intends to argue that MEC cannot prove all of the elements of any of its claims including that there is any likelihood of confusion.  Because ISN is pursing its defenses to infringement and further because defense to infringement because a party has not established all of the elements of infringement is not an affirmative defense as stated in Civ.Proc. 8(c), ISN is not pursuing non-infringement based upon MEC's failure to prove its claim as an affirmative defense.

b. Failure to State a claim upon which relief can be granted.

c. The claims are barred in whole or in part by the doctrines of fair use, nominative fair use, and/or descriptive fair use.

d.  The claims are barred in whole or in part by the doctrine of unclean hands.

e. The claims are barred in whole or in part by the doctrine of estoppel.


Dated:  July 31, 2018          By:  /s/*F. Michael Speed, Jr.*
                                    Jeffrey S. Standley
                                    (OH# 047248)
                                    jstandley@standleyllp.com
                                    MELISSA A. ROGERS MCCURDY
                                    (OH #0084102)
                                    mmccurdy@standleyllp.com
                                    F. MICHAEL SPEED, JR.
                                    (OH #0067541)
                                    mspeed@standleyllp.com

45

DOUGLAS C. SMITH
(SBN 160013)
dsmith@smitlaw.com

Attorneys for Defendant
Integrated Supply Network, LLC

Attorneys for Defendant,
INTEGRATED SUPPLY NETWORK, LLC