1  Joseph R. Re (CA SBN 134,479)
   joe.re@knobbe.com
2  Steven J. Nataupsky (CA SBN 155913)
   steven.nataupsky@knobbe.com
3  Lynda J. Zadra-Symes (CA SBN 156511)
   lynda.zadrasymes@knobbe.com
4  Marko R. Zoretic (SBN 233,952)
   marko.zoretic@knobbe.com
5  Jason A. Champion (CA SBN 259207)
   jason.champion@knobbe.com
6  KNOBBE, MARTENS, OLSON & BEAR, LLP
   2040 Main Street, Fourteenth Floor
7  Irvine, CA  92614
   Phone: (949) 760-0404
8  Facsimile: (949) 760-9502

9  Brian C. Horne (SBN 205621)
   brian.horne@knobbe.com
10 KNOBBE, MARTENS, OLSON & BEAR, LLP
   1925 Century Park East, Suite 600
11 Los Angeles, CA 90067
   Telephone: (310) 551-3450
12 Facsimile:  (310) 601-1263

13 Attorneys for Plaintiff
   MONSTER ENERGY COMPANY
14
   [Attorneys for Defendant INTEGRATED SUPPLY NETWORK, LLC
15 listed on following page]

16

17

18         IN THE UNITED STATES DISTRICT COURT

19       FOR THE CENTRAL DISTRICT OF CALIFORNIA

20 ———————————————————    Case No. 5:17-CV-00548-CBM-RAO
   MONSTER ENERGY COMPANY, a      )
21 Delaware corporation,          )  **[PROPOSED] FINAL PRETRIAL**
                                  )  **CONFERENCE ORDER**
22           Plaintiff,           )
                                  )
23           v.                   )
                                  )  HEARING:
24 INTEGRATED SUPPLY NETWORK,     )  Date:  August 21, 2018
   LLC, a Florida limited liability )  Time:  2:30 p.m.
25 company,                       )  Courtroom:  8B
                                  )
26           Defendant.           )
                                  )
27 ———————————————————    Hon. Consuelo B. Marshall
   AND RELATED COUNTERCLAIMS.     )
28 ———————————————————

DOUGLAS C. SMITH (SBN 160013)
dsmith@smitlaw.com
SMITH LAW OFFICES, LLP
4204 Riverwalk Parkway, Suite 250
Riverside, California 92505
Telephone: (951)509-1355
Facsimile: (951)509-1356

JEFFREY S. STANDLEY (OH# 0047248)
jstandley@standleyllp.com
MELISSA A. ROGERS MCCURDY (OH #0084102)
mmccurdy@standleyllp.com
F. MICHAEL SPEED, JR. (OH# 0067541)
mspeed@standleyllp.com
Standley Law Group LLP
6300 Riverside Drive
Dublin, Ohio 43017
Telephone: (614) 792-5555
Fax: (614) 792-5536

CHRISTOPHER W. MADEL (MN #230297)
cmadel@madellaw.com
JENNIFER M. ROBBINS (MN #387745)
jrobbins@madellaw.com
CASSANDRA B. MERRICK (MN #396372)
cmerrick@madellaw.com
MADEL PA
800 Hennepin Avenue
800 Pence Building
Minneapolis, MN  55413
Telephone:  612-605-0630
Facsimile:  612-326-9990

Attorneys for Defendant
INTEGRATED SUPPLY NETWORK, LLC

Following pretrial proceedings, pursuant to Fed. R. Civ. P. 16 and L.R. 16, IT IS ORDERED:

1.      The parties are: Monster Energy Company ("Monster")[1] and Integrated Supply Network, LLC ("ISN").  Each of these parties has been served and has appeared.

The pleadings that raise the issues are:

> 1) Monster's Complaint and Demand for Jury Trial (Dkt. No. 1);
>
> 2) ISN's Answer, Affirmative Defenses, and Counterclaims to Complaint and Demand for Jury Trial filed April (Dkt. No. 11); and
>
> 3) Monster's Reply to Counterclaims and Demand for Jury Trial (Dkt. No. 19).

2.      The parties do not contest federal jurisdiction or venue.  The Court has subject matter jurisdiction over Monster's claims pursuant to 15 U.S.C. §§ 1116 and 1121(a), 28 U.S.C. §§ 1331, 1338, and 1367(a).  Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391(b) and (c) at least because Monster resides in this Judicial District by virtue of doing business within the Judicial District and a substantial portion of the events complained of took place in this Judicial District.

3.      The trial is estimated to take 5–7 trial days.

4.      The trial is to be a jury trial.  At least seven (7) days prior to the trial date the parties shall file and serve by e-mail, fax, or personal delivery: (a) proposed jury instructions as required by L.R. 51-1, (b) verdict form, and (c) any special questions requested to be asked on voir dire.

5.      The following facts are admitted and require no proof:

> 1.      Monster is a corporation organized and existing under the

---

[1] ISN objects to Monster Energy Company's reference to itself throughout as "Monster." It has no federal trademark registration for the standalone term "monster," as argued in ISN's Motion in Limine on this topic, Dkt. No. 241.

laws of the State of Delaware, having a principal place of business at 1 Monster Way, Corona, California 92879.

2.    ISN is a limited liability company organized and existing under the laws of the State of Florida, having a principal place of business at 2727 Interstate Drive, Lakeland, Florida 33805.

3.    Monster owns the following U.S. Trademark Registrations (hereinafter the "Asserted Registrations"):

| MARK | REG. NO. | GOODS/SERVICES | DATE FILED | REG. DATE |
|---|---|---|---|---|
| MONSTER ENERGY | 4,721,433 | Promoting goods and services in the sports, motorsports, electronic sports, and music industries through the distribution of printed, audio and visual promotional materials; promoting sports and music events and competitions for others | 03/12/2014 | 04/14/2015 |
| MONSTER ENERGY | 3,044,315 | Nutritional supplements in liquid form, but excluding perishable beverage products that contain fruit juice or soy, whether such products are pasteurized or not | 05/23/2003 | 01/17/2006 |

| MARK | REG. NO. | GOODS/SERVICES | DATE FILED | REG. DATE |
|---|---|---|---|---|
| MONSTER ENERGY | 3,057,061 | Fruit juice drinks having a juice content of 50% or less by volume that are shelf stable, carbonated soft drinks, carbonated drinks enhanced with vitamins, minerals, nutrients, amino acids and/or herbs, but excluding perishable beverage products that contain fruit juice or soy, whether such products are pasteurized or not | 04/18/2002 | 02/27/2006 |
| MONSTER ENERGY | 4,036,680 | Nutritional supplements in liquid form | 09/11/2007 | 10/11/2011 |
| MONSTER ENERGY | 4,036,681 | Non-alcoholic beverages, namely, energy drinks, excluding perishable beverage products that contain fruit juice or soy | 09/11/2007 | 10/11/2011 |
| M MONSTER ENERGY | 3,044,314 | Nutritional supplements in liquid form, but excluding perishable beverage products that contain fruit juice or soy, whether such products are pasteurized or not | 05/23/2003 | 01/17/2006 |

| MARK | REG. NO. | GOODS/SERVICES | DATE FILED | REG. DATE |
|---|---|---|---|---|
| M MONSTER ENERGY | 3,134,842 | Beverages, namely, carbonated soft drinks, carbonated drinks enhanced with vitamins, minerals, nutrients, amino acids and/or herbs, carbonated energy or sports drinks, fruit juice drinks having a juice content of 50% or less by volume that are shelf stable, but excluding perishable beverage products that contain fruit juice or soy, whether such products are pasteurized or not | 05/07/2003 | 08/29/2006 |
| UBERMONSTER | 4,234,456 | Nutritional supplements in liquid form; Beverages, namely, carbonated soft drinks; nonalcoholic carbonated soft drinks and energy drinks enhanced with vitamins, minerals, nutrients, proteins, amino acids and/or herbs; carbonated energy drinks and sports drinks; all the foregoing goods exclude perishable beverage products that contain fruit juice or soy, whether such products are pasteurized or not | 07/09/2010 | 10/30/2012 |

| MARK | REG. NO. | GOODS/SERVICES | DATE FILED | REG. DATE |
|---|---|---|---|---|
|  | 3,908,601 | Clothing, namely, t-shirts, hooded shirts and hooded sweatshirts, sweat shirts, jackets, pants, bandanas, sweat bands and gloves; headgear, namely, hats and beanies | 04/02/2009 | 01/18/2011 |
|  | 3,914,828 | Sports helmets | 04/02/2009 | 02/01/2011 |
|  | 3,923,683 | All purpose sport bags; All-purpose carrying bags; Backpacks; Duffle bags | 04/02/2009 | 02/22/2011 |
|  | 3,908,600 | Stickers; sticker kits comprising stickers and decals; decals | 04/02/2009 | 01/18/2011 |
|  | 3,134,841 | Beverages, namely, carbonated soft drinks, carbonated soft drinks enhanced with vitamins, minerals, nutrients, amino acids and/or herbs, carbonated energy and sports drinks, fruit juice drinks having a juice content of 50% or less by volume that are shelf stable, but excluding perishable beverage products that contain fruit juice or soy, whether such products are pasteurized or not | 05/07/2003 | 08/29/2006 |

| MARK | REG. NO. | GOODS/SERVICES | DATE FILED | REG. DATE |
|---|---|---|---|---|
|  | 4,332,062 | Silicone wrist bands; silicone bracelets; jewelry, namely, bracelets and wristbands | 10/05/2012 | 05/07/2013 |
|  | 4,660,598 | Lanyards; Lanyards for holding whistles, keys, eyeglasses, sunglasses, mobile telephones, badges, identification cards, event passes, media passes, photographs, recording equipment, or similar conveniences | 08/26/2013 | 12/23/2014 |
|  | 3,740,050 | Nutritional supplements; Beverages, namely, carbonated soft drinks, carbonated drinks enhanced with vitamins, minerals, nutrients, amino acids and/or herbs, carbonated and non-carbonated energy or sports drinks | 08/07/2009 | 01/19/2010 |
|  | 4,865,702 | Nutritional supplements in liquid form;<br><br>Non-alcoholic beverages, namely, carbonated soft drinks; carbonated drinks enhanced with vitamins, minerals, nutrients, proteins, amino acids and/or herbs; carbonated energy drinks and sports drinks | 02/02/2015 | 12/08/2015 |

| MARK | REG. NO. | GOODS/SERVICES | DATE FILED | REG. DATE |
|---|---|---|---|---|
| UNLEASH THE BEAST! | 4,975,822 | Clothing, namely, tops, shirts, long-sleeved shirts, t-shirts, hooded shirts and hooded sweatshirts, sweat shirts, jackets, pants, bandanas, socks, sweat bands and gloves; headgear, namely, hats and beanies | 03/07/2014 | 06/14/2016 |
| UNLEASH THE BEAST! | 2,769,364 | Fruit juice drinks, soft drinks, carbonated soft drinks and soft drinks enhanced with vitamins, minerals, nutrients, amino acids and/or herbs | 12/18/2002 | 09/30/2003 |
| UNLEASH THE NITRO BEAST! | 4,394,044 | Non-alcoholic beverages, namely, carbonated soft drinks; carbonated drinks enhanced with vitamins, minerals, nutrients, proteins, amino acids and/or herbs; carbonated energy or sports drinks | 12/14/2010 | 07/27/2013 |

4. Pursuant to 15 U.S.C. § 1065, U.S. Trademark Registration Nos. 3,044,315, 3,057,061, 4,036,680, 4,036,681, 3,044,314, 3,134,842, 3,908,601, 3,914,828, 3,908,600, 3,134,841, 3,740,050, and 2,769,364 are incontestable.

5. Certified copies of trademark registrations and file histories are not required.

6. Exhibit No. 285 (ISN0038150) is a true and correct copy of ISN's sales data from December 2010 to October 2017 for its "Monster" and "Monster Mobile" products.

7. Monster Energy Company is a subsidiary of Monster

Beverage Company.

8.      ISN owns U.S. Trademark Registration No. 4,951,671 for the following mark:



for "mobile retail store and wholesale distributorship services featuring automotive and industrial tools, supplies, and equipment." ISN filed the application for this registration as an intent-to-use application on April 12, 2013.   The application published for opposition on March 18, 2014.

9.      On December 19, 2012, ISN filed U.S. Application Serial No. 85/806622 for the mark MONSTER MOBILE as an intent-to-use application.   The application published for opposition on December 17, 2013.

10.     On December 30, 2016, ISN filed U.S. Application Serial No. 87/285,962 for the mark:



for "air operated power tools, namely, orbital sanders."

11.     On December 30, 2016, ISN filed U.S. Application Serial No. 87/285,990 for the mark:



for "digital multimeters"; "manually operated hand tools, namely screwdrivers, files, hooks, socket sets, and wrenches"; and "electric welding machines."

12.    On December 30, 2016, ISN filed U.S. Application Serial No. 87/285,915 for the mark:

for "battery jump starters."

13.    Exhibit No. 266 is a true and correct copy of ISN's Monster Brand Automotive Tools & Equipment 2012 catalog.  Exhibit No. 172 is a black and white version of Exhibit No. 266.

14.    Exhibit Nos. 8P (ISN010224–ISN010263) and 175 (MEC018380–MEC018419) are true and correct copies of ISN's Monster Mobile Automotive Tools & Equipment 2013 catalog.

15.    Exhibit Nos. 214 and 268 (MEC018568–MEC018591) are true and correct copies of ISN's Monster Mobile Automotive Tools & Equipment Summer 2014 catalog.

16.    Exhibit No. 176 (MEC018528–MEC018567) is a true and correct copy of ISN's Monster Mobile Automotive Tools & Equipment Spring 2015 catalog.

17.    Exhibit No. 177 (MEC018476–MEC018527) is a true and

correct copy of ISN's Monster Mobile Automotive Tools & Equipment Summer 2016 catalog.

18.   Exhibit No. 269 (ISN010304–ISN010359) is a true and correct copy of ISN's Monster Mobile Automotive Tools & Equipment Spring 2016 catalog.

19.   Exhibit No. 270 (ISN0024432–ISN0024483) is a true and correct copy of ISN's Monster Mobile Automotive Tools & Equipment Summer 2017 catalog.

20.   Exhibit No. 1837 (MEC066260–MEC066319) is a true and correct copy of ISN's Monster Mobile Automotive Tools & Equipment Summer 2018 catalog.

21.   Exhibit No. 267 (ISN001405–ISN001428) is a true and correct copy of ISN's May 1-31, 2013 Tech's Edge Plus Catalog.

22.   Exhibit Nos. 262, 1623, 1624, 1625, 1626, 1627, 1628, 1629, 1630, 1631, 1632, 1633, and 1763 are true and correct copies of the file histories for ISN's Registration No. 4,951,671, and U.S. Application Serial Nos. 86/371708, 86/371697, 86/371682, 86/371755, 86/371761, 87/285915, 87/285962, 87/285990, 86/371705, 86/371688, 86/371672, and 85/806622 respectively.

23.   Exhibit Nos. 107, 108, 109, 111, 112, 147-A, 149-A, 157-A, 158-A, 159-A, 160-A, 161-A, 178, 209, 289, 290, 291, 292, 293, 294, 297, 1756, 1757, 1758, 1759, 1760, 1761, 1762, 1821, 1822, and 2023 are samples of "Monster" and "Monster Mobile" branded products that have been sold by ISN.

24.   ISN instructed SE Sales to discontinue production of snack products under the MONSTER MOBILE brand in April 2017.

Accordingly, the products shown in Exhibit Nos. 107, 108, 109, 111, and 112 are no longer sold by ISN.

25.  Exhibit No. 2213 is a true and accurate copy of ISN's Tech's Edge publication from Fall 2015/Spring 2016.

26.  Exhibit No. 2214 is a true and accurate copy of ISN's Tech's Edge publication from September – October 2016.

27.  Exhibit No. 2215 is a true and accurate copy of ISN's Tech's Edge publication from November 2015.

28.  Exhibit No. 2216 is a true and accurate copy of ISN's Tech's Edge Publication from August 2015.

29.  Exhibit No. 2217 is a true and accurate copy of ISN's Tech's Edge Publication from March – April 2016.

30.  Exhibit No. 2218 is a true and accurate copy of ISN's Tech's Edge Publication from June 2016.

31.  Exhibit No. 2219 is a true and accurate copy of ISN's Tech's Edge Publication from February 2016.

32.  Exhibit No. 2220 is a true and accurate copy of ISN's Tech's Edge Publication from August 2013.

33.  Exhibit No. 2022 is a true and accurate copy of ISN's Tech's Edge Publication from May-June 2017.

34.  Exhibit No. 6P (ISN010451–ISN010483) is a true and correct copy of ISN's May-June 2016 Tech's Edge Plus Catalog.

35.  Exhibit No. 9P (ISN002289–ISN002304) is a true and correct copy of ISN's December 2014 Tech's Edge Plus, New Product Supplement.

36.  Exhibit No. 127 (ISN001477–ISN001608) is a true and correct copy of ISN's January – February – March, 2015 Tech's Edge Plus Catalog.

-11-

37.   Exhibit No. 359 (ISN002077–ISN002108) is a true and correct copy of ISN's February 2017 Tech's Edge Plus, New Product Supplement.

38.   Exhibit No. 1303 (ISN001049–ISN001072) is a true and correct copy of ISN's August 1-31, 2013 Tech's Edge Plus Catalog.

39.   Exhibit No. 1304 (ISN001097–ISN001112) is a true and correct copy of ISN's December 2014 Tech's Edge Plus, New Product Supplement.

40.   Exhibit No. 1305 (ISN001209–ISN001356) is a true and correct copy of ISN's January-February, 2016 Tech's Edge Plus Catalog.

41.   Exhibit No. 1306 (ISN001381–ISN001404) is a true and correct copy of ISN's June 1-30, 2013 Tech's Edge Plus Catalog.

42.   Exhibit No. 1307 (ISN002005–ISN002028) is a true and correct copy of ISN's September 1-30, 2013 Tech's Edge Plus Catalog.

43.   Exhibit No. 1308 (ISN002061–ISN002076) is a true and correct copy of ISN's May 2015 Tech's Edge Plus, New Product Supplement.

44.   Exhibit No. 103 is a true and accurate copy of an agreement executed by ISN and SE Sales.

45.   Exhibit No. 2039 is a true and accurate copy of an agreement executed by Monster and Feld Motorsports, Inc.

46.   Exhibit No. 2021 is a true and accurate copy of an agreement executed by Hansen Beverage Company, Odwalla, Inc., and The Coca-Cola Company.

47.  Exhibit No. 79 is a true and correct copy of an agreement executed by Hansen Beverage Company and The Coca Cola Company.

48.  Exhibit No. 80 is a true and correct copy of an agreement executed by Hansen Beverage Company and CytoSport, Inc.

49.  Exhibit No. 81 is a true and correct copy of an agreement executed by Monster and Beachbody, LLC.

50.  Exhibit No. 84 is a true and correct copy of an agreement executed by Odwalla, Inc., The Coca-Cola Company, and Hansen Beverage Company.

51.  Exhibit Nos. 19, 20, 21, 22, 23, 24, 25, 26, 28, 95, 2037, 2038, are samples of beverage products that have been sold by Monster.

52.  Exhibit Nos. 222, 334, 335, and 1716 are true and correct copies of photos of ISN's trade show booth at the 2016 Tool Dealer Expo in Kissimmee, Florida.

53.  Exhibit Nos. 327, 328, 330 are true and correct copies of photos of ISN's Monster Mobile products at the 2017 Tool Dealer Expo in Kissimmee, Florida.

54.  Exhibits 1278, 1298, and 1836 are true and correct copies of printouts of ISN's website www.monster-tools.com.

6.  The following facts, though stipulated, shall be without prejudice to any evidentiary objections: none.

7.  The following describes the claims and defenses to be presented at trial.

**Plaintiff:**

(a)  Plaintiff plans to pursue the following claims against Defendant ISN

-13-

and to seek damages for these claims:[2]

**Claim I:**  ISN has violated 15 U.S.C. § 1125(a) by willfully infringing Monster's trademarks, willfully infringing Monster's Trade Dress[3], and similarly willfully engaging in false designation of origin.

**Claim II:**  ISN has violated 15 U.S.C. § 1114 by willfully infringing Monster's registered trademarks.

**Claim III:**  ISN has violated Cal. Bus. Prof. Code §§ 17200, *et seq.* by committing acts of unfair competition.

**Claim IV:**  ISN has violated California common law by committing acts of unfair competition.

(b)  The elements required to establish Plaintiff's claims are:

**Claim 1: Elements of Trademark Infringement, Trade Dress Infringement, and False Designation of Origin under 15 U.S.C. § 1125(a)**

For Monster's Trademark Infringement and False Designation of Origin claims, Monster must prove that:

1.  Monster's MONSTER Marks,[4] BEAST Marks,[5] and Monster's Asserted Registrations are valid and protectable trademarks;

2.  Monster owns the MONSTER Marks, BEAST Marks, and Monster's Asserted Registrations; and

---

[2]    Defendant disputes each of the facts and contentions included in this section.

[3]    Monster's Trade Dress is shown in Memorandum of Contentions of Fact and Law (Dkt. No. 276) at 1.

[4]    The "MONSTER Marks" include each of Monster's asserted registered marks that include the word "Monster," Monster's common law rights in those marks, and Monster's alleged common law rights in the word "Monster" alone.

[5]    The "BEAST Marks" include each of Monster's asserted registered marks that include the word "Beast," and Monster's common law rights in those marks.

3.     ISN is using marks similar to Monster's MONSTER Marks, BEAST Marks, and Monster's Asserted Registrations in a manner that is likely to cause confusion among ordinary consumers, or the relevant public, as to the source, sponsorship, affiliation, or approval of the parties' goods.

*See* Ninth Circuit Model Civil Jury Instructions § 15.6 (2017).

Eight factors govern whether a likelihood of consumer confusion exists for trademark and trade dress infringement claims: (1) strength of the mark; (2) proximity of the goods; (3) similarity of the marks; (4) evidence of actual confusion; (5) marketing channels used; (6) type of goods and the degree of care likely to be exercised by the purchaser; (7) defendant's intent in selecting the mark; and (8) likelihood of expansion of the product lines.  Ninth Circuit Model Civil Jury Instructions § 15.18.

For Monster's Trade Dress Claim, Monster must show:

1.     Monster's MONSTER Trade Dress is distinctive;

2.     Monster owns the trade dress;

3.     Monster's MONSTER Trade Dress is nonfunctional; and

4.     ISN used a trade dress similar to the MONSTER Trade Dress without the consent of Monster in a manner that is likely to cause confusion among ordinary consumers, or the relevant public, as to the source, sponsorship, affiliation, or approval of parties' goods.

*See* Ninth Circuit Model Civil Jury Instructions § 15.7 (2017); *Cacique, Inc. v. Reynaldo's Mexican Food Co., LLC*, No. 2:13-CV-1018-ODW, 2014 WL 537061, at *3 (C.D. Cal. Feb. 10, 2014).

**Claim 2: Elements of Trademark Infringement under 15 U.S.C. § 1114**

1.     Monster's Asserted Registrations are valid and protectable;

2.     Monster owns Monster's Asserted Registrations; and

3.     ISN used the accused marks, which are similar to Monster's Asserted Registrations without the consent of Monster in a manner that is likely

to cause confusion among ordinary purchasers, and the relevant public, as to the source, sponsorship, affiliation, or approval of the parties' goods.

**Claim 3: Elements of California Statutory Unfair Competition**

For Monster's statutory unfair competition claim under Cal. Bus. & Prof. Code § 17200 *et seq.*, Monster must prove that ISN has engaged in an unlawful, unfair or fraudulent business act or practice, and/or any unfair, deceptive, untrue or misleading advertising.

*See* Cal. Bus. & Prof. Code § 17200; *Century 21 Real Estate Corp. v. Sandlin*, 846 F.2d 1175, 1178 (9th Cir. 1988) (citing to *New West Corp. v. NYM Co. of California*, 595 F.2d 1194, 1202 (9th Cir. 1979)) ("[t]he 'ultimate test' for unfair competition is exactly the same as for trademark infringement: 'whether the public is likely to be deceived or confused by the similarity of the marks.'").

**Claim 4: Elements of California Common Law Unfair Competition**

For Monster's common law claim of unfair competition under California law, Monster must prove the same elements as listed in Claim 1 for trademark infringement. *Kythera Biopharmaceuticals, Inc. v. Lithera, Inc.*, 998 F. Supp. 2d 890, 897–98 (C.D. Cal. 2014) (quoting *Cleary v. News Corp.*, 30 F.3d 1255, 1262–63 (9th Cir. 1994)) (noting that the Ninth Circuit has consistently held that state common law unfair competition claims are "substantially congruent" to Lanham Act claims).

**Claims 1–4: Willfulness**

To prove willfulness for the acts underlying liability for Claims 1–4, Monster must show that ISN's actions were willfully calculated to exploit the advantage of an established mark. *DC Comics v. Towle*, 802 F.3d 1012, 1026 (9th Cir. 2015).

**Claim 4: Punitive Damages**

For Claim IV, whether ISN has engaged in unfair competition in violation of California common law with malice, oppression, or fraud.

(c)     In brief, the key evidence Monster relies on for each of the claims is set forth below.  Monster also intends to present evidence to support an award of damages, including Monster's and ISN's license agreements, ISN's financial documents, and testimony from Monster's and ISN's witnesses.

**Claim 1: Evidence in Support of Willful Trademark Infringement, Trade Dress Infringement, and False Designation of Origin under 15 U.S.C. § 1125(a)**

    **a.**    **Validity of Monster's Marks and Trade Dress**

        1) The certificates of registration for Monster's Asserted Registrations.

        2) Evidence of the strong recognition and secondary meaning of Monster's Marks and Trade Dress, including records and testimony of Monster regarding billions of dollars of sales of products prominently bearing Monster's Marks, and billions of dollars spent promoting Monster's Marks and Trade Dress.

        3) Monster's advertising, marketing, and promotional materials.

        4) Evidence that the MONSTER Trade Dress is non-functional, including Monster's packaging and goods.

    **b.**    **ISN's Infringing Actions.**

        **i.**    **Monster's Marks and the MONSTER Trade Dress are Strong**

        1) The certificates of registration for Monster's Asserted Registrations.

        2) Evidence that Monster's MONSTER Marks, BEAST Marks, and MONSTER Trade Dress are inherently distinctive, including testimony of Monster, Monster's advertising, marketing, and promotional materials.

        3) Commercially, evidence of the strength of Monster's Marks and

MONSTER Trade Dress, including records and testimony of Monster regarding billions of dollars of sales of products prominently bearing Monster's Marks, and billions of dollars spent promoting Monster's Marks and MONSTER Trade Dress.

4) Testimony of Monster and exhibits of documents produced by Monster showing that a) its MONSTER brand has established itself as the best-selling energy drink brand in the United States by unit volume and dollar sales; b) its Monster brand is one of the most popular global brands; and c) through extensive sales and advertising, Monster has developed overwhelmingly strong rights in its MONSTER Marks, BEAST Marks, and MONSTER Trade Dress, and Monster's MONSTER Marks, BEAST Marks, and MONSTER Trade Dress have become famous identifiers of Monster's goods and services.

5) Monster's advertising, marketing, and promotional materials.

### ii.      The parties' goods are related

1) Evidence that both parties' goods are related, for example, both parties sell or distribute t-shirts, sweatshirts, hats, stickers, water bottles, backpacks, and gloves under their respective "Monster" marks.  Moreover, both parties sell or license beverage tumblers, a product which is complementary to Monster's beverages. Similarly, ISN sells can coolers bearing a "Monster" mark, which again are complementary to Monster's beverage cans.

2) Evidence that ISN's automotive tools and Monster's goods and services are related.  For example, Monster uses its trademarks and trade dress on a variety of automotive products including motorcycles, motorcycle helmets, replica cars, and automotive wheels.

3) Monster's advertising, marketing, and promotional materials.

4) Monster licensing agreements.   For example, Monster has specifically authorized the use of Monster's Marks and MONSTER Trade Dress in connection with tool company promotions, including Snap-on's line of Ken Block signature tool boxes, and the Makita Ultimate Truck Sweepstakes.

5) Monster's promotion of automotive sports of all kinds.

6) ISN's advertising, marketing, and promotional materials.

7) ISN's trade shows and promotional activities.

8) Testimony of Monster, ISN, and third-parties.

### iii.    The parties' marks are similar

1) Testimony of Monster and Monster's goods, packaging, advertising, marketing, and promotional materials showing that Monster uses its Monster family of marks, all containing the dominant term MONSTER in connection with Monster's MONSTER Trade Dress.

2) Testimony of Monster and Monster's goods, packaging, advertising, marketing, and promotional materials showing that Monster also uses its related Beast family of marks, which all contain the dominant term BEAST.

3) Testimony of ISN and ISN's goods, packaging, advertising, marketing, and promotional materials showing that ISN uses the marks MONSTER and MONSTER MOBILE, which are highly similar to Monster's family of marks.

4) Testimony of ISN and ISN's goods, packaging, advertising, marketing, and promotional materials showing that ISN minimizes the size and usage of the term "MOBILE."

5) Testimony of ISN and ISN's goods, packaging, advertising,

marketing, and promotional materials showing that ISN uses its
MONSTER and MONSTER MOBILE marks in conjunction with
green and black trade dress.

6) Testimony of ISN and Darlene Lott, and documents showing that
ISN also used a variant of Monster's BEAST Marks, namely the
mark FEED THE BEAST, to promote its "Monster Snacks."

### iv.   ISN's activities have resulted in actual confusion

1) Survey expert testimony of Dr. Bruce Isaacson.

2) Testimony of mechanics Chris Nalven, Mike Beasley, and
Andrew Markowski who were confused as to the source of ISN's
goods.

3) Testimony of ISN and exhibits of documents produced by ISN
showing ISN consumers expressing confusion online to ISN.

### v.   The parties' goods move through the same marketing channels

1) Sales records of Monster and ISN.

2) Testimony from Chris Nalven and Matthew Rivera that Monster
Energy® drinks have been sold on the same tool trucks, side-by-
side with ISN's "Monster" tools.

3) Testimony of ISN and exhibits of documents produced by ISN
showing that ISN sells its tools on the internet.

4) Testimony of Monster showing internet sales of Monster
Energy® drinks and many other products.

### vi.   The parties' goods are impulse purchases

1) Testimony of ISN and exhibits of documents produced by ISN
showing that ISN's goods are relatively inexpensive and often
purchased on impulse.   For example, ISN's drill bits and
screwdrivers may be purchased for $4.00 to $7.00. ISN sells

clothing, hats and beverage ware for comparable prices.

2) Testimony of Monster and exhibits of documents produced by Monster showing that Monster's goods are relatively inexpensive and often purchased on impulse. For example, Monster's drinks sell individually for under $3.00.

3) Testimony from Ron Hyre that tools are purchased off of tool trucks on an impulse.

### vii.   ISN's infringement is willful

1) Testimony of ISN and documents produced by ISN showing that ISN was aware of Monster and Monster's marks when it selected "Monster" as the name of its new line of tools.

2) Documents produced by ISN showing that ISN selected the "Monster" mark just weeks after attending the "SEMA" trade show, which Monster sponsored, and where Monster had a major visible presence.

3) Testimony of ISN and Matthew Rivera that ISN was then cautioned by its own employee that the "Monster" mark might cause consumer confusion.

4) Testimony of ISN and exhibits of documents produced by ISN showing that ISN chose to combine "Monster" with green and black trade dress. ISN chose Pantone 376 as its shade of green, just one shade away from Monster's Pantone 375.

5) Testimony of ISN and Exhibits of documents produced by ISN showing that ISN continued its actions after being placed on notice of its infringement through letters from Monster.

6) Monster cease and desist letters.

7) Testimony of ISN and exhibits of documents produced by ISN showing that ISN has continued to sell products under the

MONSTER and MONSTER MOBILE Marks, and using the green and black trade dress.

8) Testimony of ISN and exhibits of documents produced by ISN showing that after receipt of Monster's first cease and desist letter, ISN began marketing "Monster snacks" with the tag line "Feed the Beast".

9) Exhibits of documents produced by ISN showing that ISN is emphasizing its green and black trade dress much more in its most recent packaging, since receiving three cease and desist letters from Monster.

10) Testimony of ISN and exhibits of documents produced by ISN showing that when Monster was named the title sponsor of NASCAR's races, ISN's executives enthused that "This could be good for our Monster brand" and it "Certainly creates awareness!"

11) ISN's trademark applications showing that shortly after this announcement, ISN filed three new trademark applications for the mark "Monster" alone, including one in the colors green and black: **MONSTER**.

12) Testimony of ISN and exhibits of documents produced by ISN showing that in the summer of 2017, ISN expanded its use of "Monster" to include water bottles in the color green, and in March 2018, ISN launched a public website at <monster-tools.com> that prominently uses green and black.

### viii.   The likelihood of expansion of the parties' product lines

1) Evidence discussed above showing ISN's goods and Monster's goods overlap.  For example, both parties sell or license t-shirts,

sweatshirts, gloves, hats, stickers, backpacks, water bottles and beverage tumblers under their respective Monster marks.

2) Testimony of ISN and exhibits of documents produced by ISN showing that the amount of overlap is likely to increase in the future.  As discussed above, ISN has been expanding its product line to include items such as beverage tumblers, t-shirts, hats, and gloves, all bringing ISN closer and closer to Monster.

3) Evidence, as discussed above, that ISN is deliberately trying to associate itself with Monster.

**Claim 2: Evidence in Support of Trademark Infringement under 15 U.S.C. § 1114**

1) The certificates of registration for Monster's Asserted Registrations.

2) The evidence supporting the similarity of the marks and the likelihood of confusion are set forth in Claim 1 above.

**Claim 3: Evidence in Support of California Statutory Unfair Competition**

Monster will rely on the same evidence as described above in connection with Claim 1.

**Claim 4: Evidence in Support of California Common Law Unfair Competition:**

Monster will rely on the same evidence as described above in connection with Claim 1.

**Defendant:**

(a)     Defendant plans to pursue the following affirmative defenses:

**Affirmative Defense No. 1** – Plaintiff's contestable registered marks are invalid due to descriptiveness and lack of secondary meaning.

**Affirmative Defense No. 2** – Plaintiff's claims are barred by the statute of limitations.

**Affirmative Defense No. 3** – Plaintiff's claims are barred by the equitable doctrine of laches.

**Affirmative Defense No. 4** – Plaintiff's claims are barred by the doctrine of abandonment.

(b)   The elements required to establish Defendant's counterclaims and affirmative defenses are:

**Elements of Affirmative Defense No. 1:  Trademark Invalidity**

1.   The marks set forth in Monster's contestable registrations describe attributes of the goods or services with which they are used; and

2.   The marks set forth in Monster's contestable registrations have not acquired secondary meaning.

*Yellow Cab Co. of Sacramento v. Yellow Cab of Elk Grove, Inc.*, 419 F.3d 925, 927 (9th Cir. 2005).

**Elements of Affirmative Defense No. 2: Statute of Limitations**
<u>ISN's Position.</u>

There is no statute of limitations provided by the Lanham Act. *See* 15 U.S.C. § 1051 *et seq.* When a federal statute lacks a specific statute of limitations, it is generally presumed that Congress intended to "borrow" the limitations period from the most closely analogous action under state law. *Jarrow Formulas, Inc. v. Nutrition Now, Inc.* 304 F.3d 829, 837 (9th Cir. 2002). Under California law, there is a four-year limitations period for trademark infringement and unfair competition claims under the UCL. Cal. Bus. & Prof. Code. § 17208; Cal. Code of Civ. Proc. § 343. These limitation periods run from the moment a claim has accrued. *Aryeh v. Canon Bus. Solutions, Inc.*, 55 Cal. 4th 1185, 1191 (2013). Thus, ISN must show:

      1.  When the claims accrued; and

      2.  The date the claims were filed.

<u>Monster's Position.</u>

-24-

This is not an affirmative defense against claims arising under the Lanham Act.  The Lanham Act does not contain a statute of limitations.  *Pinkette Clothing, Inc. v. Cosmetic Warriors Ltd.,* 894 F.3d 1015, 1018 (9th Cir. 2018); *Jarrow Formulas, Inc. v. Nutrition Now, Inc.*, 304 F.3d 829, 836 (9th Cir. 2002); *Farouk Sys., Inc. v. Chi Nail Franchises, LLC*, No. CV 13-7533 FMO (SHX), 2015 WL 11347663, at *4 (C.D. Cal. Sept. 8, 2015) ("As violations of the Lanham Act may be 'continuing wrongs,' the statute of limitations does not bar the pending claims").  If the statute of limitations were a defense, the limitations period would run from the time when "the plaintiff discovers, or has reason to discover, the cause of action."  *Aryeh*, 55 Cal.4th at 1192.  That is, the "claim should accrue only when a reasonable person would have discovered the factual basis for a claim."  *Id.* at 1195.

Furthermore, the statute of limitations is not an affirmative defense against Monster's Unfair Competition claims.  *Cuong Nhut Chung v. L & R Fine Fashions, Inc.*, No. SACV1100712CJCANX, 2012 WL 12887559, at *6 (C.D. Cal. Feb. 1, 2012) (holding that where the unfair competition claim involves a continuing wrong the claim is not barred by the statute of limitations); *Suh v. Yang*, 987 F. Supp. 783, 796 (N.D. Cal. 1997) (noting that "each allegedly infringing display of Defendant's service name on products, advertisements, etc., could create a separate cause of action for unfair competition and trademark infringement" and therefore the unfair competition claim was not barred by the statute of limitations).

### Elements of Affirmative Defense No. 3: Laches

As an equitable issue, laches should be decided by the Court.  Laches is a valid defense to Lanham Act claims. *Jarrow Formulas, Inc. v. Nutrition Now, Inc.*, 304 F.3d 829, 835 (9th Cir. 2002); *Pinkette Clothing, Inc. v. Cosmetic Warriors Ltd.*, No. 17-55325 (9th Cir. Jun. 29, 2018). If a claim is filed after the analogous state of limitations period then there is a presumption that laches bars

the suit. *Jarrow Formulas*, 304 F.3d at 837.

To establish this defense, ISN must prove the following:

1. Monster unreasonably delayed in bringing suit; and

2. ISN was prejudiced by the delay.

*See Internet Specialties W., Inc. v. Milon-DiGiorgio Enterprises, Inc.*, 559 F.3d 985, 990 (9th Cir. 2009). Monster contends that there is a presumption that laches does not bar a claim under the Lanham Act when relief is sought within the statute of limitations period from the most closely analogous State Law. *Pinkette Clothing, Inc.*, 894 F.3d at 1025. The analogous statute of limitations period for Lanham Act claims is the four-year statutory period for California State Trademark Infringement. *Id.* In addition, laches runs from the time the plaintiff "knew or should have known about its potential cause of action." *Id.* Laches is not an available defense when infringement is willful. *Nat'l Lead Co. v. Wolfe*, 223 F.2d 195, 202 (9th Cir. 1955).

**Elements of Affirmative Defense No. 4: Abandonment**

To establish this defense, ISN must prove the following:

1. Monster discontinued its use of its marks in the ordinary course of trade, intending not to resume use; or

2. Through Monster's actions, or failure to act, the trademark's primary significance to prospective consumers has become the product or service itself and not the producer of the product or provider of the service; or

3. Monster fails to exercise adequate quality control over the goods and services sold under the trademark by a licensee.

*See* Ninth Circuit Model Jury Instructions § 15.22.

(c) In brief, the key evidence Defendant relies on for each counterclaim and affirmative defense is:

**Affirmative Defense 1: The Plaintiff's Trademark Rights are Invalid and/or Unenforceable**

1) ISN will show that certain trademarks being asserted by Monster are invalid and unenforceable by introduction of the following key evidence.

2) Testimony and evidence will show that the mark is descriptive and not entitled to protection. Specifically, ISN will show that "monster" is used to refer to things that are large in size and that Monster uses the MONSTER ENERGY mark to sell "energy drinks" in relatively large cans. Testimony from Monster employees, including its CEO Rodney Sacks, will be relied upon. ISN will also introduce documents including dictionary definitions of "monster" and "beast" and beverage industry publications which illustrate the descriptive nature of the MONSTER ENERGY mark.

3) ISN will present evidence regarding Monster's failure to use "monster" on its own as a trademark, the descriptive nature of "monster," third-party uses of "monster," and Monster's apparent abandonment of any intention it may have had to use "monster" on its own as a trademark. Monster has no evidence that "monster" on its own has acquired secondary meaning—its own burden—as a trademark of Monster with respect to any goods or services being offered by ISN in the MONSTER MOBILE line, and it certainly has no evidence that secondary meaning had been acquired as of December of 2010 as the law requires. ISN will also introduce a prior trademark application filed by Monster for "monster" on its own that was denied by the U.S. Trademark Office and a consent agreement with a prior third-party user of "monster" in which Monster agreed to abandon the trademark application.

**Affirmative Defense 2: The Plaintiff's Claims are Barred, in whole or in part, by the Applicable Statutes of Limitation**

1) ISN will show that Monster's claims are barred by the statute of limitations by introduction of the following key evidence.

2) ISN has been selling automotive tools and equipment under a mark comprising "monster," and using black and green in conjunction with the line of business, since at least December of 2010. ISN filed an initial trademark application for MONSTER MOBILE with the United States Trademark Office on December 19, 2012. Trademark applications filed with the U.S. trademark Office are public documents. Monster has a responsibility to police its trademarks. We know Monster takes this responsibility quite seriously as Monster files more trademark oppositions at the U.S. trademark office than any other entity.  Yet, Monster did not file this suit until March 22, 2017. This and other relevant evidence will be introduced through the testimony of ISN and ISN employees including Bruce Weber and Scott Pilkenton, the testimony of ISN's former trademark counsel Thomas Kautz, and through the testimony of Monster and Monster employees including its CEO Rodney Sacks. ISN will show that Monster's claims accrued prior to March 22, 2013 such that each of Monster's claims was filed in violation of the applicable statute of limitations.

**Affirmative Defense 3: The Plaintiff's Claims are Barred, in whole or in part, by the Doctrine of Laches**

1) The evidence introduced by ISN in support of its Third Affirmative Defense will largely overlap with the evidence introduced in support of its Second Affirmative Defense. ISN will also show, however, that Monster's delay has caused prejudice to ISN including the loss of key evidence.

**Affirmative Defense 4:  The Plaintiff's Claims are Barred, in whole or in part, by the doctrine of abandonment**

-28-

1) ISN has filed a motion *in limine* asking the Court to preclude Monster from arguing that it has trademark rights in "monster" on its own (i.e. "monster" without another word or symbol). ISN will present evidence regarding Monster's failure to use "monster" on its own as a trademark and Monster's apparent abandonment of any intention it may have had to use "monster" on its own as a trademark. For example, ISN will introduce the previously-discussed denied trademark application filed by Monster for "monster" on its own and the consent agreement with a prior third-party user of "monster" in which Monster agreed to abandon the trademark application. Monster does not have trademark rights in "monster" on its own, and even if it argues it did (many years ago), those rights have since been abandoned.

8. In view of the admitted facts and the elements required to establish the claims, counterclaims and affirmative defenses, the following issues remain to be tried:

The issues for the jury include:

     a.  Whether ISN infringed the MONSTER Marks, BEAST Marks, and MONSTER Trade Dress;

     b.  Whether ISN's infringement was willful;

     c.  Whether Monster has established common law rights in the MONSTER™ Mark and MONSTER Trade Dress;

     d.  Whether ISN has established that Monster's contestable MONSTER registrations (Registration Nos. 4,721,433; 4,234,456; 3,923,683; 4,332,062; 4,660,598; and 4,865,702) are invalid and unenforceable;

     e.  Whether ISN has established that Monster has abandoned any of its trademarks;

     f.  Whether ISN competed unfairly with Monster;

g.  Whether ISN's unfair competition was conducted with malice, oppression, or fraud; and

h.  The amount of damages owed to Monster for sales through October 31, 2017 or any later time period covered by financial information supplemented by ISN and presented by the parties at trial.  (As of the date of this Order, ISN has produced relevant financial information through October 31, 2017.  ISN expects to supplement that information through June 30, 2017 or July 31, 2017).

i.  Monster contends that the jury should determine ISN's profits for ISN's accused products.  ISN contends that the Court, and not the jury, should make that determination.

The issues for the Court include:

a.  Whether Monster's claims are barred by laches;

b.  The amount of damages owed to Monster for sales after October 31, 2017 or any later time period covered by financial information supplemented by ISN and presented by the parties at trial.

c.  Whether to use its discretion to enhance damages up to three times for ISN's willful infringement of Monster's Marks and MONSTER Trade Dress as authorized by 15 U.S.C. § 1117(a);

d.  Whether to disgorge ISN's profits;

e.  Whether to permanently enjoin ISN from infringing Monster's Marks and MONSTER Trade Dress; and

f.  Whether to award either party its attorneys' fees.

9.  Monster's Position: All discovery is complete with one important and significant exception.  Currently, the Magistrate Judge is conducting an *in camera* review of various ISN documents that may fall within the subject-matter

waiver and thus may very likely have to be produced by ISN in connection with the Magistrate's Order Re Scope of Defendant's Subject-Matter Waiver and Granting Plaintiff's Request for *In Camera* Review. Dkt. No. 207. This Court overruled ISN's objections to that Order on August 2, 2018 and held that Order was in full force and effect. Dkt. No. 285. On August 8, 2018, this Court explained that decision in its Order re: Defendants' Motion for Review and Objections to Magistrate's Order. Dkt. No. 291. Therefore, Monster intends on taking additional discovery if the Magistrate Judge orders ISN to produce additional documents after completing her *in camera* review.

Defendant's Position: The discovery ordered by the Magistrate Judge in her Order Re Scope of Defendant's Subject-Matter Waiver and Granting Plaintiff's Request for In Camera Review and any follow up depositions relating thereto is not complete. Dkt. No. 207 or any discovery that may result from or be needed as a result of ISN's amended witness list or supplementation to its Rule 26 disclosures. This Court overruled ISN's objections to that Order on August 2, 2018. Dkt. No. 285. Defendant intends to move to stay this action pending a request for interlocutory appeal and for a continuance of the trial date.

10.   ISN intends to amend its disclosures under Fed. R. Civ. P. 26(a)(3) to include any individuals on its Amended Witness List. Monster reserves the right to object to these disclosures. All other disclosures under Fed. R. Civ. P. 26(a)(3) have been made with the exception of the parties' supplementation of pretrial disclosures in connection with discovery to be received or resulting from the Court's Order Re Scope of Defendant's Subject-Matter Waiver and Granting Plaintiff's Request for *In Camera* Review. Dkt. No. 207. Monster and ISN reserve the right to add additional exhibits from the documents Magistrate Judge Oliver may order for production after *in camera* review.

The joint exhibit list of the parties has been filed under separate cover as required by L.R. 16-6.1. Unless the parties agree that an exhibit shall be

withdrawn, all exhibits will be admitted without objection at trial, except those exhibits listed below:

A.   Monster objects to Exhibit Nos. 8, 10, 12, 13, 15, 32–57, 59, 66–69, 74–77, 279, 2003, 2007–2020, 2026, 2031, 2032, 2042–2082, 2084, 2085, 2092–2097, 2099, 2101, 2102, 2104–2109, 2117–2119, 2162, 2212, 2221–2226, 2228–2237, 2241–2244, 2247, 2248, 2251–2262, including any respective sub-exhibits.

B.   ISN objects to Exhibit Nos. Ex. 90, 121, 132, 137, 139, 141, 144–146, 154, 171, 174, 215, 220, 228–230, 235, 238–240, 246, 249, 254, 257, 274, 275, 286–288, 306–311, 322, 324, 325, 334, 336, 356, 357, 1P, 11P–14P, 18P–21P, 1062–1074, 1086–1089, 1107–1119, 1126–1132, 1168, 1183, 1184, 1192, 1193, 1195, 1218, 1237, 1241, 1243, 1249-1–1249-12, 1252–1256, 1269–1271, 1279, 1280, 1283, 1284, 1288, 1289, 1297, 1299, 1301, 1312, 1315, 1316, 1318, 1319, 1329, 1333, 1335, 1352–1358, 1366, 1393–1395, 1400, 1401, 1450, 1451, 1452, 1454–1456, 1462, 1482, 1490–1499, 1564, 1574–1577, 1588, 1592–1617, 1621, 1622, 1635–1647, 1662–1672, 1677, 1679, 1681–1693, 1698, 1699, 1704, 1713, 1714, 1719, 1720, 1734, 1764–1767, 1827–1833, 1838–1850.

C.   Monster's objections and grounds therefor are separately stated and attached as Exhibit A.  ISN's objections and grounds therefor are separately stated and attached hereto as Exhibit B.

11.   Witness lists of the parties have been filed with the Court.  On August 8, 2018, ISN informed Monster that ISN intends to file an Amended Witness List.  Monster may file an Amended Witness List if new relevant information is revealed because of any order issued by the Magistrate Judge after her *in camera* review.

Only the witnesses identified in the Witness Lists or Amended Witness Lists will be permitted to testify (other than solely for impeachment).  Monster reserves the right to object to witnesses identified for the first time on ISN's

Amended Witness List.

Each party intending to present evidence by way of deposition testimony has marked such depositions in accordance with L.R. 16-2.7. For this purpose, the following depositions shall be lodged with the Clerk as required by L.R. 32-1:

- Deposition of Donald J. Barry, February 16, 2018
- Deposition of Michael Beasley, February 20, 2018
- Deposition of Robert M. Covington, November 9, 2017
- Deposition of Ronald E. Hyre, III, February 2, 2018
- Deposition of Integrated Supply Network, LLC's 30(b)(6) Representative, Michael Scott Pilkenton, March 8, 2018
- Deposition of Integrated Supply Network, LLC's 30(b)(6) Representative Sarah Shelstrom, February 21, 2018
- Deposition of Steven T. Kowalke, January 10, 2018
- Deposition of Darlene Lott, November 17, 2017
- Deposition of Andrew Markowski, February 23, 2018
- Deposition of Monster Energy Company's 30(b)(6) Representative, Thomas John Kelly, February 15, 2018
- Deposition of Monster Energy Company's 30(b)(6) Representative, Rodney C. Sacks, February 5, 2018
- Deposition of Christopher C. Nalven, February 7, 2018
- Deposition of David Pentecost, February 22, 2018
- Deposition of Michael Scott Pilkenton, March 9, 2017
- Deposition of Sam Pontrelli, November 7, 2018
- Deposition of Marianne Radley, November 2, 2017
- Deposition of Matthew Rivera, January 26, 2018
- Deposition of Jody B. Sause, February 23, 2018
- Deposition of Kimberly Stoneman, February 7, 2018

- Deposition of David Bruce Weber, February 20, 2018
- Deposition of William Wilke, February 26, 2018
- Deposition of Isabelle E. Wininger, February 8, 2018

Monster objects to ISN's presentation of testimony by deposition of the following witnesses because ISN did not designate specific testimony from those depositions: Matthew Rivera, Darlene Lott, Ron Hyre, James Berger, Jody Sause, Isabelle Wininger, Michael Beasley, Steven Kowalke, Andrew Markowski, Christopher Nalven, William Wilke. ISN counter-designated deposition testimony from the above-listed individuals and, if MEC presents these individuals' deposition testimony, ISN requests that the Court allow its counter-designations to be presented at the same time as MEC's affirmative designations.

Monster continues to object to the following witnesses that ISN intends to offer:

- Thomas Kautz (subject to motion *in limine*)
- Don Barry (subject to motion *in limine*)
- James T. Berger (stricken by Order (Dkt. No. 203))
- Michael Wagner (subject to Order (Dkt. No. 206))
- Scott Pilkenton by live testimony.  On August 8, 2018, ISN informed Monster that ISN intends to present live testimony from Pilkenton. Monster contends this would violate the parties' January 2018 agreement that ISN would not rely on any live trial testimony from Pilkenton.   ISN  disagrees  with  that  contention  and  the characterization of the January 2018 communications between the parties' counsel.
- ISN maintains and renews its objections to Monster's expert witnesses Russell Mangum, III, Ph.D., and Bruce Isaacson, Ph.D., as argued in ISN's motions *in limine* (Dkt. Nos. 76 and 79) that were overruled by the Court.

12.     The following law and motion matters and motions in limine, and no others, are pending or contemplated:

Monster's Currently Pending Motions

    a.  Monster's Motion *in limine* No. 1 to preclude ISN from offering testimony from Don Barry as an expert;

    b.  Monster's Motion *in limine* No. 2 to preclude ISN from offering evidence or argument that energy drinks in general, or Monster energy drinks in particular, cause harm to consumers;

    c.  Monster's Motion *in limine* No. 3 to preclude ISN from offering evidence of alleged third-party uses of trademarks and trade dress; and

    d.  Monster's Motion *in limine* No. 4 to preclude ISN from relying on any advice of counsel.

ISN's Currently or Contemplated Pending Motions

    a.  ISN's Motion *in limine* for an order excluding testimony regarding alleged dilution of Plaintiff Monster Energy Company's trademarks;

    b.  ISN's Motion *in limine* for an order excluding testimony or argument regarding Plaintiff Monster Energy Company's alleged rights in the term "monster" by itself;

    c.  ISN's Motion *in limine* to Court for an order bifurcating following issues: the factual determination of willful trademark infringement to be presented to the jury and the equitable remedy of disgorgement damages under 15 U.S.C § 1117 as determined by the Judge; and

    d.  ISN's Motion *in limine* for an order prohibiting Plaintiff Monster Energy Company from presenting evidence concerning the criminal record of Michael Scott Pilkenton.

e. ISN intends to move to stay this action pending a request for interlocutory appeal and for a continuance of the trial date.

13.    Bifurcation:

ISN filed a Motion *in limine* to bifurcate trial.  ISN seeks to have the issues of infringement and willful infringement tried to the jury in a first trial, and the issue of disgorgement of profits tried to the Court in a second trial.  Monster opposed that motion.   The parties have set forth their positions regarding bifurcation in the briefs that they filed in connection with ISN's motion.

14.    The foregoing admissions having been made by the parties, and the parties having specified the foregoing issues remaining to be litigated, this Final Pretrial Conference Order shall supersede the pleadings and govern the court of the trial of this cause, unless modified to prevent manifest injustice.

Dated: _____    _____

Hon. Consuelo B. Marshall
United States District Judge

Approved as to form and content.

KNOBBE, MARTENS, OLSON & BEAR, LLP


By: /s/ *Lynda J. Zadra-Symes*
       Joseph R. Re
       Steven J. Nataupsky
       Lynda J. Zadra-Symes
       Brian C. Horne
       Marko R. Zoretic
       Jason A. Champion
       Attorneys for Plaintiff,
       MONSTER ENERGY COMPANY

MADEL PA


By:  /s/ Cassandra B. Merrick (*with permission*)
        Jeffrey S. Standley
        Melissa A. Rogers McCurdy
        Douglas C. Smith
        F. Michael Speed, Jr.
        Christopher W. Madel
        Jennifer M. Robbins
        Cassandra B. Merrick
        Attorneys for Defendant,
        INTEGRATED SUPPLY NETWORK, LLC


28843769