DOUGLAS C. SMITH (SBN 160013)
dsmith@smitlaw.com
SMITH LAW OFFICES, LLP
4204 Riverwalk Parkway, Suite 250
Riverside, California 92505
Telephone: (951) 509-1355
Facsimile: (951) 509-1356

CHRISTOPHER W. MADEL (MN #230297)
cmadel@madellaw.com
JENNIFER M. ROBBINS (MN #387745)
jrobbins@madellaw.com
CASSANDRA B. MERRICK (MN #396372)
cmerrick@madellaw.com
MADEL PA
800 Hennepin Avenue
800 Pence Building
Minneapolis, MN  55413
Telephone: (612) 605-0630
Facsimile: (612) 326-9990
*Continued on next page*

IN THE UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MONSTER ENERGY COMPANY, a Delaware corporation,<br><br>Plaintiff,<br><br>v.<br><br>INTEGRATED SUPPLY NETWORK, LLC, a Florida limited liability company,<br><br>Defendant. | Case No. 5:17-CV-00548-CBM-RAO<br><br>**DEFENDANT INTEGRATED SUPPLY NETWORK, LLC'S PROPOSED JURY INSTRUCTIONS**<br><br>Trial:<br>Date:  October 30, 2018<br>Time: 10:00 a.m.<br>Ctrm:  8B<br><br>Hon. Consuelo B. Marshall |

JEFFREY S. STANDLEY (OH # 0047248)
jstandley@standleyllp.com
MELISSA A. ROGERS MCCURDY (OH #0084102)
mmccurdy@standleyllp.com
F. MICHAEL SPEED, JR. (OH #0067541)
mspeed@standleyllp.com
Standley Law Group LLP
6300 Riverside Drive
Dublin, Ohio 43017
Telephone: (614) 792-5555
Fax: (614) 792-5536

Attorneys for Defendant
INTEGRATED SUPPLY NETWORK, LLC

        Pursuant to the Court's Order Granting Stipulation to Continue Trial Date (Dkt. No. 355), Defendant Integrated Supply Network, LLC ("ISN") respectfully proposes the following jury instructions for the instructions on which the parties were unable to agree.

                              Respectfully submitted,
                              MADEL PA


Dated:  October 9, 2018        By: /s/ _____
                                   Christopher W. Madel
                                   Jennifer M. Robbins
                                   Cassandra B. Merrick

                                Attorneys for Defendant,
                                INTEGRATED SUPPLY NETWORK, LLC

## INDEX OF JURY INSTRUCTIONS

| No. | Title | Source | Page |
|-----|-------|--------|------|
| 1 | Preliminary Instruction— Trademark | Ninth Circuit Manual of Model Civil Jury Instructions – Nos. 15.1, 15.3 (modified), 15.8 (modified), 15.9. | 1 |
| 5 | Burden of Proof – Injury and Causation | *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 125 (2014); *578539 B.C., Ltd. v. Kortz*, No. CV1404375MMMMANX, 2014 WL 12572679 (C.D. Cal. Oct. 16, 2014); *Lindy Pen Company, Inc., v. Bic Pen Corporation*, 982 F.2d 1400, 1407 (9th Cir. 1993), *abrogated on other grounds by SunEarth, Inc. v. Sun Earth Solar Power Co.*, 839 F.3d 1179 (9th Cir. 2016); *PQ Labs, Inc. v. Yang Qi*, No. 12–0450 CW, 2014 WL 4954161, at *11 (N.D. Cal. Sept. 30, 2014); *Digby Adler Grp. LLC v. Image Rent a Car, Inc.*, 79 F. Supp. 3d 1095, 1109 (N.D. Cal. 2015); *Intel Corp. v. Terabyte Int'l, Inc.*, 6 F.3d 614, 620–21 (9th Cir. 1993); *Marketquest Group, Inc. v. BIC Corp.*, 316 F. Supp.3d 1234, 1298 (C.D. Cal. 2018); *Wyatt Tech. Corp. v. Malvern Instruments, Inc.*, Case No. | 12 |

CV 07-8298 ABC (MANx), 2010 WL 11505684, at *3 (C.D. Cal. Jan. 25, 2010); *Edge Games, LLC v. Houghton Mifflin Harcourt Publ'g Co.*, No. EDCV 13 02123 VAP, 2015 WL 3498607, at *6 (C.D. Cal. June 2, 2015); *Hernandez v. Sandoval*, No. 2:12-CV-04560-CAS, 2014 WL 3704497, at *3 (C.D. Cal. July 23, 2014); *Illusions Int'l Inc. v. Walgreen Co.*, No. SACV07494JVSRNBX, 2008 WL 11342979, at *2 (C.D. Cal. July 11, 2008); *Color Me Mine Enterprises Inc. v. S. States Mktg. Inc.*, No. CV1200860RGKJCX, 2013 WL 12119715, at *9 (C.D. Cal. Apr. 25, 2013); In *Computer Access Tech. Corp. v. Catalyst Enterprises, Inc.*, 237 F. Supp.2d 1063 (N.D. Cal. 2003); *Aktiebolaget Electrolux v. Armatron Int'l, Inc.*, 999 F.2d 1, 4 (1st Cir. 1992); *A&H Sportswear, Inc. v. Victoria's Secret Stores, Inc.*, 166 F.3d 197, 209 (3d Cir. 1999); *Fishman Transducers, Inc. v. Paul*, 684 F.3d 187, 189 (1st Cir. 2012); *Zelinski v.*

| | | | |
|---|---|---|---|
| | | *Columbia 300, Inc.*, 335 F.3d 633, 639 (7th Cir. 2003). | |
| 6 | Infringement—Elements and Burden of Proof—Trademark | Ninth Circuit Manual of Model Civil Jury Instructions – No. 15.6. | 14 |
| 7 | Infringement—Elements and Burden of Proof—Trade Dress | Ninth Circuit Manual of Model Civil Jury Instructions – No. 15.7. | 15 |
| 8 | Infringement—Elements—Presumed Validity and Ownership—Registered Trademark | Ninth Circuit Manual of Model Civil Jury Instructions – No. 15.8. | 16 |
| 11 | Infringement—Elements—Validity—Unregistered Mark—Distinctiveness | Ninth Circuit Manual of Model Civil Jury Instructions – No. 15.10. | 18 |
| 12 | Infringement—Elements—Validity—Distinctiveness—Secondary Meaning | Ninth Circuit Manual of Model Civil Jury Instructions – No. 15.11. | 24 |

| 13 | Infringement—Elements—Validity—Trade Dress—Non-Functionality Requirement | Ninth Circuit Manual of Model Civil Jury Instructions – No. 15.12. | 27 |
|----|---|---|----|
| 14 | Infringement—Likelihood of Confusion—Factors—*Sleekcraft* Test | Ninth Circuit Manual of Model Civil Jury Instructions – No. 15.18. | 30 |
| 15 | Infringement—Likelihood of Confusion—Factor—Strength of Trademark or Trade Dress | Ninth Circuit Manual of Model Civil Jury Instructions – No. 15.19. | 33 |
| 16 | Defenses—Abandonment—Affirmative Defense—Defendant's Burden of Proof | Ninth Circuit Manual of Model Civil Jury Instructions – No. 15.22. | 37 |
| 17 | Defense of Laches | *Grupo Gigante S.A. De C.V. v. Dallo & Co.,* 391 F.3d 1088, 1102–03 (9th Cir. 2004); *Jarrow Formulas, Inc. v. Nutrition Now, Inc.,* 304 F.3d 829, 838 | 38 |

| | | | | |
|---|---|---|---|---|
| | | | (9th Cir. 2002); *Tillamook Country Smoker, Inc. v. Tillamook County Creamery Association,* 465 F.3d 1102, 1108 (9th Cir. 2006); *San Miguel Pure Foods Co. v. Ramar Int'l Corp.*, 625 F. App'x 322, 326 (9th Cir. 2015). | |
| 18 | Trademark Damages – Willful Infringement | | *San Miguel Pure Foods Co. v. Ramar Int'l Corp.*, 625 F. App'x 322, 325 (9th Cir. 2015); *Int'l Olympic Comm. v. San Francisco Arts & Athletics,* 781 F.2d 733, 739 (9th Cir.), *amended by* 789 F.2d 1319 (9th Cir.1986) (holding that conduct is not willful if a party "reasonably thought that its proposed usage was not barred by the statute"), *aff'd sub nom. San Francisco Arts & Athletics, Inc. v. U.S. Olympic Comm.,* 483 U.S. 522, 107 S.Ct. 2971, 97 L.Ed.2d 427 (1987); *Evergreen Safety Council v. RSA Network Inc.,* 697 F.3d 1221, 1228 (9th Cir. 2012) ("Continued use of a work even after one has been notified of his or her alleged infringement does not constitute willfulness so long as one believes reasonably, and in good faith, that he or she is not infringing.") | 39 |

| 19 | Trademark Damages— Plaintiff's Actual Damages | Ninth Circuit Manual of Model Civil Jury Instructions – No. 15.27; *Lindy Pen Co. v. Bic Pen Corp.*, 982 F.2d 1400, 1407 (9th Cir. 1993) (damages suffered by the plaintiff are typically measured by any direct injury which a plaintiff can prove). | 40 |
|----|----|----|----|
| 22 | Reasonable Royalty –Possible Factors | AIPLA Model Patent Jury Instructions, 11.14 (revised to apply to trademark context); *Ericsson, Inc. v. D-Link Sys., Inc.*, No. 10-CV-0473, 2014 U.S. App. LEXIS 22778 at *65-69 (Fed. Cir. 2014); *Apple Inc. et al v. Motorola Inc., et al.,* ___ F.3d ____ (Fed. Cir. Apr. 25, 2014); *LaserDynamics, Inc. v. Quanta Computer, Inc. et al*, 694 F.3d 51, 60 (Fed. Cir. 2012); *Wordtech Sys., Inc. v. Integrated Networks Solutions, Inc.*, 609 F.3d 1308, 1319 (Fed. Cir. 2010); *ResQNet.com, Inc. v. Lansa, Inc.*, 594 F.3d 860, 869-73 (Fed. Cir. 2010); *Monsanto Co. v. McFarling,* 488 F.3d 973 (Fed. Cir. 2007); *Maxwell v. J. Baker, Inc.*, 86 F.3d 1098, 1108-10 (Fed. Cir. 1996); *TWM Mfg. Co. v. Dura Corp.*, 789 F.2d 895, 898-900 (Fed. Cir. 1986); | 42 |

| | | | |
|---|---|---|---|
| | | *Georgia-Pacific Corp. v. United States Plywood Corp.*, 318 F. Supp. 1116 (S.D.N.Y. 1970), *modified and aff'd sub nom.*, *Georgia Pacific Corp. v. United States Plywood Champion Papers, Inc.*, 446 F.2d 295 (2d Cir. 1971). | |
| 44 | Defendant's Profits | Ninth Circuit Manual of Model Civil Jury Instructions – No. 15.29; *Stone Creek, Inc. v. Omnia Italian Design, Inc.*, No. 15- 17418, 2017 WL 3724419, at \*10 (9th Cir. Aug. 30, 2017). | 45 |

## PRELIMINARY INSTRUCTIONS

### JURY INSTRUCTION NO. 1

### (PRELIMINARY INSTRUCTION—TRADEMARK)

The plaintiff, Monster Energy, seeks damages against the defendant, Integrated Supply Network, whom I will call ISN, for infringement of its registered and unregistered trademarks and trade dress. ISN denies infringing the trademarks and trade dress. ISN also contends that some of Monster Energy's claimed trademarks are invalid, and that Monster Energy's claimed trade dress is invalid. To help you understand the evidence that will be presented in this case, I will explain some of the legal terms you will hear during this trial.

**Definition and Function of a Trademark**

A trademark is a word, name, symbol, or device, or any combination of these items that indicates the source of goods. The owner of a trademark has the right to exclude others from using that trademark or a similar mark that is likely to cause confusion in the marketplace. The main function of a trademark is to identify and distinguish goods as the product of a particular manufacturer or merchant and to protect its goodwill.

A service mark is the same as a trademark, except that it is used to identify and distinguish a company's services, rather than a company's goods. For convenience, I will refer to both trademarks and service marks as "trademarks" or simply "marks."

-1-

## How a Trademark Is Obtained

A person acquires the right to exclude others from using the same mark or a similar mark that is likely to cause confusion in the marketplace by being the first to use it in the marketplace, or by using it before the alleged infringer. Rights in a trademark are obtained only through commercial use of the mark.

## Trademark Registration

After the owner of a trademark has obtained the right to exclude others from using the trademark, the owner may obtain a certificate of registration issued by the United States Patent and Trademark Office. Thereafter, when the owner brings an action for infringement, the owner may rely solely on the registration certificate to prove that the owner has the right to exclude others from using the trademark or a similar mark that is likely to cause confusion in the marketplace in connection with the type of goods specified in the certificate. These presumptions in favor of the owner created by the certificate of registration can be overcome or rebutted only by certain types of evidence that I will describe to you later as appropriate.

## Unregistered Marks

Not all trademarks are registered. Unregistered trademarks can be valid and provide the owner with the exclusive right to use that trademark.

Only a valid trademark can be infringed.

AUTHORITY: Ninth Circuit Manual of Model Civil Jury Instructions – No. 15.9.

**Trade Dress**

Trade dress is the non-functional physical detail and design of a product or its packaging, which indicates the product's source and distinguishes it from the products of others.

Trade dress is the product's total image and overall appearance, and may include features such as size, shape, color, color combinations, texture, or graphics.  In other words, trade dress is the form in which a person presents a product or service to the market, its manner of display.  A registration is not necessary to have trade dress rights.

**Likelihood of Confusion**

To prove infringement of its trademarks and its trade dress, the plaintiff must prove, by a preponderance of the evidence, that the defendant, without the plaintiff's consent, used in commerce a reproduction, copy, counterfeit or colorable imitation of plaintiff's mark or trade dress in connection with the distribution or advertisement of goods, such that the defendant's use of the mark or trade dress is likely to cause confusion as to the source of the goods. It is not necessary that the mark or trade dress used by the defendant be an exact copy of the plaintiff's mark. Rather, the plaintiff must demonstrate that, viewed in its entirety, the mark or trade dress used by the defendant is likely to cause confusion in the minds of reasonably prudent purchasers or users as to the source of the product in question.

**Monster Energy's Claims and Burden of Proof**

In this case, Monster Energy contends that ISN has infringed Monster Energy's registered and unregistered trademarks and trade dress. First, Monster

Energy is asserting 20 registered trademarks, each of which will be listed in a chart you will receive. These registered trademarks use the terms "Monster Energy," "Ubermonster," "Unleash the Beast," and the Monster Energy M-Claw logo in various combinations. I will refer to these as Monster Energy's registered trademarks.

| MARK | REG. NO. | GOODS/SERVICES | DATE FILED | REG. DATE |
|---|---|---|---|---|
| MONSTER ENERGY | 4,721,433 | Promoting goods and services in the sports, motorsports, electronic sports, and music industries through the distribution of printed, audio and visual promotional materials; promoting sports and music events and competitions for others | 03/12/2014 | 04/14/2015 |
| MONSTER ENERGY | 3,044,315 | Nutritional supplements in liquid form, but excluding perishable beverage products that contain fruit juice or soy, whether such products are pasteurized or not | 05/23/2003 | 01/17/2006 |

| MARK | REG. NO. | GOODS/SERVICES | DATE FILED | REG. DATE |
|---|---|---|---|---|
| MONSTER ENERGY | 3,057,061 | Fruit juice drinks having a juice content of 50% or less by volume that are shelf stable, carbonated soft drinks, carbonated drinks enhanced with vitamins, minerals, nutrients, amino acids and/or herbs, but excluding perishable beverage products that contain fruit juice or soy, whether such products are pasteurized or not | 04/18/2002 | 02/27/2006 |
| MONSTER ENERGY | 4,036,680 | Nutritional supplements in liquid form | 09/11/2007 | 10/11/2011 |
| MONSTER ENERGY | 4,036,681 | Non-alcoholic beverages, namely, energy drinks, excluding perishable beverage products that contain fruit juice or soy | 09/11/2007 | 10/11/2011 |
| M MONSTER ENERGY | 3,044,314 | Nutritional supplements in liquid form, but excluding perishable beverage products that contain fruit juice or soy, whether such products are pasteurized or not | 05/23/2003 | 01/17/2006 |

| MARK | REG. NO. | GOODS/SERVICES | DATE FILED | REG. DATE |
|---|---|---|---|---|
| M MONSTER ENERGY | 3,134,842 | Beverages, namely, carbonated soft drinks, carbonated drinks enhanced with vitamins, minerals, nutrients, amino acids and/or herbs, carbonated energy or sports drinks, fruit juice drinks having a juice content of 50% or less by volume that are shelf stable, but excluding perishable beverage products that contain fruit juice or soy, whether such products are pasteurized or not | 05/07/2003 | 08/29/2006 |
| UBERMONSTER | 4,234,456 | Nutritional supplements in liquid form;<br><br>Beverages, namely, carbonated soft drinks; nonalcoholic carbonated soft drinks and energy drinks enhanced with vitamins, minerals, nutrients, proteins, amino acids and/or herbs; carbonated energy drinks and sports drinks; all the foregoing goods exclude perishable beverage products that contain fruit juice or soy, whether such products are pasteurized or not | 07/09/2010 | 10/30/2012 |

| MARK | REG. NO. | GOODS/SERVICES | DATE FILED | REG. DATE |
|---|---|---|---|---|
|  | 3,908,601 | Clothing, namely, t-shirts, hooded shirts and hooded sweatshirts, sweat shirts, jackets, pants, bandanas, sweat bands and gloves; headgear, namely, hats and beanies | 04/02/2009 | 01/18/2011 |
|  | 3,914,828 | Sports helmets | 04/02/2009 | 02/01/2011 |
|  | 3,923,683 | All purpose sport bags; All-purpose carrying bags; Backpacks; Duffle bags | 04/02/2009 | 02/22/2011 |
|  | 3,908,600 | Stickers; sticker kits comprising stickers and decals; decals | 04/02/2009 | 01/18/2011 |
|  | 3,134,841 | Beverages, namely, carbonated soft drinks, carbonated soft drinks enhanced with vitamins, minerals, nutrients, amino acids and/or herbs, carbonated energy and sports drinks, fruit juice drinks having a juice content of 50% or less by volume that are shelf stable, but excluding perishable beverage products that contain fruit juice or soy, whether such products are pasteurized or not | 05/07/2003 | 08/29/2006 |

-7-

| MARK | REG. NO. | GOODS/SERVICES | DATE FILED | REG. DATE |
|---|---|---|---|---|
|  | 4,332,062 | Silicone wrist bands; silicone bracelets; jewelry, namely, bracelets and wristbands | 10/05/2012 | 05/07/2013 |
|  | 4,660,598 | Lanyards; Lanyards for holding whistles, keys, eyeglasses, sunglasses, mobile telephones, badges, identification cards, event passes, media passes, photographs, recording equipment, or similar conveniences | 08/26/2013 | 12/23/2014 |
|  | 3,740,050 | Nutritional supplements; Beverages, namely, carbonated soft drinks, carbonated drinks enhanced with vitamins, minerals, nutrients, amino acids and/or herbs, carbonated and non-carbonated energy or sports drinks | 08/07/2009 | 01/19/2010 |
|  | 4,865,702 | Nutritional supplements in liquid form; Non-alcoholic beverages, namely, carbonated soft drinks; carbonated drinks enhanced with vitamins, minerals, nutrients, proteins, amino acids and/or herbs; carbonated energy drinks and sports drinks | 02/02/2015 | 12/08/2015 |

| MARK | REG. NO. | GOODS/SERVICES | DATE FILED | REG. DATE |
|---|---|---|---|---|
| UNLEASH THE BEAST! | 4,975,822 | Clothing, namely, tops, shirts, long-sleeved shirts, t-shirts, hooded shirts and hooded sweatshirts, sweat shirts, jackets, pants, bandanas, socks, sweat bands and gloves; headgear, namely, hats and beanies | 03/07/2014 | 06/14/2016 |
| UNLEASH THE BEAST! | 2,769,364 | Fruit juice drinks, soft drinks, carbonated soft drinks and soft drinks enhanced with vitamins, minerals, nutrients, amino acids and/or herbs | 12/18/2002 | 09/30/2003 |
| UNLEASH THE NITRO BEAST! | 4,394,044 | Non-alcoholic beverages, namely, carbonated soft drinks; carbonated drinks enhanced with vitamins, minerals, nutrients, proteins, amino acids and/or herbs; carbonated energy or sports drinks | 12/14/2010 | 07/27/2013 |

Monster Energy is also asserting an unregistered trademark in the term "Monster" in connection with other words or elements.

Finally, Monster Energy is also asserting trade dress rights in the way it presents its products using each of the following elements: (1) a black or gray background; (2) a clawed letter "M"; (3) a bright contrasting green color; (4) the word "Monster" in a white, stylized font; and (5) an overall aggressive, edgy theme ("Trade Dress"). I will refer to this as the Trade Dress asserted by Monster Energy.

Monster Energy must prove that it has suffered an injury in this case and that Monster Mobile caused that injury. Monster Energy has the burden of proving by a preponderance of the evidence that it is the owner of a valid trademark or trade dress and that ISN infringed that trademark or trade dress. Preponderance of the evidence means that you must be persuaded by the evidence that it is more probably true than not true that ISN infringed Monster Energy's trademarks or trade dress.

One way for Monster Energy to prove it has a valid trademark is to show that the trademark is registered. An owner of a trademark may obtain a certificate of registration issued by the United States Patent and Trademark Office and may submit that certificate as evidence of the validity and protectability of the trademark and of the certificate holder's ownership of the trademark covered by that certificate.

Another way for Monster Energy to prove it has a valid trademark is to show that the trademark acts as a trademark in that it identifies a particular source of the goods or services at issue.

**ISN's Defenses and Burden of Proof**

ISN contends that some of Monster Energy's trademarks and trade dress are invalid.  In addition, ISN contends that Monster Energy abandoned any rights in the word "Monster" when used alone. ISN has the burden of proving by a preponderance of the evidence that the challenged registered trademarks are invalid or that the unregistered "Monster" trademark has been abandoned. Preponderance of the evidence means that you must be persuaded by the evidence that it is more probably true than not true that the challenged trademarks are invalid or abandoned.

AUTHORITY: Ninth Circuit Manual of Model Civil Jury Instructions – Nos. 15.1, 15.3 (modified), 15.8 (modified).

# INSTRUCTIONS AFTER EVIDENCE BUT BEFORE CLOSING ARGUMENT

## JURY INSTRUCTION NO. 5
### (BURDEN OF PROOF – INJURY AND CAUSATION)

For all of its claims, Monster Energy must prove by a preponderance of the evidence that it has suffered an injury in this case, and that Monster Mobile caused that injury.

AUTHORITY: *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 125 (2014); *578539 B.C., Ltd. v. Kortz*, No. CV1404375MMMMANX, 2014 WL 12572679 (C.D. Cal. Oct. 16, 2014); *Lindy Pen Company, Inc., v. Bic Pen Corporation*, 982 F.2d 1400, 1407 (9th Cir. 1993), *abrogated on other grounds by SunEarth, Inc. v. Sun Earth Solar Power Co.*, 839 F.3d 1179 (9th Cir. 2016); *PQ Labs, Inc. v. Yang Qi*, No. 12–0450 CW, 2014 WL 4954161, at *11 (N.D. Cal. Sept. 30, 2014); *Digby Adler Grp. LLC v. Image Rent a Car, Inc.*, 79 F. Supp. 3d 1095, 1109 (N.D. Cal. 2015); *Intel Corp. v. Terabyte Int'l, Inc.*, 6 F.3d 614, 620–21 (9th Cir. 1993); *Marketquest Group, Inc. v. BIC Corp.*, 316 F. Supp.3d 1234, 1298 (C.D. Cal. 2018); *Wyatt Tech. Corp. v. Malvern Instruments, Inc.*, Case No. CV 07-8298 ABC (MANx), 2010 WL 11505684, at *3 (C.D. Cal. Jan. 25, 2010); *Edge Games, LLC v. Houghton Mifflin Harcourt Publ'g Co.*, No. EDCV 13 02123 VAP, 2015 WL 3498607, at *6 (C.D. Cal. June 2, 2015); *Hernandez v. Sandoval*, No. 2:12-CV-04560-CAS, 2014 WL 3704497, at *3 (C.D. Cal. July 23, 2014); *Illusions Int'l Inc. v. Walgreen Co.*, No. SACV07494JVSRNBX, 2008 WL 11342979, at *2 (C.D. Cal. July 11, 2008); *Color Me Mine Enterprises Inc. v. S. States Mktg. Inc.*, No. CV1200860RGKJCX, 2013 WL 12119715, at *9 (C.D. Cal. Apr. 25, 2013); In *Computer Access Tech. Corp. v. Catalyst Enterprises, Inc.*, 237 F. Supp.2d 1063

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

(N.D. Cal. 2003); *Aktiebolaget Electrolux v. Armatron Int'l, Inc.*, 999 F.2d 1, 4 (1st Cir. 1992); *A&H Sportswear, Inc. v. Victoria's Secret Stores, Inc.,* 166 F.3d 197, 209 (3d Cir. 1999); *Fishman Transducers, Inc. v. Paul*, 684 F.3d 187, 189 (1st Cir. 2012); *Zelinski v. Columbia 300, Inc.*, 335 F.3d 633, 639 (7th Cir. 2003).

**JURY INSTRUCTION NO. 6**

**(INFRINGEMENT—ELEMENTS AND BURDEN OF PROOF—**

**TRADEMARK)**

On Monster Energy's claims for trademark infringement, Monster Energy has the burden of proving each of the following elements by a preponderance of the evidence:

1. That Monster Energy's claimed trademarks are valid, protectable trademarks;

2. That Monster Energy owns these trademarks; and

3. That ISN used these trademarks or a similar trademark without the consent of Monster Energy in a manner that is likely to cause confusion among ordinary consumers as to the source, sponsorship, affiliation, or approval of the goods.

If you find that each of the elements on which Monster Energy has the burden of proof has been proved, your verdict should be for Monster Energy. If, on the other hand, Monster Energy has failed to prove any of these elements, your verdict should be for ISN.

AUTHORITY: Ninth Circuit Manual of Model Civil Jury Instructions – No. 15.6.

**JURY INSTRUCTION NO. 7**

**(INFRINGEMENT—ELEMENTS AND BURDEN OF PROOF—TRADE DRESS)**

On Monster Energy's claim for trade dress infringement, Monster Energy has the burden of proving by a preponderance of the evidence each of the following elements:

1. That the claimed Trade Dress, including each of the following elements: (1) a black or gray background; (2) a clawed letter "M"; (3) a bright contrasting green color; (4) the word "Monster" in a white, stylized font; and (5) an overall aggressive, edgy theme ("Trade Dress"), is distinctive;

2. That Monster Energy owns this Trade Dress;

3. That the Trade Dress asserted by Monster Energy is nonfunctional; and

4. That ISN used trade dress similar to the Trade Dress asserted by Monster Energy without the consent of Monster Energy in a manner that is likely to cause confusion among ordinary consumers as to the source, sponsorship, affiliation, or approval of ISN's goods.

If you find that each of the elements on which Monster Energy has the burden of proof has been proved, your verdict should be for the plaintiff. If, on the other hand, Monster Energy has failed to prove any of these elements, your verdict should be for ISN.

AUTHORITY: Ninth Circuit Manual of Model Civil Jury Instructions – No. 15.7.

# JURY INSTRUCTION NO. 8
## (INFRINGEMENT—ELEMENTS—PRESUMED VALIDITY AND OWNERSHIP—REGISTERED TRADEMARK)

I gave you instruction number 6 that requires Monster Energy to prove by a preponderance of the evidence that its trademarks are valid and protectable and that Monster Energy owns the trademarks. A valid trademark is a word, name, symbol, device, or any combination of these, that indicates the source of goods or services and distinguishes those goods or services from the goods or services of others. A trademark becomes protectable after it is used in commerce.

One way for Monster Energy to prove trademark validity is to show that the trademark is registered. An owner of a trademark may obtain a certificate of registration issued by the United States Patent and Trademark Office and may submit that certificate as evidence of the validity and protectability of the trademark and of the certificate holder's ownership of the trademark covered by that certificate.

Exhibits 1000A through 1013A, 1023A, 1034A through 1037A, and 1043A are certificates of registration from the United States Patent and Trademark Office.  They were submitted by Monster Energy as proof of the validity of the trademarks and that Monster Energy owns the trademarks.

The facts recited in these certificates are that Monster Energy owns valid trademark rights in each of the trademarks listed in the registrations for the goods or services that are recited therein. However, ISN disputes some of these recitals. ISN alleges that some of the certificates cannot be considered proof of validity of the trademark because "Monster Energy" is descriptive of the goods being offered

or that the trademark has been abandoned by Monster Energy and is therefore not a valid trademark.

Unless ISN proves by a preponderance of the evidence that a particular trademark is invalid, not owned by Monster Energy, or abandoned, you must consider that trademark to be conclusively proved as valid and owned by Monster Energy. However, if ISN shows by a preponderance of the evidence that the trademark is invalid, not owned by Monster Energy, or abandoned, then the facts stated in the certificate(s) are no longer conclusively presumed to be correct. You should then consider whether all of the evidence admitted in this case, in addition to the certificate of registration, shows by a preponderance of the evidence that the trademark is valid and owned by Monster Energy, as I explain in Instruction 6.

In this case, there is no dispute that Monster Energy's registrations of trademarks shown at Exhibits 1001A through 1004A, 1006A, 1009A through 1013A, 1034A, and 1037A are conclusive evidence of Monster Energy's ownership of these trademarks and that the trademarks are valid and protectable. I instruct you that for purposes of Instruction 6, you must find that Monster Energy owns these trademarks and that these trademarks are valid and protectable.

AUTHORITY: Ninth Circuit Manual of Model Civil Jury Instructions – No. 15.8.

# JURY INSTRUCTION NO. 11
## (INFRINGEMENT—ELEMENTS—VALIDITY—UNREGISTERED MARK—DISTINCTIVENESS)

### Strength as a Likelihood of Confusion Factor

How distinctively a trademark or trade dress indicates that a good comes from a particular source is an important factor to consider in assessing its validity. As I will discuss later, it is also an important factor in determining whether ISN has infringed Monster Energy's claimed trademarks or claimed trade dress.

Monster Energy asserts that the word "Monster" is a valid and protectable trademark for its goods and services, and that the Trade Dress asserted by Monster Energy is a valid and protectable trade dress for its goods and services. Monster Energy contends that ISN's use of the words "Monster" and "Monster Mobile" in connection with ISN's products infringes Monster Energy's "Monster" trademark and is likely to cause confusion about the origin of goods associated with that trademark.  Similarly, Monster Energy contends that ISN's use of the words "Monster" and "Monster Mobile" in combination with the colors green and black infringes the Trade Dress asserted by Monster Energy and is likely to cause confusion about the origin of the goods associated with that trade dress. ISN disputes each of these claims.

In order to determine if Monster Energy has met its burden of showing that its claimed, unregistered "Monster" trademark is a valid trademark, or that the Trade Dress asserted by Monster Energy is a valid trade dress, you should classify it on the spectrum of distinctiveness that I will explain in this instruction.

An inherently distinctive trademark or trade dress is a word, symbol or device, or combination of them, which intrinsically identifies a particular source of a good or service in the market. The law assumes that an inherently distinctive trademark or trade dress is one that almost automatically tells a consumer that it refers to a brand or a source for a product, and that consumers will be predisposed to equate the trademark with the source of a product.

**Spectrum of Marks and Trade Dress**

Trademark law provides great protection to distinctive or strong trademarks and trade dress.  Conversely, trademarks and trade dress that are not as distinctive or strong are called "weak" trademarks and trade dress, and they receive less protection from infringing uses. Trademarks and trade dress that are not distinctive are not entitled to any trademark protection. For deciding trademark and trade dress protectability, you must consider whether a trademark or trade dress is inherently distinctive.  Trademarks and trade dress are grouped into four categories according to their relative strength or distinctiveness. These four categories are, in order of strength or distinctiveness: arbitrary (which is inherently distinctive), suggestive (which also is inherently distinctive), descriptive (which is protected only if it acquires in consumers' minds a "secondary meaning" which I explain in Instruction 12, and generic names (which are entitled to no protection).

**Arbitrary Trademarks and Trade Dress**. The first category of "inherently distinctive" trademarks and trade dress is arbitrary trademarks and trade dress. They are considered strong marks and are clearly protectable. They involve the arbitrary, fanciful or fictitious use of a word or a trade dress to designate the source of a product. Such a trademark or trade dress in no way

describes or has any relevance to the particular product it is meant to identify.  It may be a common word used in an unfamiliar way.  It may be a newly created (coined) word or parts of common words which are applied in a fanciful, fictitious or unfamiliar way, solely as a trademark or trade dress.

For instance, the common word "apple" became a strong and inherently distinctive trademark when used by a company to identify the personal computers that company sold. The company's use of the word "apple" was arbitrary or fanciful because "apple" did not describe and was not related to what the computer was, its components, ingredients, quality, or characteristics. "Apple" was being used in an arbitrary way to designate for consumers that the computer comes from a particular manufacturer or source.

**Suggestive Trademarks and Trade Dress**. The next category is suggestive trademarks and trade dress. These trademarks and trade dress are also inherently distinctive but are considered weaker than arbitrary trademarks and trade dress.  Unlike arbitrary trademarks and trade dress, which are in no way related to what the product is or its components, quality, or characteristics, suggestive trademarks and trade dress imply some characteristic or quality of the product to which they are attached. If the consumer must use imagination or any type of multi-stage reasoning to understand the significance of the trademark or trade dress, then the trademark or trade dress does not describe the product's features, but merely suggests them.

A suggestive use of a word involves consumers associating the qualities the word suggests to the product to which the word is attached.  For example, when "apple" is used not to indicate a certain company's computers, but rather "Apple–A–Day" Vitamins, it is being used as a suggestive trademark. "Apple"

does not describe what the vitamins are. However, consumers may come to associate the healthfulness of "an apple a day keeping the doctor away" with the supposed benefits of taking "Apple–A–Day" Vitamins.

**Descriptive Trademarks and Trade Dress**. The third category is descriptive trademarks and trade dress. Descriptive trademarks and trade dress directly identify or describe some aspect, characteristic, or quality of the product to which they are affixed in a straightforward way that requires no exercise of imagination to be understood.

For instance, the word "apple" is descriptive when used in the trademark "CranApple" to designate a cranberry-apple juice. It directly describes ingredients of the juice. Other common types of descriptive trademarks identify where a product comes from, or the name of the person who makes or sells the product. Thus, the words "Apple Valley Juice" affixed to cider from the California town of Apple Valley is a descriptive trademark because it geographically describes where the cider comes from. Similarly, a descriptive trademark can be the personal name of the person who makes or sells the product. So, if a farmer in Apple Valley, Judy Brown, sold her cider under the label "Judy's Juice" (rather than CranApple) she is making a descriptive use of her personal name to indicate and describe who produced the apple cider and she is using her first name as a descriptive trademark.

**Generic Names**. The fourth category is entitled to no protection at all. They are called generic names and they refer to a general name of the product, as opposed to the plaintiff's brand for that product. Generic names are part of our common language that we need to identify all such similar products. A generic name is a name for the product on which it appears.

If the primary significance of the alleged mark or alleged trade dress is to name the type of product rather than the manufacturer or provider, the term is a generic name and cannot be a valid trademark or trade dress. If the majority of relevant consumers would understand the term or the trade dress to name the type of product rather than the manufacturer or provider, the primary significance of the term is generic and not entitled to protection as a trademark or trade dress.

The word "apple" can be used as a generic name and not be entitled to any trademark protection. This occurs when the word is used to identify the fruit from an apple tree.

The computer maker who uses the word "apple" as a trademark to identify its personal computer, or the vitamin maker who uses that word as a trademark on vitamins, has no claim for trademark infringement against the grocer who used that same word to indicate the fruit sold in a store. As used by the grocer, the word is generic and does not indicate any particular source of the product. As applied to the fruit, "apple" is simply a commonly used name for what is being sold.

**Mark Distinctiveness and Validity**

If you decide that Monster Energy's claimed, unregistered "Monster" trademark is arbitrary or suggestive, it is considered to be inherently distinctive. Similarly, if you decide that the Trade Dress asserted by Monster Energy is arbitrary or suggestive, it is considered to be inherently distinctive.  An inherently distinctive trademark or trade dress is valid and protectable.

-22-

On the other hand, if you determine that Monster Energy's "Monster" trademark is generic, or that the Trade Dress asserted by Monster Energy is generic, then they cannot be distinctive and therefore are not valid or protectable.

If you decide that Monster Energy's claimed, unregistered "Monster" trademark is descriptive, or that the Trade Dress asserted by Monster Energy is descriptive, you will not know if the trademark or trade dress is valid or invalid until you consider whether it has gained distinctiveness by the acquisition of secondary meaning, which I explain in Instruction 12.

AUTHORITY: Ninth Circuit Manual of Model Civil Jury Instructions – No. 15.10.

**JURY INSTRUCTION NO. 12**

**(INFRINGEMENT—ELEMENTS—VALIDITY—DISTINCTIVENESS—**

**SECONDARY MEANING)**

If you determined in Instruction 11 that any of Monster Energy's claimed trademarks or claimed trade dress are descriptive, you must consider the recognition that the mark has among prospective consumers in order to determine whether it is valid and protectable even though it is descriptive. This market recognition is called the "secondary meaning" of the trademark or trade dress.

A word or a trade dress acquires a secondary meaning when it has been used in such a way that its primary significance in the minds of the prospective consumers is not the product or service itself, but the identification of the product or service with a single source, regardless of whether consumers know who or what that source is. You must find that the preponderance of the evidence shows that a significant number of the consuming public associates the trademark or trade dress with a single source, in order to find that it has acquired secondary meaning.

When you are determining whether a trademark or trade dress has acquired a secondary meaning, consider the following factors:

    (1)    Consumer Perception. Whether the people who purchase the product or service that bears the claimed trademark or trade dress associate the trademark or trade dress with Monster Energy;

(2)   Advertisement. To what degree and in what manner Monster Energy may have advertised under the claimed trademark or claimed trade dress;

(3)   Demonstrated Utility. Whether Monster Energy successfully used this trademark or trade dress to increase the sales of its products or services;

(4)   Extent of Use. The length of time and manner in which Monster Energy used the claimed trademark or claimed trade dress;

(5)   Exclusivity. Whether Monster Energy's use of the claimed trademark or claimed trade dress was exclusive;

(6)   Copying. Whether ISN intentionally copied Monster Energy's claimed trademark or claimed trade dress; and

(7)   Actual Confusion. Whether ISN's use of a similar trademark or trade dress has led to actual confusion among a significant number of consumers.

The presence or absence of any particular factor should not necessarily resolve whether the claimed trademark or claimed trade dress has acquired secondary meaning.

Descriptive trademarks and trade dress are protectable only to the extent you find they acquired distinctiveness through secondary meaning by the public coming to associate the trademark or trade dress with a particular source.

Descriptive trademarks and trade dress are entitled to protection only as broad as the secondary meaning they have acquired, if any. If they have acquired no secondary meaning, they are entitled to no protection and cannot be considered a valid trademark or trade dress.

Monster Energy has the burden of proving that its claimed, unregistered "Monster" trademark and the Trade Dress asserted by Monster Energy have acquired a secondary meaning.  ISN has the burden of proving that the registered trademarks in this case lack a secondary meaning.

The mere fact that Monster Energy is using a particular trademark or trade dress, or that Monster Energy began using it before ISN, does not mean that the trademark or trade dress has acquired secondary meaning. There is no particular length of time that a trademark or trade dress must be used before it acquires a secondary meaning.

AUTHORITY: Ninth Circuit Manual of Model Civil Jury Instructions – No. 15.11.

**JURY INSTRUCTION NO. 13**

**(INFRINGEMENT—ELEMENTS—VALIDITY—TRADE DRESS—**

**NON-FUNCTIONALITY REQUIREMENT)**

A product feature is functional if it is essential to the product's use or purpose, or if it affects the product's cost or quality. It is non-functional if its shape or form makes no contribution to the product's function or operation. If the feature is part of the actual benefit that consumers wish to purchase when they buy the product, the feature is functional. However, if the feature serves no purpose other than as an assurance that a particular entity made, sponsored or endorsed the product, it is non-functional.

To determine whether a product's trade dress is functional, you should consider whether the trade dress as a whole is functional, that is whether the whole collection of elements making up the trade dress are essential to the product's use or purpose.   In this case, this means you must decide whether each of the following elements are functional: (1) a black or gray background; (2) a clawed letter "M"; (3) a bright contrasting green color; (4) the word "Monster" in a white, stylized font; and (5) an overall aggressive, edgy theme.

You should assess the following factors in deciding if the product feature is functional or non-functional:

(1)     The Trade Dress' Utilitarian Advantage. In considering this factor, you may examine whether the particular trade dress yields a utilitarian advantage over how the product might be without that trade dress.   If there is a utilitarian advantage from having the particular trade dress, this would weigh in favor of finding the trade

dress is functional; if it seems merely ornamental, incidental, or arbitrary, it is more likely to be nonfunctional.

(2)    Availability of Alternate Trade Dress. In considering this factor, you may examine whether an alternate trade dress could have been used, so that competition in the market for that type of product would not be hindered by allowing only one person to exclusively use the particular trade dress.  For this to be answered in the affirmative, the alternatives must be more than merely theoretical or speculative. They must be commercially feasible. The unavailability of a sufficient number of alternate trade dresses weighs in favor of finding the trade dress is functional.

(3)    Advertising Utilitarian Advantage in the Trade Dress. In considering this factor, you may examine whether the particular trade dress has been touted in any advertising as a utilitarian advantage, explicitly or implicitly. If a seller advertises the utilitarian advantages of a particular trade dress, this weighs in favor of finding that trade dress is functional.

(4)    The Method of Manufacture. In considering this factor, you may examine whether the particular trade dress results from a relatively simple or inexpensive method of manufacture. If the trade dress is a result of a particularly economical production method, this weighs in favor of finding the trade dress is functional; if the feature is essential to the use or purpose of the device or affects its cost or quality, it is more likely functional.

Monster Energy has the burden of proving non-functionality of its trade dress by a preponderance of the evidence in order to show that the trade dress is valid and protected from infringement.

AUTHORITY: Ninth Circuit Manual of Model Civil Jury Instructions – No. 15.12.

# JURY INSTRUCTION NO. 14

# (INFRINGEMENT—LIKELIHOOD OF CONFUSION—FACTORS— *SLEEKCRAFT* TEST)

You must consider whether the defendant's use of a trademark or trade dress is likely to cause confusion about the source or affiliation of Monster Energy's or ISN's goods or services. The likelihood of confusion factors are the same for determining both trademark and trade dress infringement.

I will suggest some factors you should consider in deciding this. The presence or absence of any particular factor that I suggest should not necessarily resolve whether there was a likelihood of confusion, because you must consider all relevant evidence in determining this. As you consider the likelihood of confusion you should examine the following:

(1)     Strength or Weakness of Monster Energy's Claimed Marks or Trade Dress. The more the consuming public recognizes Monster Energy's claimed trademarks or trade dress as an indication of origin of Monster Energy's goods, the more likely it is that consumers would be confused about the source or affiliation of ISN's goods if ISN uses a similar trademark or similar trade dress.

(2)     ISN's Use of the Mark or Trade Dress. If ISN and Monster Energy use their claimed trademarks and trade dress on the same, related, or complementary kinds of goods there may be a greater likelihood of confusion about the source or affiliation of the goods than otherwise.

-30-

(3)   Similarity of Monster Energy's and ISN's Marks and Trade Dress. If the overall impression created by Monster Energy's claimed trademarks and trade dress in the marketplace is similar to that created by ISN's trademarks and trade dress in appearance, sound, or meaning, there is a greater chance that consumers are likely to be confused by ISN's use of its trademarks and trade dress. Similarities in appearance, sound or meaning weigh more heavily than differences in finding the marks are similar.

(4)   Actual Confusion. If use by ISN of Monster Energy's claimed trademarks or claimed trade dress has led to instances of actual confusion, this strongly suggests a likelihood of confusion. However actual confusion is not required for a finding of likelihood of confusion. Even if actual confusion did not occur, ISN's use of its trademarks or trade dress may still be likely to cause confusion. As you consider whether the trademarks or trade dress used by ISN creates for consumers a likelihood of confusion with Monster Energy's claimed trademarks or claimed trade dress, you should weigh any instances of actual confusion against the opportunities for such confusion. If the instances of actual confusion have been relatively frequent, you may find that there has been substantial actual confusion. If, by contrast, there is a very large volume of sales, but only a few isolated instances of actual confusion you may find that there has not been substantial actual confusion.

(5)   ISN's Intent. Knowing use by ISN of Monster Energy's trademarks or trade dress to identify similar or related goods may strongly show an intent to derive benefit from the reputation of Monster Energy's

claimed trademarks or claimed trade dress, suggesting an intent to cause a likelihood of confusion. On the other hand, even in the absence of proof that ISN acted knowingly, the use of Monster Energy's trademarks or trade dress to identify similar or related goods may indicate a likelihood of confusion.

(6)   Marketing/Advertising Channels. If Monster Energy's and ISN's goods and services are likely to be sold in the same or similar stores or outlets, or advertised in similar media, this may increase the likelihood of confusion.

(7)   Consumer's Degree of Care. The more sophisticated the potential buyers of the goods or the more costly the goods, the more careful and discriminating the reasonably prudent purchaser exercising ordinary caution may be. They may be less likely to be confused by similarities in Monster Energy's and ISN's trademarks and trade dress.

(8)   Product Line Expansion. When the parties' products differ, you may consider how likely Monster Energy is to begin selling the products for which ISN is using Monster Energy's claimed trademarks or claimed trade dress. If there is a strong possibility of expanding into the other party's market, there is a greater likelihood of confusion.

AUTHORITY: Ninth Circuit Manual of Model Civil Jury Instructions – No. 15.18.

# JURY INSTRUCTION NO. 15
## (INFRINGEMENT—LIKELIHOOD OF CONFUSION— FACTOR—STRENGTH OF TRADEMARK OR TRADE DRESS)

**Strength as a Factor for Evaluating Likelihood of Confusion**

How strongly Monster Energy's claimed trademarks or claimed trade dress indicate that the goods or services come from a particular source is an important factor to consider in determining whether the trademarks or trade dress used by ISN are likely to create confusion with Monster Energy's trademarks and trade dress.

Monster Energy asserts that its registered trademarks, unregistered trademark in the word "Monster," and asserted Trade Dress are trademarks and trade dress for its beverages. Monster Energy contends that ISN's use of its "Monster Mobile" mark in connection with its tools infringes Monster Energy's trademarks and trade dress because it is likely to cause confusion.

**The Strength of Marks or Trade Dress**

The more distinctive and strong a trademark or trade dress is, the greater the scope of protection the law provides. The law measures trademark and trade dress strength by considering two prongs:

1.   Commercial Strength: This is the amount of marketplace recognition of the trademark or trade dress; and

2. Conceptual Strength: This is the placement of the trademark or trade dress on the spectrum of marks.

**Commercial Strength:** What is "commercial strength?" Not all trademarks and trade dress are equally well known. Trademark and trade dress strength is somewhat like the renown of people. Only a few very famous people are widely known and recognized around the world. Most people are known and recognized only by a small circle of family and friends.

Some trademarks and trade dress are relatively "strong," in the sense they are widely known and recognized. A few trademarks are in the clearly "famous" category. These "famous" marks are those like "Apple" for computers and mobile phones, "Google" for a search engine, "Coca-Cola" for beverages and "Toyota" for vehicles. Some trademarks and trade dress may be strong and well known only in a certain market niche such as mountain climbing gear, plumbing supplies, or commercial airplane electronics equipment, but relatively weak outside that field.

**Conceptual Strength:** What is "conceptual strength?" All trademarks and trade dress are grouped into two categories: either inherently distinctive or not inherently distinctive. If a trademark or trade dress is inherently distinctive it is immediately protected when first used. If it is not inherently distinctive, to become a legally protected mark, a designation must acquire distinctiveness in people's minds by becoming known as an indication of source of goods or services. The law calls this "secondary meaning," as I explained in Instruction 12.

For determining the conceptual strength of a trademark or trade dress, trademarks and trade dress are grouped on a spectrum according to the nature of the mark. In the spectrum, there are three categories of trademarks and trade dress

that the law regards as being inherently distinctive: coined, arbitrary and suggestive. Descriptive trademarks and trade dress are regarded as not being inherently distinctive and require a secondary meaning to become a valid trademark or trade dress.

**Coined** and arbitrary trademarks and trade dress are regarded as being relatively strong. A coined word mark is a word created solely to serve as a trademark. For example, "Clorox" for cleaning products and "Exxon" for gasoline are coined marks.

**Arbitrary** trademarks and trade dress in no way describe or suggest the nature of the goods or services they are used with. For example, "apple" is a common word, but it does not describe or suggest anything about the nature of "Apple" brand computers or smart phones. It is an arbitrary word when used as a mark on those products and is said to be conceptually strong as a mark.

**Suggestive** trademarks and trade dress are regarded as not being as conceptually strong as coined or arbitrary trademarks and trade dress. Suggestive trademarks and trade dress suggest some characteristic or quality of the goods or services with which they are used. If the consumer must use her imagination or think through a series of steps to understand what the trademark or trade dress is telling about the product, then the trademark or trade dress does not directly describe the product's features, but merely suggests them. For example, the trademark "Tail Wagger" for dog food merely suggests that your dog will like the food. As another example, when "apple" is used in the mark "Apple-A-Day" for vitamins, it is being used as a suggestive trademark. "Apple" does not describe what the vitamins are. However, it suggests the healthfulness of "an apple a day

keeping the doctor away" with the supposed benefits of taking "Apple-A-Day" vitamins.

**Descriptive** trademarks and trade dress are not inherently distinctive. These trademarks and trade dress directly describe some characteristic, or quality of the goods or services with which they are used in a straightforward way that requires no exercise of imagination. For instance, the word "apple" is descriptive when used in the trademark "CranApple" to designate a cranberry-apple juice. It directly describes one of ingredients of the juice.

AUTHORITY: Ninth Circuit Manual of Model Civil Jury Instructions – No. 15.19.

**JURY INSTRUCTION NO. 16**
**(DEFENSES—ABANDONMENT—AFFIRMATIVE DEFENSE—**
**DEFENDANT'S BURDEN OF PROOF)**

The owner of a trademark or trade dress cannot exclude others from using the trademark or trade dress if that trademark or trade dress has been abandoned.

ISN contends that the word "MONSTER" when used alone and the Trade Dress asserted by Monster Energy have become unenforceable because Monster Energy abandoned them. ISN has the burden of proving abandonment by a preponderance of the evidence.

The owner of a trademark or trade dress abandons the right to exclusive use of the trademark or trade dress when the owner:

1. discontinues its use in the ordinary course of trade, intending not to resume using it;

2. acts or fails to at so that the trademark or trade dress's primary meaning to prospective consumers has become the product itself and not the producer of the product; or

3. fails to exercise adequate control over the goods sold under the trademark by a licensee.

AUTHORITY: Ninth Circuit Manual of Model Civil Jury Instructions – No. 15.22.

**JURY INSTRUCTION NO. 17**

**(DEFENSE OF LACHES)**

The defense of laches embodies the principle that a plaintiff cannot sit on its rights for an unreasonable period of time to the detriment or prejudice of the defendant.  ISN must prove this defense by a preponderance of the evidence. The laches period starts when Monster Energy knew or should have known about each of its infringement claims. To establish laches, ISN must prove the following:

(1) That Monster Energy unreasonably delayed in bringing suit against ISN for committing the acts that form the basis of Monster Energy's infringement claims; and

(2) That ISN was prejudiced by such delay.

**Authority:** *Grupo Gigante S.A. De C.V. v. Dallo & Co.,* 391 F.3d 1088, 1102–03 (9th Cir. 2004); *Jarrow Formulas, Inc. v. Nutrition Now, Inc.,* 304 F.3d 829, 838 (9th Cir. 2002); *Tillamook Country Smoker, Inc. v. Tillamook County Creamery Association,* 465 F.3d 1102, 1108 (9th Cir. 2006); *San Miguel Pure Foods Co. v. Ramar Int'l Corp.*, 625 F. App'x 322, 326 (9th Cir. 2015).

**JURY INSTRUCTION NO. 18**

**(TRADEMARK DAMAGES – WILLFUL INFRINGEMENT)**

If you find that ISN infringed any of the Monster Energy's trademarks or claimed trade dress, you must also determine whether ISN acted willfully. Trademark infringement and trade dress infringement are considered willful if Monster Energy shows that ISN's actions were willfully calculated to exploit the advantage of an established trademark or trade dress or if Monster Energy proves ISN had an intent to deceive or confused customers. For infringement to be willful, you must find that ISN had knowledge that its actions have constituted trademark infringement. Infringement is not willful if ISN had a reasonable and good faith belief its actions were not infringing. Monster Energy has the burden of proving willfulness by a preponderance of the evidence.

AUTHORITY: *San Miguel Pure Foods Co. v. Ramar Int'l Corp.*, 625 F. App'x 322, 325 (9th Cir. 2015); *Int'l Olympic Comm. v. San Francisco Arts & Athletics,* 781 F.2d 733, 739 (9th Cir.), *amended by* 789 F.2d 1319 (9th Cir.1986) (holding that conduct is not willful if a party "reasonably thought that its proposed usage was not barred by the statute"), *aff'd sub nom. San Francisco Arts & Athletics, Inc. v. U.S. Olympic Comm.,* 483 U.S. 522, 107 S.Ct. 2971, 97 L.Ed.2d 427 (1987); *Evergreen Safety Council v. RSA Network Inc.,* 697 F.3d 1221, 1228 (9th Cir. 2012) ("Continued use of a work even after one has been notified of his or her alleged infringement does not constitute willfulness so long as one believes reasonably, and in good faith, that he or she is not infringing.")

## JURY INSTRUCTION NO. 19
## (TRADEMARK DAMAGES—PLAINTIFF'S ACTUAL DAMAGES)

If you find for Monster Energy on its claim for infringement of registered or unregistered trademarks, or its claim for infringement of the Trade Dress asserted by Monster Energy, you must determine Monster Energy's actual damages.

Monster Energy has the burden of proving actual damages by a preponderance of the evidence. Damages means the amount of money which will reasonably and fairly compensate Monster Energy for any injury you find was caused by ISN's infringement of Monster Energy's trademarks or trade dress. Monster Energy seeks actual damages in the form of a reasonable royalty award.

You should consider the following:

(1)     The injury to Monster Energy's reputation;

(2)     The injury to Monster Energy's goodwill, including injury to Monster Energy's general business reputation;

(3)     Whether Monster Energy has proven that Monster Mobile would have taken a license to any of the asserted trademarks and if so, the royalties that Monster Energy would have earned but for Monster Mobile's infringement.

AUTHORITY: Ninth Circuit Manual of Model Civil Jury Instructions – No. 15.27; *Lindy Pen Co. v. Bic Pen Corp.*, 982 F.2d 1400, 1407 (9th Cir. 1993)

(damages suffered by the plaintiff are typically measured by any direct injury
which a plaintiff can prove).

# JURY INSTRUCTION NO. 22

## (REASONABLE ROYALTY –POSSIBLE FACTORS)

If you determine that Monster Energy is entitled to a reasonable royalty, in determining the amount of a reasonable royalty, you may consider evidence on any of the following factors, in addition to any other evidence presented by the parties on the economic value of the trademark:

1.  Any royalties received by the licensor for the licensing of the trademark, proving or tending to prove an established royalty.

2.  The rates paid by ISN to license other trademarks comparable to the trademark.

3.  The nature and scope of the license, as exclusive or non-exclusive, or as restricted or non-restricted in terms of its territory or with respect to whom the manufactured product may be sold.

4.  The licensor's established policy and marketing program to maintain its right to exclude others from using the trademark by not licensing others to use the trademark, or by granting licenses under special conditions designed to preserve that exclusivity.

5.  The commercial relationship between the licensor and the licensee, such as whether or not they are competitors in the same territory in the same line of business.

6.  The effect of selling products bearing the trademark in promoting sales of other products of the licensee; the existing value of the trademark to the licensor as a generator of sales of its non-trademarked items; and the extent of such collateral sales.

7. The term of the license.

8. The established profitability of the product bearing the trademark; its commercial success; and its current popularity.

9. The nature of the trademark; and the benefits to those who have used the trademark.

10. The extent to which ISN has made use of the trademark; and any evidence that shows the value of that use.

11. The portion of the profit or of the selling price that may be customary in the particular business or in comparable businesses to allow for the use of the trademark or analogous trademarks.

12. The portion of the profit that arises from the trademark itself as opposed to profit arising from non-trademarked features, such as the manufacturing process, business risks, or significant features or improvements added by the accused infringer.

13. The opinion testimony of qualified experts.

14. The amount that a licensor and a licensee (such as ISN) would have agreed upon (at the time the infringement began) if both sides had been reasonably and voluntarily trying to reach an agreement; that is, the amount which a prudent licensee—who desired, as a business proposition, to obtain a license to use the trademark—would have been willing to pay as a royalty and yet be able to make a reasonable profit and which amount would have been acceptable by a trademark owner who was willing to grant a license.

15. Any other economic factor that a normally prudent business person would, under similar circumstances, take into consideration in negotiating the hypothetical license.

AUTHORITY: AIPLA Model Patent Jury Instructions, 11.14 (revised to apply to trademark context); *Ericsson, Inc. v. D-Link Sys., Inc*., No. 10-CV-0473, 2014 U.S. App. LEXIS 22778 at *65-69 (Fed. Cir. 2014); *Apple Inc. et al v. Motorola Inc., et al.,* ___ F.3d ____ (Fed. Cir. Apr. 25, 2014); *LaserDynamics, Inc. v. Quanta Computer, Inc. et al*, 694 F.3d 51, 60 (Fed. Cir. 2012); *Wordtech Sys., Inc. v. Integrated Networks Solutions, Inc.*, 609 F.3d 1308, 1319 (Fed. Cir. 2010); *ResQNet.com, Inc. v. Lansa, Inc.*, 594 F.3d 860, 869-73 (Fed. Cir. 2010); *Monsanto Co. v. McFarling,* 488 F.3d 973 (Fed. Cir. 2007); *Maxwell v. J. Baker, Inc.*, 86 F.3d 1098, 1108-10 (Fed. Cir. 1996); *TWM Mfg. Co. v. Dura Corp.*, 789 F.2d 895, 898-900 (Fed. Cir. 1986); *Georgia-Pacific Corp. v. United States Plywood Corp.*, 318 F. Supp. 1116 (S.D.N.Y. 1970), *modified and aff'd sub nom.*, *Georgia Pacific Corp. v. United States Plywood Champion Papers, Inc.*, 446 F.2d 295 (2d Cir. 1971).

**JURY INSTRUCTION NO. 23**

**(DEFENDANT'S PROFITS)**

If you determine that ISN willfully infringed on Monster Energy's trademarks or trade dress, then you are being asked to determine any profits earned by ISN that are attributable to the infringement, which Monster Energy must prove by a preponderance of the evidence. You may not, however, include in any award of profits any amount that you took into account in determining a reasonable royalty.

Profit is determined by deducting all expenses from gross revenue.

Gross revenue is all of ISN's receipts from using the trademark or trade dress in the sale of an infringing product. Monster Energy has the burden of proving ISN's gross revenue by a preponderance of the evidence.

Expenses are all operating, overhead, and production costs incurred in producing the gross revenue. ISN has the burden of proving the expenses and the portion of the profit attributable to factors other than use of the infringed trademark by a preponderance of the evidence.

Unless you find that a portion of the profit from the sale of ISN's products using the trademark or trade dress is attributable to factors other than use of the trademark, you should find that the total profit is attributable to the infringement.

AUTHORITY: Ninth Circuit Manual of Model Civil Jury Instructions – No. 15.29; *Stone Creek, Inc. v. Omnia Italian Design, Inc.*, No. 15- 17418, 2017 WL 3724419, at *10 (9th Cir. Aug. 30, 2017).