Joseph R. Re (SBN 134,479)
joe.re@knobbe.com
Steven J. Nataupsky (SBN 155913)
steven.nataupsky@knobbe.com
Lynda J. Zadra-Symes (SBN 156511)
lynda.zadrasymes@knobbe.com
Marko R. Zoretic (SBN 233,952)
marko.zoretic@knobbe.com
Jason A. Champion (CA SBN 259207)
jason.champion@knobbe.com
KNOBBE, MARTENS, OLSON & BEAR, LLP
2040 Main Street, Fourteenth Floor
Irvine, CA  92614
Phone: (949) 760-0404
Facsimile: (949) 760-9502

Brian C. Horne (SBN 205621)
brian.horne@knobbe.com
KNOBBE, MARTENS, OLSON & BEAR, LLP
1925 Century Park East, Suite 600
Los Angeles, CA 90067
Telephone: (310) 551-3450
Facsimile:  (310) 601-1263

Attorneys for Plaintiff
MONSTER ENERGY COMPANY

IN THE UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| MONSTER ENERGY COMPANY, a Delaware corporation, <br><br> Plaintiff, <br><br> v. <br><br> INTEGRATED SUPPLY NETWORK, LLC, a Florida limited liability company, <br><br> Defendant. | Case No. 5:17-CV-00548-CBM-RAO <br><br> **MONSTER ENERGY COMPANY'S TRIAL BRIEF** <br><br> Trial: <br> Date:  October 30, 2018 <br> Time: 8:00 a.m. <br> Ctrm:  8B <br><br> Hon. Consuelo B. Marshall |

# TABLE OF CONTENTS

**Page No.**

I.    MONSTER'S CLAIMS OF INFRINGEMENT ....................................... 1

    A.    ISN Misunderstands The Nature Of Monster's Trademark Rights........................................................ 1

    B.    ISN Misunderstands How Monster Acquired Common Law Rights In Its Monster™ Trademark....................................... 2

    C.    Monster Is Not Required To Prove That Its Trademarks Have Acquired Secondary Meaning *Specifically In Connection With Tools* ................................................ 4

    D.    The Jury Should Be Instructed To Assess Infringement By Analyzing All Of The *Sleekcraft* Factors ................................. 5

    E.    ISN Mistates The Elements Of Common Law Unfair Competition ........................................................ 6

    F.    A Reasonable Royalty Award Is Not Speculative ......................... 7

II.   ISN'S AFFIRMATIVE DEFENSES ................................................ 7

    A.    ISN's Invalidity Defenses Are Limited ......................................... 7

        1.    Monster's Incontestable Registrations ................................. 7

        2.    Monster's Other Registrations ............................................. 8

            a.    Marks Containing The Word "Monster" ................. 8

            b.    Marks Containing The Word "Beast"....................... 9

        3.    Monster's Unregistered Common Law Monster Mark ................................................................................. 9

        4.    Monster's Trade Dress Rights ............................................. 9

    B.    ISN Badly Misstates The Elements Of Laches ............................ 10

III.  THE PROPOSED JURY VERDICT FORMS ....................................... 12

    A.    Monster Energy's Proposed Verdict Form Is Simple And Should Be Adopted ........................................................ 12

    B.    ISN's Proposed Verdict Form Is Unduly Complex And Should Be Rejected ........................................................ 15

**TABLE OF AUTHORITIES**

**Page No(s).**

*Active Sports Lifestyle USA v. Old Navy*,
  No. SACV1200572JVSEX, 2013 WL 11239385
  (C.D. Cal. Nov. 21, 2013) ................................................................ 7

*Adidas America v. Payless Shoesource*,
  No. CV 01-1655-KI, 2008 WL 4279812 (D. Or. Sept. 12, 2008) ............. 7, 9

*AMF, Inc. v. Sleekcraft Boats*,
  599 F.2d 341 (9th Cir. 1979) ............................................................ 5

*Applied Information Sciences Corp. v. eBay, Inc.*,
  511 F.3d 966 (9th Cir. 2007) ............................................................ 4

*Application of Servel, Inc.*, 181 F.2d 192
  (C.C.P.A. 1950) ............................................................................ 3

*In re ATM Fee Antitrust Litigation*,
  686 F.3d 741 (9th Cir. 2012) ............................................................ 15

*In re Berg Elecs., Inc.*,
  163 U.S.P.Q. 487 (T.T.A.B. 1969) .................................................. 3, 4

*Cash Processing Services v. Ambient Entertainment*,
  418 F. Supp. 2d 1227 (D. Nev. 2006) ............................................... 12

*Cleary v. News Corp.*,
  30 F.3d 1255 (9th Cir. 1994) ........................................................ 13, 15

*Ford Motor Co. v. Ford Insecticide Corp.*,
  69 F. Supp. 935 (E.D. Mich. 1947) .................................................... 6

*Gaudreau v. American Promotional Events, Inc.*,
  511 F.Supp.2d 152 (D.D.C. 2007) ................................................... 11

*Institut Nat. Des Appellations D'Origine v. Vintners
Intern. Co., Inc.*,
  958 F.2d 1574 (Fed. Cir. 1992) ........................................................ 3

*Internet Specialties W., Inc. v. Milon-DiGiorgio Enterprises, Inc.*,
  559 F.3d 985 (9th Cir. 2009) ........................................................... 10

# TABLE OF AUTHORITIES
## (Cont'd)

**Page No(s).**

*Jada Toys, Inc. v. Mattel, Inc.*,
    518 F.3d 628 (9th Cir. 2008) .................................................................. 5

*John Walker & Sons, Limited v. Bethea*,
    305 F. Supp. 1302 (D.S.C. 1969) ......................................................... 5

*Philip Morris USA Inc. v. Liu*,
    489 F. Supp. 2d 1119 (C.D. Cal. 2007) ............................... 6, 13, 15

*Prudential Ins. Co. of America v. Gibraltar Financial Corp. of California*,
    694 F.2d 1150 (9th Cir. 1982) .......................................................... 12

*QS Wholesale, Inc. v. Rox Volleyball, Inc.*,
    No. SACV130512AGJPRX, 2015 WL 4484219
    (C.D. Cal. July 19, 2015) ................................................................... 7

*Stone Creek v. Omnia Italian Design*,
    875 F.3d 426 (9th Cir. 2017) ........................................................... 14

*Tiffany & Co. v. Parfums Lamborghini*,
    214 U.S.P.Q. 77, 1981 WL 48170 (S.D.N.Y. Feb. 9, 1981) ........... 5

*Tillamook County Creamery Ass'n v. Tillamook Cheese and Dairy Ass'n*,
    345 F.2d 158 (9th Cir. 1965) ...................................................... 1, 17

*Wells Fargo & Co. v. Wells Fargo Const. Co.*,
    619 F. Supp. 710 (D. Ariz. 1985) ..................................................... 5

## OTHER AUTHORITIES

15 U.S.C. § 1057 ......................................................................... 2, 18

15 U.S.C. § 1125 ............................................................................. 16

Cal. Civil Code § 3294 .................................................................... 14

California Business and Professions Code § 17200 ...................... 6, 13

J.T. McCarthy, *McCarthy on Trademarks & Unfair Competition*
    (5th ed. 2017) ........................................................................ *passim*

Plaintiff Monster Energy Company ("Monster") hereby submits this Trial Brief.  Pursuant to Local Rule 16-10, this Trial Brief responds to Defendant Integrated Supply Network's ("ISN") Memorandum of Contentions of Fact and Law (Dkt. No. 268).  It also addresses new issues that arose after service of the parties' Memoranda of Contentions that are relevant for trial.

## I. <u>MONSTER'S CLAIMS OF INFRINGEMENT</u>

### A. <u>ISN Misunderstands The Nature Of Monster's Trademark Rights</u>

ISN attempts to minimize the scope of Monster's trademark rights by dismissing Monster's trademark registrations as too recent, or as covering goods other than tools.  Dkt. No. 268 at 20-21.  ISN seems to believe that Monster's trademark registrations somehow define, and therefore limit, the scope of Monster's trademark rights, just as patents define and limit the scope of an inventor's rights.  *Id.*  This view is reflected on ISN's proposed Verdict Form, in which ISN would ask the jury to decide whether each of Monster's individual trademark registrations have been infringed.  ISN has even included a list of the registrations in the Preliminary Jury Instructions.

ISN fundamentally misunderstands the nature of trademark rights.  "It is elementary that a trade-mark right is not acquired by registration.  A right to a trade-mark stems from prior appropriation and use."  *Tillamook County Creamery Ass'n v. Tillamook Cheese and Dairy Ass'n*, 345 F.2d 158, 160 (9th Cir. 1965).  As Professor McCarthy summarized the matter:  "It is not federal registration, but use of a designation as a mark that creates trademark rights in a designation."  J.T. McCarthy, *McCarthy on Trademarks & Unfair Competition* § 16:18 (5th ed. 2017).

> Unlike the registration of a patent, a trademark registration of itself **does not create the underlying right to exclude**.  Nor is a trademark created by registration.  While federal registration triggers certain substantive and procedural rights, the absence of federal registration does not unleash the mark to public use.  The Lanham Act protects unregistered marks as does the common law.

*Id.* § 19:3 (quoting *San Juan Products, Inc. v. San Juan Pools of Kansas, Inc.*, 849 F.2d 468, 474 (10th Cir. 1988) (emphasis in original)).

Thus, Monster's registrations in no way define or limit the scope of Monster's underlying trademark rights. "Even if a registration is cancelled, the underlying common law rights in a mark continue." *Id.* § 16:18. Accordingly, the issue to be decided by the jury in this case is whether Monster's underlying trademark rights have been infringed. It makes no sense to ask the jury, as ISN would, whether individual registrations have been infringed. Those registrations do not confer trademark rights on Monster; they confer only certain additional benefits, such as the presumption of validity. 15 U.S.C. § 1057(b). Instead, the jury should be asked whether Monster's underlying "Monster" and "Beast" trademarks have been infringed. Monster's proposed Verdict Form does this, and ISN's proposed Verdict Form does not.

**B.     ISN Misunderstands How Monster Acquired Common Law Rights In Its Monster™ Trademark**

ISN asserts that Monster has no common law trademark rights in the Monster™ trademark because of Monster's alleged "failure to use 'monster' on its own as a trademark." Dkt. No. 268 at 34. ISN seems to believe that Monster must have used its Monster™ trademark in isolation, separate from any other words, in order to acquire rights in that trademark. That is, ISN contends that Monster's use of its other Monster-based trademarks, like Monster Energy®, cannot create rights in the trademark Monster™. *Id.* ISN is again wrong as a matter of law.

It has long been the law that the owner of a composite mark – a mark consisting of more than just one word – may acquire rights in a portion of that mark. As Professor McCarthy has explained, rights to a portion of a composite mark are acquired whenever that portion creates a "separate commercial impression" among consumers, so that consumers recognize it as an indicator of

the source of the goods.  J.T. McCarthy, *McCarthy on Trademarks & Unfair Competition* § 19:59 (5th ed. 2017).  "It all boils down to a judgment as to whether that designation for which registration is sought comprises a separate and distinct 'trademark' in and of itself." *Institut Nat. Des Appellations D'Origine v. Vintners Intern. Co., Inc.,* 958 F.2d 1574, 1582 (Fed. Cir. 1992).  Similarly, as the Trademark Office's Trademark Trial and Appeal Board explained it:

> It is well established that one may use a composite mark in connection with a product and register separately its several elements if each element is used in such a manner as to create a separate and distinct commercial impression from the other elements and does in fact, per se, identify and distinguish this product from the products of others.

*In re Berg Elecs., Inc.*, 163 U.S.P.Q. 487, 487 (T.T.A.B. 1969).

The seminal case in this area is *Application of Servel, Inc.*, 181 F.2d 192 (C.C.P.A. 1950).  There, the trademark applicant published a newsletter under the name "Servel Inklings," and sought to register "Servel" alone as its trademark.  *Id.* at 192.  The court reversed the Commissioner's refusal to register the trademark.  *Id.* at 196.  The court held that "the word 'Servel' here involved clearly distinguishes appellant's publication from others of the same class." *Id.*  Accordingly, the court held that the publisher had rights in the mark "Servel" alone and ordered registration.  *Id.*  ISN offers no reason why Monster™ and Monster Energy® should be treated any differently than Servel and Servel Inklings.

ISN's misunderstanding of the law is also reflected in the parties' proposed Jury Instructions.  Monster has proposed a Jury Instruction that explains that a party acquires trademark rights in a portion of a composite trademark when that portion creates its own separate commercial impression.  ISN proposes deleting this instruction in its entirety, offering no substitute at all.  / / /

C.     **<u>Monster Is Not Required To Prove That Its Trademarks Have</u>** **<u>Acquired Secondary Meaning</u>** *<u>Specifically In Connection With Tools</u>*

ISN argues that Monster's trademarks have not acquired secondary meaning **in connection with tools**. Dkt. No. 268 at 34.  ISN implies that this somehow defeats Monster's infringement claims.  *Id.*  However, the Ninth Circuit has expressly rejected the argument that a trademark must acquire secondary meaning in connection with the infringer's goods in order for the trademark owner to bring an infringement claim:

> Although the **validity** of a registered mark extends only to the listed goods or services, an owner's **remedies** against confusion with its valid mark are not so circumscribed. The language of the infringement statute, 15 U.S.C. § 1114, does not limit remedies for allegedly infringing uses to those goods within the ambit of registration:
>
>> Any person who shall, without the consent of the registrant ... (a) use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of **any goods or services** on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive ... shall be liable in a civil action by the registrant for the remedies hereinafter provided.
>
> 15 U.S.C. § 1114(1) (emphasis added). Thus a trademark owner may seek redress if another's use of the mark on different goods or services is likely to cause confusion with the owner's use of the mark in connection with its registered goods.

*Applied Information Sciences Corp. v. eBay, Inc.*, 511 F.3d 966, 971 (9th Cir. 2007) (emphasis in original).  Thus, as long as Monster's asserted marks have secondary meaning in connection with some goods or services, Monster is entitled to prevent others from using confusingly similar marks in connection with any goods or services if consumer confusion is likely.

/ / /

-4-

## D. The Jury Should Be Instructed To Assess Infringement By Analyzing All Of The *Sleekcraft* Factors

The Pretrial Conference Order expressly states that the eight "*Sleekcraft*"[1] factors govern whether a likelihood of confusion exists for trademark and trade dress infringement claims. Dkt. No. 322 at 15 (citing Ninth Circuit Model Civil Jury Instructions §15.18). In addition, the parties have jointly submitted a Jury Instruction setting forth the *Sleekcraft* factors. Thus, there appears to be agreement that these factors govern in this case.

Nevertheless, in its Memorandum of Contentions, ISN has renewed its assertion that an analysis of the *Sleekcraft* factors is unnecessary because the parties' goods are allegedly unrelated. Dkt. No. 268 at 40. This argument is entirely without merit.[2] The relatedness of the goods is only one of many factors that the jury is to consider in deciding whether there is a likelihood of confusion. *See Sleekcraft Boats*, 599 F.2d at 348-49. The Ninth Circuit has squarely held that no single *Sleekcraft* factor is dispositive. *Jada Toys, Inc. v. Mattel, Inc.*, 518 F.3d 628, 632-33 (9th Cir. 2008).

Consistent with this holding, the courts have routinely found that confusion is likely where the goods, at first blush, appear to be unrelated, but other evidence established that confusion was likely. *See, e.g., Wells Fargo & Co. v. Wells Fargo Const. Co.*, 619 F. Supp. 710, 712-13 (D. Ariz. 1985) (enjoining the "Wells Fargo" construction company); *Tiffany & Co. v. Parfums Lamborghini*, 214 U.S.P.Q. 77, 1981 WL 48170 at *1-*2 (S.D.N.Y. Feb. 9, 1981) (enjoining "Tiffany" perfume); *John Walker & Sons, Limited v. Bethea*,

---

[1] *AMF, Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348-49 (9th Cir. 1979).

[2] This argument also ignores that ISN sells and has sold many other goods that cannot possibly be described as tools, *e.g.*, beef jerky, water bottles, clothing, hats.

1    305 F. Supp. 1302 (D.S.C. 1969) (enjoining "Johnnie Walker" motels); *Ford*
2    *Motor Co. v. Ford Insecticide Corp.*, 69 F. Supp. 935, 936-38 (E.D. Mich.
3    1947) (enjoining "Ford" insecticide).  *See also* J.T. McCarthy, *McCarthy on*
4    *Trademarks & Unfair Competition* § 24:49 (5th ed. 2017) ("Where strong and
5    well-known marks are used by others, the scope of protection may extend far to
6    other product fields.")  If this were not the case, ISN could offer "Coca-Cola"
7    tools or "Burger King" tools with impunity.

8    **E.    ISN Mistakes The Elements Of Common Law Unfair Competition**

9         ISN asserts that to prove common law unfair competition, Monster must
10   prove trademark or trade dress infringement plus two additional elements:

11        1.    That ISN's conduct amounts to passing off; and
12        2.    That Monster suffered a competitive injury as a result of ISN's
13              actions.

14   Dkt. No. 268 at 10.

15        ISN is wrong as a matter of law.  First, the Final Pretrial Conference
16   Order, which controls this case, makes no mention of these two additional
17   elements.   Dkt. No. 322 at 16.   Second, as ISN concedes later in its
18   Memorandum of Contentions:  "The Ninth Circuit 'has consistently held that
19   state common law claims of unfair competition and actions pursuant to
20   California Business and Professions Code § 17200 are substantially congruent
21   to claims made under the Lanham Act.'"  *Id.* at 42 (quoting *Cleary v. News*
22   *Corp.*, 30 F.3d 1255, 1262-63 (9th Cir. 1994)).   "Proof of trademark
23   infringement under the Lanham Act independently constitutes unfair
24   competition under California law."  *Philip Morris USA Inc. v. Liu*, 489 F. Supp.
25   2d 1119, 1123 (C.D. Cal. 2007).  Thus, the two extra elements proposed by ISN
26   are flatly inconsistent with Ninth Circuit law.

27   / / /
28   / / /

**F.    A Reasonable Royalty Award Is Not Speculative**

ISN appears to argue that Monster Energy cannot prove that it has lost sales due to ISN's infringement and that, as a result, a reasonable royalty award in this case would be "speculative."   Dkt. No. 268 at 42.   Contrary to ISN's argument, Monster is not required to prove it has suffered lost sales to recover a reasonable royalty. *See*, *e.g.*, *QS Wholesale, Inc. v. Rox Volleyball, Inc.*, No. SACV130512AGJPRX, 2015 WL 4484219, at *5-*6 (C.D. Cal. July 19, 2015) (rejecting argument that royalty damages were speculative where plaintiff allegedly failed to provide evidence of monetary loss); *Active Sports Lifestyle USA v. Old Navy*, No. SACV1200572JVSEX, 2013 WL 11239385 at *17-*18 (C.D. Cal. Nov. 21, 2013) ("To the extent that Old Navy argues that Plaintiff must establish its actual lost profits as a result of Old Navy's use of the "Active" mark, Old Navy ignores the well-established principle that a reasonable royalty is a permissible measure of damages in a trademark case."); *Adidas America v. Payless Shoesource*, No. CV 01-1655-KI, 2008 WL 4279812 at *12 (D. Or. Sept. 12, 2008) (noting that royalty damages can be "a surrogate measure" of "theoretical damage" to the marks and upholding royalty award where there was no evidence of monetary loss in the nature of lost sales).

## II.  ISN'S AFFIRMATIVE DEFENSES

**A.    ISN's Invalidity Defenses Are Limited**

ISN has been less than clear as to which defenses it is asserting against which trademarks and registrations.  Monster is using this opportunity to clarify which defenses are properly left for decision.

### 1.    Monster's Incontestable Registrations

In its Opposition to Monster's Motion for Summary Judgment, ISN unequivocally conceded that it "has not asserted that MEC's incontestable registrations are invalid." Dkt. No. 108 at 10:20-21.  The Court then granted in part Monster's summary judgment motion.  The Court ruled that, "at trial,

Defendant cannot assert the affirmative defense that these incontestable registrations are invalid." Dkt. No. 201 at 3:17-19.[3]   Accordingly, those registrations are not subject to any invalidity defense at trial.

### 2.   Monster's Other Registrations

#### a.   Marks Containing The Word "Monster"

In response to Monster's Motion for Summary Judgment, the Court has permitted ISN to challenge the validity of Monster's contestable registrations containing the word "Monster."   The Court held that a "trier of fact could reasonably conclude that Plaintiff's 'monster energy' marks are descriptive because they describe the attributes of Plaintiff's beverage products." Dkt. No. 201 at 4:2-4.   In its subsequent Memorandum of Contentions, ISN identified only a single registered trademark whose validity it will be challenging – MONSTER ENERGY®.   Dkt. No. 268 at 33:13-24.   ISN re-affirmed this defense in the Pretrial Conference Order.  Dkt. 322 at 27:4-12.   But ISN has not reconciled that defense with the fact that Monster has four asserted incontestable registrations for MONSTER ENERGY® that ISN is prohibited from challenging.   Dkt. No. 201 at 3:17-19.

The only contestable registration for MONSTER ENERGY® is U.S. Trademark Reg. No. 4,721,433.  This registration is for "promoting goods and services in the sports, motorsports, electronic sports, and music industries … [and] promoting sports and music events and competitions for others." Dkt. No. 1, Ex. A1.  However, ISN has never asserted that the MONSTER ENERGY®

/ / /

---

[3] The incontestable registrations at issue are Registration Nos. 2,769,364, 3,044,314, 3,044,315, 3,057,061, 3,134,841, 3,134,842, 3,740,050, 3,908,600, 3,908,601, 3,914,828, 4,036,680, and 4,036,681.

trademark is somehow descriptive of those services.  Nor could it.  Such a contention would be facially absurd.[4]

### b.   Marks Containing The Word "Beast"

This Court has held that ISN cannot attack Monster's marks that include the word Beast.  Dkt. 201 at 4:15-5:2.  The Court specifically found that "the trier of fact could not reasonably conclude that the 'beast' marks . . . are descriptive, and that secondary meaning is required as to those marks."  *Id*. at 4:20-5:2.[5]  Thus, ISN is not challenging any of the beast marks at trial.

### 3.   Monster's Unregistered Common Law Monster Mark

ISN has raised only a single affirmative defense to Monster's common law rights in the word Monster -- abandonment.  Dkt. 322 at 28:27-29:12.  It also argues that Monster cannot prove that the unregistered Monster mark is not descriptive or has acquired secondary meaning.  *Id*. at 27:13-25.

### 4.   Monster's Trade Dress Rights

ISN has no affirmative defense to Monster's trade dress claim, but merely argues that Monster cannot prove that the trade dress is non-functional, is not descriptive or has acquired secondary meaning.  It appears from ISN's filed Verdict Form that it is now trying to pursue an abandonment defense to Monster's trade dress claim.  Dkt 377, Question No. 17.  However, that issue was not previously raised and thus does not appear in the Pretrial Conference Order as an issue for trial.  ISN's abandonment defense was limited to the unregistered Monster trademark.

---

[4] The Court has also precluded ISN from attacking this registration on grounds that the recital of services is somehow deficient.  Dkt. 201 at 6:12-7:5.

[5] The Court did find a genuine issue as to one "beast" mark, but that mark is no longer at issue in this case.  Dkt. 201 at 4:19-5:1.

**B.     ISN Badly Misstates The Elements Of Laches**

ISN asserts that to prove its defense of laches to the Court,[6] it need only show when Monster's claims accrued and that these claims were filed outside of the statute of limitations period.  Dkt. No. 268 at 32.  ISN is wrong as a matter of law.

First and foremost, ISN completely omits the element of prejudice. Prejudice is an essential element of any laches defenses.  *Internet Specialties W., Inc. v. Milon-DiGiorgio Enterprises, Inc.*, 559 F.3d 985, 990 (9th Cir. 2009). ISN has no evidence of prejudice, and the evidence shows an absence of prejudice.  Specifically, in February 2014, Monster sent ISN a cease-and-desist letter alerting it to Monster's objections. In October 2014, Monster sent a second cease-and-desist letter to ISN.  In February 2016, Monster sent ISN a third cease-and-desist letter.  However, ISN continued to infringe, and in fact, moved closer to Monster's marks and goods and services.  Thus, ISN took the calculated gamble to proceed with its infringement.  Under these circumstances, ISN cannot claim prejudice.

Second, ISN cannot prove that Monster filed its claims outside the analogous four-year California state law statute of limitations period.  ISN's first Monster-related trademark application published on December 17, 2013. There is no evidence that Monster knew or should have known of ISN's infringing activities before that date.  Monster filed the present action on March 22, 2017, well within the four-year statute of limitations that ISN contends governs.

---

[6] In a set of proposed jury instructions served on October 8, 2018, ISN is still asking to have the jury, rather than the Court decide the issue of laches.  But on October 3, this Court ruled at the Pretrial Conference that laches is an issue for the Court alone.  Ex. A at 75-81.

Third, ISN's infringement has been non-static and involves multiple marks and products. For example, ISN did not begin to use its FEED THE BEAST mark until November 2014. In 2016, ISN began using a new stylized MONSTER mark. In 2017, ISN began selling new water bottles under its MONSTER mark. And in 2018, ISN launched mini refrigerators under its MONSTER mark. Monster clearly did not delay in bringing suit to stop these infringing activities.

Fourth, Monster had also been very actively engaged in adversarial proceedings in the TTAB against ISN from June through October 2014 and from July, 2015 to March 2017, when Monster filed its complaint. Monster's activity against ISN before the TTAB tolls any delay for laches purposes. *Gaudreau v. American Promotional Events, Inc*., 511 F.Supp.2d 152, 159 (D.D.C. 2007) (collecting cases); *see also* 6 J. T. McCarthy, *McCarthy on Trademarks & Unfair Competition* § 31:16 (5th ed. 2017) ("The filing of an opposition proceeding against an alleged infringer's pending registration will generally constitute a sufficient reason for waiting to file an infringement suit in federal court. That is, the opposer can wait for the outcome of the opposition proceeding before deciding whether to file an infringement suit in federal court.").

Finally, at the October 3, 2018 Pretrial Conference, the Court rejected ISN's request to present its equitable laches defense to the jury. Ex. A at 75-81. Accordingly, much of the evidence relevant to laches should not be presented to the jury by either party. However, the Court of course will need a full record to decide this defense. Accordingly, Monster requests an opportunity to augment the record after the jury trial to present evidence in rebuttal to ISN's laches defense. The Court then may decide the laches defense based upon a full record.

### III.  THE PROPOSED JURY VERDICT FORMS

**A.**   **Monster Energy's Proposed Verdict Form Is Simple And Should Be Adopted**

Monster Energy prepared its proposed Jury Verdict Form with the goals of simplicity and minimizing the burden on the jurors.   Monster Energy's proposed Verdict Form includes just 10 questions, each of which calls for a single "Yes" or "No" answer or the entry of a single dollar amount.

Question 1 asks the jury:  "Does the preponderance of the evidence show that ISN infringed Monster Energy's trademark rights in at least one of its registered marks that include the word 'Monster'?"   This question groups together all of Monster Energy's trademarks that include the word "Monster." This significantly simplifies the case for the jurors.  Moreover, nothing is lost by asking the jurors a single question about all of the Monster-based trademarks. Monster Energy is entitled to the same remedies regardless of which Monster-based trademarks, or how many Monster-based trademarks, are infringed.

Question 2 asks the jury:  "Does the preponderance of the evidence show that ISN infringed Monster Energy's trademark rights in the unregistered mark 'Monster'?"   This question is directly solely to the unregistered "Monster™" trademark because ISN has a separate defense directed solely to this mark – its abandonment defense.   A separate question directed to the unregistered "Monster™" trademark is thus necessary to ensure that this trademark plays no role in the jury's determinations of liability and damages if the jury concludes that ISN has proven its abandonment defense.

Question 3 asks the jury whether ISN has proven abandonment of the "Monster™" trademark by clear and convincing evidence.   This question is necessary for the reasons just explained.  The clear and convincing standard is appropriate because the overwhelming majority of courts, including courts within the Ninth Circuit, apply the clear and convincing standard.   J.T.

McCarthy, *McCarthy on Trademarks & Unfair Competition* § 17:12 (5th ed. 2017); *Cash Processing Services v. Ambient Entertainment*, 418 F. Supp. 2d 1227, 1232 (D. Nev. 2006). *See also Prudential Ins. Co. of America v. Gibraltar Financial Corp. of California*, 694 F.2d 1150, 1156 (9th Cir. 1982) ("Abandonment of a trademark, being in the nature of a forfeiture, must be strictly proved.").

Question 4 asks the jury: "Does the preponderance of the evidence show that ISN infringed Monster Energy's trademark rights in at least one of its marks that include the word 'Beast'?" Monster Energy has combined its several "Beast" marks together for the reasons explained above in connection with Question 1. However, the proposed Verdict Form includes separate questions regarding the "Monster" marks and the "Beast" marks because different conduct of ISN is at issue for these two sets of marks. Monster Energy alleges that ISN infringed the "Monster" marks through its use of its own "Monster" and "Monster Mobile" marks. Monster Energy alleges that ISN infringed the "Beast" marks through its use of its "Feed the Beast" mark. Thus, the appropriate scope of injunctive relief may depend upon whether the jury finds infringement of the "Monster" marks, the "Beast" marks, both, or neither.

Question 5 is the final question on liability. It asks the jury: "Does the preponderance of the evidence show that ISN infringed Monster Energy's trade dress that includes the word 'Monster' with the colors green and black?" As with Question 4, Question 5 is necessary because the appropriate scope of injunctive relief will depend upon whether the jury finds that ISN has infringed Monster's trade dress.

Monster Energy notes that there are no separate questions on the Verdict Form for liability or compensatory damages for statutory or common law unfair competition. This is because the elements of unfair competition *are identical* to the elements of Monster Energy's infringement claims. The Ninth Circuit "has

consistently held that state common law claims of unfair competition and actions pursuant to California Business and Professions Code § 17200 are substantially congruent to claims made under the Lanham Act." *Cleary*, 30 F.3d at 1262-63. "Proof of trademark infringement under the Lanham Act independently constitutes unfair competition under California law." *Philip Morris*, 489 F. Supp. 2d at 1123.

Accordingly, no purpose would be served by burdening the jurors with separate questions on statutory and common law unfair competition. If the jurors find trademark or trade dress infringement, the Court can conclude with certainty that the jurors also found unfair competition. Conversely, if the jurors find no infringement, the Court can conclude with certainty that the jurors also found no unfair competition.

Questions 6-10 are directed toward the monetary remedies that Monster Energy seeks. Specifically, Question 6 asks the jurors "does a preponderance of the evidence show that ISN's infringement was willful?" Willfulness is a predicate to disgorgement of ISN's profits, *Stone Creek v. Omnia Italian Design*, 875 F.3d 426, 442 (9th Cir. 2017), a remedy sought later on the Verdict Form in Question 8. The Verdict Form directs the jurors to address willfulness only if they have found liability for infringement of Monster Energy's registered marks, or they have found liability for infringement of the unregistered "Monster™" mark and rejected ISN's abandonment defense.

Question 7 asks the jurors "what amount should ISN pay in damages for infringement?" Again, the Verdict Form directs the jurors to address damages only if they have found liability for infringement of Monster Energy's registered marks, or they have found liability for infringement of the unregistered "Monster™" mark and rejected ISN's abandonment defense.

Question 8 asks the jurors "what amount of profit did ISN earn attributable to its infringement?" The Verdict Form directs the jurors to address

profits only if they have found willfulness.

Question 9 asks the jurors "does clear and convincing evidence show that ISN acted with malice, oppression, or fraud?"  This question is relevant to the issue of punitive damages for ISN's alleged common law unfair competition.  *See* Cal. Civil Code § 3294.  As discussed above, the Verdict Form contains no separate question directed to liability or compensatory damages for common law unfair competition.    This is because the Verdict Form does contain questions directed to liability and compensatory damages for infringement, and Monster Energy's claim for unfair competition rises or falls with its claim for infringement.  *Cleary*, 30 F.3d at 1262-63; *Philip Morris*, 489 F. Supp. 2d at 1123.  The Verdict Form asks the jurors to address malice, oppression, and fraud only if the jurors have found liability.

Question 10, the final question, asks the jurors "what amount should ISN pay Monster Energy in punitive damages?"  The Verdict Form asks the jurors to address punitive damages only if they have found malice, oppression, or fraud in response to Question 9.

**B.    ISN's Proposed Verdict Form Is Unduly Complex, Raises Issues Not Before The Court Or Jury,  And Should Be Rejected**

ISN's proposed Verdict Form suffers from many defects.  Dkt 377.  For example, Question 1 would ask the jury whether Monster Energy has proven it was "injured" in this case; while Question 2 would ask the jury whether Monster Energy's injuries were "caused" by ISN.  As Monster has explained above in its separate brief on the subject of standing, these are threshold standing questions that are to be resolved as a matter of law by the Court.  *In re ATM Fee Antitrust Litigation*, 686 F.3d 741, 747 (9th Cir. 2012).  They are not questions for the jury to resolve.  *Id*.

Questions 3 and 4 on ISN's proposed Verdict Form are redundant.  Question 3 would ask the jury whether Monster Energy has proven that "the

word 'monster' is a valid and protectable trademark."  Question 4 would ask the jury whether Monster Energy has proven "that it has any trademark rights in the word 'monster' by itself."  These two questions are essentially identical.  It would serve no purpose to ask the jury the same question twice.  Such an approach would only create a risk of inconsistent answers on the Verdict Form.

Question 5 is also unnecessary.  It would ask the jury whether Monster Energy has proven "that the mark 'monster' is inherently distinctive."  However, the jury will have already decided in response to Question 3 (and Question 4) whether "monster" is a valid trademark.  If it is valid, there is no need to inquire whether it is valid as inherently distinctive, or is valid because it has acquired distinctiveness through secondary meaning.  And if it is invalid, there is again no need to inquire as to whether it is inherently distinctive.

Question 6 is similarly unnecessary.  It would ask the jury whether "the word 'monster' has acquired secondary meaning."  Again, the jury will already have decided the validity of the "monster" trademark before reaching this question.  There is simply no reason to ask the jury whether the trademark's validity is based upon secondary meaning or inherent distinctiveness.  It would serve only to burden and confuse the jury.  Indeed, ISN would ask the jury four separate questions just to establish whether the "monster" trademark is valid, Questions 3 through 6.  This would serve no valid purpose.

Question 7 would ask the jury whether ISN has proven by a preponderance of the evidence that Monster Energy abandoned the "monster" trademark.  However, as discussed above, the overwhelming weight of authority requires proof of abandonment by clear and convincing evidence.

Question 8 would ask the jury for the fifth time whether the "monster" trademark is invalid, with this same question having been already asked in Questions 3-6.  This redundancy serves no purpose.  Question 8 may be asked, but if it is, Questions 3-6 should not be asked.

Question 9 misstates the issues before the jury.  Question 9 would ask the jury whether ISN has "used the mark 'monster' without the consent of Monster Energy in a manner that is likely to cause confusion …."  However, the issue before the jury is whether ISN has used **any mark**, including the "monster mobile" mark, in a manner that is likely to cause confusion.  As stated in Section 43(a) of the Lanham Act, "[a]ny person who … uses in commerce **any** word, term, name, symbol or device … which is likely to cause confusion … shall be liable …."  15 U.S.C. § 1125(a)(1) (emphasis added).

Question 11 is apparently ISN's attempt to ask the jury whether each of Monster's 20 registered trademarks have been infringed.  This question is fundamentally flawed in at least two critical ways.

First, it asks whether Monster has proven that ISN used any of Monster's registered trademarks without permission.  Monster, however, has never even alleged that ISN has used any of Monster's registered trademarks.  Rather, Monster alleges that ISN has used **other** trademarks, like "Monster" and "Monster Mobile," that are **confusingly similar** to Monster's registered trademarks.  Question 11 thus improperly invites the jury to enter a defense verdict if it reaches the undisputed conclusion that ISN has not used *in haec verba* any of Monster's registered trademarks.

Second, Question 11 contains a multi-page chart, with each row representing one of Monster's trademark registrations.  Question 11 would ask the jury to place a check mark in each row indicating whether or not that particular trademark registration has been infringed.  As discussed above in Section I(A) of this Trial Brief, this approach reflects a fundamental misunderstanding of trademark rights.  As Monster has explained, Monster's trademark rights arise from the use of its trademarks, not its registration of those trademarks.  *Tillamook County Creamery*, 345 F.2d at 160; J.T. McCarthy, *McCarthy on Trademarks & Unfair Competition* § 16:18 (5th ed. 2017).

Accordingly, the issue to be decided by the jury in this case is whether Monster's underlying trademark rights have been infringed.  It makes no sense to ask the jury, as ISN would, whether individual registrations have been infringed.  Those registrations do not confer trademark rights on Monster; they confer only certain additional benefits, such as the presumption of validity.  15 U.S.C. § 1057(b).  Instead, the jury should be asked whether Monster's underlying trademarks have been infringed.  Monster's proposed Verdict Form does this, and ISN's proposed Verdict Form does not.

In Question 12, ISN misleadingly asks whether each individual registration has been willfully infringed.  Question 12 is should not be asked for the same reasons explained above in connection with Question 11.

Question 13 is ISN's attempt to ask the jury whether Monster has valid trade dress rights.  However, in this question, ISN has redefined Monster's trade dress to its own liking.  According to Question 13, Monster's trade dress "includes all of the following: (a) the word 'Monster'; (b) a stylized font for the word 'Monster'; (c) a dark background; (d) the 'M-Claw'; (e) the colors green and black; and (f) an overall aggressive, edgy theme."  It appears that ISN took this definition from the complaint, but added parts it did not copy.  For example, Monster has never asserted in this case that its trade dress includes the "M-Claw" logo.  That is a separately registered trademark that has its own commercial impression which Monster has not asserted here.  Accordingly, ISN's Question 13 should be rejected for the simple reason that it misidentifies Monster's trade dress.

Question 14 would ask the jury whether Monster owns its trade dress.  It is unclear why ISN is proposing this question.  ISN has never challenged Monster's ownership of its trade dress.  As discussed above, ownership is acquired through use of a trademark or trade dress in commerce.  There is no question that Monster has used its trade dress in commerce, and ISN has never

argued otherwise.  ISN challenges the **validity** of Monster's rights, but that is the subject of Question 13.  There is no need for a separate question on the undisputed issue of ownership.

Question 15 is unnecessary.  It would ask the jury whether Monster Energy has proven that its trade dress "is inherently distinctive."  However, the jury will have already decided in response to Question 13 whether Monster's trade dress is valid.  If it is valid, there is no need to inquire whether it is valid as inherently distinctive, or is valid because it has acquired distinctiveness through secondary meaning.  And if it is invalid, there is again no need to inquire as to whether it is inherently distinctive.

Question 16 is ISN's attempt to ask the jury about infringement of Monster's trade dress.  But ISN again misstates the issue of infringement.  ISN would ask the jury whether ISN has used Monster's trade dress.  However, the correct inquiry is whether ISN has used a trade dress that is confusingly similarly to Monster's trade dress.  Question 16 thus improperly invites the jury to enter a defense verdict if it reaches the conclusion that ISN has not used an exact copy of Monster's trade dress.

Question 17 attempts to add a new abandonment defense to Monster's trade dress claim.  But as explained above, ISN has no such defense.  That defense was limited to the unregistered Monster mark.

Question 18 is directed to the validity of Monster's trade dress.  That question is redundant of Question 13 which already asked if Monster has a "legally protectable Trade Dress."

Question 20 would ask the jury whether Monster "waited too long" to file its claims against ISN.  This question appears to be directed to the equitable defense of laches.  This Court has already ruled at the Pretrial Conference that laches will not be presented to the jury.  Ex. A at 75-81.  In addition, this question badly misstates the elements of laches, omitting the element of

1   prejudice, and leaving entirely undefined what is meant by the phrase "too

2   long."  For these reasons, this question should not be asked.

3          Question 21 is directed to damages.   It is appropriate as far as it goes.

4   However, ISN has entirely omitted the issues of disgorgement of profits and

5   punitive damages, which should also be presented to the jury.

6

7                                  Respectfully submitted,

8                                  KNOBBE, MARTENS, OLSON & BEAR, LLP

9

10  Dated:  October 9, 2018         By:  */s/ Joseph R. Re*

11                                       Joseph R. Re
                                         Steven J. Nataupsky
12                                       Lynda J. Zadra-Symes
                                         Brian C. Horne
13                                       Marko R. Zoretic
                                         Jason A. Champion
14

15                                  Attorneys for Plaintiff,
16                                  MONSTER ENERGY COMPANY

17

18

19  29033080

20

21

22

23

24

25

26

27

28

-20-