Joseph R. Re (SBN 134,479)
joe.re@knobbe.com
Lynda J. Zadra-Symes (SBN 156511)
lynda.zadrasymes@knobbe.com
Marko R. Zoretic (SBN 233,952)
marko.zoretic@knobbe.com
Jason A. Champion (CA SBN 259207)
jason.champion@knobbe.com
KNOBBE, MARTENS, OLSON & BEAR, LLP
2040 Main Street, Fourteenth Floor
Irvine, CA  92614
Phone: (949) 760-0404
Facsimile: (949) 760-9502

Brian C. Horne (SBN 205621)
brian.horne@knobbe.com
KNOBBE, MARTENS, OLSON & BEAR, LLP
1925 Century Park East, Suite 600
Los Angeles, CA 90067
Telephone: (310) 551-3450
Facsimile:  (310) 601-1263

Attorneys for Plaintiff
MONSTER ENERGY COMPANY
*Counsel for Defendant listed on next page*

IN THE UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MONSTER ENERGY COMPANY, a Delaware corporation,<br><br>Plaintiff,<br><br>v.<br><br>INTEGRATED SUPPLY NETWORK, LLC, a Florida limited liability company,<br><br>Defendant. | Case No. 5:17-CV-00548-CBM-RAO<br><br>**REVISED JOINT [PROPOSED] AGREED-UPON SET OF JURY INSTRUCTIONS**<br><br>Hon. Consuelo B. Marshall |

DOUGLAS C. SMITH (SBN 160013)
dsmith@smitlaw.com
SMITH LAW OFFICES, LLP
4204 Riverwalk Parkway, Suite 250
Riverside, California 92505
Telephone: (951) 509-1355
Facsimile: (951) 509-1356

JEFFREY S. STANDLEY (OH # 0047248)
jstandley@standleyllp.com
MELISSA A. ROGERS MCCURDY (OH #0084102)
mmccurdy@standleyllp.com
F. MICHAEL SPEED, JR. (OH #0067541)
mspeed@standleyllp.com
Standley Law Group LLP
6300 Riverside Drive
Dublin, Ohio 43017
Telephone: (614) 792-5555
Fax: (614) 792-5536

CHRISTOPHER W. MADEL (MN #230297)
cmadel@madellaw.com
JENNIFER M. ROBBINS (MN #387745)
jrobbins@madellaw.com
CASSANDRA B. MERRICK (MN #396372)
cmerrick@madellaw.com
MADEL PA
800 Hennepin Avenue
800 Pence Building
Minneapolis, MN  55413
Telephone: (612) 605-0630
Facsimile: (612) 326-9990

Attorneys for Defendant
INTEGRATED SUPPLY NETWORK, LLC

Plaintiff Monster Energy Company ("Monster") and Defendant Integrated Supply Network, LLC ("ISN") hereby submit the attached agreed upon joint [proposed] jury instructions.[1]

Respectfully submitted,
KNOBBE, MARTENS, OLSON & BEAR, LLP


Dated:  November 13, 2018      By:  */s/ Joseph R. Re*
                                    Joseph R. Re
                                    Lynda J. Zadra-Symes
                                    Brian C. Horne
                                    Marko R. Zoretic
                                    Jason A. Champion

                              Attorneys for Plaintiff,
                              MONSTER ENERGY COMPANY


                              MADEL PA


Dated:  November 13, 2018      By:  */s/ Cassandra B. Merrick (with permission)*
                                    Christopher W. Madel
                                    Jennifer M. Robbins
                                    Cassandra B. Merrick

                              STANDLEY LAW
                              Jeffrey S. Standley
                              Melissa A. Rogers McCurdy
                              F. Michael Speed, Jr.

                              Attorneys for Defendant,
                              INTEGRATED SUPPLY NETWORK, LLC

---

[1] By including Instruction No. 24 regarding punitive damages in this agreed upon joint [proposed] jury instructions, ISN does not waive its objection to instructing the jury on punitive damages.

# INDEX OF JURY INSTRUCTIONS

| No. | Title | Source | Page |
|-----|-------|--------|------|
| 2 | Definition–Trademark | Ninth Circuit Manual of Model Civil Jury Instructions – No. 15.2 | 3 |
| 3 | Definition–Trade Dress | Ninth Circuit Manual of Model Civil Jury Instructions – No. 15.3 | 7 |
| 4 | Trademark Liability–Theories and Policies | Ninth Circuit Manual of Model Civil Jury Instructions – No. 15.5 | 9 |
| 6 | Infringement—Elements and Burden of Proof—Trademark | Ninth Circuit Manual of Model Civil Jury Instructions – No. 15.6 | 11 |
| 7 | Infringement—Elements and Burden of Proof—Trade Dress | Ninth Circuit Manual of Model Civil Jury Instructions – No. 15.7 | 13 |
| 8 | Infringement—Elements— Presumed Validity and Ownership—Registered Trademark | Ninth Circuit Manual of Model Civil Jury Instructions – No. 15.8 | 15 |
| 9 | Infringement—Elements— Validity—Unregistered Marks | Ninth Circuit Manual of Model Civil Jury Instructions – No. 15.9 | 18 |
| 12 | Infringement—Elements— Validity—Distinctiveness— Secondary Meaning | Ninth Circuit Manual of Model Civil Jury Instructions – No. 15.11 | 21 |
| 14 | Infringement—Likelihood of Confusion—Factors— *Sleekcraft* Test | Ninth Circuit Manual of Model Civil Jury Instructions – No. 15.18; Dkt. No. 202 at 5 n.3 (citing *Rearden LLP v. Rearden Commerce*, 683 | 25 |

| | | | |
|---|---|---|---|
| | | F.3d 1190, 1212 (9th Cir. 2012); *Waits v. Frito-Lay*, 978 F.2d 1093, 1110 (9th Cir. 1992)) | |
| 18 | Willful Infringement | *DC Comics v. Towle*, 802 F.3d 1012, 1026 (9th Cir. 2015); *Fishman Transducers v. Paul*, 684 F.3d 187, 192-93 (1st Cir. 2012); *Coach, Inc. v. Celco Customs Services Co.*, 2014 WL 12573411 at *19-*20 (C.D. Cal. June 5, 2014); *Hydramedia Corp. v. Hydra Media Grp., Inc.*, 2008 WL 11336118, at *3 (C.D. Cal. Dec. 29, 2008), *aff'd*, 392 F. App'x 522 (9th Cir. 2010) | 29 |
| 20 | Reasonable Royalty | AIPLA Model Patent Jury Instructions, 10.2 (revised to apply to trademark context) | 31 |
| 21 | Reasonable Royalty Definition | AIPLA Model Patent Jury Instructions, 10.2.5.2 (revised to apply to trademark context); *Apple Inc. et al v. Motorola Inc., et al.,* 757 F.3d 1286 (Fed. Cir. 2014); *LaserDynamics, Inc. v. Quanta Computer,* | 33 |

| | | | | |
|---|---|---|---|---|
| | | | *Inc. et al*, 694 F.3d 51, 75 (Fed. Cir. 2012); *Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1311 (Fed. Cir. 2011); *Fujifilm Corp. v. Benun*, 605 F.3d 1366, 1372 (Fed. Cir. 2010); *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1324-25 (Fed. Cir. 2009); *Mahurkar v. C.R. Bard, Inc.*, 79 F.3d 1572, 1579 (Fed. Cir. 1996); *Maxwell v. J. Baker, Inc.*, 86 F.3d 1098, 1109-10 (Fed. Cir. 1996); *Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1554 (Fed. Cir. 1995) (*en banc*); *Wang Labs., Inc. v. Toshiba Corp.*, 993 F.2d 858, 870 (Fed. Cir. 1993) | |
| 23 | Defendant's Profits | | Ninth Circuit Manual of Model Civil Jury Instructions – No. 15.29 | 35 |
| 24 | Punitive Damages | | Cal. Civ. Code § 3294; Ninth Circuit Manual of | 37 |

|  |  | Model Civil Jury Instructions – Nos. 1.7 and 5.5 (modified) |  |
| --- | --- | --- | --- |

## JURY INSTRUCTION NO. 2
### (DEFINITION—TRADEMARK)

A trademark is any word, name, symbol, device, or any combination thereof, used by a person to identify and distinguish that person's goods or services from those of others and to indicate the source of the goods or services.

A person who uses the trademark of another may be liable for damages.

AUTHORITY: Ninth Circuit Manual of Model Civil Jury Instructions – No. 15.2

1
2
3

**JURY INSTRUCTION NO. 3**
**(DEFINITION–TRADE DRESS)**

4     Trade dress is the non-functional physical detail and design of a product
5 or its packaging which indicates or identifies the source of the products or
6 services and distinguishes them from the products or services of others.

7

8     Trade dress is the product's total image and overall appearance, and may
9 include features such as size, shape, color, color combinations, texture, or
10 graphics.  In other words, trade dress is the form in which a person presents a
11 product or service to the market, its manner of display.

12

13     A person who uses the trade dress of another may be liable for damages.

14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

AUTHORITY: Ninth Circuit Manual of Model Civil Jury Instructions – No. 15.3

**JURY INSTRUCTION NO. 4**

**(TRADEMARK LIABILITY—THEORIES AND POLICIES)**

The trademark laws balance three often-conflicting goals: (1) protecting the public from being misled about the nature and source of goods and services, so that the consumer is not confused or misled in the market; (2) protecting the rights of a business to identify itself to the public and its reputation in offering goods and services to the public; and (3) protecting the public interest in fair competition in the market.

The balance of these policy objectives vary from case to case, because they may often conflict. Accordingly, each case must be decided by examining its specific facts and circumstances, which you are to judge.

In these instructions, I will identify types of facts you are to consider in deciding if ISN is liable to Monster Energy for violating the trademark law. These facts are relevant to whether the defendant is liable for infringing plaintiff's registered or unregistered trademark rights or plaintiff's trade dress, by using a trademark or trade dress in a manner likely to cause confusion among consumers.

1    AUTHORITY: Ninth Circuit Manual of Model Civil Jury Instructions – No.

2    15.5.

**JURY INSTRUCTION NO. 6**

**(INFRINGEMENT—ELEMENTS AND BURDEN OF PROOF—TRADEMARK)**

On Monster Energy's claims for trademark infringement, Monster Energy has the burden of proving each of the following elements by a preponderance of the evidence:

1. That Monster Energy's trademarks are valid, protectable trademarks;

2. That Monster Energy owns these trademarks; and

3. That ISN used these trademarks or similar trademarks without the consent of Monster Energy in a manner that is likely to cause confusion among ordinary consumers as to the source, sponsorship, affiliation, or approval of the goods.

If you find that each of the elements on which Monster Energy has the burden of proof has been proved for the Monster trademarks, you should answer Questions # 1 and 3 on the Verdict Form for Monster Energy.   If you find that each of the elements on which Monster Energy has the burden of proof has been proved for the Beast trademarks, you should answer Question # 5 on the Verdict Form for Monster Energy.   If, on the other hand, Monster Energy has failed to prove any of these elements for the Monster trademarks or the Beast trademarks, your answer should be for ISN with respect to the applicable trademarks.

-11-

AUTHORITY: Ninth Circuit Manual of Model Civil Jury Instructions – No. 15.6.

# JURY INSTRUCTION NO. 7
## (INFRINGEMENT—ELEMENTS AND BURDEN OF PROOF—TRADE DRESS)

On Monster Energy's claim for trade dress infringement, Monster Energy has the burden of proving by a preponderance of the evidence each of the following elements:

1. That the claimed Trade Dress is distinctive;

2. That Monster Energy owns this Trade Dress;

3. That the Trade Dress asserted by Monster Energy is nonfunctional, which the parties agree is satisfied in this case; and

4. That ISN used trade dress similar to the Trade Dress asserted by Monster Energy without the consent of Monster Energy in a manner that is likely to cause confusion among ordinary consumers as to the source, sponsorship, affiliation, or approval of ISN's goods.

If you find that each of the elements on which Monster Energy has the burden of proof has been proved, you should answer Questions #6 and 7 on the Verdict Form for Monster Energy.  If, on the other hand, Monster Energy has failed to prove any of these elements, you should answer Questions #6 and 7 for ISN.

AUTHORITY: Ninth Circuit Manual of Model Civil Jury Instructions – No. 15.7.

**JURY INSTRUCTION NO. 8**
**(INFRINGEMENT—ELEMENTS—PRESUMED VALIDITY AND**
**OWNERSHIP—REGISTERED TRADEMARK)**

I gave you instruction number 6 that requires Monster Energy to prove by a preponderance of the evidence that its trademarks are valid and protectable and that Monster Energy owns the trademarks. A valid trademark is a word, name, symbol, device, or any combination of these, that indicates the source of goods or services and distinguishes those goods or services from the goods or services of others. A trademark becomes protectable after it is used in commerce.

One way for Monster Energy to prove trademark validity is to show that the trademark is registered. An owner of a trademark may obtain a certificate of registration issued by the United States Patent and Trademark Office and may submit that certificate as evidence of the validity and protectability of the trademark and of the certificate holder's ownership of the trademark covered by that certificate.

Exhibits 1000A through 1013A, 1023A, 1034A through 1037A, and 1043A are certificates of registration from the United States Patent and Trademark Office.  They were submitted by Monster Energy as proof of the validity of the trademarks and that Monster Energy owns the trademarks.

The facts recited in these certificates are that Monster Energy owns valid trademark rights in each of the trademarks listed in the registrations.

In this case, there is no dispute that the following Exhibits are registrations that are "incontestable" under the trademark laws:

| Exhibit No. | Registration No. | Registration Date |
| --- | --- | --- |
| 1001A | 3,044,315 | Jan. 17, 2006 |
| 1002A | 3,057,061 | Feb. 7, 2006 |
| 1003A | 3,908,601 | Jan. 18, 2011 |
| 1004A | 3,914,828 | Feb. 1, 2011 |
| 1006A | 3,908,600 | Jan. 18, 2011 |
| 1009A | 3,740,050 | Jan. 19, 2010 |
| 1010A | 3,044,314 | Jan. 17, 2006 |
| 1011A | 3,134,842 | Aug. 29, 2006 |
| 1012A | 4,036,680 | Oct. 11, 2011 |
| 1013A | 4,036,681 | Oct. 11, 2011 |
| 1034A | 3,134,841 | Aug. 29, 2006 |
| 1037A | 2,769,364 | Sep. 30, 2003 |

This means that Monster Energy's registrations of these trademarks are conclusive evidence of Monster Energy's ownership of these trademarks and that the trademarks are valid and protectable. I instruct you that for purposes of Instruction 6, you must find that Monster Energy owns these trademarks and that these trademarks are valid and protectable.

1    AUTHORITY: Ninth Circuit Manual of Model Civil Jury Instructions – No.

2    15.8.

**JURY INSTRUCTION NO. 9**

**(INFRINGEMENT—ELEMENTS—VALIDITY—UNREGISTERED MARKS)**

Monster Energy contends that it has trademark rights in the word "Monster" and in the Trade Dress asserted by Monster Energy that I described earlier, neither of which is federally registered.  Unregistered trademarks and trade dress can be valid and provide the owner with the exclusive right to use that trademark or trade dress.  Instructions 6 and 7 require Monster Energy to prove by a preponderance of the evidence that the word "Monster" is a valid trademark and that the Trade Dress asserted by Monster Energy is a valid trade dress.  A valid trademark or trade dress is a word, name, symbol, device, or any combination of these items that is either:

1. inherently distinctive; or

2. descriptive, but has acquired a secondary meaning.

Only a valid trademark or trade dress can be infringed.  Only if you determine Monster Energy proved by a preponderance of the evidence that the word "Monster" is a valid trademark should you consider whether Monster Energy owns it or whether ISN's actions infringed it.  Similarly, only if you determine that Monster Energy proved by a preponderance of the evidence that the Trade Dress asserted by Monster Energy is a valid trade dress should you consider whether Monster Energy owns it or whether ISN's actions infringed it.

Only if you determine that the word "Monster" or the Trade Dress asserted by Monster Energy is not inherently distinctive should you consider

-18-

1  whether they are descriptive but became distinctive through the development of

2  secondary meaning, as I will direct in Instruction 12.

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

AUTHORITY: Ninth Circuit Manual of Model Civil Jury Instructions – No. 15.9.

**JURY INSTRUCTION NO. 12**

**(INFRINGEMENT—ELEMENTS—VALIDITY—DISTINCTIVENESS—**

**SECONDARY MEANING)**

If you determined in Instruction 11 that Monster Energy's claimed unregistered "Monster" trademark or claimed trade dress are descriptive, you must consider the recognition that the mark has among prospective consumers in order to determine whether it is valid and protectable even though it is descriptive. This market recognition is called the "secondary meaning" of the trademark or trade dress.

A word or a trade dress acquires a secondary meaning when it has been used in such a way that its primary significance in the minds of the prospective consumers is not the product or service itself, but the identification of the product or service with a single source, regardless of whether consumers know who or what that source is. You must find that the preponderance of the evidence shows that a significant number of the consuming public associates the trademark or trade dress with a single source, in order to find that it has acquired secondary meaning.

When you are determining whether a trademark or trade dress has acquired a secondary meaning, consider the following factors:

(1)    Consumer Perception. Whether the people who purchase the product or service that bears the claimed trademark or trade dress associate the trademark or trade dress with Monster Energy;

(2)     Advertisement. To what degree and in what manner Monster Energy may have advertised under the claimed trademark or claimed trade dress;

(3)     Demonstrated Utility. Whether Monster Energy successfully used this trademark or trade dress to increase the sales of its products or services;

(4)     Extent of Use. The length of time and manner in which Monster Energy used the claimed trademark or claimed trade dress;

(5)     Exclusivity. Whether Monster Energy's use of the claimed trademark or claimed trade dress was exclusive;

(6)     Copying. Whether ISN intentionally copied Monster Energy's trademark or trade dress; and

(7)     Actual Confusion. Whether ISN's use of a similar trademark or trade dress has led to actual confusion among a significant number of consumers.

The presence or absence of any particular factor should not necessarily resolve whether the trademark or trade dress has acquired secondary meaning.

Descriptive trademarks and trade dress are protectable only to the extent you find they acquired distinctiveness through secondary meaning by the public coming to associate the trademark or trade dress with a particular source. Descriptive trademarks and trade dress are entitled to protection only as broad

-22-

1  as the secondary meaning they have acquired, if any. If they have acquired no
2  secondary meaning, they are entitled to no protection and cannot be considered
3  a valid trademark or trade dress.

4

5  Monster Energy has the burden of proving that its "Monster" trademark
6  and the Trade Dress asserted by Monster Energy have acquired a secondary
7  meaning.  ISN has the burden of proving that the registered trademarks in this
8  case lack a secondary meaning.

9

10  The mere fact that Monster Energy is using a particular trademark or
11  trade dress, or that Monster Energy began using it before ISN, does not mean
12  that the trademark or trade dress has acquired secondary meaning. There is no
13  particular length of time that a trademark or trade dress must be used before it
14  acquires a secondary meaning.

15

16

17

18

19

20

21

22

23

24

25

26

27

28

AUTHORITY: Ninth Circuit Manual of Model Civil Jury Instructions – No. 15.11.

**JURY INSTRUCTION NO. 14**

**(INFRINGEMENT—LIKELIHOOD OF CONFUSION—FACTORS—**

***SLEEKCRAFT* TEST)**

You must consider whether the defendant's use of a trademark or trade dress is likely to cause confusion about the source or affiliation of Monster Energy's or ISN's goods or services.  The likelihood of confusion factors are the same for determining both trademark and trade dress infringement.

I will suggest some factors you should consider in deciding this. The presence or absence of any particular factor that I suggest should not necessarily resolve whether there was a likelihood of confusion, because you must consider all relevant evidence in determining this. As you consider the likelihood of confusion you should examine the following:

(1)  Strength or Weakness of Monster Energy's Marks or Trade Dress. The more the consuming public recognizes Monster Energy's trademarks or trade dress as an indication of origin of Monster Energy's goods, the more likely it is that consumers would be confused about the source or affiliation of ISN's goods if ISN uses a similar trademark or similar trade dress.

(2)  ISN's Use of the Mark or Trade Dress. If ISN and Monster Energy use their trademarks and trade dress on the same, related, or complementary kinds of goods there may be a greater likelihood of confusion about the source or affiliation of the goods than otherwise.

(3)     Similarity of Monster Energy's and ISN's Marks and Trade Dress.
If the overall impression created by Monster Energy's trademarks
and trade dress in the marketplace is similar to that created by
ISN's trademarks and trade dress in appearance, sound, or
meaning, there is a greater chance that consumers are likely to be
confused by ISN's use of its trademarks and trade dress.
Similarities in appearance, sound or meaning weigh more heavily
than differences in finding the marks are similar.

(4)     Actual Confusion. If use by ISN of Monster Energy's trademarks
or trade dress has led to instances of actual confusion, this strongly
suggests a likelihood of confusion. However actual confusion is not
required for a finding of likelihood of confusion. Even if actual
confusion did not occur, ISN's use of its trademarks or trade dress
may still be likely to cause confusion. As you consider whether the
trademarks or trade dress used by ISN creates for consumers a
likelihood of confusion with Monster Energy's trademarks or trade
dress, you should weigh any instances of actual confusion against
the opportunities for such confusion. If the instances of actual
confusion have been relatively frequent, you may find that there
has been substantial actual confusion. If, by contrast, there is a very
large volume of sales, but only a few isolated instances of actual
confusion you may find that there has not been substantial actual
confusion.

(5)     ISN's Intent. Knowing use by ISN of Monster Energy's trademarks
or trade dress to identify similar or related goods may strongly
show an intent to derive benefit from the reputation of Monster

Energy's trademarks or trade dress, suggesting an intent to cause a likelihood of confusion. On the other hand, even in the absence of proof that ISN acted knowingly, the use of Monster Energy's trademarks or trade dress to identify similar or related goods may indicate a likelihood of confusion.

(6)     Marketing/Advertising Channels. If Monster Energy's and ISN's goods and services are likely to be sold in the same or similar stores or outlets, or advertised in similar media, this may increase the likelihood of confusion.

(7)     Consumer's Degree of Care. The more sophisticated the potential buyers of the goods or the more costly the goods, the more careful and discriminating the reasonably prudent purchaser exercising ordinary caution may be. They may be less likely to be confused by similarities in Monster Energy's and ISN's trademarks and trade dress.

(8)     Product Line Expansion. When the parties' products differ, you may consider how likely Monster Energy is to begin selling the products for which ISN is using Monster Energy's trademarks or trade dress. If there is a strong possibility of expanding into the other party's market, there is a greater likelihood of confusion.

AUTHORITY: Ninth Circuit Manual of Model Civil Jury Instructions – No. 15.18; Dkt. No. 202 at 5 n.3 (citing *Rearden LLP v. Rearden Commerce*, 683 F.3d 1190, 1212 (9th Cir. 2012); *Waits v. Frito-Lay*, 978 F.2d 1093, 1110 (9th Cir. 1992)).

**JURY INSTRUCTION NO. 18**

**(WILLFUL INFRINGEMENT)**

If you find that ISN infringed any of the Monster Energy's trademarks or trade dress, you must also determine whether ISN acted willfully. Trademark infringement and trade dress infringement are considered willful if Monster Energy shows that ISN's actions were willfully calculated to exploit the advantage of an established trademark or trade dress, or if Monster Energy shows that ISN recklessly disregarded Monster Energy's trademark or trade dress rights. Infringement is not willful if ISN believed reasonably, and in good faith, that it was not infringing. Monster Energy has the burden of proving willfulness by a preponderance of the evidence.

Question #9 on the Verdict Form asks you to decide whether ISN willfully infringed Monster Energy's trademarks or trade dress.

1    AUTHORITY: *DC Comics v. Towle*, 802 F.3d 1012, 1026 (9th Cir. 2015);

2    *Fishman Transducers v. Paul*, 684 F.3d 187, 192-93 (1st Cir. 2012); *Coach, Inc.*

3    *v. Celco Customs Services Co.*, 2014 WL 12573411 at *19-*20 (C.D. Cal. June

4    5, 2014); *Hydramedia Corp. v. Hydra Media Grp., Inc*., 2008 WL 11336118, at

5    *3 (C.D. Cal. Dec. 29, 2008), *aff'd,* 392 F. App'x 522 (9th Cir. 2010);

6    *Evergreen Safety Council v. RSA Network Inc.*, 697 F.3d 1221, 1228 (9th Cir.

7    2012) ("Continued use of a work even after one has been notified of his or her

8    alleged infringement does not constitute willfulness so long as one believes

9    reasonably, and in good faith, that he or she is not infringing.").

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**JURY INSTRUCTION NO. 20**

**(REASONABLE ROYALTY)**

A reasonable royalty is the amount that someone wanting to use the trademark would have agreed to pay to the trademark owner and the trademark owner would have accepted.

1   AUTHORITY: AIPLA Model Patent Jury Instructions, 10.2 (revised to apply to

2   trademark context).

## JURY INSTRUCTION NO. 21
### (REASONABLE ROYALTY DEFINITION)

A reasonable royalty is the royalty that would have resulted from a hypothetical license negotiation between Monster Energy and ISN.  Of course, we know that they did not agree to a license and royalty payment. But, in order to decide on the amount of reasonable royalty damages, you should assume that the parties did negotiate a license just before the infringement began. This is why it is called a "hypothetical" license negotiation. You should assume that both parties to the hypothetical negotiation understood that the trademark was valid and infringed and both were willing to enter into a license. You should also presume that the parties had full knowledge of the facts and circumstances surrounding the infringement at the time of the hypothetical negotiation.

AUTHORITY: AIPLA Model Patent Jury Instructions, 10.2.5.2 (revised to apply to trademark context); *Apple Inc. et al v. Motorola Inc., et al.,* 757 F.3d 1286 (Fed. Cir. 2014); *LaserDynamics, Inc. v. Quanta Computer, Inc. et al,* 694 F.3d 51, 75 (Fed. Cir. 2012); *Uniloc USA, Inc. v. Microsoft Corp.,* 632 F.3d 1292, 1311 (Fed. Cir. 2011); *Fujifilm Corp. v. Benun,* 605 F.3d 1366, 1372 (Fed. Cir. 2010); *Lucent Techs., Inc. v. Gateway, Inc.,* 580 F.3d 1301, 1324-25 (Fed. Cir. 2009); *Mahurkar v. C.R. Bard, Inc.,* 79 F.3d 1572, 1579 (Fed. Cir. 1996); *Maxwell v. J. Baker, Inc.,* 86 F.3d 1098, 1109-10 (Fed. Cir. 1996); *Rite-Hite Corp. v. Kelley Co.,* 56 F.3d 1538, 1554 (Fed. Cir. 1995) (*en banc*); *Wang Labs., Inc. v. Toshiba Corp.,* 993 F.2d 858, 870 (Fed. Cir. 1993).

# JURY INSTRUCTION NO. 23
## (DEFENDANT'S PROFITS)

If you determine that ISN willfully infringed Monster Energy's trademarks or trade dress, Monster Energy is entitled to any profits earned by ISN that are attributable to the infringement, which Monster Energy proves by a preponderance of the evidence.  You may not, however, include in any award of profits any amount that you took into account in determining a reasonable royalty.

Profit is determined by deducting all expenses from gross revenue.

Gross revenue is all of ISN's receipts from using the trademark or trade dress in the sale of a product. Monster Energy has the burden of proving ISN's gross revenue by a preponderance of the evidence.

Expenses are all operating, overhead, and production costs incurred in producing the gross revenue. ISN has the burden of proving the expenses and the portion of the profit attributable to factors other than use of the infringed trademark by a preponderance of the evidence.

Unless you find that a portion of the profit from the sale of ISN's products using the trademark or trade dress is attributable to factors other than use of the trademark, you should find that the total profit is attributable to the infringement.

AUTHORITY: Ninth Circuit Manual of Model Civil Jury Instructions – No. 15.29.

**JURY INSTRUCTION NO. 24**

**(PUNITIVE DAMAGES)**

The purposes of punitive damages are to punish a wrongdoer for the conduct that harmed the plaintiff and to discourage similar conduct in the future. You may award punitive damages against ISN only if Monster Energy proves by clear and convincing evidence that ISN infringed with malice, oppression, or fraud.

"Malice" means conduct which is intended by ISN to cause harm to Monster Energy or despicable conduct which is carried on by ISN with a willful and conscious disregard of the rights or safety of other.

"Oppression" means despicable conduct that subjects a person to cruel and unjust hardship in conscious disregard of that person's rights.

"Fraud" means an intentional misrepresentation, deceit, or concealment of a material fact known to ISN with the intention on the part of ISN of thereby depriving Monster Energy of property or legal rights or otherwise causing harm.

When a party has the burden of proving any claim or defense by clear and convincing evidence, it means that the party must present evidence that leaves you with a firm belief or conviction that it is highly probable that the factual contentions of the claim or defense are true. This is a higher standard of proof than proof by a preponderance of the evidence, but it does not require proof beyond a reasonable doubt.

If you find that Monster Energy has proved by clear and convincing evidence that ISN infringed with malice, oppression, or fraud toward Monster Energy, then you should answer Question #11 in favor of Monster. Otherwise, you should answer Question #11 in favor of ISN.

If you find that punitive damages are appropriate, you must use reason in setting the amount. Punitive damages, if any, should be in an amount sufficient to fulfill their purposes but should not reflect bias, prejudice or sympathy

toward any party.  In considering the amount of any punitive damages, consider the degree of reprehensibility of ISN's conduct.  If you find that punitive damages are appropriate, you should enter the amount in response to Question #12.

AUTHORITY: Cal. Civ. Code § 3294; Ninth Circuit Manual of Model Civil Jury Instructions – Nos. 1.7 and 5.5 (modified).

29422816