Joseph R. Re (SBN 134,479)
joe.re@knobbe.com
Lynda J. Zadra-Symes (SBN 156511)
lynda.zadrasymes@knobbe.com
Marko R. Zoretic (SBN 233,952)
marko.zoretic@knobbe.com
Jason A. Champion (CA SBN 259207)
jason.champion@knobbe.com
KNOBBE, MARTENS, OLSON & BEAR, LLP
2040 Main Street, Fourteenth Floor
Irvine, CA  92614
Phone: (949) 760-0404
Facsimile: (949) 760-9502

Brian C. Horne (SBN 205621)
brian.horne@knobbe.com
KNOBBE, MARTENS, OLSON & BEAR, LLP
1925 Century Park East, Suite 600
Los Angeles, CA 90067
Telephone: (310) 551-3450
Facsimile:  (310) 601-1263

Attorneys for Plaintiff
MONSTER ENERGY COMPANY

IN THE UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MONSTER ENERGY COMPANY, a Delaware corporation, | Case No. 5:17-CV-00548-CBM-RAO |
| Plaintiff, | **MONSTER ENERGY COMPANY'S REVISED PROPOSED JURY INSTRUCTIONS DISPUTED BY ISN** |
| v. | |
| INTEGRATED SUPPLY NETWORK, LLC, a Florida limited liability company, | Hon. Consuelo B. Marshall |
| Defendant. | |

1   Plaintiff Monster Energy Company hereby submits and proposes that the

2   Court use the attached revised jury instructions which Defendant Integrated

3   Supply Network, LLC disputes.

4

5

6                                    Respectfully submitted,

7                                    KNOBBE, MARTENS, OLSON & BEAR, LLP

8

9   Dated:  November 13, 2018    By:  */s/ Joseph R. Re*

10                                    Joseph R. Re

11                                    Lynda J. Zadra-Symes

                                     Brian C. Horne

12                                    Marko R. Zoretic

13                                    Jason A. Champion

14                                    Attorneys for Plaintiff,

15                                    MONSTER ENERGY COMPANY

16

17

18

19

20

21

22

23

24

25

26

27

28

## INDEX OF JURY INSTRUCTIONS

| No. | Title | Source | Page |
|---|---|---|---|
| 1 | Trademark and Trade Dress | AUTHORITY: Ninth Circuit Manual of Model Civil Jury Instructions – Nos. 15.1, 15.3 (modified), 15.8 (modified), 15.9 (modified). | 1 |
| 10 | Acquisition of Rights in a Portion of a Composite Trademark | *Institut National des Appellations D'Origine v. Vintners Int'l Co.*, 958 F.2d 1574, 1582 (Fed. Cir. 1992); *Application of Servel, Inc.*, 181 F.2d 192, 196 (C.C.P.A. 1950); *In re Berg Elecs., Inc.*, 163 U.S.P.Q. 487, 487 (T.T.A.B. 1969); J.T. McCarthy, *McCarthy on Trademarks & Unfair Competition* § 19:59 (5th ed. 2017) | 6 |
| 11 | Infringement—Elements—Validity—Unregistered Mark—Distinctiveness | Ninth Circuit Manual of Model Civil Jury Instructions – No. 15.10 | 8 |
| 15 | Infringement—Likelihood of Confusion—Factor—Strength of Trademark or Trade Dress | Ninth Circuit Manual of Model Civil Jury Instructions – No. 15.19 | 15 |
| 16 | Defenses—Abandonment—Affirmative Defense—Defendant's Burden of Proof | Ninth Circuit Manual of Model Civil Jury Instructions – No. 15.22 (modified) | 20 |
| 19 | Trademark Damages—Plaintiff's Actual Damages | Ninth Circuit Manual of Model Civil Jury Instructions – No. 15.27; *adidas Am., Inc. v. Payless Shoesource, Inc.*, 2008 WL 4279812 at *12 (D. Or. Sept. 12, 2008); Dkt. No. 202 at 14 ("A reasonable royalty based on a hypothetical negotiation can | 22 |

| No. | Title | Source | Page |
|-----|-------|--------|------|
|  |  | be a measure of actual damages in a trademark infringement case.") |  |

# JURY INSTRUCTION NO. 1
## (TRADEMARK AND TRADE DRESS)

The plaintiff, Monster Energy, seeks damages against the defendant, Integrated Supply Network, whom I will call ISN, for infringement of its registered and unregistered trademarks and trade dress.  ISN denies infringing the trademarks and trade dress.  ISN also contends that one of Monster Energy's trademarks, the unregistered "Monster" trademark, has been abandoned. To help you understand the evidence presented in this case, I will explain some of the legal terms you have heard during this trial.

## Definition and Function of a Trademark

A trademark is a word, name, symbol, or device, or any combination of these items that indicates the source of goods. The owner of a trademark has the right to exclude others from using that trademark or a similar mark that is likely to cause confusion in the marketplace. The main function of a trademark is to identify and distinguish goods as the product of a particular manufacturer or merchant and to protect its goodwill.

A service mark is the same as a trademark, except that it is used to identify and distinguish a company's services, rather than a company's goods. For convenience, I will refer to both trademarks and service marks as "trademarks" or simply "marks."

## How a Trademark Is Obtained

A person acquires the right to exclude others from using the same mark or a similar mark that is likely to cause confusion in the marketplace by being the

1   first to use it in the marketplace, or by using it before the alleged infringer.

2   Rights in a trademark are obtained only through commercial use of the mark.

3

4                        **Trademark Registration**

5          After the owner of a trademark has obtained the right to exclude others

6   from using the trademark, the owner may obtain a certificate of registration

7   issued by the United States Patent and Trademark Office. Thereafter, when the

8   owner brings an action for infringement, the owner may rely solely on the

9   registration certificate to prove that the owner has the right to exclude others

10  from using the trademark or a similar mark that is likely to cause confusion in

11  the marketplace in connection with the type of goods specified in the certificate.

12  These presumptions in favor of the owner created by the certificate of

13  registration can be overcome or rebutted only by certain types of evidence that I

14  will describe to you later as appropriate.

15

16                         **Unregistered Marks**

17         Not all trademarks are registered. Unregistered trademarks can be valid

18  and provide the owner with the exclusive right to use that trademark.

19         Only a valid trademark can be infringed.

20

21                            **Trade Dress**

22         Trade dress is the non-functional physical detail and design of a product

23  or its packaging, which indicates the product's source and distinguishes it from

24  the products of others.

25         Trade dress is the product's total image and overall appearance, and may

26  include features such as size, shape, color, color combinations, texture, or

27  graphics.  In other words, trade dress is the form in which a person presents a

28

                                  -2-

product or service to the market, its manner of display.  A registration is not necessary to have trade dress rights.

## Likelihood of Confusion

To prove infringement of its trademarks and its trade dress, the plaintiff must prove, by a preponderance of the evidence, that the defendant, without the plaintiff's consent, used in commerce a reproduction, copy, counterfeit or colorable imitation of plaintiff's marks or trade dress in connection with the distribution or advertisement of goods, such that the defendant's use of the marks or trade dress is likely to cause confusion as to the source of the goods. It is not necessary that the marks or trade dress used by the defendant be an exact copy of the plaintiff's marks or trade dress. Rather, the plaintiff must demonstrate that, viewed in its entirety, the marks or trade dress used by the defendant is likely to cause confusion in the minds of reasonably prudent purchasers or users as to the source of the product in question.

## Monster Energy's Claims and Burden of Proof

In this case, Monster Energy contends that ISN has infringed Monster Energy's registered and unregistered trademarks and trade dress. First, Monster Energy is asserting a number of registered trademarks that include the word "Monster" alongside other words or elements.  It is also asserting an unregistered trademark in the word "Monster."  I will refer to these trademarks as the Monster marks.  Second, Monster Energy is asserting a number of registered trademarks including the phrase "Unleash the Beast!".  I will refer to these trademarks as the Beast marks.  Third, Monster Energy is asserting trade dress rights in the way it presents its products using the combination of the colors green and black with the word "Monster."  I will refer to this as the Trade Dress asserted by Monster Energy.

Monster Energy has the burden of proving by a preponderance of the evidence that it is the owner of a valid trademark or trade dress and that ISN infringed that trademark or trade dress. Preponderance of the evidence means that you must be persuaded by the evidence that it is more probably true than not true that ISN infringed Monster Energy's trademarks or trade dress.

One way for Monster Energy to prove it has a valid trademark is to show that the trademark is registered. An owner of a trademark may obtain a certificate of registration issued by the United States Patent and Trademark Office and may submit that certificate as evidence of the validity and protectability of the trademark and of the certificate holder's ownership of the trademark covered by that certificate.

Another way for Monster Energy to prove it has a valid trademark is to show that the trademark acts as a trademark in that it identifies a particular source of the goods or services at issue.

**ISN's Defenses and Burden of Proof**

ISN contends that one of Monster Energy's trademarks, the unregistered "Monster" trademark, has been abandoned.  ISN has the burden of proving by a preponderance of the evidence that the unregistered "Monster" trademark has been abandoned.  Preponderance of the evidence means that you must be persuaded by the evidence that it is more probably true than not true that the challenged trademark  has been abandoned.

AUTHORITY: Ninth Circuit Manual of Model Civil Jury Instructions – Nos. 15.1, 15.3 (modified), 15.8 (modified), 15.9 (modified)

**JURY INSTRUCTION NO. 10**

**(ACQUISITION OF RIGHTS IN A PORTION OF A COMPOSITE TRADEMARK)**

A trademark owner may acquire rights in a portion of a larger or composite trademark under some circumstances.  In this case, Monster Energy contends that it has acquired trademark rights in the word "Monster" by, among other things, using other trademarks that include the word "Monster," such as "Monster Energy®" "Monster Unleaded®" and "Ubermonster®".  To prove that it has rights in the word "Monster," Monster Energy must show by a preponderance of the evidence that the word "Monster" creates a separate commercial impression so that consumers identify the word "Monster" as an indicator of the source of Monster Energy's goods.  That is, the word "Monster" functions as one of Monster Energy's trademarks.

AUTHORITY:  *Institut National des Appellations D'Origine v. Vintners Int'l Co.*, 958 F.2d 1574, 1582 (Fed. Cir. 1992); *Application of Servel, Inc.*, 181 F.2d 192, 196 (C.C.P.A. 1950); *In re Berg Elecs., Inc.*, 163 U.S.P.Q. 487, 487 (T.T.A.B. 1969); J.T. McCarthy, *McCarthy on Trademarks & Unfair Competition* § 19:59 (5th ed. 2017).

**JURY INSTRUCTION NO. 11**

**(INFRINGEMENT—ELEMENTS—VALIDITY—UNREGISTERED MARK—DISTINCTIVENESS)**

**Strength as a Likelihood of Confusion Factor**

How distinctively a trademark or trade dress indicates that a good comes from a particular source is an important factor to consider in assessing its validity.  As I will discuss later, it is also an important factor in determining whether ISN has infringed Monster Energy's trademarks or trade dress.

Monster Energy asserts that the word "Monster" is a valid and protectable trademark for its goods and services, and that the Trade Dress asserted by Monster Energy is a valid and protectable trade dress for its goods and services. Monster Energy contends that ISN's use of the words "Monster" and "Monster Mobile" in connection with ISN's products infringes Monster Energy's "Monster" trademark and is likely to cause confusion about the origin of goods associated with that trademark.  Similarly, Monster Energy contends that ISN's use of the words "Monster" and "Monster Mobile" in combination with the colors green and black infringes the Trade Dress asserted by Monster Energy and is likely to cause confusion about the origin of the goods associated with that trade dress.

In order to determine if Monster Energy has met its burden of showing that its "Monster" trademark is a valid trademark, or that the Trade Dress asserted by Monster Energy is a valid trade dress, you should classify it on the spectrum of distinctiveness that I will explain in this instruction.

An inherently distinctive trademark or trade dress is a word, symbol or device, or combination of them, which intrinsically identifies a particular source of a good or service in the market. The law assumes that an inherently distinctive trademark or trade dress is one that almost automatically tells a consumer that it refers to a brand or a source for a product, and that consumers will be predisposed to equate the trademark with the source of a product.

### Spectrum of Marks and Trade Dress

Trademark law provides great protection to distinctive or strong trademarks and trade dress. Conversely, trademarks and trade dress that are not as distinctive or strong are called "weak" trademarks and trade dress, and they receive less protection from infringing uses. Trademarks and trade dress that are not distinctive are not entitled to any trademark protection. For deciding trademark and trade dress protectability, you must consider whether a trademark or trade dress is inherently distinctive. Trademarks and trade dress are grouped into four categories according to their relative strength or distinctiveness. These four categories are, in order of strength or distinctiveness: arbitrary (which is inherently distinctive), suggestive (which also is inherently distinctive), descriptive (which is protected only if it acquires in consumers' minds a "secondary meaning" which I explain in Instruction 12, and generic names (which are entitled to no protection).

**Arbitrary Trademarks and Trade Dress**. The first category of "inherently distinctive" trademarks and trade dress is arbitrary trademarks and trade dress. They are considered strong marks and are clearly protectable. They involve the arbitrary, fanciful or fictitious use of a word or a trade dress to designate the source of a product. Such a trademark or trade dress in no way

describes or has any relevance to the particular product it is meant to identify.  It may be a common word used in an unfamiliar way.  It may be a newly created (coined) word or parts of common words which are applied in a fanciful, fictitious or unfamiliar way, solely as a trademark or trade dress.

For instance, the common word "apple" became a strong and inherently distinctive trademark when used by a company to identify the personal computers that company sold. The company's use of the word "apple" was arbitrary or fanciful because "apple" did not describe and was not related to what the computer was, its components, ingredients, quality, or characteristics. "Apple" was being used in an arbitrary way to designate for consumers that the computer comes from a particular manufacturer or source.

**Suggestive Trademarks and Trade Dress**. The next category is suggestive trademarks and trade dress. These trademarks and trade dress are also inherently distinctive but are considered weaker than arbitrary trademarks and trade dress.  Unlike arbitrary trademarks and trade dress, which are in no way related to what the product is or its components, quality, or characteristics, suggestive trademarks and trade dress imply some characteristic or quality of the product to which they are attached. If the consumer must use imagination or any type of multi-stage reasoning to understand the significance of the trademark or trade dress, then the trademark or trade dress does not describe the product's features, but merely suggests them.

A suggestive use of a word involves consumers associating the qualities the word suggests to the product to which the word is attached.  For example, when "apple" is used not to indicate a certain company's computers, but rather "Apple–A–Day" Vitamins, it is being used as a suggestive trademark. "Apple"

does not describe what the vitamins are. However, consumers may come to associate the healthfulness of "an apple a day keeping the doctor away" with the supposed benefits of taking "Apple–A–Day" Vitamins.

**Descriptive Trademarks and Trade Dress**. The third category is descriptive trademarks and trade dress. Descriptive trademarks and trade dress directly identify or describe some aspect, characteristic, or quality of the product to which they are affixed in a straightforward way that requires no exercise of imagination to be understood.

For instance, the word "apple" is descriptive when used in the trademark "CranApple" to designate a cranberry-apple juice. It directly describes ingredients of the juice. Other common types of descriptive trademarks identify where a product comes from, or the name of the person who makes or sells the product. Thus, the words "Apple Valley Juice" affixed to cider from the California town of Apple Valley is a descriptive trademark because it geographically describes where the cider comes from. Similarly, a descriptive trademark can be the personal name of the person who makes or sells the product. So, if a farmer in Apple Valley, Judy Brown, sold her cider under the label "Judy's Juice" (rather than CranApple) she is making a descriptive use of her personal name to indicate and describe who produced the apple cider and she is using her first name as a descriptive trademark.

**Generic Names**. The fourth category is entitled to no protection at all. They are called generic names and they refer to a general name of the product, as opposed to the plaintiff's brand for that product. Generic names are part of our common language that we need to identify all such similar products. A generic name is a name for the product on which it appears.

-11-

If the primary significance of the alleged mark or alleged trade dress is to name the type of product rather than the manufacturer or provider, the term is a generic name and cannot be a valid trademark or trade dress. If the majority of relevant consumers would understand the term or the trade dress to name the type of product rather than the manufacturer or provider, the primary significance of the term is generic and not entitled to protection as a trademark or trade dress.

The word "apple" can be used as a generic name and not be entitled to any trademark protection. This occurs when the word is used to identify the fruit from an apple tree.

The computer maker who uses the word "apple" as a trademark to identify its personal computer, or the vitamin maker who uses that word as a trademark on vitamins, has no claim for trademark infringement against the grocer who used that same word to indicate the fruit sold in a store. As used by the grocer, the word is generic and does not indicate any particular source of the product. As applied to the fruit, "apple" is simply a commonly used name for what is being sold.

**Mark Distinctiveness and Validity**

If you decide that Monster Energy's "Monster" trademark is arbitrary or suggestive, it is considered to be inherently distinctive.  Similarly, if you decide that the Trade Dress asserted by Monster Energy is arbitrary or suggestive, it is considered to be inherently distinctive.  An inherently distinctive trademark or trade dress is valid and protectable.

On the other hand, if you determine that Monster Energy's "Monster" trademark is generic, or that the Trade Dress asserted by Monster Energy is generic, then they cannot be distinctive and therefore are not valid or protectable.

If you decide that Monster Energy's "Monster" trademark is descriptive, or that the Trade Dress asserted by Monster Energy is descriptive, you will not know if the trademark or trade dress is valid or invalid until you consider whether it has gained distinctiveness by the acquisition of secondary meaning, which I explain in Instruction 12.

AUTHORITY: Ninth Circuit Manual of Model Civil Jury Instructions – No. 15.10.

**JURY INSTRUCTION NO. 15**

**(INFRINGEMENT—LIKELIHOOD OF CONFUSION—**

**FACTOR—STRENGTH OF TRADEMARK OR TRADE DRESS)**

**Strength as a Factor for Evaluating Likelihood of Confusion**

How strongly Monster Energy's trademarks or trade dress indicate that the goods or services come from a particular source is an important factor to consider in determining whether the trademarks or trade dress used by ISN are likely to create confusion with Monster Energy's trademarks and trade dress.

Monster Energy asserts that its Monster marks and Beast marks are trademarks for its goods and/or services and that the Trade Dress asserted by Monster Energy is a trade dress for its goods and services.  Monster Energy contends that ISN's use of the words "Monster" and "Monster Mobile" in connection with ISN's products, such as, for example, all those shown in the Summer 2018 Tools & Equipment catalog (Exhibit 1837), infringes Monster Energy's trademarks because the sale of such goods is likely to cause confusion. Monster Energy also contends that ISN's use of the words "Monster" and "Monster Mobile" in combination with the colors green and black in connection with such products infringes the Trade Dress asserted by Monster Energy because such use is likely to cause confusion.

**The Strength of Marks or Trade Dress**

The more distinctive and strong a trademark or trade dress is, the greater the scope of protection the law provides. The law measures trademark and trade dress strength by considering two prongs:

-15-

1.    Commercial Strength: This is the amount of marketplace recognition of the trademark or trade dress; and

2.    Conceptual Strength: This is the placement of the trademark or trade dress on the spectrum of marks.

**Commercial Strength**: What is "commercial strength?" Not all trademarks and trade dress are equally well known. Trademark and trade dress strength is somewhat like the renown of people. Only a few very famous people are widely known and recognized around the world. Most people are known and recognized only by a small circle of family and friends.

Some trademarks and trade dress are relatively "strong," in the sense they are widely known and recognized. A few trademarks are in the clearly "famous" category. These "famous" marks are those like "Apple" for computers and mobile phones, "Google" for a search engine, "Coca-Cola" for beverages and "Toyota" for vehicles. Some trademarks and trade dress may be strong and well known only in a certain market niche such as mountain climbing gear, plumbing supplies, or commercial airplane electronics equipment, but relatively weak outside that field.

**Conceptual Strength**: What is "conceptual strength?" All trademarks and trade dress are grouped into two categories: either inherently distinctive or not inherently distinctive. If a trademark or trade dress is inherently distinctive it is immediately protected when first used. If it is not inherently distinctive, to become a legally protected mark, a designation must acquire distinctiveness in people's minds by becoming known as an indication of source of goods or

services. The law calls this "secondary meaning," as I explained in Instruction 12.

For determining the conceptual strength of a trademark or trade dress, trademarks and trade dress are grouped on a spectrum according to the nature of the mark. In the spectrum, there are three categories of trademarks and trade dress that the law regards as being inherently distinctive: coined, arbitrary and suggestive. Descriptive trademarks and trade dress are regarded as not being inherently distinctive and require a secondary meaning to become a valid trademark or trade dress.

**Coined** and arbitrary trademarks and trade dress are regarded as being relatively strong. A coined word mark is a word created solely to serve as a trademark. For example, "Clorox" for cleaning products and "Exxon" for gasoline are coined marks.

**Arbitrary** trademarks and trade dress in no way describe or suggest the nature of the goods or services they are used with. For example, "apple" is a common word, but it does not describe or suggest anything about the nature of "Apple" brand computers or smart phones. It is an arbitrary word when used as a mark on those products and is said to be conceptually strong as a mark.

**Suggestive** trademarks and trade dress are regarded as not being as conceptually strong as coined or arbitrary trademarks and trade dress. Suggestive trademarks and trade dress suggest some characteristic or quality of the goods or services with which they are used. If the consumer must use her imagination or think through a series of steps to understand what the trademark or trade dress is telling about the product, then the trademark or trade dress does

not directly describe the product's features, but merely suggests them. For example, the trademark "Tail Wagger" for dog food merely suggests that your dog will like the food. As another example, when "apple" is used in the mark "Apple-A-Day" for vitamins, it is being used as a suggestive trademark. "Apple" does not describe what the vitamins are. However, it suggests the healthfulness of "an apple a day keeping the doctor away" with the supposed benefits of taking "Apple-A-Day" vitamins.

**Descriptive** trademarks and trade dress are not inherently distinctive. These trademarks and trade dress directly describe some characteristic, or quality of the goods or services with which they are used in a straightforward way that requires no exercise of imagination. For instance, the word "apple" is descriptive when used in the trademark "CranApple" to designate a cranberry-apple juice. It directly describes one of ingredients of the juice.

AUTHORITY: Ninth Circuit Manual of Model Civil Jury Instructions – No. 15.19.

**JURY INSTRUCTION NO. 16**

**(DEFENSES—ABANDONMENT—AFFIRMATIVE DEFENSE—
DEFENDANT'S BURDEN OF PROOF)**

The owner of a trademark cannot exclude others from using the trademark if it has been abandoned.

ISN contends that the unregistered trademark "MONSTER" has become unenforceable because Monster Energy abandoned it. ISN has the burden of proving abandonment by a preponderance of the evidence.

The owner of a trademark abandons the right to exclusive use of the trademark when the owner discontinues its use in the ordinary course of trade, intending not to resume using it.

AUTHORITY: Ninth Circuit Manual of Model Civil Jury Instructions – No. 15.22 (modified)

**JURY INSTRUCTION NO. 19**

**(TRADEMARK DAMAGES—PLAINTIFF'S ACTUAL DAMAGES)**

If you find for Monster Energy on its claim for infringement of registered or unregistered trademarks, or its claim for infringement of the Trade Dress asserted by Monster Energy, you must determine Monster Energy's actual damages.

Monster Energy has the burden of proving actual damages by a preponderance of the evidence. Damages means the amount of money which will reasonably and fairly compensate Monster Energy for any injury you find was caused by ISN's infringement of Monster Energy's trademarks or trade dress. Monster Energy seeks actual damages in the form of a reasonable royalty award.

You should consider the following:

(1)   The injury to Monster Energy's reputation;

(2)   The injury to Monster Energy's goodwill, including injury to Monster Energy's general business reputation; and

(3)   The royalties that Monster Energy would have earned if ISN had taken a license before it began infringement.

AUTHORITY: Ninth Circuit Manual of Model Civil Jury Instructions – No. 15.27; *adidas Am., Inc. v. Payless Shoesource, Inc.*, 2008 WL 4279812 at *12 (D. Or. Sept. 12, 2008); Dkt. No. 202 at 14 ("A reasonable royalty based on a hypothetical negotiation can be a measure of actual damages in a trademark infringement case.").

29422818