# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MONSTER ENERGY COMPANY,<br><br>　　　Plaintiff,<br>v.<br><br>INTEGRATED SUPPLY NETWORK, LLC,<br><br>　　　Defendant. | Case No.: ED CV 17-548-CBM-RAOx<br><br>**ORDER RE: PLAINTIFF'S MOTION FOR PERMANENT INJUNCTION** |

The matter before the Court is Plaintiff's Motion for Permanent Injunction. (Dkt. No. 457.)

## I. BACKGROUND

On March 22, 2017, Plaintiff Monster Energy Company filed a complaint against Defendant asserting the following four causes of action: (1) trademark infringement, trade dress infringement, and false designation of origin under 15 U.S.C. § 1125(a); (2) trademark infringement pursuant to 15 U.S.C. § 1114; (3) Unfair Competition under Cal. Bus. & Prof. Code §§ 17200 *et seq.*; and (4) California Common law unfair competition. Following a nine-day trial, a jury reached a verdict in favor of Plaintiff on its infringement claim as to its federally registered trademarks that include the word "Monster" and its trade dress, awarded zero dollars in damages to Plaintiff caused by Defendant's infringement, and

awarded $5,000,000 in punitive damages to Plaintiff upon finding Plaintiff proved by clear and convincing evidence that Defendant acted with malice, oppression, or fraud. (Dkt. No. 446.) The jury found in favor of Defendant on Plaintiff's infringement claim as to its unregistered mark "Monster" and federally registered trademarks that include the word "Beast," and found that Plaintiff did not prove by a preponderance of the evidence that Defendant's infringement was willful. (*Id.*)

## II. STATEMENT OF THE LAW

Plaintiff seeks a permanent injunction under the Lanham Act and California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17203.

### A. Injunctive Relief Under the Lanham Act

15 U.S.C. § 1116(a) of the Lanham Act vests the district court with the "power to grant injunctions, according to the principles of equity and upon such terms as the court may deem reasonable, to prevent the violation of any right of the registrant of a mark registered in the Patent and Trademark Office or to prevent a violation under subsection (a), (c), or (d) of section 1125 of this title." District courts must apply "'traditional equitable principles" in deciding whether to grant permanent injunctive relief,' and the decision is 'an act of equitable discretion by the district court, reviewable on appeal for abuse of discretion.'" *Reno Air Racing Ass'n., Inc. v. McCord*, 452 F.3d 1126, 1137–38 (9th Cir. 2006) (quoting *eBay Inc. v. MercExchange, L.L.C.,* 547 U.S. 388, 391 (2006)). "According to these equitable principles, a plaintiff seeking a permanent injunction must demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *Id.* at 1138 (citing *ebay*, 547 U.S. at 391). The court must conduct "a fair weighing of the factors listed above, taking into account the unique circumstances of each case," and

"consider the totality of circumstances bearing on whether a permanent injunction is appropriate equitable relief." *La Quinta Worldwide LLC v. Q.R.T.M., S.A. de C.V.,* 762 F.3d 867, 880 (9th Cir. 2014).

**B.  Injunctive Relief Under the UCL**

California Business & Professions Code § 17203 provides:

> Any person who engages, has engaged, or proposes to engage in unfair competition may be enjoined in any court of competent jurisdiction. The court *may* make such orders or judgments, including the appointment of a receiver, *as may be necessary to prevent the use* or employment by any person *of any practice which constitutes unfair competition* . . ..

(Emphasis added.)  "Section 17203 does not mandate . . . injunctive relief when an unfair business practice has been shown.  Rather, it provides that the court" with "a grant of broad equitable power." *Cortez v. Purolator Air Filtration Prod. Co.*, 23 Cal. 4th 163, 180 (2000); *see also Zhang v. Super. Ct.*, 57 Cal. 4th 364, 371 (Cal. 2013) ("[T]he equitable remedies of the UCL are subject to the broad discretion of the trial court.").

## III.  DISCUSSION

**A.  Defendant's Motion to Strike**

Defendant filed a "Motion to Strike Material Outside the Trial Record" in response to the Motion, wherein Defendant requests that the Court "strike the following documents from the record":

1. Trial Exhibit 1827 – a record of prior criminal convictions of Defendant's Senior Vice President of Marketing Scott Pilkenton;
2. Trial Exhibit 1090A – December 29, 2010 – August 31, 2018 ISN Monster Mobile Product Sales by Year Per ISN0074727
3. Excerpts of Matthew Rivera's Deposition Transcript (Dkt. 459-1);
4. Excerpts of Kimberly Stoneman's Deposition Transcript (Dkt. 459-2); and
5. Video of 2017 Expo (Dkt. 459-3).

3

(Dkt. No. 465.)[1]

The final pretrial conference order provides that the issue of "[w]hether to permanently enjoin [Defendant] from infringing" Plaintiff's marks and trade dress were issues to be tried by the Court. (Dkt. No. 322 at 29-30.) Rule 26(a)(3) requires parties to identify each document or other exhibit it may present at trial other than solely for impeachment purposes. Therefore, the fact that any of the above materials were not offered as evidence to the jury at trial does not preclude the Court from considering the materials for purposes of the instant Motion if they were included on the parties' joint exhibit list and are otherwise admissible.

Defense counsel declares Plaintiff's counsel "indicated that its citation to Exhibit 1827 was in error" during the meet and confer re: Defendant's Motion to Strike. (Merrick Dec. ¶ 5.) Accordingly, Defendant's Motion to Strike Trial Exhibit 1827 is **GRANTED**.

Defendant argues the parties agreed Plaintiff could use Exhibit 1090A for demonstrative purposes during the jury trial, and that exhibit was not admitted into evidence at trial. However, Exhibit 1090A was listed on the parties' joint exhibit list (Dkt. No. 406 at p.38) and Defendant does not raise any objections as to the inadmissibility of Exhibit 1090A. Therefore, Defendant's Motion to Strike Exhibit 1090A is **DENIED**.

Defendant argues the excerpts from Rivera's deposition were neither designated by the parties for use at trial nor played for the jury at trial. Defendant does not raise any objections as to the inadmissibility of these deposition excerpts. Therefore, Defendant's Motion to Strike the excerpts from Rivera's deposition is **DENIED**.

Defendant argues no excerpts from Stoneman's deposition transcript were admitted into evidence at trial because Stoneman testified live at trial and both

---

[1] Plaintiff did not file a response to Defendant's Motion to Strike.

parties examined her at trial. The fact that Stoneman testified at trial, however, is irrelevant to whether Stoneman's deposition testimony is admissible for purposes of the instant Motion, and Defendant does not raise any objections as to the inadmissibility of such deposition testimony. Accordingly, Defendant's Motion Strike the excerpts from Stoneman's deposition is **DENIED**.

Defendant argues the video of the 2017 Expo was excluded by the Court at trial. The video was not listed on the parties' exhibit list, and the Court excluded the video on that basis during trial. (Trial Transcript at 1660:23–1661:4.) Accordingly, the Court **GRANTS** Defendant's Motion to Strike as to the Video of 2017 Expo.

**B. Injunctive Relief Under the Lanham Act**

**(1) Irreparable Harm**

"[A]ctual irreparable harm must be demonstrated to obtain a permanent injunction in a trademark infringement action." *Herb Reed Enters., LLC v. Fla. Entm't Mgmt., Inc.*, 736 F.3d 1239, 1249 (9th Cir. 2013); *see also San Miguel Pure Foods Co. v. Ramar Int'l Corp.*, 625 F. App'x 322, 327 (9th Cir. 2015) ("Irreparable harm may not be based on speculative injury.") (citing *Solidus Networks, Inc. v. Excel Innovations, Inc. (In re Excel Innovations, Inc.)*, 502 F.3d 1086, 1098 (9th Cir. 2007)).

Here, Plaintiff argues it has demonstrated irreparable harm through evidence that it "expends tremendous effort to control its business reputation and build goodwill" by "market[ing] its brand through specific and controlled avenues," has "earned significant attention" through its marketing efforts, and "carefully controls the supply of licensed products in the marketplace."[2] Plaintiff argues Defendant's infringement undermines Plaintiff's efforts to control its

---

[2] *See* Trial Transcript at 218-19, 278, 291, 299-305, 312, 316-18, 320-21, 322, 323-24, 327-28, 335, 336, 346, 347-48, 349, 350-52, 355, 356, 410, 597, 599, 602-03, 605, 607, 614, 617-18, 618-19, 624, 627, 628, 671, 677, 739-42, 747-48, 752, 760, 761; Exs. 1256, 1767.

business reputation and goodwill, as evidenced by Plaintiff's survey expert Dr. Isaacson who testified that at least 24.5% of surveyed customers believed Defendant's tools come from or are affiliated with Plaintiff,[3] testimony by three mechanics who testified they believed Defendant's products were affiliated with Plaintiff,[4] and comments by visitors of Defendant's social media accounts who believed Defendant's "Monster" tools were affiliated with Plaintiff.[5] Plaintiff also argues the evidence demonstrates Defendant's tools are "inferior goods."[6]

"Evidence of loss of control over business reputation and damage to goodwill" or loss of prospective customers "could constitute irreparable harm." *Herb Reed*, 736 F.3d at 1250; *Stuhlbarg Intern. Sales Co., Inc. v. John D. Brush & Co., Inc.,* 240 F.3d 832, 841 (9th Cir. 2001). However, Plaintiff does not offer evidence demonstrating it has actually lost control over its business reputation, that its good will has actually been harmed, or that it has lost any prospective customers as a result of Defendant's infringement. *See San Miguel Pure Foods*, 625 F. App'x at 327 (reversing permanent injunction issued by district court, reasoning "[t]he district court's finding of irreparable harm was based on the speculation that 'Ramar *would* effectively lose control over the Magnolia brand,' not that it actually had. To support its conclusion, the district court cited to evidence that Ramar had expanded its business operations to 2,000 stores and non-Asian retailers. However, this evidence of Ramar's growth did not show that San Miguel's infringement caused irreparable harm to Ramar."); *id*. at 327 ("None of Ramar's evidence of actual confusion indicated that San Miguel's use of the Magnolia mark had damaged Ramar's goodwill or that Ramar had lost control over its business reputation. All comments about both Ramar and San Miguel's

---

[3] *See* Trial Transcript at 1023.
[4] *See* Trial Transcript at 966, 974-75, 982-83.
[5] *See* Exs. 307, 322.
[6] *See* Ex. 1, Rivera Depo. at 145-46; Trial Transcript at 964, 966, 983-84, 1879.

6

products were positive; none indicated that Ramar lost customers or goodwill because of San Miguel's use of the mark on BMC goods."); *Active Sports Lifestyle USA, LLC v. Old Navy, LLC*, 2014 WL 1246497, at *2 & n.1 (C.D. Cal. Mar. 21, 2014) ("Active has failed to present evidence beyond speculation that it will face a loss of goodwill in the future, or that its inability to fully control the use of marks substantially similar to its own will result in harm. . . . Active's strong reputation and the goodwill associated with its brand is not evidence of actual irreparable harm to Active's reputation or goodwill, and Active's plans to expand its business combined with speculation that Old Navy's infringement might harm that effort is not evidence of actual harm to Active's efforts.").[7]

Moreover, evidence regarding consumer confusion does not demonstrate irreparable harm. *See Herb Reed*, 736 F.3d at 1250-51 ("Gone are the days when '[o]nce the plaintiff in an infringement action has established a likelihood of confusion, it is ordinarily presumed that the plaintiff will suffer irreparable harm if injunctive relief does not issue.'") (citations omitted); *San Miguel Pure Foods*, 625 F. App'x at 327 ("[T]o establish irreparable injury, a trademark owner must

---

[7] *CFE Racing Prod., Inc. v. BMF Wheels, Inc.*, 793 F.3d 571 (6th Cir. 2015), relied on by Plaintiff, is distinguishable because unlike in that case, here, Plaintiff fails to demonstrate it has lost control over its reputation. *Cf. id.* at 595-96 (the district court abused its discretion in issuing an injunction that permitted the defendants to continue using the letters "BMF" in connection with their products, reasoning "[t]he reality of this harm is not negated by the absence of damages" and "[f]or the purpose of an injunction, '[i]rreparable harm exists in a trademark case when the party seeking the injunction ***shows that it will lose control over the reputation of its trademark*** ... because loss of control over one's reputation is neither calculable nor precisely compensable.'") (Emphasis added.). *adidas Am., Inc. v. Skechers USA, Inc.*, 890 F.3d 747 (9th Cir. 2018), also relied on by Plaintiff, is distinguishable because that case involved a preliminary injunction wherein the applicable showing is a likelihood of irreparable harm, whereas a permanent injunction requires the plaintiff to demonstrate actual irreparable harm. *Cf. id.* at 756-57 (finding for purposes of a preliminary injunction that "[t]he extensive and targeted advertising and unsolicited media, along with tight control of the supply of Stan Smiths, demonstrate that adidas has built a specific reputation around the Stan Smith with 'intangible benefits.' And, the customer surveys demonstrate that those intangible benefits will be harmed if the Onix stays on the market because consumers will be confused about the source of the shoes. We find that the district court's finding of irreparable harm is not clearly erroneous.").

do more than merely demonstrate that a trademark has been infringed or that consumers have been confused. . . . Evidence of infringement or likelihood of confusion alone may not give rise to a presumption of irreparable harm.") (citing *Herb Reed*, 736 F.3d at 1250).[8]

Plaintiff also argues Defendant's continued infringement (after Plaintiff notified Defendant of its infringement, after Plaintiff sent Defendant a cease-and-desist letter, after Plaintiff filed the Complaint in this case, and even after the jury's verdict in this case) and introduction of new Monster-branded products identical to or closely related to the goods sold by Plaintiff constitute irreparable harm. Even assuming it is true Defendant has not ceased its infringing activity and has expanded to sell products closer to the goods sold by Plaintiff, Plaintiff must still demonstrate actual irreparable harm for a permanent injunction, which Plaintiff has failed to do. *See Active Sports Lifestyle USA*, 2014 WL 1246497, at *2 ("While Old Navy has not ceased its infringing activity, and is almost certain to continue, that does absolve Active of its burden to demonstrate actual irreparable harm.").

Accordingly, Plaintiff fails to demonstrate actual irreparable harm required for a permanent injunction under federal law.[9]

---

[8] *See also Puma SE v. Forever 21, Inc.,* 2017 WL 4771003, at *4 (C.D. Cal. June 2, 2017) (evidence that "'simply underscores customer confusion' is not enough to prove irreparable harm") (citation omitted); *VMR Prods., LLC v. V2H ApS*, 2016 WL 7669497, at *14 (C.D. Cal. Dec. 29, 2016) ("Even if the Court were to conclude that there exists a likelihood of confusion between the [parties' marks], [plaintiff] would not be entitled to the injunctive relief it seeks because they provide no evidence that it has suffered an irreparable injury.") (citations omitted).

[9] The jury's award of $0 in compensatory damages in this case indicates Defendant's infringement was not damaging to Plaintiff's business reputation or goodwill. *See Active Sports Lifestyle USA*, 2014 WL 1246497, at *3 ("[T]hough the jury may have found Old Navy liable for infringement, its decision to award no damages at all indicates that the infringement is not what was driving sales of Old Navy's products, nor damaging Active's sales or the goodwill associated with Active's mark. Because no monetary damage resulted from the pre-trial infringement and no other harm beyond speculation has been demonstrated, the Court finds that no actual irreparable harm flowing from infringing activity subsequent to the trial has been shown.").

### (2) No Adequate Remedy at Law

To obtain a permanent injunction, Plaintiff must show "remedies available at law, such as monetary damages, are inadequate to compensate for the injury." *eBay,* 547 U.S. at 391. Here, Plaintiff argues the irreparable harm to Plaintiff's goodwill and reputation cannot be adequately remedied by money damages. As discussed above, Plaintiff fails to demonstrate it has suffered irreparable harm.[10]

Plaintiff also argues the disruption repeated litigation would cause to Plaintiff's business operations would also be irreparable and it would be forced to sue Defendant repeatedly absent an injunction. Plaintiff, however, has proffered no evidence of harm to its business operations as a result of litigation. *See also Active Sports*, 2014 WL 1246497, at *3 ("While it is true that cases decided before *Herb Reed* held that a plaintiff's being made to repeatedly sue to halt infringing activity constituted an inadequacy of legal remedies, in the wake of *eBay* and *Herb Reed,* it is difficult to cabin those holdings such that they would not apply to any infringement verdict.").

Accordingly, Plaintiff fails to show an inadequate remedy at law exists.

### (3) Balance of Hardships

Plaintiff argues it "will continue to suffer without an injunction." As discussed above, Plaintiff has failed to offer evidence demonstrating any irreparable harm caused by Defendant's infringement. Therefore, Plaintiff fails to demonstrate any undue hardship if an injunction is not issued.

Defendant offers evidence of the dollar amount of infringing products in stock, in development or being produced, and the cost of "disposing of current and on-order inventory," and Defendant's CEO declares Defendant "would be out of

---

[10] The Court finds unpersuasive Plaintiff's contention that the jury's award of $0 in damages caused by Defendant's infringement confirms the inadequacy of monetary relief in this case. *See, e.g., Active Sports*, 2014 WL 1246497, at *3 ("[T]he Court finds unpersuasive Active's argument at the hearing that the jury's decision not to award damages actually strengthens the case for an equitable remedy.").

9

business in this brand for six to twelve months" if it was required to "immediately cease selling or producing any Monster Mobile products." (Weber Decl. ¶¶ 3-7.) However, "where the only hardship that the defendant will suffer is lost profits from an activity which has been shown likely to be infringing, such an argument in defense merits little equitable consideration." *BMW of N. Am., LLC v. Arion Euthenia, LLC*, 2018 WL 1407036, at *6 (C.D. Cal. Jan. 23, 2018) (quoting *Dr. Seuss Enters., L.P. v. Penguin Books USA, Inc.*, 924 F.Supp. 1559, 1574 (S.D. Cal. 1996), *aff'd*, 109 F.3d 1394 (9th Cir. 1997)); *see also Active Sports*, 2014 WL 1246497, at *4 ("[T]he Court must . . . discount much of the inconvenience Old Navy would face in complying with the Lanham Act's requirements."). Moreover, Plaintiff offers evidence demonstrating the revenue from Defendant's infringing products is only a small portion of Defendant's total revenue (i.e., approximately 2.5%).[11] Therefore, Defendant also fails to demonstrate any undue hardship if an injunction were issued.

Accordingly, the balance of hardships factor does not favor either party.

### (4) Public Interest in the Issuance of an Injunction

The public interest weighs in favor of granting a permanent injunction. *See Internet Specialties W., Inc. v. Milon-DiGiorgio Enters., Inc.*, 559 F.3d 985, 993 n. 5 (9th Cir. 2009) ("The public has an interest in avoiding confusion between two companies' products."); *Brookfield Commc'ns, Inc. v. West Coast Entm't Corp.*, 174 F.3d 1036, 1066 (9th Cir. 1999) (injunctive relief may be appropriate "to promote the public interest in protecting trademarks generally"); *State of Idaho Potato Comm'n v. G & T Terminal Packaging, Inc.*, 425 F.3d 708, 715 (9th Cir. 2005) ("Trademarks protect the public from confusion by accurately indicating the source of a product."); *Active Sports*, 2014 WL 1246497, at *4 ("The public interest . . . favors granting an injunction to avoid continuing violation of the

---

[11] *See* Trial Transcript at 1107-08, 1410, 1612; Ex. 1090A.

Lanham Act.").

* * *

Accordingly, because Plaintiff fails to demonstrate it has suffered an irreparable injury and there is no adequate remedy available at law, the Court declines to issue a permanent injunction under the Lanham Act.

## C. Injunctive Relief Under California's UCL

Section 17204 of the UCL provides: "Actions for relief pursuant to this chapter shall be prosecuted exclusively in a court of competent jurisdiction . . . by a person who has suffered injury in fact and ***has lost money or property as a result of the unfair competition***." Cal. Bus. & Prof. Code § 17204 (emphasis added). Therefore, to demonstrate standing under the UCL, a plaintiff must show (1) injury in fact; (2) lost money or property; and (3) lost money or property "as a result of" the unfair competition. *Kwikset Corp. v. Super. Ct.*, 51 Cal. 4th 310, 326 (Cal. 2011); *Troyk v. Farmers Grp., Inc.*, 171 Cal. App. 4th 1305, 1349 (Cal. Ct. App. 2009).[12] The California Supreme Court has therefore held that to bring a UCL action, a private plaintiff "must be able to show ***economic injury caused by*** unfair competition." *Zhang*, 57 Cal. 4th at 372 (emphasis added).[13] Standing must exist at all times up until entry of judgment. *See Troyk*, 171 Cal. App. 4th at 1345 ("[F]or a [UCL] lawsuit to be allowed to continue, standing must exist at all times until judgment is entered and not just on the date the complaint is filed. Because standing goes to the existence of a cause of action, lack of standing may be raised . . . at any time in the proceeding, including at trial or in an appeal.").

---

[12] Section 17204 was amended to include these three elements for standing under the UCL pursuant to the passage of Proposition 64 in 2004. *Troyk*, 171 Cal. App. 4th at 1345.

[13] *See also Kwikset*, 51 Cal. 4th at 323, 325 ("The plain import of this ["lost money or property] requirement] is that a plaintiff now must demonstrate some form of economic injury. . . . Proposition 64 requires that a plaintiff's economic injury come 'as a result of' the unfair competition. The phrase 'as a result of' in its plain and ordinary sense means 'caused by' and requires a showing of a causal connection or reliance on the alleged misrepresentation.").

11

Here, the jury awarded Plaintiff $0 in damages caused by Defendant's infringement. Moreover, Plaintiff fails to offer evidence demonstrating it has suffered economic injury or actual injury to its good will or reputation caused by Defendant.

Therefore, the Court finds Plaintiff lacks standing under the UCL.[14]

## IV.  CONCLUSION

Accordingly, the Court **DENIES** Plaintiff's Motion for Permanent Injunction.

**IT IS SO ORDERED.**

DATED: July 2, 2019.

                         CONSUELO B. MARSHALL
                         UNITED STATES DISTRICT JUDGE

---

[14] *See, e.g., Akkerman v. Mecta Corp.*, 152 Cal. App. 4th 1094, 1098-1102 (Cal. Ct. App. 2007); *Wiseman v. Ikon Office Sols., Inc.*, 2008 WL 2756472, at *10 (Cal. Ct. App. July 16, 2008); *Paz v. Sanders Oldsmobile-Cadillac, Inc.*, 2007 WL 49657, at *5-*6 (Cal. Ct. App. Jan. 9, 2007); *Hall v. Time Inc.*, 158 Cal. App. 4th 847, 855 (Cal. Ct. App. 2008).